In the United States District Court
Northern District of Texas
Wichita Falls Division

| | | |
|---|---|---|
| Rhonda Fleming, | § | |
| Charlsa Little, | § | |
| Jeanette Driever, and | § | |
| Brenda Rhames, | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. |
| | § | |
| v. | § | 7:17-cv-0009-O |
| | § | |
| United States of America, | § | |
| Attorney General Jefferson B. | § | |
| Sessions, III, | § | **Jury Trial Demanded** |
| Acting Director of the Bureau of | § | |
| Prisons Dr. Thomas R. Kane, | § | |
| Jody R. Upton, and | § | |
| Steve Mora, | § | |
| | § | |
| Defendants. | § | |

## THIRD AMENDED VERIFIED COMPLAINT

Plaintiffs Rhonda Fleming, Brenda Rhames, Charlsa Little, and

Jeanette Driever bring this lawsuit against the United States of

America and named officials in their official and individual capacities.

# I.
# Introduction

This action arises out of recent U.S. Bureau of Prisons (BOP) rules and regulations that authorize male prison inmates to be housed in the same facilities that house female inmates. Such a blending of the sexes in the confined and restricted conditions attendant to prisons violates the privacy of female inmates and causes numerous dangers and threats to the physical and mental health and safety of our female Plaintiffs, and has in fact resulted in many such dangers coming to fruition as detailed below.

The basis for the recent changes to rules and regulations is a politically-driven agenda to affirm that gender identity theory, rather than biological sex, is the normative basis to determine whether an inmate is male or female. Consequently, male inmates who profess to be transgender women are being placed in female-only prison facilities as a method of affirming their misperceived sex. Housing male inmates in facilities otherwise housing only female inmates creates a situation that incessantly violates the privacy of female inmates; endangers the physical and mental health of the female Plaintiffs and others,

including prison staff; increases the potential for rape; increases the potential for consensual sex which is nonetheless prohibited by prison regulations; increases the risk for other forms of physical assault, violates the Plaintiffs' right to freely exercise their religion; and causes mental and emotional distress that must be promptly mitigated by preliminary and permanent injunctive relief.

Plaintiffs seek a return to objective reason in prison regulations and the housing actions of the BOP, and recompense for past harms inflicted on them.

Throughout this Complaint, Plaintiffs refer to "sex" as the biological sex a person has at birth which correlates to objective indicia of sex such as chromosomes, gonads, and internal and external genitalia. Sex is objectively verifiable; binary, fixed, and defined by our human reproductive nature as either male or female.

Plaintiffs use the term "gender" as it is used by Defendants' policies and practices, to mean a self-perception of one's "gender" that is subjectively discerned and exists within a continuum of genders that range from male to female to something else. Gender is established

only by a person's self-report; there are no objective indicia that disclose one's "gender," and gender identity theory rejects male and female physiological reproductive systems as being definitional primary sex characteristics. Gender is subjectively perceived; fluid, and may be called male, female, or something else as the individual may desire.

Finally, "intersex" refers to a disorder of sexual physiological development in which there is an abnormal chromosomal complement; the development of deformed or ambiguous genitalia; or some combination of the two. Intersex conditions may be objectively diagnosed and are distinct from "genders" proposed by gender-identity theory. Intersex conditions are irrelevant to this Complaint.

## II.
## Parties and Service of Process

1.  Plaintiff Rhonda Fleming is a 51-year-old, African-American female, currently residing in the Federal Medical Center, Carswell Federal Prison, Fort Worth, Texas.

2.  Plaintiff Charlsa Little is a 37-year-old Caucasian female, currently residing in the Federal Prison Camp, Bryan, Texas.

3.     Plaintiff Jeanette Driever is a 39-year-old, Shoshone-Bannock Native American female, currently residing in the Federal Medical Center, Carswell Federal Prison, Fort Worth, Texas.

4.     Plaintiff Brenda Rhames is a 63-year-old, Caucasian female, currently residing in the Federal Medical Center, Carswell Federal Prison, Fort Worth, Texas.

5.     Defendant **United States of America** is the sovereign responsible for creation and implementation of the policies being challenged in this lawsuit, and for the incarceration of Plaintiffs and the conditions in which Plaintiffs live. It may be served with process via certified mail delivered to the U.S. Attorney for the Northern District of Texas:

Hon. John R. Parker, U.S. Attorney
c/o Civil-Process Clerk
U.S. Attorney's Office, Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242

with copy delivered via certified mail to:

Hon. Jefferson B. Sessions, III
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW

Washington, D.C. 20530-0001

and copy delivered via certified mail to:

Dr. Thomas R. Kane
Acting Director, Federal Bureau of Prisons
320 First Street, NW
Washington, D.C. 20534

6.    Defendant **Hon. Jefferson B. Sessions, III** is the Attorney

General of the United States and director of the U.S. Department

of Justice, and is being sued in his official and individual

capacities. He is the official who, among other tasks, supervises

the Department of Justice, of which one division is the Federal

Bureau of Prisons. He is the person responsible for the proper

enforcement of BOP regulations. He may be served with process

via certified mail delivered to the U.S. Attorney for the Northern

District of Texas:

Hon. John R. Parker, U.S. Attorney
c/o Civil-Process Clerk
U.S. Attorney's Office, Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242

with copy delivered via certified mail to:

Hon. Jefferson B. Sessions, III

*THIRD AMENDED VERIFIED COMPLAINT*                    *page 6*

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

and copy delivered via certified mail to:

Dr. Thomas R. Kane
Acting Director, Federal Bureau of Prisons
320 First Street, NW
Washington, D.C. 20534

7.   Defendant **Dr. Thomas R. Kane** is the Acting Director of the

U.S. Bureau of Prisons and is being sued in his official and

individual capacities. He is the official responsible, among other

tasks, for the creation, administration, and implementation of the

policies and procedures of the Bureau of Prisons that are being

challenged in this lawsuit. He may be served with process via

certified mail delivered to the U.S. Attorney for the Northern

District of Texas:

Hon. John R. Parker, U.S. Attorney
c/o Civil-Process Clerk
U.S. Attorney's Office, Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242

with copy delivered via certified mail to:

Hon. Jefferson B. Sessions, III
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

and copy delivered via certified mail to:

Dr. Thomas R. Kane
Acting Director, Federal Bureau of Prisons
320 First Street, NW
Washington, D.C. 20534

8.   Defendant **Jody R. Upton** is the warden of the Carswell Federal

Medical Center, and is being sued in her official and individual

capacities. She may be served with process via certified mail

delivered to the U.S. Attorney for the Northern District of Texas:

Hon. John R. Parker, U.S. Attorney
c/o Civil-Process Clerk
U.S. Attorney's Office, Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242

with copy delivered via certified mail to:

Ms. Jody R. Upton
Federal Medical Center, Carswell
Naval Air Station
J St Bldg 3000
Fort Worth, Texas 76127

*THIRD AMENDED VERIFIED COMPLAINT*                                    *page 8*

9.     Defendant **Steve Mora** is the warden of the Bryan Federal Prison

Camp, and is being sued in his official and individual capacities.

He may be served with process via certified mail delivered to the

U.S. Attorney for the Northern District of Texas:

Hon. John R. Parker, U.S. Attorney
c/o Civil-Process Clerk
U.S. Attorney's Office, Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242

with copy delivered via certified mail to:

Mr. Steve Mora
Federal Prison Camp, Bryan
1100 Ursuline Avenue
Bryan, Texas 77803

### III.
### Jurisdiction and Venue

10.    Jurisdiction is proper in this Court under Article III of the U.S.

Constitution and 28 U.S.C. §§1331 and 1346 because claims in the

case arise under the Constitution, laws, or treaties of the United

States, including the First, Fourth, Fifth, Eighth, and Fourteenth

Amendments, 42 U.S.C. §2000(bb), et seq. (the RFRA), and under

*Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

11.  The Court has jurisdiction to issue the requested declaratory relief in accordance with 28 U.S.C. §§2201 and 2202, and Federal Rule of Civil Procedure 57.

12.  The Court has jurisdiction to issue the requested injunctive relief in accordance with 5 U.S.C. §§702 and 703, 28 U.S.C. §1343(a)(4), and Federal Rule of Civil Procedure 65.

13.  The Court has jurisdiction to award attorney's fees and costs in accordance with 28 U.S.C. §2412 and the Equal Access to Justice Act, and money damages under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 288 (1971).

14.  Venue is proper in the Northern District of Texas in accordance with 28 U.S.C. §1391(e) because the Defendant wardens reside in this district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and the policies being challenged are being implemented in the Northern District of Texas, among other locations.

**IV.**
**Relevant Background Facts**

*A.    General Prison Conditions*

15.    Plaintiffs are incarcerated women in the custody of the Federal
Bureau of Prisons, serving sentences in excess of 50 months. Each
of them is a non-violent, minimum security inmate. Many other
affected inmates at these facilities are serving sentences in excess
of 20 years.

16.    Both FMC Carswell (population approximately 1,164 inmates)
and FPC Bryan (population approximately 879 inmates) are
designated by the Bureau of Prisons (BOP) as "female only"
prisons. This means they are supposed to house only female
offenders in these facilities, and are not officially designated to
house male inmates. Many other facilities under the direction of
BOP are similarly designated as "female only" or "male only."

17.    Carswell FMC currently houses more inmates than its designed
capacity.

18.    Prison facilities generally house inmates 24 hours a day during
their incarceration. At Carswell and Bryan, inmates are bunked

in 4-person cells and are obligated to accept cellmates as assigned by Defendants; there is effectively no privacy from one's cellmates. Inmates are under the direction, control, and supervision of the prison at all times while they eat, sleep, recreate, bathe, work, dress, and engage in other intimate activities such as using the restroom. Many of these activities are not conducted in physically-separated spaces, but are instead conducted in dormitory or "open" spaces visible to all other inmates and prison officials. This openness is mostly necessary in order to allow prison officials to keep a close eye on the activities of inmates to detect prison rule violations or harmful or harassing behavior towards other inmates or guards, thus encouraging inmates to follow the rules to avoid discipline as well as preserving the security of the facility.

19. For the entire history of this country, and in most countries world-wide, male prison inmates are housed in separate facilities from female inmates. There are many good reasons for this separation, including to protect the physical safety of the inmates

and prison officials, bodily privacy, hygiene, and to prevent or avoid mental/sexual trauma, sexual assault, and consensual sexual relations that are nonetheless illicit under prison regulations.

20.  To preserve their bodily privacy, inmates may not be generally or routinely subjected to observation by guards of the opposite sex when the inmates are disrobing, showering, or toileting.

21.  Similarly, to protect their bodily privacy, inmates may not generally or routinely be subjected to pat searches by guards of the opposite sex.

22.  These conditions are controlled by federal regulations and statutes, some of which are relevant to this case.

**B.   *Recent Changes to Prison Regulations.***

23.  In 2012, under former President Barack Obama, government regulations were changed regarding the "gender identities" of inmates housed in federal prisons. See, e.g., 28 C.F.R. §115.42, which provides rules for the assignment of self-identified

"transgender" inmates to facilities where other inmates are of a different biological sex.

24. Specifically, the former administration began designating male inmates who claimed to be "female" as if they were actually females, and began housing them in female-only prison facilities. For ease of reference, these male inmates will be identified as "MTF Inmates."[1]

25. Under BOP regulations, MTF Inmates are discerned as being "female" only through their self-report. Moreover, there is no objective, physical, or evidence-based test that can verify that a biological male inmate is actually a MTF Inmate. This is evidenced by the regulations relating to professed transgender inmates, who are classified as such by this self-reported criteria:

> *Gender identity* – a person's sense of their own gender, which is communicated to others by their gender expression.

---

[1]   Acknowledging that some professed transgender inmates may suffer a psychological condition is not a pejorative, but is supported by the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (sometimes referred to as the "DSM-5") published by the American Psychiatric Association. See Exhibit I (Gender dysphoria definition and diagnoses guidelines). Counsel notes that Plaintiffs do not concede that the DSM-5 establishes an authoritative scientific consensus on gender identity theory. As that document itself admits, gender identity theory is rife with confusion, controversy, and a proliferation of terms of varying meaning. *Id.* at 451.

**THIRD AMENDED VERIFIED COMPLAINT**                              *page 14*

> *Gender expression* – includes mannerisms, clothing, hair style, and choice of activities.[2]

As is evident, a person's "***sense*** of their own gender," and each of the clinical indicia of "gender ***expression***," are based solely on the self-reported declarations and volitional behaviors of the person himself, and are not objectively verifiable as is biological sex.

26.   Additionally, this same Program Statement differentiates gender identity from sexual orientation (or the sexual preferences of the person):

> *Sexual orientation* – the direction of one's sexual interest towards members of the same, opposite, or both genders (e.g., heterosexual, homosexual, bisexual, asexual). Sexual orientation and gender identity are not related.

27.   This differentiation means that male inmates could be heterosexual in their orientation while also ***claiming to be*** MTF Inmates, and under current BOP regulations thereby gain access to a captive prison population filled with female inmates who the

---

[2]   Source: U.S. Justice Department, Federal Bureau of Prisons, Program Statement, OPI: RSD/FOB, Number: 5200.04, Date: January 18, 2017, "Transgender Offender Manual." See **Exhibit H.**

male inmate still has sexual desire for and who are ready victims for sexual assault and rape. That is, because of the self-reported nature of the MTF designation, it is possible that MTF Inmates are actually just regular male inmates who falsely "identify" as MTF Inmates for nefarious purposes including gaining access to a female-only prison population in order to engage in sexual assault, rape, or other sexual aggression or activity.

28.   Even for those professed transgender inmates whose confusion as to their sex may be genuine, the fact that sexual orientation is distinct from gender identity means that an MTF inmate may retain male genitalia and be sexually attracted to females with consequent elevated risk for consensual sex or rape within the inmate population, or between inmates and staff.

29.   Regardless of sexual orientation, male inmates often use their male sexual organs as threats or weapons against other inmates. Even without physical contact, Plaintiffs are being subjected to constant visual exposure of male sexual organs, which violates the privacy rights of any woman unwillingly exposed to the sight. For

victims of sexual abuse – as many women in prison are – such exposure can be even more severely mentally distressing and harmful.

30. Upon information and belief, there are at least four MTF professed transgender inmates currently at Carswell: Linda Thompson; Peter Langan; Andre Saunders; and Darnell Nash. Saunders and Nash have prison disciplinary records for violent incidents. Thompson, Saunders, and Nash have each threatened to rape female inmates. Langan presents himself as having a propensity for violence, and has verbally threatened other inmates with death.

31. Most or all of the MTF Inmates currently at Carswell and at Bryan possess male sexual genitalia including testicles and penises.

32. For instance, Linda Thompson, is an approximately 6-4, 230 pound male bank robber currently housed among the female population of that facility. He still has his external male genitalia, is among the largest inmates at Carswell, and poses a physical

threat to not only other inmates but also to prison staff, many of whom are smaller females. Thompson has also threatened various inmates, including one Plaintiff, with sexual assault and rape if he did not get his way on certain issues---for example, being assigned to a cell with a female inmate whom he disliked.

33.   Plaintiffs have received death threats after one or more of the MTF inmates used PACER to access documents filed in this case, such threats to be effected should a court order issue directing that MTF inmates are to be relocated from Carswell FMC.

34.   The constant risk and frequent reality of Plaintiffs' unconsented viewing of nude male inmates, and their being observed by male inmates when Plaintiffs are disrobing, partially nude, or fully nude, deprives Plaintiffs of their Constitutional rights to bodily privacy and freedom from mental and physical assault.   The following incidents typify the injuries to Plaintiffs and other female inmates:

35.   Ms. Driever was raped in a half-way house by a male staff member  before coming to Carswell. This traumatic experience

obviously caused her severe mental distress which continues to this day. For her to be at constant risk of, and actual exposure to viewing male sexual organs, which is forced on her by the living conditions Defendants have by policy established as described herein (and that she has no way to escape from) severely exacerbates her already-fragile mental condition (PTSD) and psychological anguish and stress.

36.   On or about January 31, 2017, Inmate Thompson sought out and confronted Ms. Fleming in the law library area while armed with a mop handle or similar stick, and threatened her for filing this lawsuit to protect her privacy and safety. See **Exhibit A**, Declaration by Rhonda Fleming; **Exhibit B**, Declaration by Cheree Cockrell; and **Exhibit C**, Declaration by Levon Edmonds.

37.   On or about March 14, 2017, during a fire drill, Inmate Thompson dropped his pants and urinated, exposing his genitals and buttocks to a crowd of approximately 400 female inmates, including Plaintiffs. See **Exhibit B,** Declaration by Cheree Cockrell and **Exhibit D,** Declaration by Kathleen Nelson.

38. In May or June 2016, Ms. Fleming attempted to file an administrative complaint to seek relief from having male inmates assigned to the female facility; prison officials retaliated by placing her on kitchen duty which is understood by inmates to be a disciplinary duty. Additionally, a Correctional Supervisor threatened to "open an investigation" on Fleming if she persisted in complaining about men being present in the prison. See **Exhibit E**, Declaration by Robin Pareznanin and **Exhibit F**, Administrative Grievance re: Lt. Sosa.

39. In late 2016, Inmate Thompson was challenged by a guard regarding the way he was wearing his uniform. In protest, he stripped naked and walked about in the presence of over 100 women.

40. Inmate Thompson frequently exposes his genitalia to Plaintiffs and other female inmates by wearing his prison-issue skirt without underwear, and sitting spread-legged so as to expose himself to female inmates generally, or to a particular female inmate.

*THIRD AMENDED VERIFIED COMPLAINT*                           *page 20*

41. Other inmates have experienced similar violations of bodily privacy and safety. For instance, inmate Joann Henry was housed for several months in 2016 in the SHU (Special Housing Unit) with MTF inmates, where she repeatedly was exposed to nude male bodies and male genitals. See **Exhibit G,** Declaration by Joann Henry.

42. Inmate Kathleen Nelson reported exposure to male bodies and witnessed the fire drill incident in which Inmate Thompson exposed himself while urinating. See **Exhibit D,** Declaration by Kathleen Nelson.

43. Inmate Cheree Cockrell states that female inmates feel less safe with men in the unit and are regularly disrespected by the MTF inmates. She also witnessed the fire drill incident, and has witnessed Thompson agitating with other inmates to condemn Fleming for filing her lawsuit. She further states that Fleming and Driever are both at risk of assault due to their legal work on this case. See **Exhibit B,** Declaration by Cheree Cockrell.

44. Inmate Julie Hatcher has been exposed to male inmates, including being exposed to full frontal nudity of Inmate Thompson, and to Thompson's genitals, on a daily basis.

45. Sexual assault in prison is a very serious national problem. This is confirmed by the fact that the federal government has passed statutes to prevent such activities. See, e.g., Prison Rape Elimination Act of 2003, P.L. 108-79, 42 U.S.C. §15601, et seq. The government requires regular audits to monitor this ongoing problem.

46. Interestingly, none of the Obama-era regulations regarding professed "transgender" inmates mention, much less make any special provisions for, the protection, safety, and privacy of the biological female inmates with whom MTF Inmates are being housed. For instance, the cited Program Statement cites to 18 C.F.R. §115.42(c):

> In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates...the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and

> whether the placement would present management or security problems.

Nothing is said about the privacy, religious beliefs, health, or safety of other inmates who do not suffer from sexually-based psychological conditions.[3]

47. This in turn means present regulations elevate the "concerns" of MTF Inmates – inmates who are suffering from serious psychological disorders, including gender dysphoria, or maybe simply pretending to do so – over and above the concerns and protection of the entire population of female inmates, thus shifting the burden to protect the privacy and safety of the female inmates from the prison and onto the inmates themselves.

48. It is undoubtedly humane to offer supportive services to psychologically suffering inmates, but there is no justification or penological interest being served by the new and extraordinary

---

[3]     The only part of the cited Program Statement that might come close to showing concern for other inmates is in the factors to be considered when determining where to house MTF Inmates: "... likelihood of perpetrating abuse." However, this is vague as to who would be the perpetrator and who would be the victim of such abuse, and given its inclusion in a listing of harms that might be suffered by an MTF Inmate, is appears it is addressing only harm to, not caused by, the MTF Inmate.

*THIRD AMENDED VERIFIED COMPLAINT*                    *page 23*

harms and risks being perpetrated on other inmates in that process via the recent Obama-era BOP regulations.

49. To be clear, *Plaintiffs are not seeking to prevent medically-necessary treatment prescribed for any inmate.* Instead, they are asking that their legal rights to privacy, safety, and the free exercise of their faith be protected against the inevitable consequences of official policies of intermingling the sexes in their home---particularly when that home is a federal prison.

50. These new regulations are found in numerous BOP policies and rules, including provisions of 28 C.F.R. §115 implementing the Prison Rape Elimination Act and the USDOJ BOP Transgender Offender Manual (attached as **Exhibit H**).

51. Non-federal prisons having similar inmate populations and inmate demographics—such as the State of Texas system—currently manage the needs of professed transgender prisoners without intermingling the sexes in the general prison population, just as the Federal system did prior to the adoption of gender-identity theory in its regulations.

52. MTF Inmates, even though they self-report to be "females," still possess the innate physical characteristics of male human beings, (even if they have had surgical removal of some or all male sexual organs) including greater average height, weight, and muscle mass than females. These characteristics make MTF Inmates substantially larger and stronger than the average female, thus rendering them a physical as well as sexual danger to female inmates and prison officials.

## C.  *The Conditions That Support This Lawsuit.*

53. As would be expected from the federal prison regulations requiring this, Plaintiffs have been housed with MTF Inmates, sometimes in the same sleeping and intimate spaces.

54. MTF Inmates have been known to display their male genitalia to Plaintiffs, either aggressively and intentionally as a means of intimidation or harassment, or inadvertently in locker areas, showers, restrooms, and cells.

55. Whether such exposure is intentional or inadvertent, or motivated by animus or not, it is damaging to Plaintiffs and such exposure

arises solely because of the Defendants' policy and practices challenged herein.

56.  Plaintiffs being exposed, either intentionally or inadvertently, to these displays of male genitalia has caused them to suffer embarrassment, mental anguish, suspicion, fear of sexual assault, and other unnecessary and readily-preventable mental distress.

57.  In addition, many MTF Inmates have verbally threatened Plaintiffs and others with physical and sexual assault, and in several instances such threats have turned into actual assaults.

58.  In addition, federal prisons, including Carswell and Bryan, house other female inmates who self-report to be "male." Some of the professed female-to-male or "FTM" Inmates, while being females, have been treated by prison officials with testosterone and have engaged in strength training to further their process of "becoming males." They are also known to wear "strap on" devices to mimic male sexual anatomy.

59.  Hormone and strength-training actions by FTM Inmates render them physically stronger than regular female inmates, and the

hormones make them much more aggressive and increase their propensity for physical violence.

60. Being housed with professed "transgender" inmates of either variety deprives Plaintiffs of their Constitutional rights to privacy, bodily integrity, safety, freedom from physical assault and rape, and basic human dignity.

61. Further, Plaintiffs are evangelical Christians. Consistent with the tenets of their faith, Plaintiffs observe certain conventions of modesty in dress and demeanor, which include not being subjected to unnecessary or unconsented viewing of nude males and similarly avoid exposing their own nudity to men. These religious tenets and the free exercise thereof are being violated by the imposition of the subject regulations and the housing of professed "transgender" inmates in their prison facilities, and no reasonable accommodations have been offered to Plaintiffs to address these concerns.

62.  Christian teachings about modesty and privacy between the sexes are among the most fundamental teachings, being evident in Genesis, the very first book of the Bible.

63.  On May 4, 2017, President Donald Trump issued an Executive Order Promoting Free Speech and Religious Freedom to the agencies under his authority—including the Bureau of Prisons— to establish the following policy, which in relevant part states:

Section 1. Policy. It shall be the policy of the executive branch to vigorously enforce Federal law's robust protections for religious freedom. The Founders envisioned a Nation in which religious voices and views were integral to a vibrant public square, and in which religious people and institutions were free to practice their faith without fear of discrimination or retaliation by the Federal Government. For that reason, the United States Constitution enshrines and protects the fundamental right to religious liberty as Americans' first freedom. Federal law protects the freedom of Americans and their organizations to exercise religion and participate fully in civic life without undue interference by the Federal Government. The executive branch will honor and enforce those protections.

*Presidential Order Promoting Free Speech and Religious Freedom,* https://www.whitehouse.gov/the-press-office/2017/05/04/presidential-executive-order-promoting-free-speech-and-religious-liberty.

Defendants' policies and practices as applied to the Plaintiffs'

*THIRD AMENDED VERIFIED COMPLAINT*                    *page  28*

religious tenets regarding personal privacy are inconsistent with the President's May 4, 2017 Executive Order Promoting Free Speech and Religious Liberty.

64. Finally, backed up by federal regulations, certain prison officials have embraced gender-identity ideology and have threatened, berated, and embarrassed Plaintiffs for their activities in attempting to bring these issues to the attention of the courts and seek their correction. These actions by prison officials violate Plaintiffs' Constitutional rights to bodily privacy, to be free from mental anguish, threatens their physical well-being, and singles them out for punishment by government officials for petitioning the Government for a redress of grievances and exercising their First Amendment rights.

65. Prison officials at Carswell and Bryan have offered only *unreasonable* "accommodations" to Plaintiffs so they may avoid the so-called "transgender" inmates. Those accommodations have only involved Plaintiffs volunteering to be placed in protective custody, which is a form of solitary confinement in a special

housing unit (or SHU). Confinement in SHU results in loss of paid prison work assignments, contact with other inmate friends and associates, access to recreational facilities, and other deprivations.

66. This is backwards: it is not Plaintiffs who are intruding on the constitutional rights of other inmates in the prison, but rather it is the professed "transgender" inmates who necessarily violate other inmates' privacy and pose other threats to legal rights and even others' safety. It is unjust and unreasonable for Plaintiffs to be asked to "volunteer" for more-punitive confinement conditions in the SHU in order to avoid the harms and threats being inflicted on them by the irrational regulations and operations of the prison system. Plaintiffs plead for reason to be returned to the prison system in which they find themselves captive, and seek relief from the threats and mental anguish being foisted upon them by the regulations and practices of the BOP regarding professed "transgender" inmates.

67. Plaintiffs have suffered, and continue to suffer, severe mental anguish in the form of extreme embarrassment, fear for their

physical safety, anxiety, sleeplessness, physical illness, and panic attacks, based on their being subjected to conditions where their bodily privacy is continually at risk and frequently violated and mental and physical safety is constantly endangered by being housed with professed "transgender" inmates, all under the Defendants' rules and regulations.

## V.
## Statement of Applicable Law

68.   At all relevant times, each and all of the acts alleged herein were attributed to the Defendants who acted under color of a statute, regulation, or other laws of the United States.

69.   The right to privacy in one's bodily integrity is well established under federal law, and protected by the 4th, 8th, and 14th Amendments to the U.S. Constitution, and by various federal statutes and regulations.

70.   The right to be free from threats of physical and mental abuse, or actual physical and mental abuse, while incarcerated in a government prison is well established under federal law.

71.    The right to be free to express and enjoy religious liberty without unreasonable governmental interference is well established in federal law, including the Religious Freedom Restoration Act.

72.    The right to petition the government for a redress of grievances free from government retaliation is a well-established right, even for prison inmates.

73.    The rules and regulations under review in this case infringe on and disparage the federally-protected rights of Plaintiffs as set forth herein.

74.    Under federal law, if government officials violate the Constitutional rights of citizens, they are liable for monetary damages caused by those violations.

75.    Defendants knew or should have known that the subject rules and regulations infringed on Plaintiffs' Constitutional and statutory rights, but enforced and implemented those rules and regulations anyway, and continue to do so, all to the harm of Plaintiffs.

76.    The continued enforcement of the subject rules and regulations by Defendants will continue to infringe and violate Plaintiffs'

*THIRD AMENDED VERIFIED COMPLAINT*                    *page 32*

Constitutional and statutory rights unless this Court enjoins such action.

77.   Defendants are and have been deliberately indifferent to the constitutional and statutory violations visited upon the Plaintiffs by the Defendants' policies and practices.

78.   Preserving bodily privacy—particularly in conducting personal hygiene and not suffering unconsented viewing of one's nude body—is one necessary measure of civilized life's necessities.

79.   Defendants have no legitimate penological interest in forcing Plaintiffs to share with male inmates their cells, locker areas, showers, toilets, and other areas where bodily privacy is normatively protected.

## VI.
## Causes of Action

All facts set forth above are incorporated into each of the causes of action below as if fully set forth therein.

## A.   *Violation of Constitutional Rights*

80.   Plaintiffs have the Constitutional right under the First Amendment, even while in prison, to petition the government for

a redress of grievances without being subjected to retaliation, intimidation, and threats for doing so.

81.   Plaintiffs have the Constitutional right under the Fourth, Eighth, and Fourteenth Amendments, even while in prison, to be free from physical and mental harm and threats of harm imposed on them by prison officials, directly or indirectly, whether that harm is caused by implementation of rules and regulations or otherwise which constitute cruel and unusual punishment.

82.   Plaintiffs have a Constitutional right to privacy under the Fourth and Fourteenth Amendments, which includes bodily privacy.

83.   Plaintiffs have a Constitutional right under the Fourth, Eighth, and Fourteenth Amendments to expect that prison officials will keep them safe from harm from other inmates by exercising reasonable actions designed to do so.

84.   Plaintiffs have a Constitutional right under the Fifth Amendment to petition the government for redress of grievances without suffering retaliation by government officials for doing so, even while they are in prison.

85.   Plaintiffs have a constitutional right under the 8th amendment to not be subjected to cruel and unusual punishment.

86.   The BOP regulations identified above serve to create an environment wherein these Constitutional rights are violated, or are at constant risk of violation, all to the detriment of Plaintiffs.

### B.   *Violation of the Religious Freedom Restoration Act*

87.   Defendants' conduct in imposing rules and regulations, and in imposing conditions affecting Plaintiffs that violate their rights to practice the tenets of their faith, violate the First Amendment and the federal Religious Freedom Restoration Act.

88.   Defendants intentional intermixing of the sexes within a female-specific facility violates the Plaintiffs' free exercise of their faith absent any legitimate penological interest in intermixing the sexes; lacks any rational basis for such intermixing; and is devoid of any compelling or even rational government interest.

89.   Were a compelling government interest in intermingling the sexes in female-specific facilities established, then Defendants failed to use the least restrictive means to advance any such interest.

90.   These deprivations of rights by Defendants are caused by the rules and regulations imposed by the policymaker of the BOP.

C.   *Attorney's Fees*

91.   Plaintiffs are entitled to recover their reasonable and necessary attorney's fees as the Court deems them fair and equitable, for all of which Plaintiffs hereby sue.

## VI.
## Relief Requested

Plaintiffs seek the following relief:

92.   Declaratory Judgment that the regulations of the BOP as set out herein are violative of the U.S. Constitution, facially and as applied, because they infringe on Plaintiffs' rights to bodily privacy, freedom from cruel and unusual punishment, and religious freedom; and further declare that such regulations are null and void.

93.   Preliminary injunctive relief to relocate Plaintiffs to a secure half-way house or similar minimum-security facility where their bodily privacy and personal safety may be assured during the pendency of this litigation, and such permanent injunctive relief

as is necessary to assure their bodily privacy and safety throughout the balance of their respective terms of imprisonment.

94.   Preliminary and permanent injunctive relief forbidding the BOP, or any of its officials, from enforcing, implementing, or relying upon for any purpose any rules or regulations that would cause or allow professed "transgender" inmates from being housed in any facility other than a facility that houses inmates who are of the same sex as the inmates as that sex is determined by their sex at birth;

95.   Injunctive relief forbidding the BOP, or any of its officials, from retaliating or taking any punitive action whatsoever toward any Plaintiff based on the fact that this lawsuit has been filed seeking a redress of Plaintiffs' grievances;

96.   Mandatory injunctive relief directing the BOP to promptly relocate all inmates in the federal prison system who are presently housed in facilities also housing inmates of another sex such that all inmates will be housed in facilities that house inmates corresponding to their binary sex at birth; or in the

alternative, Plaintiffs ask the Court to order Defendants to craft a remedy that protects the Constitutional rights and safety of Plaintiffs without imposing punitive or restrictive conditions on Plaintiffs, and then upon notice and hearing, adopt said alternative remedy if and as the Court deems it appropriate

97.   Money damages of $22,000.00 per Plaintiff for past mental anguish;

98.   Punitive damages at the highest rate allowed by law;

99.   Nominal damages of $10.00 per Plaintiff per Defendant;

100.  Reasonable and necessary attorney's fees in accordance with 28 U.S.C. §2412, the Equal Access to Justice Act, and in equity; and

101.  Such other and further relief as is just.

**RESPECTFULLY SUBMITTED:**

/s/ James A. Pikl, Lead Counsel
jim.pikl@solidcounsel.com
Texas Bar No. 16008850
SCHEEF & STONE, LLP
2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100
Fax (214) 472-2150

Gary McCaleb*

gmccaleb@adflegal.org
Arizona Bar No. 018848
Jeana Hallock**
jhallock@adflegal.org
Arizona Bar No. 032678
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
Fax (480) 444-0025

**ATTORNEYS FOR PLAINTIFFS**
\* *Pro hac vice* application submitted
\*\* *Pro hac vice* application pending.fp

## CERTIFICATE OF SERVICE

In accordance with Local Rule 5.1(d), the foregoing pleading was served in accordance with the CM/ECF filing system and FRCP 4.

/s/ James A. Pikl

## VERIFICATION

BEFORE ME, the undersigned authority, personally appeared Rhonda Fleming, known to me to be the person whose name is subscribed below, and upon her oath, stated as follows:

My name is Rhonda Fleming. I am one of the Plaintiffs in this lawsuit. I have personal knowledge of all facts stated in the pleading above, and all such facts are true and correct.

Rhonda Fleming

SUBSCRIBED this 11ᵗʰ day of May, 2017, to which witness my hand and seal of office.

A. ARRIAGA
My Notary ID # 130793845
Expires August 24, 2020

NOTARY PUBLIC,
STATE OF TEXAS

*THIRD AMENDED VERIFIED COMPLAINT*                    *page 40*