# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

RHONDA FLEMING, *et al.*,

     *Plaintiffs*,

  v.          Civil No. 7:17-cv-0009-O

UNITED STATES OF AMERICA, *et al.*,

     *Defendants*.

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

Statutory and Regulatory Background ......................................................................... 2

A.   BOP's Inmate Designation Authority and Process ............................................ 2

B.   BOP Risk Screening .......................................................................................... 3

FACTUAL BACKGROUND .......................................................................................... 5

C.   Investigation into Plaintiffs' Allegations of Misconduct ...................................... 6

LEGAL STANDARD ................................................................................................... 10

ARGUMENT ............................................................................................................... 10

A.   Likelihood of Irreparable Harm ........................................................................ 10

B.   Likelihood of Success on the Merits ................................................................ 13

C.   BOP's Administrative Remedy Program ........................................................... 15

D.   Plaintiffs have failed to exhaust BOP's Administrative Remedies .................... 16

E.   If the Court Determines that a Preliminary Injunction is Warranted, Such
     Relief Should be Narrowly Tailored to Plaintiffs ............................................... 20

CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                **Page(s)**

*Anderson v. Jackson*,
   556 F.3d 351 (5th Cir. 2009) ............................................................... 10, 20

*Booth v. Churner,*
   532 U.S. 731 (2001)............................................................................. 14

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ............................................................................. 20

*Chacon v. Granata*,
   515 F.2d 922 (5th Cir. 1975) ............................................................... 11

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)............................................................................... 11

*Coit Independence Joint* Venture v. FSLIC,
   489 U.S. 561 (1989)............................................................................. 13

*Clifford v. Gibbs,*
   298 F.3d 328 (5th Cir. 2002) ............................................................... 14

*Elgin v. Dep't of the Treasury*,
   132 S. Ct. 2161 (2012)......................................................................... 14

*FDIC v. Scott*,
   125 F.3d 254 (5th Cir. 1997) ............................................................... 13

*Friends of the Earth v. Laidlaw Envt'l Servs.*,
   528 U.S. 167 (2000)............................................................................. 20

*Gearhart Indus. v. Smith Int'l, Inc.*,
   741 F.2d 707 (5th Cir. 1984) ............................................................... 20

*Gonannies, Inc. v. Goupair.com, Inc.*,
   464 F.Supp.2d 603 (N.D. Tex. 2006) .................................................. 11

*Gonzalez v. Seal*,
   702 F.3d 785 (5th Cir. 2012) ......................................................... 14, 16

*Google, Inc. v. Hood*,
   822 F.3d 212 (5th Cir. 2016) ............................................................... 11

*Harkness v. United States*,
   727 F.3d 465 (6th Cir. 2013) ................................................................. 13

*Harris v. Wilters*,
   596 F.2d 678 (5th Cir. 1979) ................................................................. 10

*House the Homeless, Inc. v. Widnall*,
   94 F.3d 176 (5th Cir. 1996) ................................................................... 10

*Janvey v. Alguire*,
   647 F.3d 585 (5th Cir. 2011) ................................................................. 10

*Jones v. Bock*,
   549 U.S. 199 (2007) ....................................................................... 14, 17

*Lyng v. Northwest Indian Cemetery Protective Ass'n*,
   485 U.S. 439 (1988) .............................................................................. 19

*Martinez v. Mathews*,
   544 F.2d 1233 (5th Cir. 1976) ............................................................... 10

*Matrix Partners VIII v. Nat. Res. Recovery*,
   2009 WL 175132 (E.D. Tex. Jan. 23, 2009) ......................................... 10

*McCarthy v. Madigan*,
   503 U.S. 140 (1992) .............................................................. 13, 14, 15

*Opulent Life Church v. City of Holly Springs*,
   697 F.3d 279 (5th Cir. 2012) ................................................................. 11

*Porter v. Nussle*,
   *534 U.S. 516 (2002)* ............................................................................ 14

*Ross v. Blake*,
   136 S.Ct. 1850 (2016) ..................................................................... 14, 17

*Underwood v. Wilson*,
   151 F.3d 292 (5th Cir. 1998) ................................................................. 14

*Urban Areas v. Fed. Highway Admin.*,
   779 F. Supp. 2d 542 (W.D. Tex. 2011) ................................................. 11

*Winter v. NRDC*,
   555 U.S. 7 (2008) .................................................................................. 10

*Wireless Agents, L.L.C. v. T–Mobile USA, Inc.*,
   2006 WL 1540587 (N.D. Tex. June 6, 2006) ............................................................ 11

*Woodford v. Ngo*,
   548 U.S. 81 (2006) ........................................................................................ 13, 14, 17

*Wyatt v. Leonard*,
   193 F.3d 876 (6th Cir. 1999) ................................................................................... 14

**Statutes**

18 U.S.C. § 3621(b) ........................................................................................................ 2

28 U.S.C. § 1331 ............................................................................................................ 13

42 U.S.C. § 1997(e)(a) ......................................................................................... 2, 13, 14

42 U.S.C. § 15601 ............................................................................................................ 3

**Regulations**

28 C.F.R. Part 115 ........................................................................................................... 3

28 C.F.R. § 115.41 ........................................................................................................... 3

28 C.F.R. § 115.42(c) .................................................................................................... 1, 4

28 C.F.R. § 541 ........................................................................................................... 5, 13

28 C.F.R. § 542.10 ......................................................................................................... 15

28 C.F.R. § 542.13(a) ..................................................................................................... 15

28 C.F.R. § 542.15 ......................................................................................................... 15

28 C.F.R. § 542.14 ................................................................................................... 15, 16

## INTRODUCTION

Plaintiffs—four female inmates in two federal correctional institutions—challenge a Department of Justice ("DOJ") regulation, 28 C.F.R. § 115.42(c), and Bureau of Prison ("BOP") implementing guidelines, that set forth a policy of designating housing for transgender inmates on a case-by-case basis. Specifically, Plaintiffs allege that BOP's placement of transgender inmates in women's facilities violates their constitutional rights and their rights under the Religious Freedom Restoration Act ("RFRA"). Plaintiffs seek a nationwide injunction to prevent BOP from enforcing its regulation and guidelines and preclude the placement of transgender inmates in Federal Medical Center – Carswell ("Carswell") or Federal Prison Camp – Bryan ("Bryan"). Plaintiffs also seek to disturb BOP's placement determinations by seeking a transfer to other institutions that do not currently house transgender individuals.

Plaintiffs have not met their heavy burden of showing the extraordinary relief of a preliminary injunction is appropriate. Plaintiffs' request for a preliminary injunction fails because Plaintiffs have not established that they will suffer any imminent harm absent an injunction. The transgender inmates housed at Carswell—there are none at Bryan—are not even in the same housing unit as Plaintiffs. The record and BOP's investigation also belies Plaintiffs' claims in the Third Amended Complaint that the named transgender inmates exposed themselves to Plaintiffs or threatened them with physical assault; none of the allegations in the Third Amended Complaint regarding acts committed against the Plaintiffs has been substantiated. In short, Plaintiffs' unsubstantiated allegations fail to establish that they would suffer a real, substantial, and immediate harm in the absence of a preliminary injunction.

Nor have Plaintiffs shown a likelihood of success on the merits. Indeed, the Court lacks jurisdiction over all of Plaintiffs' claims because, as Plaintiffs concede, they have not exhausted

their administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.

§ 1997(e)(a). Any contention that exhaustion would have been futile is unfounded. Plaintiff

Fleming's claim that she was denied a grievance is contradicted by the record, and in any event

cannot serve as a basis to excuse the congressionally mandated exhaustion requirement for the

other three Plaintiffs. Because Plaintiffs cannot show likelihood of success or imminent harm,

they cannot meet their burden for obtaining a preliminary injunction.

## BACKGROUND

### Statutory and Regulatory Background

A.      BOP's Inmate Designation Authority and Process

Decisions regarding classification and designation of inmates to a particular prison

facility or program are vested in BOP. *See* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall

designate the place of the prisoner's imprisonment."). In making inmate designation decisions,

BOP "may designate any available penal or correctional facility that meets minimum standards

of health and habitability established by the Bureau . . . that the Bureau determines to be

appropriate and suitable." *Id.* Among other things, the BOP's determination must take into

account "the history and characteristics of the prisoner" and "the resources of the facility

contemplated." *Id.* Pursuant to this authority, BOP created the Designation and Sentence

Computation Center ("DSCC") to centralize all determinations regarding inmate institution

placements, referred to as "designations." Ex. 1, Woods Decl. ¶ 11, App. 004.

BOP issued Program Statement 5100.08, Inmate Security and Custody Classification (the

"Program Statement") to provide guidance to staff on how to apply § 3621(b). *See* Woods Decl.

¶ 10, App. 003-004. As directed by the Program Statement, the DSCC Hotel Team staff consider

several primary factors when making a designation decision: (1) the level of security and

supervision the inmate requires; (2) the level of security and staff supervision the institution is able to provide; and (3) the inmate's program needs. *See id* ¶ 17, App. 006.[1]

B.      BOP Risk Screening

The Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 15601, addresses sexual abuse of offenders in all public and private institutions housing adults and juveniles, including community-based facilities. Among other things, PREA tasked the Department of Justice ("DOJ") with "publish[ing] a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape." *Id.* § 15607. In June 2012, more than five years ago, pursuant to that authority, DOJ promulgated 28 C.F.R. Part 115 (the "PREA Regulations").

The PREA Regulations require BOP to assess *all* inmates both during intake screening and upon transfer to another facility, to determine their risk of being sexually abused by other inmates or being sexually abusive toward other inmates. 28 C.F.R. § 115.41. This process is known as "risk screening." The regulations further mandate that BOP use the risk screening information gathered pursuant to Section 115.41 to make housing, work, education, and programming assignments for inmates. *Id.* § 115.41. The 2012 PREA Regulations also address risk screening and housing of transgender inmates, by providing:

> In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates…the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.

---

[1] Other factors to be considered by the DSCC include: the inmate's release residence; the level of overcrowding at an institution; any security, location or program recommendation made by the sentencing court; any Central Inmate Monitoring issues; any additional security measures to ensure the protection of victims/witnesses and the public in general; and, any other factor(s) which may involve the inmate's confinement, the protection of society, and/or the safe and orderly management of a BOP facility. *Id.* ¶ 18, App. 006.

28 C.F.R. § 115.42(c).

On January 18, 2017, BOP issued Program Statement 5200.04, Transgender Offender Manual (the "Manual") to provide guidance to BOP personnel to identify, track, and provide services to transgender inmates. Woods Decl. Attach. B, Manual at 1, App. 144. More specifically, the Manual provides BOP staff with guidance as to the management of transgender inmates, staff training, initial designations, intake screening, housing and programming assignments, documentation and SENTRY[2] assignments, medical treatment, institution psychology services, searches, clothing and commissary, and reentry needs. *See* Manual.

BOP also created the Transgender Executive Council ("TEC")—a multidisciplinary team comprised of medical and mental health professionals and custody and classification professionals— to conduct the case-by-case assessments for designation of transgender inmates. Manual at 4-6, App. 147-149. This case-by-case assessment considers a number of factors about the inmate in question as well as facility-specific factors. *Id.* at 5-6. App. 148-149. Based on these considerations, the TEC will recommend housing by gender identity only when, in its view, such housing is "appropriate." *Id.* at 6, App. 149. Once the TEC makes a recommendation, it is forwarded to the DSCC for designation. *See* Woods Decl. ¶ 29, App. 008.

Such designations are subject to regular reevaluation. The inmate's housing assignment and programming is reviewed twice yearly by Unit Management staff, to ensure "on a case-by-case basis that the inmate placement does not jeopardize the inmate's health and safety and does not present management or security concerns." Manual at 6, App. 149. Additionally, institution

---

[2] Some of the BOP's computerized records are maintained in a database named SENTRY. SENTRY is a real-time information system consisting of various applications for processing inmate information. Data collected and stored in the SENTRY system includes information related to the classification, discipline, and programs of federal inmates. Woods Decl. ¶ 5, App. 003.

staff may refer cases to the TEC for review of any issues, concerns, or questions regarding the housing and management of a transgender inmate. *Id.* at 4-6, App. 147-149. If the TEC receives a request to transfer a transgender inmate, it will meet and conduct a case-by-case assessment to consider if a transfer is appropriate, and if so, to which institution. *Id.* If the TEC recommends redesignation, DSCC staff will then redesignate the inmate. *See* Woods Decl. ¶ 30, App. 008.[3]

## FACTUAL BACKGROUND

Plaintiffs Fleming, Driever, and Rhames currently are inmates housed at Carswell, and Plaintiff Little is an inmate currently housed at Bryan. *See* Ex. 2, Upton Decl. ¶¶ 6, 10, 12, 14, App. 189-191.[4] Transgender inmates have been designated to Carswell, based on a case-by-case determination. *Id.* ¶ 48, App. 199. However, contrary to Plaintiffs' allegations, Pls.' Mem. at 7, there currently are no male-to-female transgender inmates at Bryan. *Id.* ¶ 49, App. 199.

BOP has promulgated rules and published agency policy regarding inmate discipline that applies to all inmates, including transgender inmates. *See* Upton Decl. ¶ 32, App. 195 (describing 28 C.F.R. § 541 and Program Statement 5270.09, Inmate Discipline Program, and disciplinary process). Under these rules, sexual assaults, threats, making sexual proposals or threats, engaging in sexual acts, indecent exposures, and being in an unauthorized area are all prohibited acts per

---

[3] The Attorney General recently announced the selection of a new BOP Director. See Press Release, Attorney General Sessions Announces Mark S. Inch as New Federal Bureau of Prisons Director (Aug. 1, 2017). Defendants anticipate that, when he takes office, he will evaluate the issues in this case and how the challenged regulation and policies apply to Plaintiffs.

[4] Plaintiff Fleming is serving a 360-month aggregate term for Conspiracy to Commit Health Care Fraud and Wire Fraud and Aiding and Abetting Health Care Fraud, Money Laundering Promotion, Money Laundering Concealment and Engagement in Monetary Transactions in Property Derived from Specific Unlawful Activity. Woods Decl. ¶ 32, App. 009; Plaintiff Driever is serving a 60-month aggregate term for violating supervised release and Conspiracy to Distribute 600 Grams or more of methamphetamine. *Id.* ¶ 34, App. 009. Plaintiff Little is serving a 96-month term for Conspiracy to Possess with Intent to Distribute a Controlled Substance. *Id.* ¶ 36, App. 010. Plaintiff Rhames is serving a 51-month term for Bank Fraud. *Id.* ¶ 38, App. 010.

agency policy, and BOP may take all appropriate actions regarding inmates who violate these rules. *See* Upton Decl. ¶ 36, App. 196.

C.     Investigation into Plaintiffs' Allegations of Misconduct

Plaintiffs' Third Amended Complaint is replete with allegations that they have suffered threats and misconduct at the hands of the transgender inmates named in the Complaint who are housed at Carswell. As detailed below, Plaintiffs' contemporaneous statements and actions belie their allegations. Moreover, since learning of this lawsuit, BOP investigated Plaintiffs' allegations in the Third Amended Complaint of instances of the named transgender inmates exposing themselves to Plaintiffs or threatening or harassing the Plaintiffs and concluded that they have not been substantiated. *See* REDACTED Upton Decl. ¶ 42, App. 197-198.

As a threshold matter, none of the Plaintiffs filed any contemporaneous administrative claims to seek redress for their purported grievances. *See* Ex. 4, Comstock Decl. ¶¶ 15, 23, 27, 29, App. 336, 340-341. BOP's administrative remedy program is the proper channel for inmates to seek formal review of issues relating to any aspect of their confinement, and provides a clear set of requisite steps for administrative resolution of such claims. *Id.* ¶¶ 6-10, App. 333-335 (detailing the administrative process).

Plaintiff Little has filed no administrative remedy requests at all (despite the *post hoc* claims made in this litigation). *Id.* ¶ 23, App. 340. Plaintiff Rhames has filed no administrative remedy request relating to the allegations in this lawsuit. *Id.* ¶ 29, App. 341. And, while Plaintiff Driever recently filed an administrative remedy claim alleging that she has been subjected to retaliation as a result of this lawsuit (claims that are unsubstantiated, *see infra*), she never filed a claim alleging conflicts with transgender inmates. *Id.* ¶ 27, App. 341. Finally, even though

6

Plaintiff Fleming has filed over 180 unrelated administrative claims since May 3, 2010, she nonetheless failed to file a single administrative remedy request relating to transgender inmates before filing this lawsuit. *Id.* ¶ 13, App. 336.[5] Only months after she initiated this lawsuit did Fleming file four related administrative remedy requests, which variously allege that she has been threatened by transgender inmates and/or retaliated against by Carswell staff for her involvement in this lawsuit. *Id.* ¶¶ 16-19, App. 337-339. Even then, Plaintiff Fleming abandoned each of those administrative claims in their early stages, before completing the requisite administrative process. *Id.*

BOP takes the safety of inmates very seriously. Thus, notwithstanding Plaintiffs' failure to properly exhaust their administrative remedies, BOP investigated Plaintiffs' allegations in the wake of Plaintiffs' lawsuit. *See* ███████████████████████████ REDACTED ███

████████████████████████████████████████

███████████████████████████████

    REDACTED ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

---

[5] Plaintiff Fleming's numerous administrative claims have covered a variety of subjects, including staff complaints, medical care, and appeals of disciplinary infractions. *Id.* ¶ 13, App. 336.

REDACTED





- BOP found no evidence that inmates or staff have harassed or retaliated against Plaintiffs for bringing this lawsuit. REDACTED Upton Decl. ¶ 45, App. 198.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). Indeed, the Fifth Circuit "frequently cautions" that "the decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Matrix Partners VIII v. Nat. Res. Recovery*, 2009 WL 175132, at \*6 (E.D. Tex. Jan. 23, 2009); *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir. 1996). This is particularly true where, as here, Plaintiffs seek a mandatory injunction that would alter the *status quo*. *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979) ("Only in rare instances is the issuance of a mandatory preliminary injunction proper."); *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendent lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."). To obtain a preliminary injunction, a movant must demonstrate:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). Relief "should only be granted when the movant has clearly carried the burden of persuasion" on all four requirements. *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). Plaintiffs cannot satisfy this heavy burden.

## ARGUMENT

### A.    Likelihood of Irreparable Harm

The Supreme Court has made clear that a preliminary injunction cannot be entered based on a mere "possibility" of irreparable harm; rather, a plaintiff must show they will likely suffer "irreparable injury … in the absence of an injunction." *Winter*, 555 U.S. at 22. The threat of

irreparable injury to a particular plaintiff must be "real," "substantial," and "immediate," not

speculative or conjectural. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983); *see also, e.g.*, *Chacon*

*v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975); *Aquifer Guardians in Urban Areas v. Fed.*

*Highway Admin.*, 779 F. Supp. 2d 542, 574 (W.D. Tex. 2011) (a plaintiff must "demonstrate that

irreparable harm is real, imminent, and significant—not merely speculative or potential—with

admissible evidence"). In short, "an injunction is an equitable remedy that should only issue

when essential to prevent an otherwise irreparable injury."[7] *Google, Inc. v. Hood*, 822 F.3d 212,

221 (5th Cir. 2016).

Plaintiffs assert that they will suffer irreparable harm absent an injunction on the legally

faulty notion that "alleging the deprivation of a constitutional right 'unquestionably constitutes

irreparable harm.'" Pls.' Mem. at 23 (quoting *Opulent Life Church v. City of Holly Springs,* 697

F.3d 279 (5th Cir. 2012)). But Plaintiffs are wrong. *Opulent Life Church* requires a plaintiff to

*show* a tangible, concrete harm that they would suffer absent an injunction. 697 F.3d at 295-96

(finding irreparable harm because the church's First Amendment harm resulted from "exclusion

from its leased property, which Opulent Life asserts significantly impairs its free exercise of

religion."). Plaintiffs' assertion that they will suffer "ongoing physical consequences," Pls.'

Mem. at 23, is not sufficient. There is no actual evidence of such an imminent physical threat

here. To the contrary, Plaintiff Little currently is housed at Bryan, where there are no transgender

---

[7] Plaintiffs did not seek the instant preliminary injunction until six weeks after filing their *third* amended complaint. "The law is well-established that '[d]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction' because it shows "there is no apparent urgency to the request for injunctive relief.'" *Gonannies, Inc. v. Goupair.com, Inc.*, 464 F.Supp.2d 603, 608 (N.D. Tex. 2006) (citation omitted). Even in cases (unlike this one) where there might be a presumption of irreparable harm, undue delay is more than sufficient as a matter of law to deny a preliminary injunction for that reason. *See id.* (citing cases). *See also Wireless Agents, L.L.C. v. T–Mobile USA, Inc.*, No. 3:05-CV-0094D, 2006 WL 1540587, *3 (N.D. Tex. June 6, 2006).

inmates at all. And, Plaintiffs Fleming, Driever, and Rhames are not housed in the same Unit as any transgender inmates named in the Third Amended Complaint.

Nor have Plaintiffs alleged a threat to their safety sufficient to show a need for a preliminary injunction. Threats to Plaintiffs Driever and Little have not been substantiated. REDACTED

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

Finally, a preliminary injunction is not necessary to prevent physical harm or misconduct against Plaintiffs, because that risk already is mitigated by existing prison rules. Sexual assault,

threats, making sexual proposals or threats, engaging in sexual acts, indecent exposure, and being in an unauthorized area are all prohibited acts per agency policy. *See* Upton Decl. ¶ 36, App. 196. And, if those rules are violated by *any* inmates, sanctions and discipline would result accordingly. *See* Upton Decl. ¶ 32, App. 195-196 (describing 28 C.F.R. § 541 and Program Statement 5270.09, <u>Inmate Discipline Program</u>, and disciplinary process).

Plaintiffs have failed to show that they are likely to suffer imminent harm absent a preliminary injunction, and their motion should be denied.

B.   <u>Likelihood of Success on the Merits</u>

Plaintiffs do not dispute that they failed to exhaust their administrative remedies before bringing this lawsuit. Pls.' Amend. Opp. Mot. Extension Time at 3, ECF No. 87. Under these circumstances, the Court lacks jurisdiction over Plaintiffs' claims.

Congress commonly divests federal district courts of original federal question jurisdiction, *see* 28 U.S.C. § 1331, "by imposing exhaustion requirements," *Harkness v. United States*, 727 F.3d 465, 469 (6th Cir. 2013). The Supreme Court "has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992) *superseded by statute as recognized by Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). "If Congress itself imposes an exhaustion requirement, courts must enforce its express terms" and failure to exhaust deprives the court of jurisdiction. *FDIC v. Scott*, 125 F.3d 254, 257 (5th Cir. 1997) (citing *Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 579 (1989)).

In passing the Prison Litigation Reform Act (PLRA) in 1995, Congress enacted a variety of reforms designed to filter out non-meritorious claims. "Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before

13

initiating a lawsuit." *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA's exhaustion provision states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997(e)(a). The Fifth Circuit requires a strict reading of the PLRA's exhaustion requirement. *Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012). The exhaustion requirement of § 1997e(a) is "mandatory," and district courts have no discretion to excuse a prisoner's failure to exhaust the prison grievance process before filing his complaint. *Id.* at 788 (overruling *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998), "to the extent it permits prisoner lawsuits challenging prison conditions [under the PLRA] to proceed in the absence of pre-filing administrative exhaustion"). *See also Booth v. Churner,* 532 U.S. 731 (2001); *Clifford v. Gibbs,* 298 F.3d 328, 331-332 (5th Cir. 2002) (holding that the PLRA's exhaustion requirement is not discretionary).

In light of these mandatory, nondiscretionary duties, the Fifth Circuit has now made it abundantly clear that "the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez*, 702 F.3d at 788. Moreover, exhaustion "is required for any suit challenging prison conditions, not just for suits under § 1983." *Woodford*, 548 U.S. at 85. And "prisoners must exhaust [available] grievance procedures before filing suit in federal court even [where] the ... remedy sought is not an available remedy in the administrative process." *Wyatt*, 193 F.3d at 877-78. *See also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Ross v. Blake*, 136 S.Ct. 1850, 1856-57, 1862 (2016).

The policy justifications underlying the exhaustion doctrine apply with particular force here. *See, e.g.*, *McCarthy*, 503 U.S. at 145; *Elgin*, 132 S. Ct. at 2140. Requiring administrative

14

proceedings to take their course before judicial review "recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to consider." *McCarthy*, 503 U.S. at 145. The administrative process mandated by the PLRA allows BOP to "apply its special expertise" to make case-by-case determinations about inmate complaints and, in so doing, to adequately assess the myriad factual intricacies upon which those allegations turn. *McCarthy*, 503 U.S. at 145. Decisions related to inmate designation require an especially delicate balance of safety and management concerns, *see* Woods Decl. ¶¶ 17-18, App. 006-007, which is the quintessential "exercise of the [BOP's] discretionary power." *See McCarthy*, 503 U.S. at 145.

### C.      BOP's Administrative Remedy Program

To exhaust their administrative remedies, Plaintiffs were required to follow BOP's four-step process for resolving complaints by inmates. *See* 28 C.F.R. § 542.10 et seq.; Upton Decl. Attach. A, Program Statement 1330.18, Administrative Remedy Program, App. 012. Initially, an inmate must attempt to informally resolve the complaint with staff. 28 C.F.R. § 542.13(a). If informal attempts are unsuccessful, the inmate must submit a Request for Administrative Remedy to the warden. 28 C.F.R. §542.14. Ordinarily, the written complaint must be filed within twenty calendar days following the date the incident occurred. *Id*. However, BOP may allow an extension of time if the inmate demonstrates a valid reason for the delay, such as an extended period spent in transit, if the inmate was physically incapable of preparing the complaint, or delays caused by members of the prison staff. *Id*. If the inmate is not satisfied with the warden's response, he may appeal to the Regional Director within twenty days unless an extension is granted. 28 C.F.R. § 542.15. If still unsatisfied, the inmate may appeal to the Office of General

15

Counsel within thirty days, although the time limit may be extended if the inmate demonstrates a valid reason for the delay. *Id.* Under certain circumstances, an inmate may file an administrative remedy request directly with the Regional Director. If an inmate reasonably believes the issue is sensitive and the inmate's well-being would be in danger if the request was filed at the institution level, the inmate may file a sensitive request with the Regional Director. 28 C.F.R. § 542.14(d)(1). The Regional Director must determine if the complaint qualifies as sensitive. *Id*. If the request is not sensitive, it is returned to the inmate to resubmit at the institution level for the warden to review. *Id*.

### D.    Plaintiffs have failed to exhaust BOP's Administrative Remedies

It is undisputed that none of the Plaintiffs has taken the requisite steps laid out above. Indeed, Plaintiffs Little, Driever, and Rhames have not filed a single administrative claim pertaining to the subject of this lawsuit. *See* Comstock Decl. ¶¶ 13, 15, 23, 26, 29, App. 336, 340-341. And while Plaintiff Fleming has initiated four administrative claims related to this lawsuit (in addition to having filed approximately 180 other unrelated administrative claims), each of those claims was filed only *after* this lawsuit was initiated, only to be abandoned in the early stages of the process. *See id.* ¶¶ 16-19, App. 337-339.

Plaintiff Fleming has failed to exhaust her administrative remedies for at least two independent reasons: (1) she failed to file *any* administrative claims *before* initiating this lawsuit; and (2) she failed to exhaust the administrative process even after her claims were eventually filed. *See Gonzalez v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012) ("[P]refiling exhaustion of prison grievance processes is mandatory.").[8] As the Supreme Court has noted, "[p]roper exhaustion

---

[8] Plaintiff Fleming's administrative claims also did not encompass all of the same claims that are raised in this lawsuit. Indeed, most of her claims – *i.e.*, privacy claims, RFRA claims,

demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the court of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). That is, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Jones*, 549 U.S. at 218.

Finally, Plaintiffs' suggestion that exhaustion would have been futile, Pls.' Mem. at 22-23, has no merit. To be sure, while an inmate must exhaust available remedies, she need not exhaust unavailable ones. *Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016). But, this exception to the exhaustion requirement is extremely limited and rare and does not apply here in any event. *See id.* at 1859 ("Given prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise."). The Supreme Court in *Ross* delineated three situations in which an administrative remedy becomes "unavailable" under the PLRA: (1) when the remedy operates as a "dead end," where officers are unwilling or unable to provide any relief to inmates; (2) when the remedy process becomes "opaque" or so confusing that no ordinary inmate can navigate it; and (3) when prison staff and other administrators prevent inmates from utilizing the remedy system through "machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60. None of these circumstances is present here.

In an attempt to make a case for "futility," Plaintiff Fleming contends that her Unit Manager Cole-Rowls denied her the opportunity to file a grievance regarding placement of transgender inmates at Carswell. Compl. ¶ 38. But, Unit Manager Cole-Rowls has provided

---

and others – were not included in Plaintiff Fleming's administrative grievances at all, and those claims also were not properly administratively exhausted for that additional reason.

sworn testimony that she never refused to give any of the Plaintiffs a grievance or administrative remedy form, and never denied any of them a right to a grievance. *See* Ex. 6, Cole-Rowls Decl. ¶ 9, App. 514. Indeed, Plaintiff Fleming's position is undermined by the fact that she has filed 184 administrative claims, four of which relate to her claims about transgender inmates. Accordingly, Plaintiff Fleming's claim that she was denied the opportunity to file a grievance concerning her allegations in this case lack merit.

By contrast, Plaintiffs' proffered evidence should not be credited. REDACTED

Nor is there any merit to the claim that "prison officials retaliated [against Fleming for seeking a grievance] by placing her on kitchen duty." Compl. ¶ 38. Unit Manager Cole-Rowls never assigned Plaintiff Fleming to a food service work assignment, nor does she know who did. *See* Cole-Rowls Decl. ¶ 12, App. 514.

Notably, when Plaintiff Fleming emailed Warden Upton in June 2016 alleging that Unit Manager Cole-Rowls refused to give her a grievance and then retaliated by assigning her to kitchen duty, Fleming's email claimed only that the alleged retaliation was for reporting that an officer had assaulted an inmate with a shoe. Upton Decl. ¶ 43, App. 198.  Plaintiff Fleming never told the warden that she had been denied a grievance for complaints about transgender inmates, nor that she felt any retaliation had resulted from raising concerns regarding transgender inmates.



*Id.* When inmates expressed concerns to Warden Upton regarding the mere presence of transgender inmates at Carswell, he never suggested that Plaintiffs could or should not file a grievance relating to their particular issues with any transgender inmates at Carswell nor that those issues could not be addressed in the grievance process. *Id.* ¶ 46, App. 198-199.

Finally, the fact that BOP's administrative process is sufficiently clear and approachable to inmates is evidenced by the sheer number of administrative remedies that inmates file. For example, during the period from January 1, 2017, to July 31, 2017, approximately 159 administrative remedies were filled at FMC Carswell; approximately 2,589 were filed at the South Central Regional Office,[10] and approximately 6,078 were filled in the BOP's Central Office. *See* Comstock Decl., Attach. K-M, App. 492-497 (Administrative Remedy Generalized Retrieval). The administrative remedy process is not opaque; inmates clearly know how to utilize it and do so regularly. Indeed, Plaintiff Fleming is well-aware of the appropriate administrative course, but nonetheless elected to disregard it here. Any claim that Plaintiff Fleming was deterred from filing administrative grievances is belied by the volume of grievances that she has filed and has continued to file. Because none of the Plaintiffs has exhausted her administrative remedies, this Court lacks jurisdiction and Plaintiffs are therefore not likely to succeed on the merits.[11]

---

[10] The South Central Region is the region in which FMC Carswell and FPC Bryan are located. Thus, any administrative remedy appeals made to the Regional Director arising out of FMC Carswell or FPC Bryan would be processed in the South Central Region.

[11] Because Plaintiffs' admitted failure to exhaust their administrative remedies is so clear, the Court should not reach Plaintiffs' claims on the merits because "[a] fundamental and longstanding principle of judicial restraint requires that courts [should] avoid reaching constitutional questions in advance of the necessity of deciding them." *See generally Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445-46 (1988) (citing cases).

Because Plaintiffs have not made the threshold showings of either imminent harm or a likelihood of success on the merits, there is no need for the Court to consider the other factors in the preliminary injunction analysis. *See, e.g.*, *Jackson*, 556 F.3d at 360.

E.     If the Court Determines that a Preliminary Injunction is Warranted, Such Relief Should be Narrowly Tailored to Plaintiffs

If, however, this Court determines that injunctive relief is appropriate, it should deny Plaintiffs' broad request for a nationwide injunction and should limit any injunction to the three Plaintiffs at Carswell.

"[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the Plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Friends of the Earth v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 193 (2000) (courts should ensure "the framing of relief no broader than required by the precise facts"). Here, Plaintiffs' requested relief is disproportionate to the alleged harm to Plaintiffs, who include just four female inmates incarcerated at two specific BOP facilities, one of which has no transgender inmates. Plaintiffs' alleged injuries plainly are personal to the Plaintiffs, and cannot serve as a basis for invalidating BOP's policies and procedures governing the placement of all transgender inmates throughout the United States. *See Gearhart Indus. v. Smith Int'l, Inc.*, 741 F.2d 707, 715 (5th Cir. 1984) ("[I]njunctive relief is drastic medicine indeed. . . . [I]t should be carefully tailored to the situation presented."). Plaintiffs' request for a nationwide injunction should be denied.

## CONCLUSION

For the reasons discussed above, the Court should deny Plaintiffs' motion for a

preliminary injunction.

Dated: August 12, 2017                     Respectfully submitted,

                                           CHAD A. READLER
                                           Acting Assistant Attorney General

                                           JOHN R. PARKER
                                           United States Attorney

                                           JOSHUA E. GARDNER
                                           Assistant Director, Federal Programs Branch

                                           s/ *Kenneth E. Sealls*
                                           KENNETH E. SEALLS
                                           D.C. Bar #400633
                                           EMILY NESTLER
                                           Trial Attorneys
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Ave. N.W., Rm. 6136
                                           Washington, D.C. 20530
                                           Tel: (202) 305-1953 — fax: (202) 616-8460
                                           email: Kenneth.Sealls@usdoj.gov
                                           *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2017, I electronically filed a copy of the foregoing with the Clerk of the Court in redacted form, using the CM/ECF system which will send notification of such filing to counsel for the parties by operation of the Court's electronic filing system.

s/ *Kenneth E. Sealls*
KENNETH E. SEALLS
Trial Attorney
United States Department of Justice

22