**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

|  |  |
|---|---|
| RHONDA FLEMING, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> *Defendants*. | Civil No. 7:17-cv-0009-O |

**APPENDIX TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

1.  Declaration of Kenneth Woods .......................................................................App. 002

    A.  Program Statement 5100.08, Inmate Security Designation and
        Custody Classification ........................................................... App. 012

    B.  Program Statement 5200.04, Transgender Offender Manual .................App. 144

    C.  Inmate History: Rhonda A. Fleming.......................................................App. 160

    D.  Inmate History: Jeanette Driever ...........................................................App. 169

    E.  Inmate History: Charlsa Little ...............................................................App. 176

    F.  Inmate History: Brenda Rhames............................................................App. 180

2.  Declaration of Jody Upton ............................................................................App. 188

    A.  Inmate History: Rhonda Fleming...........................................................App. 202

    B.  Inmate History: Jeanette Driever............................................................App. 206

    C.  Inmate History: Brenda Rhames ............................................................App. 208

    D.  Inmate History: Charlsa Little................................................................App. 211

    E.  June 2013 Memorandum re: Uniform Dress Code ...............................App. 213

    F.  Program Statement 5270.09, Inmate Discipline Program .....................App. 215

    G.  E-mail chains re: Grievance Responses .................................................App. 271

3.  Declaration of Joseph Leap............................................................................App. 287

    A.  Interview Memorandum for J. Leap, SIA ..............................................App. 298

B.   Threat Assessment ....................................................................App. 301

C.   Review Memorandum of March 9, 2017 for Jody Upton .....................App. 305

D.   Interview Memorandum of May 9, 2017 for Jody Upton .....................App. 309

E.   Interview Memorandum of May 16, 2017 for Craig Lee.......................App. 312

F.   Review Memorandum of May 19, 2017 for Jody Upton .....................App. 315

G.   Review Memorandum of May 18, 2017 for Jody Upton .....................App. 318

4.  Declaration of Patricia Comstock .....................................................App. 332

    A.    Program Statement 1330.18, Administrative Remedy Program...........App. 345

    B.    SENTRY Administrative Remedy Records for Rhonda Fleming ........App. 362

    C.    Request for Administrative Remedy 891194-F1 .................................App. 457

    D.    Request for Administrative Remedy 900073-F1 .................................App. 461

    E.    Request for Administrative Remedy 900084-F1 .................................App. 465

    F.    Regional Administrative Remedy Appeal 904826-R1 ........................App. 469

    G.    SENTRY Administrative Remedy Records for Charlsa Little .............App. 479

    H.    SENTRY Administrative Remedy Records for Jeanette Driever.........App. 483

    I.    Request for Administrative Remedy 906745-F1 .................................App. 487

    J.    SENTRY Administrative Remedy Records for Brenda Rhames .........App. 489

    K.    SENTRY Administrative Remedy Records for FMC Carswell ..........App. 494

    L.    SENTRY Administrative Remedy Records for
South Regional Office...........................................................................App. 495

    M.    SENTRY Administrative Remedy Records for BOP Central Office ...App. 496

    N.    SENTRY Administrative Remedy Records for FMC Carswell ...........App. 498

5.  Declaration of &#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608; .......................................................................App. 507

6.  Declaration of Lisa Cole-Rowls.........................................................App. 512

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

RHONDA FLEMING, *et al.*,

      *Plaintiffs*,

    v.

UNITED STATES OF AMERICA, *et al.*,

      *Defendants*.

Civil No. 7:17-cv-0009-O

## DECLARATION OF KENNETH WOODS, OPERATIONS MANAGER, DESIGNATION AND SENTENCE COMPUTATION CENTER

I, Kenneth Woods, do hereby make the following declaration:

1.    I, Kenneth Woods, am employed by the Federal Bureau of Prisons (BOP) as an Operations Manager at the Designation and Sentence Computation Center (DSCC) in Grand Prairie, Texas. I have been employed by the BOP since 1998. I have held my current position since 2015. I began my BOP career at Federal Correctional Complex (FCC), Beaumont-Low Security in 1998 as a Case Manager and transferred to Federal Medical Center, Carswell (FMC Carswell) as a Case Manager in 2000. I was selected as the Assistant Case Management Coordinator at FMC Carswell in 2004. In 2006, I transferred to the DSCC as a Classification and Computation Specialist. In 2012, I was selected as a Designator at the DSCC, a position which I held until I began my current assignment.

2.    The DSCC is divided into 18 teams of staff, each identified by a name. Seventeen of these teams are organized by sentencing district. Those 17 teams are responsible for all sentence computations and classification of defendants from their sentencing districts. The remaining

1

002

team is Hotel Team. It is responsible for designating the facility where those defendants will serve their criminal sentences.

3.      I am the Operations Manager for Hotel Team. In that role, I supervise staff who are responsible for designating inmates to facilities to serve their criminal sentences.

4.      In this position, I have access to official records compiled and maintained by the BOP, including BOP Program Statements, inmate files, and BOP computerized records.

5.      Some of the BOP's computerized records are maintained in a database named SENTRY. SENTRY is a real-time information system consisting of various applications for processing inmate information. Data collected and stored in the SENTRY system includes information related to the classification, discipline, and programs of federal inmates.

6.      All records attached to this declaration were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

7.      Such records were kept in the course of a regularly conducted business activity of the BOP and/or the DSCC.

8.      Such records were made by the BOP and/or the DSCC as a regular practice.

## THE BOP'S DESIGNATION AUTHORITY UNDER 18 U.S.C. §3621(b)

9.      Attachment A to this declaration is a true and correct copy of BOP Program Statement 5100.08, Inmate Security Designation and Custody Classification (the "Program Statement").

10.     The BOP issued the Program Statement to provide guidance to staff on how to apply Title 18 United States Code (U.S.C.) § 3621(b), which states in pertinent part:

> **The Bureau of Prisons shall designate the place of the prisoner's imprisonment.** The Bureau may designate any available penal or correctional facility that meets minimum

2

003

standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering–

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence –

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

*See* 18 U.S.C. § 3621(b) (Emphasis added).

## <u>OVERVIEW OF THE BOP'S DESIGNATION PROCESS</u>

11.     The BOP created the DSCC to centralize all determinations regarding inmate sentence computations and institution placements.

12.     Decisions regarding initial institution placements are referred to as designations.

13.     Once a defendant is sentenced to a federal term of imprisonment, staff of the United States Probation Office (USPO) upload documents to an electronic system known as "eDesignate". For cases involving original sentencing to a term of imprisonment, these documents typically include the Judgement in a Criminal Case and the Presentence Investigation Report (PSR). For cases involving sentencing to a term of imprisonment based upon revocation of a term of supervised release, these documents typically include the order by which the court revoked supervised release and imposed a term of imprisonment, along with the revocation petition, which BOP staff also refer to as the violation report.

14.     Once USPO staff have uploaded the relevant documents, the case is transferred on

eDesignate to the United States Marshals Service (USMS). Typically, USMS staff then upload a

copy of the defendant's USM-129, *Individual Custody/Detention Report*, to eDesignate and then

use eDesignate to transfer the case to the BOP and to request that the DSCC either provide a

release date for the defendant (in cases where the defendant received a short sentence and there is

not sufficient time to transport him to a facility before his release date) or designate the

defendant to a facility to serve the term of imprisonment.

15.     Once a case has been transferred from the USMS to the BOP, staff of the DSCC team

assigned to the defendant's sentencing district will open the case and begin the designation

process. When the process has been completed, DSCC staff respond to the USMS request

through eDesignate, usually by notifying the USMS where the inmate will serve the term of

imprisonment. The USMS then transports the inmate to the designated facility or, if the

defendant has been allowed to voluntarily surrender, the USMS will notify the defendant of the

facility at which he must appear on the scheduled date.

## FACTORS IN THE DESIGNATION PROCESS

16.     When making determinations about inmate designations, the BOP follows the guidance

contained in the Program Statement which provides:

> This Program Statement provides policy and procedure regarding the Bureau of Prisons
> inmate classification system. The classification of inmates is necessary to place each
> inmate in the most appropriate security level institution that also meets their program
> needs and is consistent with the Bureau's mission to protect society.
>
> The Bureau's classification, designation and redesignation procedures are consistent with
> the statutory authority contained in 18 U.S.C. § 3621(b). All classification, designation
> and redesignation decisions are made without favoritism given to an inmate's social or
> economic status.

*Attachment A, PS 5100.08 at page 1.*

4

17.     Consistent with the Program Statement, DSCC Hotel Team designations staff consider

the following primary factors when making a designation decision: (1) the level of security and

supervision the inmate requires; (2) the level of security and staff supervision the institution is

able to provide; and (3) the inmate's program needs. *Attachment E, PS 5100.08 at Chapter 1,*

*page 1.*

18.     DSCC staff also consider additional factors including, but not limited to:

- The inmate's release residence;
- The level of overcrowding at an institution;
- Any security, location or program recommendation made by the sentencing court;
- Any Central Inmate Monitoring issues (see Program Statement Central Inmate Monitoring Program);
- Any additional security measures to ensure the protection of victims/witnesses and the public in general; and,
- Any other factor(s) which may involve the inmate's confinement; the protection of society; and/or the safe and orderly management of a BOP facility.

*Attachment A, PS 5100.08 at Chapter 1, pages 1-2.*

19.     The designation process involves two parts.  First, DSCC staff on the team responsible

for the inmate's sentencing district classify the inmate pursuant to Program Statement 5100.08

Chapter 4. Second, DSCC staff on Hotel Team designate the inmate to an appropriate facility

commensurate with their security level and custody level and the factors identified in paragraphs

17 and 18.

20.     An inmate's security level represents the level of security the inmate requires.  It is based

in part on the Criminal History Points as noted in the Judgment or the Statement of Reasons. In

the event that neither are available, staff use the points assessed by the United States Probation

Office in the Presentence Investigation Report.  The BOP has created Public Safety Factors and

Management Variables which may adjust the inmate's security level up or down depending on the BOP's professional judgment. *Attachment A, PS 5100.08 at Chapter 5.*

21.     An inmate's custody classification represents the amount of staff supervision the inmate requires. It is tied to an inmate's security level. *Attachment A, PS 5100.08 at Chapter 1, page 2 and Chapter 2, page 2.*

## THE REDESIGNATION PROCESS

22.     Under some circumstances, the BOP may transfer an inmate to a different institution following initial designation. This is referred to as a redesignation. Reasons for requesting redesignation include, but are not limited to disciplinary or closer supervision reasons, institution classification reasons, institution adjustment reasons, medical/psychological reasons, programming or training reasons, or because an inmate is nearing release. *Attachment A, PS 5100.08 at Chapter 7, pages 1-12.*

23.     If institution staff believe an inmate is no longer appropriate for his current institution based on any of the factors identified in Chapter 7 of the Program Statement, they submit a redesignation request to the DSCC. Ordinarily, the DSCC will decide whether to grant or deny the request. DSCC staff will consider redesignation requests using the same factors outlined in paragraphs 17 and 18. In deciding whether to grant or deny a redesignation request, DSCC staff also carefully review the inmate's institutional adjustment and program performance. *Attachment A, PS 5100.08 at Chapter 1, page 3 and Chapter 7.*

24.     If the request is granted, the DSCC will designate the inmate to another facility. If the request is denied, the inmate will remain at the same facility.

6

007

## DESIGNATION PROCESS FOR TRANSGENDER INMATES

25.     Attachment B to this declaration is a true and correct copy of BOP Program Statement
5200.04, Transgender Offender Manual.

26.     The BOP issued Program Statement 5200.04, Transgender Offender Manual, to ensure
the BOP properly identifies, tracks, and provides services to the transgender population.
*Attachment B, PS 5200.04 at page 1.*

27.     The BOP has established a Transgender Executive Council (TEC) to offer advice and
guidance on unique measures related to treatment and management needs of transgender inmates
and/or inmates with gender dysphoria, including designation issues. *Id. at page 4.*

28.     Upon receipt of information from a Pre-Sentence Report, court order, U.S. Attorney's
Office, defense counsel, the offender, or other source that an individual entering BOP custody is
transgender, designations staff will refer the matter to the TEC for advice and guidance on
designation. *Id. at page 5.* Institution staff may also refer cases to the TEC for review. *Id.*

29.     Once the TEC conducts its review and makes a recommendation to the DSCC regarding
designation, DSCC staff designate the inmate by way of the SENTRY program.

30.     If a request is made to redesignate a transgender inmate, DSCC staff refer the matter to
the TEC for advice and guidance. If the TEC recommends redesignation, DSCC staff will
redesignate the inmate by way of the SENTRY program.

## INFORMATION ON PLAINTIFFS

31.     Attachment C to this declaration is a true and correct copy of the public information
screen from SENTRY for inmate Rhonda Fleming, Federal Register Number 20446-009.

008

32.     According to Attachment C, inmate Fleming is currently serving a 360-month aggregate

term which consists of a 120-month term for Conspiracy to Commit Health Care Fraud and Wire

Fraud and Aiding and Abetting Health Care Fraud, violations of 18 U.S.C. §§371, 1347 and

1343 and a consecutive 240-month term for Wire Fraud Aiding and Abetting, Money Laundering

Promotion, Money Laundering Concealment and Engaging in Monetary Transactions in Property

Derived from Specific Unlawful Activity, violations of 18 U.S.C. §§1343, 2, 1956, and 1957.

*Attachment C at pages 002-003.* Judge Miller of the Southern District of Texas imposed this

term on January 22, 2010. *Id.* Inmate Fleming is currently projected to release from this term on

March 23, 2034 via good conduct time release. *Attachment C, at page 001.* SENTRY further

indicates Plaintiff Fleming has been designated to the Federal Medical Center Carswell (FMC

Carswell) in Ft. Worth, Texas from November 3, 2015 until present.

33.     Attachment D to this declaration is a true and correct copy of the public information

screen from SENTRY for inmate Jeanette Driever, Federal Register Number 10965-023.

34.     According to Attachment D, inmate Driever is currently serving a 60-month aggregate

term which consists of a supervised release violator term and a term imposed for new criminal

conduct for Conspiracy to Distribute 500 Grams or More of Methamphetamine, violations of 21

U.S.C. §§841 and 846. *Attachment D at pages 002-003.* Judge Armijo of the District of New

Mexico imposed this term on August 26, 2015. *Id.* Inmate Driever is currently projected to

release from this term on April 15, 2018 via good conduct time release. *Attachment D, at page

001.* SENTRY further indicates Plaintiff Driever has been designated to FMC Carswell from

April 12, 2016 until present.

35.     Attachment E to this declaration is a true and correct copy of the public information

screen from SENTRY for inmate Charlsa Little, Federal Register Number 47394-177.

8

009

36.     According to Attachment E, inmate Little is currently serving a 96-month term for Conspiracy to Possess with Intent to Distribute a Controlled Substance, a violation of 21 U.S.C. §846. *Attachment E at pages 002-003.* Judge O'Connor of the Northern District of Texas imposed this term on May 5, 2014. *Id.* Inmate Little is currently projected to release from this term on November 20, 2020 via good conduct time release. *Attachment E at page 001.* SENTRY further indicates Plaintiff Little was designated to FMC Carswell from May 5, 2015 until March 8, 2017. She has been designated to the Federal Prison Camp Bryan, in Bryan Texas from March 8, 2017 until present.

37.     Attachment F to this declaration is a true and correct copy of the public information screen from SENTRY for inmate Brenda Rhames, Federal Register Number 08064-003.

38.     According to Attachment F, inmate Rhames is currently serving a 51-month term for Bank Fraud, a violation of 18 U.S.C. §1344. *Attachment F at pages 002-003.* Judge Dubose of the Southern District of Alabama imposed this term on July 29, 2016. *Id.* Inmate Rhames is currently projected to release from this term on April 8, 2020 via good conduct time release. *Id. at page 001.* SENTRY further indicates Plaintiff Rhames has been designated to FMC Carswell from August 30, 2016 to present.

        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed on this __11th__ day of August 2017.

                                        Kenneth Woods
                                        Operations Manager
                                        DSCC
                                        Grand Prairie, Texas

9

010

# Attachment A

U.S. Department of Justice
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | CPD/CPB |
| **NUMBER:** | P5100.08 |
| **DATE:** | 9/12/2006 |
| **SUBJECT:** | Inmate Security Designation and Custody Classification |

1. **PURPOSE AND SCOPE.** This Program Statement provides policy and procedure regarding the Bureau of Prisons inmate classification system. The classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society.

The Bureau's classification, designation and redesignation procedures are consistent with the statutory authority contained in 18 U.S.C. § 3621(b). All classification, designation and redesignation decisions are made without favoritism given to an inmate's social or economic status.

2. **PROGRAM OBJECTIVES.** The expected results of this Program Statement are:

   a. Each inmate will be placed in a facility commensurate with their security and program needs through an objective and consistent system of classification which also allows staff to exercise their professional judgement; and,

   b. Staff will systematically and objectively review an inmate's classification making the environment in which they are housed safer for both inmates and staff while protecting the public from undue risk.

3. **SUMMARY OF CHANGES.** This revision incorporates Executive Staff decisions 03-04-05 and 99-03-03, as well as other procedural changes such as the movement of most designation/redesignation functions (04-08-17) to the Designation and Sentence Computation Center (DSCC), Grand Prairie, Texas.

   a. The scoring item "Type of Prior Commitment" has been replaced with "Criminal History Score." (Chapter 4, Page 8 and

P5100.08
9/12/2006
Page 2

Chapter 6, Page 5)

  b.  A new scoring item for inmate "Age" has been added.
(Chapter 4, Page 12 and Chapter 6, Page 8)

  c.  A new scoring item for "Education Level" has been added.
(Chapter 4, Page 12 and Chapter 6, Page 8)

  d.  The "Drug/Alcohol Abuse" scoring item has been added to the
BP-337 and has moved from Section C (Custody Scoring) of the
BP-338 to Section B (Base Scoring) of the BP-338. (Chapter 4,
Page 13 and Chapter 6, Page 9)

  e.  The "Mental/Psychological Stability" scoring item has been
discontinued.

  f.  The "Responsibility Demonstrated" scoring item has been
replaced with "Living Skills" and "Program Participation."
(Chapter 6, Page 10)

  g.  Instructions for scoring the "Family/Community Ties"
scoring item have been clarified.  (Chapter 6, Page 13)

  h.  The floor for the Violent Behavior PSF has been reduced
from High to Low Security. (Chapter 5, Page 9)

  i.  New cutpoints and a new Custody Variance Table have been
developed.  (Chapter 1, Page 2 and Chapter 6, Page 15)

  j.  An expiration date for the Greater Security Management
Variable has been added.  (Chapter 5, Page 5)

  k.  The criteria for the Deportable Alien PSF has been
clarified.   (Chapter 5, Page 9)

  l.  Text has been added that formalizes the Bureau's past and
current practice of continually assessing the effectiveness of
its inmate classification process. (Program Statement Section 6)

  m.  Text has been added that encourages DSCC staff to consider
using a Management Variable when designating inmates where age is
largely the contributing factor in the inmate's placement.
(Chapter 5, Page 5)

  n.  Text has been revised that requires the entry of supporting
information in the BP-337 "REMARKS SECTION" when there is

Pre-Sentence Investigation Report information relevant to that scoring item. (Chapter 4, Page 13)

o.  The DSCC Administrator will ensure that designation/ redesignation decisions are applied consistently on a bureau-wide basis.  (Chapter 4, Page 14)

p.  DSCC staff must contact the sentencing court if a Statement of Reasons is not received at the time a request for designation is made.  (Chapter 3, Page 1)

q.  Inmates who currently qualify for unescorted transfer may be transported by family members via POV from one camp to another camp.  (Chapter 7, Page 8)

r.  The appendices on Sentence Procedures, Institutions Missions and Parolable Institutions have been removed from the manual, but will be available on the CPB website.

s.  The Offense Severity Scale, Definition of Roles involved in Drug Offenses and the Special Instructions appendices have been combined into one appendix.

t.  All transfer requests under codes 309 - Disciplinary and 323 - Close Supervision will be directed to the Designation and Sentence Computation Center.  "W REDES C" has been eliminated and "W REDES D" has been changed to "W REDES R" to reflect routine redesignations.  (Chapter 7, Page 2)

u.  The female versions of the BP-337 and BP-338 have been discontinued although certain policies and procedures specific to female offenders are maintained i.e. security levels, cutpoints, Public Safety Factors and Management Variables.

v.  The "Release on Own Recognizance" scoring item has been discontinued.  (Chapter 4, Page 5)

w.  The description of Management Variable "U" has been revised to include all long-term detainees.  It no longer applies solely to Mariel Cuban Detainees.  (Chapter 5, Page 4)

x.  The medical transfer code descriptions were revised to include "Level of Care" language.  (Chapter 7, Pages 21-22)

y.  The criteria for the Prison Disturbance PSF has been clarified.  (Chapter 5, Page 10)

4.  **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

P5100.07   Security Designation and Custody Classification Manual (9/3/99)

b.  **Directives Referenced**

P5070.10   Responses to Judicial Recommendations and U.S. Attorney Reports (6/30/97)
P5070.11   Study and Observation Report (12/31/97)
P5110.15   Notifications of Release to State and Local Law Enforcement Officials (8/30/00)
P5111.03   Mariel Cuban Detainees (10/25/99)
P5140.35   Transfer of a Prisoner to State Custody Prior to Release from the Federal Sentence (9/12/01)
P5141.02   Sex Offender Notification and Registration (12/14/98)
P5180.04   Central Inmate Monitoring System (8/16/96)
P5215.05   Youth Corrections Act (YCA), Inmates and Programs (3/17/99)
P5216.05   Juvenile Delinquents (9/1/99)
P5264.07   Telephone Regulations for Inmates (1/31/02)
P5270.07   Inmate Discipline and Special Housing Units (12/29/87)
P5280.08   Furloughs (2/4/98)
P5553.07   Escapes/Deaths Notifications (2/10/06)
P5800.13   Inmate Systems Management Manual (6/28/02)
P7310.04   Community Corrections Center (CCC) Utilization and Transfer Procedure (12/16/98)

5.  **STANDARDS REFERENCED**

a.  American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:  2-CO-4B-01

b.  American Correctional Association 4th Edition Standards for

P5100.08
9/12/2006
Page 5

Adult Correctional Institutions: 4-4132, 4-4296, 4-4300, 4-4306, and 4-4444

   c.  American Correctional Association 4th Edition Performance-Based Standards for Adult Local Detention Facilities: 4-ALDF-1A-10, 4-ALDF-2A-31, and 4-ALDF-2A-37

6.   **ACTION.**   All inmate classification decisions and related
actions will be made in accordance with the procedures in this
Program Statement and are effective immediately.   Implementation
for each inmate shall occur in accordance with his or her next
regularly scheduled custody review.   Those cases that have a
security level increase as a direct result of the initial
implementation of this policy will not ordinarily be transferred
to a higher security facility.   Bureau institutions may submit
lists of these inmates to the DSCC in lieu of a Request for
Management Variable for application of an appropriate Management
Variable.

In accordance with the procedures set forth in this manual, a
Transfer Request/Application of Management Variable must be
submitted to the DSCC for those cases that have a security level
decrease, for transfer to a lesser security level facility or
application of an appropriate Management Variable.

This Program Statement authorizes the continuation of the
Bureau's Inmate Classification Workgroup under the direction of
the Assistant Director, Correctional Programs Division or his/her
designee.   The Assistant Director (CPD) will select and replace
workgroup members, on an as-needed basis, with subject matter
experts in inmate classification and related disciplines who
represent institutions, Regional Offices and the Central Office.

The Inmate Classification Workgroup or its subgroups will meet or
video conference at least annually to assess the overall
effectiveness of the inmate classification system and report as
appropriate their findings and recommendations to the Director
and the agency's Executive Staff.   Consideration may be given to
include institutional staff with experience at various security
and custody levels.


                              /s/
                              Harley G. Lappin
                              Director


017

P5100.08
9/12/2006
Table of Contents

## TABLE OF CONTENTS

Introduction. . . . . . . . . . . . . . . . . . . . Chapter 1

Definitions.. . . . . . . . . . . . . . . . . . . . Chapter 2

Security Designation Procedures for New Commitments.. . Chapter 3

Inmate Load and Security Designation Form, BP-337 . . . Chapter 4

Management Variables and Public Safety Factors. . . . . Chapter 5

Custody Classification Form Instructions, BP-338. . . . Chapter 6

Inmate Transfer.. . . . . . . . . . . . . . . . . . Chapter 7

Offense Severity Scale/Definition of Roles involved in
Drug Offenses/Special Instructions. . . . . . . . . . Appendix A

Waiver for Misdemeanants. . . . . . . . . . . . . . Appendix B

Standard Abbreviations/Terms (BP-337).. . . . . . . . Appendix C

Request for Transfer/Application of Management . . . . Appendix D
Variable (409)

The Sentence Procedures Appendix, Institution Missions Appendix
and the Parolable Institutions Appendix can be found on the
Correctional Programs Branch (CPB) web page.  Quarterly updates
will be made based upon submissions by the respective regions to
the DSCC Administrator.

P5100.08
9/12/2006
Chapter 1, Page 1

$$\boxed{\textbf{INTRODUCTION}}$$

Bureau of Prisons (BOP) institutions are classified into one of five security levels: **MINIMUM, LOW, MEDIUM, HIGH**, and **ADMINISTRATIVE** based on the level of security and staff supervision the institution is able to provide.

An institution's level of security and staff supervision is based on the following factors:

- mobile patrol;
- towers;
- perimeter barriers;
- detection devices;
- internal security;
- type of inmate housing;
- inmate-to-staff ratio; and,
- any special institutional mission.

Similarly, BOP inmates are classified based on the following factors:

- The level of security and supervision the inmate requires; and,

- The inmate's program needs, i.e., substance abuse, educational/vocational training, individual counseling, group counseling, or medical/mental health treatment, etc.

In summary, the initial assignment (designation) of an inmate to a particular institution is based primarily upon:

- The level of security and supervision the inmate requires;

- The level of security and staff supervision the institution is able to provide; and,

- The inmate's program needs.

Additional factors that are also considered when designating an inmate to a particular institution include, but are not limited to:

- The inmate's release residence;

- The level of overcrowding at an institution;

- Any security, location or program recommendation made by the sentencing court;

- Any Central Inmate Monitoring issues (see Program Statement <u>Central Inmate Monitoring Program</u>);

- Any additional security measures to ensure the protection of victims/witnesses and the public in general; and,

- Any other factor(s) which may involve the inmate's confinement; the protection of society; and/or the safe and orderly management of a BOP facility.

Initial designations to BOP institutions are initiated, in most cases by staff at the Designation and Sentence Computation Center (DSCC), Grand Prairie, Texas, who assess and enter information from the sentencing court, U.S. Marshals Service, U.S. Attorneys Office or other prosecuting authority and the U.S. Probation Office about the inmate into a computer database (SENTRY). SENTRY then calculates a point score for that inmate which (for example, 18 points) is then matched with a commensurate security level institution.

| Security Level | Custody Level | Male | Female |
|----------------|---------------|------|--------|
| MINIMUM | COMMUNITY and OUT | 0-11 points | 0-15 points |
| LOW | OUT and IN | 12-15 points | 16-30 points |
| MEDIUM | OUT and IN | 16-23 points | * |
| HIGH | IN and MAXIMUM | 24+ points | 31+ points |
| ADMINISTRATIVE | All custody levels | All point totals | All point totals |

An inmate's security point score is not the only factor used in determining a commensurate security level for an inmate. The application of a PSF or MGTV could effect placement at either a higher or lower level institution than the specified point total indicates. (SEE CHAPTER 5 FOR MORE DETAILED INFORMATION)

**NOTE:**    A security level cannot be assigned by SENTRY without

020

P5100.08
9/12/2006
Chapter 1, Page 3

completing an Inmate Load and Security Designation
Form.  If an inmate has not been assigned a security
level, SENTRY will automatically assign "UNKNOWN" as
the security level.


* Female security level institutions are classified as Minimum,
Low, High and Administrative.

Once all necessary information has been entered into the SENTRY
database, a DSCC or Medical Designations Officer, (hereafter,
Designator) selects an institution for service of sentence based
on all the previously mentioned factors.

Redesignations (transfers) from one Bureau institution to another
are considered in much the same manner using many of the same
factors used at the time of initial designation.  In addition,
the inmate's institutional adjustment and program performance are
also carefully reviewed when redesignation is considered.

Finally, an initial custody level (COMMUNITY, IN, OUT, MAXIMUM)
is also assigned to the inmate that is consistent with the
institutions mission. (See previous chart).  An inmate's custody
level within any given security level institution is routinely
reviewed and may change for various reasons during the period of
incarceration.

```
┌─────────────────────┐
│    DEFINITIONS      │
└─────────────────────┘
```

**ADMINISTRATIVE INSTITUTION.**  An institution with a special mission, where inmates are assigned based on factors other than security and/or staff supervision (for example, medical/mental health, pretrial and holdover).  Administrative institutions are designed to house all security level inmates.

**CENTRAL INMATE MONITORING (CIM).**  The Bureau monitors and controls the transfer, temporary release, and community activities of certain inmates who present special needs for management.  Such inmates, known as Central Inmate Monitoring cases, require a higher level of review prior to any movement outside the institution.

**CLASSIFICATION.**  The systematic subdivision of inmates into groups based on their security and program needs.

**COMMUNITY CUSTODY.**  The lowest custody level assigned to an inmate which affords the lowest level of security and staff supervision.  An inmate who has **COMMUNITY** custody may be eligible for the least secure housing, including any which is outside the institution's perimeter, may work on outside details with minimal supervision, and may participate in community-based program activities if other eligibility requirements are satisfied.

**CONTRACT FACILITY.**  A state or local prison, institution, facility, jail, or other non-federal enterprise that contracts with the Bureau to house federal inmates (i.e., Community Corrections Center).  Contract facilities are contracted and supervised by the CCMs.

**CRIMINAL HISTORY POINTS.**  Criminal History Points are used to calculate the Bureau's Criminal History Score.  The Criminal History Points is the calculation, as specified by the U.S. Sentencing Commission Guidelines (<u>Guidelines Manual</u>, Chapter 4), which assigns a numerical value based on the individuals entire criminal record of convictions.  Ordinarily, the Criminal History Points are calculated by the United States Probation Office.

**CRIMINAL HISTORY SCORE (CHS).**  The CHS is one of the factors used to calculate the inmate's security point total.  The CHS is derived from the Criminal History Points whereby the Criminal History Points fall into one of six categories.

P5100.08
9/12/2006
Chapter 2, Page 2

P5100.08
9/12/2006
Chapter 2, Page 3

**CURRENT OFFENSE.**  For classification purposes, the current offense is the most severe documented instant offense behavior regardless of the conviction offense.

**CUSTODY CLASSIFICATION.**  The review process to assign a custody level based on an inmate's criminal history, instant offense, and institutional adjustment.  A custody level (i.e., **COMMUNITY, OUT, IN**, and **MAXIMUM**) dictates the degree of staff supervision required for an individual inmate.

**DESIGNATION**.  An order from the DSCC indicating the initial facility of confinement for an inmate.

**DESIGNATION FACILITY (DFCL)**.  Each of the separate missions within an institution for designation purposes.  Each DFCL is shown as a separate line on the Population Report and has its own security level and destination (DST) assignment.  Designations are made to a DFCL code rather than to a facility (FACL) code.

**JUDGMENT.**  The official court document (e.g., Judgment and Commitment Order or Judgment in a Criminal Case) which is signed by the Judge.  The Judgment contains the offense(s) for which the court imposes its sentence, which ordinarily includes a financial, confinement and supervision obligation.

**HISTORY**.  The inmate's entire background of criminal convictions (excluding the current offense) and institutional disciplinary findings used to assess points related to his/her history of violence and/or history of escape.

**IN CUSTODY.**  The second highest custody level assigned to an inmate which requires the second highest level of security and staff supervision.  An inmate who has **IN** custody is assigned to regular quarters and is eligible for all regular work assignments and activities under a normal level of supervision.  Inmates with **IN** custody are not eligible for work details or programs outside the institution's secure perimeter.

**LEGAL RESIDENCE.**  The inmate's local and state address as reported by the United States Probation Office at the time of conviction.

**LONG-TERM DETAINEE.**  A non-U.S. citizen (alien) who has:

- finished serving a local, state, or federal sentence;

P5100.08
9/12/2006
Chapter 2, Page 4

- completed immigration proceedings that have resulted in an order of deportation, exclusion, or other means of removal by either the Executive Office for Immigration Review (EOIR), or the Bureau of Immigration and Customs Enforcement (ICE), formerly the Immigration and Naturalization Service (INS); and,

- cannot be removed from the country for various reasons.

**MANAGEMENT SECURITY LEVEL (MSL)**.  Management Security Level is the security level assigned by the DSCC Administrator or designee to an inmate upon application of any of the following Management Variables:

- PSF Waived;

- Greater Security; and,

- Lesser Security.

Based on these Management Variables, the Management Security Level will normally be one security level greater or lesser than the scored security level.

**MANAGEMENT VARIABLE**.  A Management Variable (MGTVs) reflects and supports the professional judgment of Bureau staff to ensure the inmate's placement in the most appropriate level institution.  A Management Variable(s) is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's security score — a score which may not completely/accurately reflect his or her security needs.

**MAXIMUM CUSTODY**.  The highest custody level assigned to an inmate requiring the highest level of security and staff supervision. An inmate with **MAXIMUM** custody requires ultimate control and supervision.  This classification is for individuals who, by their behavior, have been identified as assaultive, predacious, riotous, serious escape risks, or seriously disruptive to the orderly running of an institution.  Accordingly, quarters and work assignments are assigned to ensure maximum control and supervision.  A custody change to or from **MAXIMUM** custody must be justified thoroughly on the BP-338 form and maintained permanently in the Inmate Central File.

**MISDEMEANANT**.  An inmate convicted of an offense for which the maximum penalty is one year or less.  Such inmates may not be

P5100.08
9/12/2006
Chapter 2, Page 5

transferred to a High security institution without first signing
a waiver.  18 U.S.C. § 4083 prohibits placement of such inmates
in "penitentiaries" without their consent; however, the Bureau
broadens that prohibition to include any High security
institution.  A sample of the waiver is provided in Appendix B.

**OUT CUSTODY**.  The second lowest custody level assigned to an
inmate requiring the second lowest level of security and staff
supervision.  An inmate who has **OUT** custody may be assigned to
less secure housing and may be eligible for work details outside
the institution's secure perimeter with a minimum of two-hour
intermittent staff supervision.

**PAROLE, MANDATORY RELEASE, OR SPECIAL PAROLE TERM VIOLATOR**.
Violators are inmates who were released from Bureau custody to
the supervision of a D.C. or U.S. Probation Officer (USPO) and
have violated the conditions of their release.  These violators
are returned to Bureau custody and are required to have a parole
hearing within certain time limits.  The purpose of this is to
provide the inmate with an in-person hearing before the U.S.
Parole Commission (USPC) to determine if the inmate has violated
the conditions of parole, mandatory release, or special parole.
Therefore it is necessary to temporarily place these individuals
at parolable institutions in order to conduct parole hearings.

**PRIVATIZED FACILITY**.  A prison, institution, or other
correctional facility that is operated or supervised by a non-
governmental entity.  Privatized facilities are managed by
private organizations or individuals with oversight provided by
Bureau staff.

**PUBLIC SAFETY FACTOR**.  There are certain demonstrated behaviors
which require increased security measures to ensure the
protection of society.  There are nine Public Safety Factors
(PSFs) which are applied to inmates who are not appropriate for
placement at an institution which would permit inmate access to
the community (i.e., MINIMUM security).  The application of a PSF
overrides security point scores to ensure the appropriate
security level is assigned to an inmate, based on his or her
demonstrated current or prior behavior.

**REDESIGNATION**.  The reassignment of an inmate from one
institution to another after initial designation.  Unit staff
submit a request to the DSCC, and the inmate's case is reviewed
for possible transfer.  Approval of a redesignation results in an
order from DSCC staff indicating a correctional institution to

which an inmate is to be transferred.  The actual movement of an inmate from one institution or facility to another is referred to as a transfer.

**RELEASE RESIDENCE**.  The verifiable destination to which an inmate realistically plans to reside upon release from Bureau custody. The inmate must provide proof of residence to his or her unit staff.  Staff will rely upon the following references to assist in verification: Presentence Investigation Report/USPO verification; telephone and visiting lists; and, incoming and outgoing mail.

**SECONDARY DESIGNATION**.  The second part of a two part designation, usually after a temporary designation to receive medical/mental health treatment or to participate in a specific institutional program or parole hearing.

**SECURITY LEVEL**.  Used to describe the structural variables and inmate-to-staff ratio provided at the various types of Bureau institutions (i.e., Minimum, Low, Medium, High).  It also identifies the institution type required to house inmates based on their histories, institutional adjustment, and Public Safety Factors as well as the physical security of the institution to include mobile patrols, gun towers, perimeter barriers, housing, detection devices, inmate-to-staff ratio, and internal security.

**STATEMENT OF REASONS**.  The Statement of Reasons (SOR) is an attachment to the criminal judgment (Judgment and Commitment Order; Judgment in a Criminal Case) which indicates the reason for the court's final sentence, and other sentencing related issues (e.g., resolution of disputed issues, changes in scoring, statements of court intent, etc.).  It is required in every felony case where the sentencing range exceeds 24 months, or whenever there is a departure from the U.S. Sentencing Guidelines range.  The court may complete an SOR even if not required.

**STUDY CASE**.  A study case is an inmate who is committed for a period of study and observation pursuant to 18 U.S.C. §§ 3552(b) or (c)), 4241(b) or (d), 4242(a), 4243(a) or (b), 4244(b), 4245(b), 4246(b), or 4247(b) or (c)).  An inmate committed for a study and observation will be referred to the Central Office Medical Designator in the Office of Medical Designations and Transportation (OMDT) for designation to a facility that can complete the study, considering any specific medical or psychiatric issues which should be addressed.  The Central Office Medical Designator should attempt to place the inmate in the most

suitable facility compatible with the offender's security and
custody needs, closest to the court and available resources.

P5100.08
9/12/2006
Chapter 3, Page 1

---

### SECURITY DESIGNATION PROCEDURES FOR NEW COMMITMENTS

---

The Designation and Sentence Computation Center will ordinarily complete the initial designation within three working days of receiving all the necessary documentation from the U.S. Marshals Service (USMS) and the U.S. Probation Officer (USPO) which includes the following:  the Presentence Investigation Report (PSR), Judgment, Statement of Reasons (SOR), and Central Inmate Monitoring (CIM) documentation (in cases where a CIM assignment is necessary).

The DSCC will refer all requests for initial designation with potential medical/mental health concerns to the Office of Medical Designations and Transfers (OMDT), Health Services Division, Washington, D.C. no later than the following work day.

## 1.  DESIGNATION PROCEDURES

The following is the normal chronology of an initial designation.

   a.  The inmate is sentenced.

   b.  The Clerk of the Court transmits the Judgment and Commitment Order (old law cases) or Judgment in a Criminal Case (new law cases) to the USMS.

   c.  The USMS makes a request to the DSCC advising that the inmate is now ready for designation to a facility.

   d.  If it has not already been provided, DSCC staff must contact the necessary officials (USPO or USMS) for the following: two copies of the PSR, a copy of the Judgment, to include the SOR, and the Individual Custody and Detention Report (USM-129).

If the SOR is not provided with the Judgment, DSCC staff will make a reasonable effort to obtain a copy by contacting the Court or USPO.  If no SOR was prepared for the case or cannot be obtained, DSCC staff will note this in the "Remarks" section of the BP-337 and proceed with the designation process.  These procedures will ensure the Bureau is following the intentions of the Court when designating a facility, as the SOR may contain information which overrides the PSR and may affect scoring decisions.

029

Based on a review of the data, DSCC staff will determine whether a non-federal facility should be designated.  If a PSR has not been prepared, DSCC staff will complete a National Crime Information Center (NCIC) and National Law Enforcement Telecommunication System (NLETS) criminal history check to obtain background information.  DSCC staff will then load appropriate information on the SENTRY Update Security Designation screen with a notation that no PSR was available.  DSCC staff will contact the USPO and request that a Postsentence Investigation Report be prepared, and forwarded to the designated facility.  DSCC staff will document this contact on the SENTRY Update Security Designation Screen.

Frequently, in cases involving Reentry after Deportation, Presentence/Postsentence Investigation Reports are not prepared. In those particular cases, a Magistrate Information Sheet may be used.  A Magistrate Information Sheet is a document prepared by U.S. law enforcement officials.  This document contains a summary of the facts related to the defendant's arrest and prior criminal/personal history.  This information is primarily obtained through the arresting officer's report, the FBI Rap Sheet and an interview with the defendant.

If more than six months has elapsed since the PSR was prepared, DSCC staff will contact the USPO to determine if there is any new or significant information that should be considered.  If the offender was a study case before final sentencing, DSCC staff will take into consideration the results of that study in completing the designation request.  The result of the study may be obtained from a PSR, a summary report, or any other information available.

If offense or background information is not available prior to designation, an inmate must be designated to at least a Low security level institution.  When information is obtained, the institution may request redesignation, if appropriate.

   e.  The DSCC uses classification material and SENTRY to determine if Central Inmate Monitoring (CIM) precautions need to be taken.  This includes a name search to determine if the offender was previously confined under the current or previous register number.  If new to the Bureau, the inmate must be loaded into SENTRY and "admitted" to the DSCC "facility," with any appropriate CIM assignment(s) entered.  DSCC staff will identify the documents used to support CIM assignments and forward the documents to the designated institution.

P5100.08
9/12/2006
Chapter 3, Page 3

f.   DSCC staff will complete and enter into SENTRY an Inmate Load and Security Designation form (BP-337) on all cases with terms exceeding 30 days.  The DSCC staff member loading the data has the discretion to complete a hard copy version or may enter the information directly into SENTRY.

DSCC staff must determine if there is a break in custody when the inmate is transferring to federal custody after service of a state sentence.  The DSCC usually has access to this type of information for jail credit purposes.  If there is no physical release from custody, DSCC staff will consider the state offense as part of the current term of confinement for classification purposes and will not assign any history points for the state offense.

g.   Each work day, DSCC Designation Officers determine which cases require designation by displaying a SENTRY Daily Log for a listing of those cases entered the previous day (also to include weekends and holidays).  The Designator displays the Initial Designation Data screen and follows the prompts on the screen. This will lead the Designator through a display of the "CIM Clearance and Separatee Data" screen and "Update Security Designation" screen.  A list of the appropriate security level facilities will appear in order of proximity to the inmate's legal residence (based on mileage calculated by SENTRY).  The final screen in this series requires that the reason for designation be entered, as well as any clearance remarks by the DSCC Designator.

The objective of inmate classification is to place each inmate in the most appropriate facility for service of sentence.  To accomplish this, the Designator must consider all relevant information regarding the inmate.

In accordance with Rule 38(b) of the Federal Rules of Criminal Procedure, when the court of conviction recommends that the inmate be retained in a place of confinement which will allow the inmate to participate in the preparation of the appeal, the Bureau will make every effort to place the inmate in such a facility.  If a reason exists for not placing the inmate in that facility, the matter is called to the attention of the court and an attempt is made to arrive at an acceptable place of confinement.

h. SENTRY provides information on the capacity and inmate population in each institution.  Specifically, for each facility

and each Designation Facility (DFCL), SENTRY provides the Rated Capacity, the Designation Capacity, and the percentage of each that the facility or DFCL currently houses.

- The Rated Capacity is a measure of the capacity for which each DFCL was designed.

- The Designation Capacity is the equitable proportion of the inmates in a particular security level that each designation facility having that security level should house.

The Designation Capacity of each DFCL is based on the rated capacities and population totals of all the DFCLs that have the same security level.  The Rated Capacity and Designation Capacity for a facility are calculated as the total Rated Capacity and Designation Capacity of all the DFCLs that exist within that facility.

Designators will ordinarily use the Designation Capacity as a guide for maintaining population balance and an equitable distribution of inmates.  However, for newly activating institutions, Designators may designate that institution for a percentage of initial designations.

   i.  The Designator assigns a facility, which may include a privately managed facility, and will make every effort to accommodate recommendations from the courts, ie. RDAP, locality, etc.

   j.  Upon completion of the initial designation by the DSCC Designator or Central Office Medical Designator, staff in the following areas will make note of the designation by monitoring SENTRY Destination Daily Logs:

   (1) The receiving institution;

   (2) The federal facility (MCC, Detention Center, etc.) holding the inmate being designated;

   (3) The U.S. Marshals Prisoner Transportation Division in Kansas City, Kansas; and,

   (4) The DSCC staff in cases where a medical/mental health inmate has been referred to OMDT.

032

DSCC staff will inform the USMS who has custody of the inmate of the designation by whatever means is appropriate.

If the inmate is a former study case, DSCC staff must also inform, via GroupWise, the Warden of the institution that completed the study of the designation.  This alerts that facility to forward the Inmate Central File and other records to the institution designated.

If there is a secondary designation (e.g., Parole, Special Parole Term, Mandatory Release Violator Hearing, or following medical treatment), DSCC staff (or Central Office Medical Designator for medical cases) will notify the Warden of the secondary institution.  This will alert the secondary institution that the inmate is designated and will be transported after the program or medical treatment is completed.  No other designation notation is needed for a secondary designation.

   k.  When a designation is made, DSCC staff will forward all supporting documents to the designated institution within two working days.  If DSCC staff believe that the inmate will arrive at the institution in less than five calendar days, the supporting documentation will be sent to the institution by overnight mail, facsimile, or electronically, within one working day of the designation.

   l.  The Case Management Coordinator (CMC) will monitor all pending arrivals at that facility.  However, if the institution has separate DFCLs for specialized programs (i.e., RDAP, Sex Offender Treatment Program, Life Connections, etc.) or for a satellite camp, then the CMC may delegate this responsibility to staff assigned to those specialized programs or populations. Staff will monitor the Daily Log for that facility, and will print a hard copy of each designation and maintain a copy on file for 120 calendar days.  In certain facilities other methods may be just as effective in monitoring pending arrivals.  For example, institutions with a large holdover or pretrial population can be monitored more effectively by running a daily pipeline roster filtering out all "A-HLD"s and "A-PRE"s.

Staff will also monitor the arrival of classification material, and if such material has not arrived within 10 calendar days following the designation, the DSCC will be contacted to determine the status of that material.  Upon arrival of the classification material, the CMC, or designee, will review that material and verify the scoring of the Inmate Load and Security

033

Designation form (BP-337). If a scoring issue and/or error is
discovered, the CMC will contact the DSCC Administrator via
GroupWise. The CMC may need to fax certain pages of the
Presentence Investigation Report to the DSCC so the case can be
appropriately reviewed. If the CMC and DSCC agree that an error
has been made, the error will be corrected by the DSCC. If the
CMC and DSCC do not agree that an error has been made, the
Central Office, Correctional Programs Administrator, will make
the final determination.

The DSCC will also be advised of any non-scoring errors or
concerns. In either circumstance, if the correction requires a
new designation, the DSCC will make any necessary changes and
will enter a new designation into SENTRY. The DSCC will then
notify the appropriate USMS office(s) of the designation change.

If the original designation is changed, the CMC will forward the
classification material to the newly designated institution.

   m.  The CMC has oversight responsibilities for monitoring the
timely arrival of a newly designated inmate. If an inmate
serving a term of one year or more has not arrived at the
designated institution within 120 calendar days from the date of
the designation, or if an inmate serving a term of less than one
year has not arrived after 30 calendar days, staff will use
SENTRY to determine the inmate's current location:

   (1)  If the inmate is in a Bureau facility, staff will contact
that facility to expedite movement or ascertain the reason for
delay, and will verify whether the designation continues to be
valid; and,

   (2)  If the inmate is not in a Bureau facility, staff will
contact the DSCC. Upon notification, DSCC staff will contact the
appropriate authorities and ascertain why the inmate has not
arrived at the designated institution. If DSCC staff decides the
designation is no longer valid, the DSCC will cancel the original
designation.

   If the designation is canceled, the packet will be returned to
the DSCC, who then will return the documentation to the
originating agency. Prior to canceling a designation, the DSCC
will enter a comment on the "CIM Clearance and Separatee Data"
screen to document the reason(s) for this action. This comment
will be the only retrievable documentation available to answer
future questions regarding the processing of the case. It may be

necessary to administratively admit the inmate in order to enter the comment.  The DSCC will also delete the associated DST assignment.

Staff will maintain records of their efforts to monitor designations.  These records will be maintained for a period of 120 calendar days from the date of initial designation.

n.  The release to the general public of an inmate's designation or redesignation information is prohibited, for security reasons, until the inmate has arrived at the designated facility.  An inmate confined in a Bureau facility however, may be advised of the destination but will not be advised of the date or time of the transfer.  However, caution should be exercised in advising inmates of their destination.  The Warden may define cases where the designation will not be disclosed to the inmate. Officials such as Judges and members of Congress may be advised of designations in response to official inquiries for their official use.

2.  **NON-ROUTINE DESIGNATION PROCEDURES**

In certain cases, non-routine designation procedures for new commitments are required.  Listed below are specific examples of non-routine designations.

a.  **Study Cases.**  The DSCC will complete an Inmate Load and Security Designation form (BP-337) and enter it into SENTRY.  The DSCC will then notify the Central Office Medical Designator via GroupWise requesting designation.  The Central Office Medical Designator will designate an appropriate institution for the study.  After completion of the study and final sentencing by the court, the DSCC will enter a new Inmate Load and Security Designation form (BP-337) into SENTRY, based on the actual sentence imposed or other new information.

b.  **Medical or Mental Health.**  The DSCC is responsible for receiving and evaluating information pertaining to an initial designation.  DSCC staff must attempt to ascertain whether an inmate requires medical or mental health evaluation or treatment. This information is ordinarily obtained from the Presentence Investigation Report or other source documents.  If medical or mental health concerns are apparent, DSCC staff will provide comments in the "Remarks" section of the  BP-337 and enter Y (yes) in the OMDT REF item.  DSCC staff will fax portions of the Presentence Investigation Report pertaining to the medical or mental health concerns, and the Judgment in a Criminal Case, if

it includes any judicial recommendations, to the Central Office Medical Designator.

Upon review of the daily log for W DESIG M cases, the Central Office Medical Designator will access the Inmate Load and Security Designation form (BP-337) in SENTRY and make a designation based on the available information, ordinarily within three working days.  If the Central Office Medical Designator determines there are no medical or mental health concerns affecting placement, the DSCC will be advised.  The DSCC will then complete the designation to an appropriate institution.

   Only the OMDT will make designations for study cases or for cases requiring medical or psychiatric evaluation or treatment.  Designation may be made to any Bureau facility having resources to meet the inmate's needs.  The Central Office Medical Designator will ensure that whenever a designation is made to an DFCL inconsistent with the inmate's security level, the appropriate Management Variable is entered.  Administrative facilities are excluded from this requirement.


   c.  **Military Prisoners**.  The Bureau cooperates with the Security, Force Protection and Law Enforcement Division of the Armed Services for the transfer of military prisoners into the Bureau's custody.  These cases are coordinated through the DSCC, in accordance with the provisions contained in Chapter 7, Section 17(d).

   d.  **Parole, Mandatory Release or Special Parole Term Violator Hearing.**  For designation purposes, the U.S. Parole Commission (USPC) provides the revocation packet and a copy of the alleged violator's Presentence Investigation Report to the DSCC.  The DSCC will complete an initial designation to a violator hearing site, and a secondary designation to a post-hearing institution for service of the violator term.  The Security Designation Data screen will indicate the inmate is to be housed as a holdover at the violator hearing site.

   Once the designation has been completed, the DSCC will notify the U.S. Marshals Office of the designated institution, and mail the violator packet to that institution.  The USPC will receive notification via Groupwise.

   If after the hearing, new information causes a change in the secondary designation (i.e., short-term parole date), institution

staff will contact the DSCC for appropriate action.

- In cases where the projected release date (PRD) is between 60 to 120 days from the date of hearing, the DSCC will consider changing the secondary designation to the nearest appropriate facility.

- In cases where the PRD is 60 days or less from the date of hearing, hearing facility staff will consider having the inmate remain at the hearing facility for release processing purposes.

- If a change in designation is not necessary, institution staff may process the inmate's transfer to the secondary designation.

Procedures for violators requiring medical treatment are referenced in Chapters 3 and 7. Once the information is reviewed and evaluated by the DSCC, and it is determined that medical or psychiatric treatment is required, the request for designation will be entered into SENTRY and referred to the Central Office Medical Designator for designation. The DSCC will notify the appropriate USMS Office of the inmate's designated institution, and mail the violator packet to that institution. The USPC will receive notification via LAN.

Local revocation hearings will be conducted at a site determined by the USPC, normally within commuting distance of where the alleged violation occurred. The USPC may request, in writing, to the DSCC Administrator that an alleged violator be moved to a Bureau institution. Violators who have received their local revocation hearing will not be transported until the USPC Notice of Action has been received and a designation has been determined. In some instances, violators who are granted a short-term release date should be considered for placement in a contract facility.

e. **Long-term Detainees.** The Detention Services Branch (DSB), Correctional Programs Division, Central Office, is responsible for the initial designation of long-term detainees. Requests for placement into the BOP from the U.S. Immigration and Customs Enforcement (ICE) are sent directly to DSB, where they are completed. If a medical or mental health placement is needed, DSB will refer it to the Central Office Medical Designator.

Long-term detainees are no longer serving a sentence but their

P5100.08
9/12/2006
Chapter 3, Page 10

detention is indeterminate and they will not, in all probability,
be repatriated to their home country.

Long-term detainees are from countries, such as Cuba, that refuse
to accept their return from the U.S. government.  The Detention
Services Branch, Correctional Programs Division, will advise when
changes in applicable countries occur.  This does not include
citizens from countries that take a significant amount of time to
accept its citizens.  Travel orders can be obtained and they are
eventually returned.  ICE requests the placement of long-term
detainees into the BOP and they are ordinarily designated into a
general population.

Long-term detainees include:

- Mariel Cubans, detainees who entered the United States
  during the Mariel boatlift between April 15, 1980 and
  October 31, 1980;

- Cubans who entered the United States from other
  countries, or from Cuba other than during the Mariel
  boatlift; and,

- Detainees from counties that ICE has identified that
  refuse to receive its citizens.

Designation procedures for long-term detainees are unique because
the detainees are not serving a sentence.  Refer to the current

Program Statement <u>Mariel Cuban Detainees</u> for the designation
procedures.

3.  **DESIGNATIONS TO NON-FEDERAL FACILITIES**

The DSCC may designate a federal inmate to a non-federal
facility in accordance with the criteria below.  An updated
Security Designation form (BP-337) will be completed and entered
into SENTRY for any sentence exceeding 30 days.  When the USMS
takes custody of an inmate from state or local custody to begin
serving a federal sentence, the same procedures for new
commitments will be followed.

When designating an inmate to a non-federal facility for an
inmate, Designators shall consider the inmate's religious
beliefs, if known as one of the factors in making a designation
decision.  If possible, a non-federal facility where the inmate's

religious beliefs can be accommodated will be designated.  If
necessary, Designators may consult with Central Office chaplaincy
staff in making this designation decision.

## 4.   TYPES OF COMMITMENTS

a.   **Juvenile Commitments**.  All inmates committed under the
Juvenile Justice and Delinquency Prevention Act (JJDPA) and all
inmates under the age of 18 will be designated and housed in
accordance with the requirements of Program Statement <u>Juvenile
Delinquents, Juvenile Justice and Delinquency Prevention Act</u>.

The CCM will complete a BP-337 for juvenile offenders housed in
contract juvenile facilities; however, the CCM does not need to
complete the BP-338 while the juvenile is housed there unless it
is helpful to do so.

b.   **Jail Commitments**.  When funds and appropriate jail space
are available, the DSCC may designate a contract jail or
detention facility for an inmate who is generally sentenced to
one year or less.  If funds and appropriate jail space are not
available or if an inmate has special needs, a federal
institution will be designated through the DSCC.  Prior to
placement, DSCC staff must determine whether any PSF(s) or other
circumstances would contradict a jail designation.  If so, the
lowest security level dictated by the applicable PSF must be
satisfied.

However, such designations should also take into consideration
underpopulated Bureau facilities prior to placement in a contract
facility.

c.   **Youth Corrections Act (YCA)/District of Columbia Youth
Rehabilitation Act (DCYRA) Offenders**.  Although the YCA statutes
were repealed effective October 12, 1984 (see 18 U.S.C. §§ 5005
through 5026 (repealed)), an offender originally committed under
these statutes could be returned to custody as a parole violator.
Ordinarily, DCYRA inmates will not be initially designated to
non-federal facilities.

d.   **State Prisoners**.  18 U.S.C. § 5003 enables the Director,
Bureau of Prisons, to establish contracts to accept state
prisoners for boarding in federal institutions.  The term "State"
as used in this section includes any state, territory, or
possession of the United States.  The statute does not permit the
Bureau to contract placement of state prisoners in third party

custody.  This includes CCC placements.

When there is a compelling reason for placing a state prisoner in
a non-federal facility, institution staff will contact the DSCC
Administrator, who may suggest to officials of the state that
they may want to make their own direct placement in a non-federal
facility.

Once an inmate is accepted into Bureau custody, occasionally,
there may be a reason to return the inmate to the original state.
In this instance, institutional staff will contact the DSCC
Administrator.  If the DSCC Administrator determines that it
would be appropriate for the inmate to be returned, they will
contact state officials.

P5100.08
9/12/2006
Chapter 4, Page 1

**INMATE LOAD AND SECURITY DESIGNATION FORM INSTRUCTIONS (BP-337)**

## INMATE LOAD DATA

The Inmate Load Data section (Items 1 to 25) of the Inmate Load and Security Designation form (BP-337) records the physical and demographic information of inmates entered into SENTRY (the Bureau of Prisons' on-line database).  In practice, inmates are entered into SENTRY whether or not the inmate's security level is scored (e.g., pre-trial detainees, material witnesses, etc.).  Therefore, when the initial security designation data is entered into SENTRY it is essential that the load data is compared to the information contained in the Presentence Investigation Report (PSR), and that the information is updated or reconciled as appropriate.

| 1. REGISTER NUMBER | | | | |
|---|---|---|---|---|
| 2. LAST NAME | | 3. FIRST NAME | 4. MIDDLE | 5. SUFFIX |
| 6. RACE | 7. SEX | 8. ETHNIC ORIGIN | 9. DATE OF BIRTH | |
| 10. OFFENSE/SENTENCE | | | | |
| | | | | |
| 11. FBI NUMBER | | | 12. SSN NUMBER | |
| 13. STATE OF BIRTH | | 14. OR COUNTRY OF BIRTH | | 15. CITIZENSHIP |
| 16. ADDRESS-STREET | | | | |
| | | | | |
| 17. CITY | | 18. STATE | 19. ZIP | 20. OR FOREIGN COUNTRY |
| 21. HEIGHT:FT ___ IN ___ | | 22. WEIGHT: | 23. HAIR COLOR | 24. EYE COLOR |
| 25. ARS ASSIGNMENT | | | | |

1.   **REGISTER NUMBER.**  The U.S. Marshals Service (USM) assigns an eight-digit register number to each inmate with the last three digits denoting the U.S. Marshals' judicial code.  The format is five digits, hyphen, three digits.

2.   **LAST NAME.**  Twenty-four spaces are provided for the inmate's last name, which must match the name on the Judgment.  The first character must be a letter.  Each subsequent character must be a letter, space, hyphen, or apostrophe.

3.   **FIRST NAME.**  Twelve spaces are provided for the inmate's

P5100.08
9/12/2006
Chapter 4, Page 2

first name.

**NOTE:**  Only the inmate's committed name (as it appears in the Judgment) will be entered on the "Load Inmate" transaction.  All other names (e.g., true name, aliases, nicknames, maiden name, etc.) will be entered into SENTRY using the "Update Nicknames and Aliases" transaction.

4.   **MIDDLE.**  Eight spaces are provided for the inmate's middle name.

5.   **SUFFIX.**  Three spaces are provided for any name suffixes (i.e., Jr., Sr., II).  Suffix codes are found in the Name Suffix Code section of the SENTRY General Use Technical Reference Manual (TRM).

6.   **RACE.**  Standards for the Classification of Federal Data on Race and Ethnicity are set by the Office of Management and Budget.  Enter the appropriate code:

| <u>CODE</u> | <u>RACE</u> | <u>DEFINITION</u> |
|---|---|---|
| A | Asian | A person having origins in any of the Pacific Islands or any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam. |
| B | Black or African American | A person having origins in any of the black racial groups of Africa. |
| I | American Indian or Alaska Native | A person having origins in any of the original peoples of North and South America (including Central America), and who maintains tribal affiliation or community attachment. |
| W | White | A person having origins in any of the original peoples of Europe, the Middle East, or North Africa. |

P5100.08
9/12/2006
Chapter 4, Page 3

7.   **SEX.**  Enter M = Male or F = Female.

8.   **ETHNIC ORIGIN.**  Enter the appropriate code.

| CODE | ETHNIC ORIGIN | DEFINITION |
| --- | --- | --- |
| H | Hispanic or Latino | A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race. |
| O | Not Hispanic or Latino | A person who does not meet the above definition. |

9.   **DATE OF BIRTH.**  Ten spaces are provided for the inmate's birth date (MM-DD-YYYY); (e.g., July 2, 1981 = 07-02-1981). If the inmate's birth date is unknown or not available, enter 01-01-1800.

10.  **OFFENSE/SENTENCE.**  The offense(s), sentence imposed, and docket number (as specified in the Judgment) should be entered in the space provided.  Additionally, if the inmate is admitted to another SENTRY facility, care should be taken to preserve existing information.

11.  **FBI NUMBER.**  Nine spaces are provided for the Federal Bureau of Investigation (FBI) number.  The FBI number can be any combination of letters and numbers and must be entered without spaces or dashes.  It cannot duplicate an existing FBI number in SENTRY.  This field must be left blank if the FBI number is unknown at the time the inmate is loaded.

12.  **SOCIAL SECURITY NUMBER (SSN).**  Nine spaces are provided for the inmate's SSN.  The number must be entered without dashes or spaces.  It cannot duplicate an existing SSN in SENTRY. If the SSN is unknown, or the inmate has never been issued a SSN this field must be left blank.  In cases where the inmate will not be issued a SSN (i.e., illegal aliens) a back slash may be entered.

13.  **STATE OF BIRTH.**  Two spaces are provided for the state code for the state in which the inmate was born.  If entered, it must be a valid code from the State and Possession Code Table in the SENTRY General Use TRM.

14.  **COUNTRY OF BIRTH.**  If entered, it must be a valid code from

P5100.08
9/12/2006
Chapter 4, Page 4

the Country Code Table in the SENTRY General Use TRM.

**NOTE:**      SENTRY will not allow "US" to be entered if a
             "state of birth" is entered (Item 13 above).

15. **CITIZENSHIP.**  Enter the country code that corresponds to the inmate's citizenship.  This must be a valid code from the Country Code Table in the SENTRY General Use TRM.  Do not rely on the inmate's current place of residence to determine citizenship.  Special emphasis must be placed on the accuracy of citizenship at the time of the inmate's admission.

16. **ADDRESS - STREET.**  At least twenty-eight spaces are provided for the inmate's street number and name as listed in the PSR as "legal address."  Enter any combination of alphanumeric characters.

17. **CITY.**  Fifteen spaces are provided for the inmate's city of residence as listed in the PSR as "legal address."  If entered, a state or foreign country must be entered.

18. **STATE.**  Two spaces are provided for the state code.  If entered, it must be a valid state code found under State Possession Code, SENTRY General Use TRM.  Enter country code under Item 20 if residence is not in the United States or one of its territories or commonwealths.

19. **ZIP CODE.**  Five spaces are provided for the zip code.  It must be entered when a state code has been entered.  If not available, the city, state, and zip code of the USMS Office assigning the register number will be entered.  An accurate zip code is important because it is used by SENTRY to determine mileage between the inmate's legal residence and designated institution.

20. **FOREIGN COUNTRY.**  Two spaces are provided for the country code.  If entered, it must be a valid country code from the Country Code Table of the SENTRY General Use TRM.  "US" may not be entered as the country code.  This field must be completed if a state or zip code is not entered in the address field (see Items 18 & 19 above).

21. **HEIGHT.**  Height must be entered in a measurement of feet and inches.  Values in feet (FT) must be 1 through 9.  Values in inches (IN) must be 00 through 11.

22. **WEIGHT.**  Weight values must be 001-999 and represent pounds.

23. **HAIR.**  Two spaces are provided for the color code.  If entered, it must be a valid code found under the Hair Color

P5100.08
9/12/2006
Chapter 4, Page 6

Code, SENTRY General Use TRM.

24. **EYES.**  Two spaces are provided for the color code.  If entered, it must be a valid code found under the Eye Color Code, SENTRY General Use TRM.

25. **ARS ASSIGNMENT.**  Use a valid SENTRY category assignment, SENTRY General Use TRM.

## SECURITY DESIGNATION DATA

The Security Designation Data section (Items 1 to 18) of the Inmate Load and Security Designation form (BP-337) records sentencing, programing recommendations, and background information from the Judgment, the Statement of Reasons (SOR), and the PSR.  This information is used to determine the inmate's security level.

| 1. JUDGE | 2. REC FACILITY | 3. REC PROGRAM | 4. USM OFFICE |
|---|---|---|---|

1. **JUDGE.**  Enter the sentencing Judge's last name.

2. **RECOMMENDED FACILITY.**  The court may recommend a specific institution or a geographical region for a newly committed inmate.  Enter the name of the recommended institution or region. If a specific SENTRY facility code is entered, that facility will appear at the top of the list presented to the Designator for consideration.

3. **RECOMMENDED PROGRAM.**  Enter the name or type of any program recommended by the sentencing Judge.

4. **USM OFFICE.**  Enter the location of the USM Office (e.g., E/VA-NOR).

5. **VOLUNTARY SURRENDER**



```
5. VOLUNTARY SURRENDER    0 = NO    (-3) = YES

   IF YES, MUST INDICATE: 5a. VOLUNTARY SURRENDER DATE: _____
                  and 5b. VOLUNTARY SURRENDER LOCATION: _____
```

This item allows for the subtraction of three points from the Security Point Total, Item 15, when the Judgment indicates the inmate was allowed to voluntarily surrender.  For purposes of this item, voluntary surrender means the inmate was not escorted

by a law enforcement officer to either the U.S. Marshals Office
or the place of confinement.  Additionally, this item applies
only to post-sentencing voluntary surrender, and does not include
cases where the inmate surrendered to the U.S. Marshals on the
same day as sentencing.  Voluntary Surrender Credit may only be
applied to the initial term of confinement; it may not be applied
to any subsequent Supervised Release, Mandatory Release or parole
Violation return to custody.

5a.  **VOLUNTARY SURRENDER DATE.**  If the court has provided for
voluntary surrender, enter the date of the voluntary surrender in
this block.  If the court provided for voluntary surrender but
did not provide a specific date for the surrender, the DSCC will
contact the court to establish a mutually agreeable date.

**NOTE:**       In cases where the court allows the inmate to
              voluntarily surrender but the inmate will not receive
              (-3) points on this item the date will still be entered
              on this item.

5b.  **VOLUNTARY SURRENDER LOCATION.**  The DSCC will note whether
the inmate is to voluntarily surrender to the USMS or to the
designated institution.

6.  **MONTHS TO RELEASE**

| 6. MONTHS TO RELEASE     _____ |
| --- |

This item reflects the estimated number of months the inmate is
expected to be incarcerated.  Consecutive federal sentences will
be added together for classification purposes.  Federal sentences
may have different beginning dates, based on the Judgment Order.
There may even be a computation in SENTRY with a beginning date
in the future.  Based on the inmate's sentence(s), enter the
total number of months remaining, less 15% (for sentences over 12
months), and credit for any jail time served.  This item is not
figured into the security point total but impacts the Sentence
Length Public Safety Factor.

**Example:**  An adult convicted of Breaking and Entering under the
Sentence Reform Act is sentenced to eight years.  The expected
length of incarceration is (96 months x 85% = 81.6 months).
Round to the nearest whole number to get 82 and subtract any jail
time credit (180 days) = 76 months to release.

**NOTE:**     Enter 540 months for death penalty cases, life
sentences, and Parolable life sentences for which a
parole date has not been established.

P5100.08
9/12/2006
Chapter 4, Page 9

## 7.  SEVERITY OF CURRENT OFFENSE

| 7. SEVERITY OF CURRENT OFFENSE | 0 = LOWEST<br>1 = LOW MODERATE | 3 = MODERATE<br>5 = HIGH | 7 = GREATEST | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the most severe documented instant offense behavior regardless of the conviction offense.  For multiple offenses, the highest score will be used in scoring the current offense.  Staff will consider the offense behavior on all sentences, including federal sentences that have a future beginning date or a previous D.C. or state sentence if there was no physical release from custody.

**NOTE:**    This will require DSCC staff to make reasonable efforts to obtain documentation.

Severity is determined by using the Offense Severity Scale (Appendix A).

**Example**:  According to the PSR, the individual was involved in an Assault With Serious Injury (Greatest severity level) but pled guilty to a Simple Assault (Moderate severity level).  Assign the points on the basis of the more severe documented behavior, i.e., assign 7 points (Greatest severity level).

**In determining "Severity of Current Offense" staff must review the Statement of Reasons (SOR) and ensure the information provided is appropriately used in classifying the inmate.**

**Example**:  According to the PSR the individual was involved in a drug conspiracy responsible for distribution of 31 grams of Cocaine Base "Crack", but was individually only responsible for 2 grams, he/she would be scored as Moderate Severity for this item.  However, the SOR, indicates the Sentencing Judge found the individual responsible for less than 1 gram; therefore, the appropriate scoring should be Low Moderate severity.

- **PROCEDURES FOR PAROLE, MANDATORY RELEASE, SPECIAL PAROLE TERM, OR SUPERVISED RELEASE VIOLATORS**

If the violation was the result of new criminal conduct, regardless of conviction status, use the new criminal conduct for scoring "Severity of Current Offense" (see Appendix A).  If the violation behavior was a technical violation, score the "Severity of Current Offense" as Low Moderate.

The original offense behavior which occurred prior to the violation is considered past behavior and is not used in determining "Severity of Current Offense."

● **PROCEDURES FOR PROBATION VIOLATORS**

The original offense behavior that resulted in probation should be used for scoring "Severity of Current Offense" (see Appendix A).  However, if the new criminal conduct (violation behavior) is more severe than the original offense behavior, then use this behavior for scoring "Severity of Current Offense." **The most severe documented behavior between the original offense and the violation behavior will be used for scoring "Severity of Current Offense."**

8. **CRIMINAL HISTORY SCORE**

| 8. CRIMINAL HISTORY SCORE | 0 = 0-1<br>2 = 2-3 | 4 = 4-6<br>6 = 7-9 | 8 = 10-12<br>10 = 13 + | |
|---|---|---|---|---|
| 8a. SOURCE OF DOCUMENTED CRIMINAL HISTORY | ____ - PRESENTENCE INVESTIGATION REPORT<br>____ - NCIC III | | | |

Enter the appropriate number of Criminal History Points(CHP). SENTRY will automatically convert the CHP to the Bureau's Criminal History Score (CHS).

The CHS is derived from the US Sentencing Guidelines Criminal History Points, as reflected in the final judgment and the SOR. If not found in either the Judgment or SOR, use the points assessed by the USPO in the PSR.

In some cases the Criminal History Points are not available (i.e., when the PSR is waived, on offenses committed prior to November 1, 1987, state cases, and  military and D.C. Code offenders).  Under these circumstances the Criminal History Score will be derived from the criminal history documented in the NCIC III Report according to the following procedures:

   (a)      Add 3 points for each prior sentence of imprisonment exceeding one year and one month;

   (b)      Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a);

   (c)      Add 1 point for each prior conviction not counted in

(a) or (b), up to a total of 4 points for this item; and,

(d)     Add 2 points if the instant offense is a revocation accompanied by a new state or federal conviction, or if the instant offense occurred while under federal supervision including incarceration, probation, parole or supervised release.

The documentation used to assess the Criminal History Points must be provided as specified in all cases.

## 9. **HISTORY OF VIOLENCE**

| 9. HISTORY OF VIOLENCE | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|---|
| | MINOR | 0 | 1 | 1 | 3 | 5 | |
| | SERIOUS | 0 | 2 | 4 | 6 | 7 | |

Enter the appropriate number of points that reflect any history of violence, considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation).  This item includes the individual's entire background of criminal violence, excluding the current term of confinement.

**Exception**:  Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item.  DSCC staff must review the Chronological Disciplinary Record (CDR) for inmates who were previously housed in a federal institution or contract facility.  Any violent act(s) reflected on the CDR must be scored as a history item.  State disciplinary findings must be scored unless there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Severity of violence is determined by the offense behavior regardless of the conviction/finding of guilt offense.  History of Violence points combine both seriousness and recency of prior violent incidents to assess the propensity for future violence. Therefore, if there is more than one incident of violence, score the combination of seriousness and recency that yields the highest point score.  Prior periods of incarceration will be considered a "history" item if the inmate was physically released from custody and then returned to serve either a violation or a new sentence.  In determining time frames, use the date of the documented behavior.  Documented information from a juvenile,

P5100.08
9/12/2006
Chapter 4, Page 12

Youth Corrections Act (YCA) or District of Columbia Youth
Rehabilitation Act (DCYRA) adjudication can be used unless the
record has been expunged or vacated.

Minor History of Violence - Aggressive or intimidating behavior
which is not likely to cause serious bodily harm or death (e.g.,
simple assault, fights, domestic disputes, etc.) There must be a
finding of guilt.

Serious History of Violence - Aggressive or intimidating behavior
which is likely to cause serious bodily harm or death (e.g.,
aggravated assault, domestic violence, intimidation involving a
weapon, incidents involving arson or explosives, rape, etc.).
There must be a finding of guilt.

**Example**:  If an offender was found guilty of homicide 20 years
ago and a simple assault 3 years ago, assign 5 points for the
simple assault.  Or in another case, the offender had guilty
findings for homicide 12 years ago; aggravated assault 8 years
ago; and fighting 2 years ago, score 6 points for the aggravated
assault 8 years ago.

**NOTE**:       Attempted suicide, self-mutilation and possession of
               weapons are not applicable behaviors for History of
               Violence scoring.  In addition, verbal threats (such as
               Code 203- Threatening Bodily Harm) are to be viewed as
               minor violence.

10.  **HISTORY OF ESCAPE OR ATTEMPTS**

| 10. HISTORY OF | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|---|
| ESCAPE OR | MINOR | 0 | 1 | 1 | 2 | 3 | |
| ATTEMPTS | SERIOUS | 0 | 3(S) | 3(S) | 3(S) | 3(S) | |

Enter the appropriate number of points that reflect the escape
history of the individual considering only those acts for which
there are documented findings of guilt (i.e., DHO, Court, Parole,
Mandatory Release, or Supervised Release Violation).  Escape
history includes the individual's entire background of escapes or
attempts to escape from confinement, or absconding from community
supervision, excluding the current term of confinement.

**Exception**:  Any institution disciplinary hearing (UDC or DHO)
finding that a prohibited act was committed during the current
term of confinement will be scored as a history item. DSCC staff
must review the Chronological Disciplinary Record (CDR) for
inmates who were previously housed in a federal institution or

P5100.08
9/12/2006
Chapter 4, Page 13

contract facility.  Any escape(s) or attempt(s) reflected on the
CDR must be scored as a history item.  State disciplinary
findings are to be scored unless there is documentation that the
state disciplinary proceedings did not afford due process
protection to the inmate.

Fleeing or Eluding Arrest, Failure to Appear for traffic
violations, Absconding, runaways from foster homes and similar
behavior should not to be scored under the Escape History item,
even if clearly documented, but should be considered on a case-
by-case basis under the Management Variable "Greater Security."
Failure to Appear or Flight to Avoid Prosecution for any offense
however, must be counted when there is a documented finding of
guilt.

In determining time frames, use the date of the documented
occurrence.  Documented information from a juvenile, YCA, or
DCYRA adjudication can be used unless the record has been
expunged or vacated.

Minor History of Escape - An escape from an open institution or
program (e.g., minimum security facility, CCC, furlough) not
involving any actual or threat of violence.  Also includes
military AWOL, Bail Reform Act, Flight to Avoid Prosecution, and
Absconding from Community Supervision.  There must be a finding
of guilt except as previously noted.

Serious History of Escape - An escape from secure custody with or
without threat of violence.  Also includes escapes from an open
facility or program with actual threat of violence.  There must
be a finding of guilt.  S = 3 points and requires application of
PSF L.

11.  **TYPE OF DETAINER**

| 11. TYPE OF DETAINER | **0** = NONE | **3** = MODERATE | **7** = GREATEST | |
|---|---|---|---|---|
| | **1** = LOWEST/LOW MODERATE | **5** = HIGH | | |

Enter the appropriate number of points that reflect detainer
status.  Refer to the Offense Severity Scale, Appendix A.
Determination is based on the offense of the most serious
detainer.

- If there is a pending charge, points based on the
  documented behavior are assigned on the "Type of
  Detainer" item.  If the pending charges or detainer

involve a probation violation, use the most severe
documented behavior in the original offense as the
basis for assigning points in scoring the detainer.

If law enforcement officials indicate a firm intent to
lodge a detainer, consider it lodged.  Score a
concurrent state sentence as a detainer only if it is
expected that the state sentence will exceed the
federal sentence.  However, score consecutive state
sentences, lodged state detainers, and/or state parole
violation terms/warrants as detainers.

- Consecutive federal sentences are ordinarily not lodged
  as detainers because federal sentences are computed as
  they are received.  If there is more than one sentence,
  the most severe offense will be used as "Severity of
  Current Offense."

  **Example**:  For an individual with two detainers for
  Violation of Firearms Act (Moderate severity
  level) and one for Extortion (High severity
  level), use High = 5 points and enter "5".

- No points will be awarded for U.S. Parole Commission
  warrants (adjudicated or unadjudicated).  However, the
  original offense behavior will be factored into the
  criminal history points and the violation behavior
  (including new offense behavior) will be scored as the
  instant offense.

- No points will be awarded for ICE detainers.  However,
  each case will be carefully reviewed to determine
  whether the PSF for Deportable Alien is applicable.

12. **AGE**

| 12. AGE | **0** = 55 and over | **4** = 25 through 35 | |
|---------|---------------------|------------------------|---|
|         | **2** = 36 through 54 | **8** = 24 or less   | |

SENTRY will automatically enter the appropriate number of points
based on the inmate's date of birth.  Staff do not have to
manually enter an offender's age or points on the BP-337.  If the
offenders date of birth is unknown, SENTRY will default to a
score of 4 points.

13. **EDUCATION LEVEL**

P5100.08
9/12/2006
Chapter 4, Page 15

```
13. EDUCATION    0 = Verified High School Degree or GED
    LEVEL        1 = Enrolled in and making satisfactory progress in GED Program
                 2 = No verified High School Degree/GED and not participating in GED
                     Program

13a. HIGHEST GRADE COMPLETED  _____
```

Enter the appropriate number of points that reflect the inmate's verified education level at the time of designation.

In addition to the points assigned for the education level, the highest grade completed (HGC) will also be recorded on the BP-337. For example, an inmate who began, but did not complete the 7th grade will be given a 6 in the HGC field. Similarly, a GED will be given a 12, a college graduate a 16, a Master's degree an 18, and a Ph.D. a 21 (the maximum allowed) in the HGC field. The value entered for the HGC should, unless missing, be consistent with the points assessed for the inmates education level. If missing, enter a "U" for unknown.

## 14. **DRUG/ALCOHOL ABUSE**

```
14. DRUG/ALCOHOL ABUSE    0 = Never/>5 Years        1 = <5 Years
```

Enter the appropriate number of points that reflect drug or alcohol abuse by the inmate. Examples of drug or alcohol abuse include: a conviction of a drug or alcohol related offense, a parole or probation violation based on drug or alcohol abuse, positive drug test, a DUI, detoxification, etc. Absent any information similar to the above, an inmate's self-report is sufficient to score this item. If this information is unknown enter a "U" and the item will be scored as zero.

## 15. **SECURITY POINT TOTAL**

```
15. SECURITY POINT TOTAL
```

Enter the sum of Items 5 through 14.

## 16. **PUBLIC SAFETY FACTORS**

```
16. PUBLIC     A-NONE                                  I-SENTENCE LENGTH(males only)
    SAFETY     B-DISRUPTIVE GROUP(males only)          K-VIOLENT BEHAVIOR(females only)
    FACTORS    C-GREATEST SEVERITY OFFENSE (males only) L-SERIOUS ESCAPE
               F-SEX OFFENDER                          M-PRISON DISTURBANCE
               G-THREAT TO GOVERNMENT OFFICIALS        N-JUVENILE VIOLENCE
               H-DEPORTABLE ALIEN                      O-SERIOUS TELEPHONE ABUSE
```

See Chapter 5, pages 7-13 for a description of Public Safety

Factors and their application.

17.  **REMARKS**

| 17. REMARKS |
| --- |
|  |
|  |
|  |

A brief explanation of the current offense(s) is required in the
"Remarks" section.  Similarly, Pre-Sentence Investigation Report
information relevant to other scoring items that may have an
impact on the designation process or the transportation of the
inmate (e.g., medical or psychiatric information, or arrest
behavior with no conviction) must also be noted in this section.
Refer to Appendix C, Standard Abbreviations/Terms.  Also, the

individual scoring the case will enter his or her initials at the
end of the "Remarks" section.

18. **OMDT REFERRAL**

```
18. OMDT REFERRAL (YES/NO) ____
```

The Medical Designator, Office of Medical Designations
Transportation (OMDT), must review all cases in which there is a
physical or mental health concern.  Enter "Y" (yes) or N (no) in
this category.  The response will determine which daily log will
reflect the designation information.

### DESIGNATION AND SENTENCE COMPUTATION CENTER ACTION – INITIAL DESIGNATION

It is extremely important for Designators to communicate on a
regular basis to ensure that designation decisions are
consistent.  The Correctional Programs Division encourages the
need for communication and consistency to all Designators.

1. **FACILITY DESIGNATED.**  Enter the mnemonic code for the
institution  designated (Refer to "Enter Initial Designation,"
SENTRY General Use TRM).

2. **CUSTODY ASSIGNMENT.**  Enter the initial custody assignment in
accordance with Table 4-1.

**Table 4-1**

| LEVEL OF INSTITUTION INITIALLY DESIGNATED | INITIAL CUSTODY ASSIGNMENT |
|---|---|
| Minimum | OUT |
| Low | IN |
| Medium | IN |
| High | IN, unless initial designation is to USP Marion or ADX Florence, in which case the initial custody assignment is MAXIMUM. |
| Administrative | IN, unless inmate is Minimum security level and designation was not for security reasons, in which case the initial custody assignment is OUT. |

P5100.08
9/12/2006
Chapter 4, Page 19

3.   **DESIGNATOR.**   The Designator will enter his or her initials.

4.   **REASON FOR DESIGNATION.**   Designators will use this section to document whether the primary reason for designation was for security reasons or for management reasons.

- Enter "S" if the inmate's security level is the primary reason for designation and the placement is within normal guidelines.  If "S" is entered, SENTRY will not permit an entry in the "Management Reason" field.

- Enter "M" if a Management Variable is the primary reason for designation and placement is outside normal guidelines.  When "M" is entered, you must enter the appropriate Management Variable(s) (e.g., B = Judicial Recommendation, D = Release Residence, etc.) under the Management Reason item.  While one MGTV is generally sufficient, a maximum of three MGTVs may be entered into SENTRY.  In the unlikely event that an inmate's designation facility is inconsistent with his or her MSL, at least one additional non-MSL MGTV must be added to support and explain the inconsistency.

- When it is necessary to place an inmate at a particular institution temporarily in order to receive a parole hearing, a secondary designation is required.  The DSCC will notify the Warden of the secondary institution via GroupWise.  Following the hearing, the institution where the inmate was first placed should review the secondary designation and contact the DSCC if the results of the hearing indicate that a change in the secondary designation is required.

5.   **MANAGEMENT VARIABLES.**   See Chapter 5, pages 1-6 for a description of Management Variables and their application.

6.   **REMARKS.**   The Designator will enter any relevant information not already recorded that may have an impact on the designation process or the transportation of the inmate.

P5100.08
9/12/2006
Chapter 4, Page 20

BP-337 **INMATE LOAD AND SECURITY DESIGNATION FORM**                    FEDERAL BUREAU OF PRISONS

| INMATE LOAD DATA |
|---|

**1. REGISTER NUMBER**

| 2. LAST NAME | 3. FIRST NAME | 4. MIDDLE | 5. SUFFIX |
|---|---|---|---|
| | | | |

| 6. RACE | 7. SEX | 8. ETHNIC ORIGIN | 9. DATE OF BIRTH |
|---|---|---|---|
| | | | |

**10. OFFENSE/SENTENCE**

| 11. FBI NUMBER | 12. SSN NUMBER |
|---|---|
| | |

| 13. STATE OF BIRTH | 14. OR COUNTRY OF BIRTH | 15. CITIZENSHIP |
|---|---|---|
| | | |

**16. ADDRESS-STREET**

| 17. CITY | 18. STATE | 19. ZIP | 20. OR FOREIGN COUNTRY |
|---|---|---|---|
| | | | |

| 21. HEIGHT FT ___ IN ___ | 22. WEIGHT _____ LBS | 23. HAIR COLOR | 24. EYE COLOR |
|---|---|---|---|

**25. ARS ASSIGNMENT**

| SECURITY DESIGNATION DATA |
|---|

| 1. JUDGE | 2. REC FACILITY | 3. REC PROGRAM | 4. USM OFFICE |
|---|---|---|---|
| | | | |

**5. VOLUNTARY SURRENDER STATUS**      **0** = NO      **(-3)** = YES

    IF YES, MUST INDICATE: 5a.  VOLUNTARY SURRENDER DATE: _____
                       5b.  VOLUNTARY SURRENDER LOCATION: _____

**6. MONTHS TO RELEASE** _____

| 7. SEVERITY OF | **0** = LOWEST | **3** = MODERATE | **7** = GREATEST |
|---|---|---|---|
|    CURRENT OFFENSE | **1** = LOW MODERATE | **5** = HIGH | |

| 8. CRIMINAL | **0** = 0-1 | **4** = 4-6 | **8** = 10-12 |
|---|---|---|---|
|    HISTORY | **2** = 2-3 | **6** = 7-9 | **10** = 13 + |
|    SCORE | | | |

8a. SOURCE OF DOCUMENTED _____ - PRESENTENCE INVESTIGATION REPORT or _____ - NCIC III
    CRIMINAL HISTORY

| 9. HISTORY OF | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
|   VIOLENCE | MINOR | 0 | 1 | 1 | 3 | 5 |
| | SERIOUS | 0 | 2 | 4 | 6 | 7 |

| 10. HISTORY OF | | NONE | >15 YEARS | >10 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
|   ESCAPE OR | MINOR | 0 | 1 | 1 | 2 | 3 |
|   ATTEMPTS | SERIOUS | 0 | 3 (S) | 3(S) | 3(S) | 3(S) |

| 11. TYPE OF | **0** = NONE | **3** = MODERATE | **7** = GREATEST |
|---|---|---|---|
|    DETAINER | **1** = LOWEST/LOW MODERATE | **5** = HIGH | |

| 12. AGE | **0** = 55 and over | **4** = 25 through 35 |
|---|---|---|
| | **2** = 36 through 54 | **8** = 24 or less |

| 13. EDUCATION | **0** = Verified High School Degree or GED |
|---|---|
|    LEVEL | **1** = Enrolled in and making satisfactory progress in GED Program |
| | **2** = No verified High School Degree/GED and not participating in GED Program |

13a. HIGHEST GRADE COMPLETED _____

| 14. DRUG/ALCOHOL ABUSE | **0** = Never/>5 Years | **1** = <5 Years |
|---|---|---|

**15. SECURITY POINT TOTAL**

| 16. PUBLIC | **A**-NONE | **I**-SENTENCE LENGTH (males only) |
|---|---|---|
|    SAFETY | **B**-DISRUPTIVE GROUP (males only) | **K**-VIOLENT BEHAVIOR (females only) |
|    FACTORS | **C**-GREATEST SEVERITY OFFENSE (males only) | **L**-SERIOUS ESCAPE |
| | **F**-SEX OFFENDER | **M**-PRISON DISTURBANCE |
| | **G**-THREAT TO GOVERNMENT OFFICIALS | **N**-JUVENILE VIOLENCE |
| | **H**-DEPORTABLE ALIEN | **O**-SERIOUS TELEPHONE ABUSE |

**17. REMARKS**

**18. OMDT REFERRAL (YES/NO)** _____

060

P5100.08
9/12/2006
Chapter 4, Page 21



---
### MANAGEMENT VARIABLES AND PUBLIC SAFETY FACTORS
---

## MANAGEMENT VARIABLES

A Management Variable is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level. Application of a Management Variable requires review and approval by the DSCC Administrator. When completing the BP-338, institution staff may only enter a Management Variable which the DSCC previously approved and entered as a management reason. Otherwise, the DSCC is the only office authorized to enter a variable. A maximum of three Management Variables may be entered for each case.

**NOTE:**     SENTRY will not permit the simultaneous application of the Greater Security and Lesser Security MGTVs.

When a Management Variable no longer applies, institution staff will remove the variable(s) accordingly. When no Management Variable is required, institution staff will insert the letter "A" (NONE) in the space to signify that no MGTV(s) apply. Management Variables entered at initial designation are manually transferred to the BP-338, Custody Classification form.

**Request for Management Variable/Management Variable expiration date.** All requests to apply a Management Variable (MGTV) or to update the Management Variable Expiration Date (MVED) must be submitted to the DSCC via GroupWise using the 409 form. Requests for Management Variables on WITSEC inmates are to be forwarded to the Inmate Monitoring Section, Central Office, Washington, DC. The following criteria will be utilized:

   Only the DSCC or Central Office staff can apply a MGTV and update a MVED, with the exception of "I" (Med/Psych), which will be applied and reviewed by the Central Office Medical Designator and "U" (Long-Term Detainee), which will be applied by the Detention Services Branch, Correctional Programs Division, Central Office.

   When requesting a MGTV or an updated MVED, only sections four and six need to be completed on the form 409. This request should normally be made to the DSCC within 21 calendar days following the inmate's scheduled custody review to ensure the DSCC is receiving a current Custody Classification Form, BP-338.

After approval by the Warden, the request may be routed from the unit or shared folders, and unit staff must enter a DST assignment using the Update Transaction.  Staff will enter W MGTV as a DST assignment when the request is routed.  DSCC staff will remove the assignment when the decision is made.

When requesting an updated MVED, staff are to indicate the recommended expiration date on the top portion of form 409.

When a case with the MGTV of "I" (Med/Psych) is scheduled for review and it is anticipated that this MGTV is no longer applicable, institution staff will complete all sections of form 409 and forward the request to the Central Office Medical Designator and the DSCC.  The Central Office Medical Designator will review the case for continuation or deletion of this MGTV. If this MGTV is no longer appropriate, the Central Office Medical Designator will remove the MGTV.  After the Central Office Medical Designator removes the MGTV "I," the DSCC will review the case for transfer.  If a transfer is not appropriate, another MGTV is to be applied.

Expiration dates will be assigned in accordance with Table 5-1. The DSCC Administrator must evaluate the information on the form 409 to determine the appropriate expiration date for all applicable Management Variables.  At the established expiration date, case management staff will review the current Management Variable(s) to determine appropriateness.  In the rare instance when more than one MGTV is applied, all expiration dates will be displayed on the BP-338.  When running a SENTRY roster, each MGTV and corresponding MVED will be displayed.

**Management Security Level (MSL).**  Upon application of any of the following Management Variables: PSF Waived; Greater Security; Lesser Security, the DSCC is to apply an overriding Management Security Level (MSL) to reflect the inmate's assessed security needs.  This MSL takes precedence over the security level reflected in SENTRY which is based upon the scored security level and the application of Public Safety Factors.  Designation must be made to a DFCL commensurate with the inmate's security needs as reflected in the Management Security Level.  **If there is an extenuating circumstance in which an inmate's designation facility is inconsistent with his or her MSL, at least one additional non-MSL MGTV must be added to support and explain the inconsistency.**

P5100.08
9/12/2006
Chapter 5, Page 3

**CODE**      **MGTV - DESCRIPTION**

A          **None.**  No Management Variables apply.  Institution
           staff are permitted to enter this item.

B          **Judicial Recommendation.** The sentencing court may
           recommend a specific institution or program.  When
           consistent with policies or when such actions are
           consistent with sound correctional management, the
           Bureau of Prisons attempts to satisfy judicial
           recommendations.  When this is not feasible, the court
           is notified in writing with an explanation outlining
           the reasons for not satisfying that recommendation.

D          **Release Residence.**  The Bureau of Prisons attempts to
           place each inmate in an institution that is reasonably
           close to the anticipated release area.  Ordinarily,
           placement within 500 miles of the release area is to be
           considered reasonable, regardless of whether there may
           be an institution closer to the inmate's release area.
           This MGTV may also apply to inmates who are within 36
           months of release.

E          **Population Management.**  Situations may occur in which
           an inmate requires housing in a facility which is not
           commensurate with his or her security level.  Following
           are example situations: facility activation; population
           pressures affecting available appropriate-level bed
           space within 500 miles of the inmate's anticipated
           release residence; gang/security concerns.

G          **Central Inmate Monitoring Assignment.**  Pursuant to the
           CIM Program Statement, some inmates, for specified
           reasons, need to be monitored or separated from others.
           Sometimes these special management concerns limit the
           options for placement.

I          **Medical or Psychiatric.**  An inmate who has a history of
           or is presently exhibiting psychiatric problems may
           need an initial designation to a psychiatric referral
           center.  Similarly, documented information reflecting
           that the inmate may need medical or surgical treatment
           may require a designation to a medical referral center.
           Designations and redesignations of these inmates will
           be made by the Central Office Medical Designator.

064

| CODE | MGTV - DESCRIPTION |
|------|--------------------|

**N**    **Program Participation.**  Occasionally, inmates become involved in specialized programs which are only available on a limited basis, or at specific institutions; in such instances, it might be appropriate to delay transfer pending completion of the program.  Likewise, an inmate's ability to participate in a unique program may require placement at an institution not commensurate with his or her security level.  Accordingly, when an inmate's security level changes during participation in a special program not likely to be available in another appropriate facility, causing placement outside normal guidelines, this MGTV will apply.

**R**    **Work Cadre.**  At secure facilities without satellite camps, the Regional Director may authorize a certain number of work cadre inmates to perform work outside the perimeter of the institution.  The DSCC will apply the MGTV upon request of the institution.

**S**    **PSF Waived.**  An inmate may receive up to three Public Safety Factors (PSFs).  PSFs may be waived after review and approval by the DSCC Administrator.   When Public Safety Factors are waived causing placement outside normal guidelines, this MGTV will apply.  Application of this MGTV mandates that the DSCC Administrator determine the most appropriate level of security required by the inmate and apply a Management Security Level (MSL).  The MSL must be at least one level less than the scored security level which is based on the Security Total and PSF(s).

    **Request for Public Safety Factor Waiver.**  Only the DSCC Administrator is authorized to waive a PSF.  A request for waiver of a PSF will be submitted to the DSCC via form 409, available on SALLYPORT.  The form 409 will indicate that the request is for waiver of a Public Safety Factor.  Items 1 through 7 must be completed when submitting a request for waiver of a PSF.

**U**    **Long-term Detainee.**  Long-term detainees are given an initial custody and security level.  However, Custody

P5100.08
9/12/2006
Chapter 5, Page 5

Classification Forms are not to be completed on long-term detainees due to the unavailability or non-applicability of certain data (i.e., current term of confinement, length of time remaining to serve, accurate criminal history).  Therefore, transfers for positive or negative behavior may cause placement in a facility different from his or her scored security or custody level.  When needed, this MGTV will be applied by the Detention Services Branch, Correctional Programs Division, Central Office.

Long-term criminal detainees whose security or custody level does not match that of their facility will have this Management Variable applied.  This applies as well if an inmate rolls over to the status of a long-term detainee after being ordered detained upon expiration of the federal sentence and the security or custody level does not match that of the designated facility.

**V**      **Greater Security**.  There may be security concerns which are not adequately reflected in the classification scheme.  In circumstances where an inmate represents a greater security risk (i.e., pending charges, detainer, escape risk, etc.) than their assigned security level, they may be placed in an institution outside normal guidelines, and this MGTV will apply.  When this MGTV is applied based on institutional behavior which is **not** supported by a UDC/DHO finding of guilt, staff will ensure compliance with the criteria as set forth in the Program Statement on Inmate Discipline and Special Housing Units.  Application of this MGTV mandates the DSCC Administrator determine the most appropriate level of security required by the inmate and apply a Management Security Level (MSL).  Designation will then be made to a DFCL commensurate with the inmate's Management Security Level.  The MSL must be at least one level greater than the scored security level which is based on the Security Total and Public Safety Factor(s).  This MGTV requires up to a 24 month expiration date.

**W**      **Lesser Security**.  There may be security concerns which are not adequately reflected in the classification scheme.  In circumstances where an inmate represents a lesser security risk (i.e., detainer removed, positive adjustment, etc.) than the assigned security level, the

P5100.08
9/12/2006
Chapter 5, Page 6

inmate may be placed in an institution outside normal
guidelines.  For example, where age is largely the
contributing factor in the inmate's placement, this
Management Variable will apply.  Application of this
MGTV mandates the DSCC Administrator to determine the
most appropriate level of security required by the
inmate and apply a Management Security Level (MSL).
The MSL must be at least one level less than the scored
security level which is based on the Security Total and
Public Safety Factor(s).

**DISCONTINUED MANAGEMENT VARIABLES.**  The following Management
Variables have been discontinued: C - Age, F - Racial Balance,
H - Voluntary Surrender, J - Custody, K - Detainer, L -
Discipline,  M - Grandfather Clause, O - Security, P - Sentence
Limitation, and Q - Sliding Scale.

**Table 5-1**

| MANAGEMENT VARIABLE EXPIRATION TABLE | | |
|---|---|---|
| CODE | DESCRIPTION | LENGTH |
| A | None | N/A |
| B | Judicial Recommendation | N/A |
| D | Release Residence/Planning | N/A |
| E | Population Management | Up to 18 months** |
| G | Central Inmate Monitoring Assignment | N/A |
| I | Medical/Psychiatric | 6 months |
| N | Program Participation | Up to 18 months, at the discretion of the Regional Director** |
| R | Work Cadre | N/A |
| S | PSF Waived* | N/A (However, if an inmate is transferred to a more secure institution based on behavior related to the waived PSF, this MGTV will be removed.) |
| U | Long-Term Detainee | N/A |
| V | Greater Security* | Up to 24 months** |
| W | Lesser Security* | N/A |
| *  requires application of a Management Security Level (MSL) ** if no expiration date is entered, SENTRY will default to an expiration date 12 months in advance | | |

068

P5100.08
9/12/2006
Chapter 5, Page 8

## PUBLIC SAFETY FACTORS

A Public Safety Factor (PSF) is relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public.  Public Safety Factors are normally applied on the Inmate Load and Security Designation Form (BP-337) prior to an inmate's initial assignment to an institution, however, additions or deletions may be made at anytime there after via the Custody Classification Form, (BP-338).  A maximum of three PSFs may be applied, however if more than three apply, those which would provide the greatest security and public safety will be utilized.

| **CODE** | **PSF - DESCRIPTION** |
|------|------|

**A**       **None.**  No Public Safety Factors apply.

**B**       **Disruptive Group.**  A **male** inmate who is a validated member of a Disruptive Group identified in the Central Inmate Monitoring System will be housed in a High security level institution, unless the PSF has been waived.

At the time of initial designation, if the Presentence Investigation Report or other documentation identifies the inmate as a possible member of one of the Central Inmate Monitoring Disruptive Groups, DSCC staff will enter a PSF on the BP-337.  However, DSCC staff will not enter the CIM assignment "Disruptive Group."  Upon loading this PSF on a not-yet-validated member, DSCC staff will (1) make a notation in the Remarks Section to indicate the need for validation upon arrival at the institution, and (2) notify the Central Office Intelligence Section, via GroupWise, to advise them of the inmate's status.  Upon the inmate's arrival at the designated institution, the intake screener will notify the institution's Special Investigation Supervisor of the inmate's PSF, to initiate the validation process.

**C**       **Greatest Severity Offense.**  A **male** inmate whose current term of confinement falls into the "Greatest Severity" range according to the Offense Severity Scale (Appendix A) will be housed in at least a Low security level institution, unless the PSF has been waived.

**CODE**      **PSF - DESCRIPTION**

**F**      **Sex Offender.** A **male** or **female** inmate whose behavior in the current term of confinement or prior history includes one or more of the following elements will be housed in at least a Low security level institution, unless the PSF has been waived. A conviction is not required for application of this PSF if the Presentence Investigation Report (PSR), or other official documentation, clearly indicates the following behavior occurred in the current term of confinement or prior criminal history. If the case was dismissed or nolle prosequi, application of this PSF cannot be entered. However, in the case where an inmate was charged with an offense that included one of the following elements, but as a result of a plea bargain was not convicted, application of this PSF should be entered.

**Example:** According to the PSR, the inmate was specifically described as being involved in a Sexual Assault but pled guilty to Simple Assault. Based on the documented behavior, application of this PSF should be entered:

(1)  Engaging in sexual contact with another person without obtaining permission to do so (forcible rape, sexual assault or sexual battery);

(2)  Possession, distribution or mailing of child pornography or related paraphernalia;

(3)  Any sexual contact with a minor or other person physically or mentally incapable of granting consent (indecent liberties with a minor, statutory rape, sexual abuse of the mentally ill, rape by administering a drug or substance);

(4)  Any sexual act or contact not identified above that is aggressive or abusive in nature (e.g., rape by instrument, encouraging use of a minor for prostitution purposes, incest, etc.). Examples may be documented by state or Bureau of Prisons' incident reports, clear NCIC entries, or other official documentation;

(5)  Attempts are to be treated as if the sexual act or contact was completed; and/or,

P5100.08
9/12/2006
Chapter 5, Page 11

(6)  Any offense referenced in the Sex Offender Notification and Registration Program Statement.

| CODE | PSF – DESCRIPTION |
|------|-------------------|

**G**      **Threat to Government Officials.**  A **male** or **female** inmate classified with a Central Inmate Monitoring assignment of Threat to Government Official will be housed in at least a Low security level institution, unless the PSF has been waived.

**H**      **Deportable Alien.**  A male or female inmate who is not a citizen of the United States.  All long-term detainees will have this PSF applied.  When applied, the inmate or the long-term detainee shall be housed in at least a Low security level institution.

The PSF shall not be applied, or shall be removed when the U.S. Immigration and Customs Enforcement (ICE) or the Executive Office for Immigration Review (EOIR) have determined that deportation proceedings are unwarranted or there is a finding not to deport at the completion of deportation proceedings.  The Institution Hearing Program CMA of NO IHP or IHP CMP ND will then be applied.  Additionally, the PSF shall not be applied if the inmate has been naturalized as a United States citizen.

**I**      **Sentence Length.**  A **male** inmate with more than ten years remaining to serve will be housed in at least a Low security level institution unless the PSF has been waived.

A  **male** inmate with more than 20 years remaining to serve will be housed in at least a Medium security level institution, unless the PSF has been waived.

A  **male** inmate with more than 30 years remaining to serve (including non-parolable LIFE sentences) will be housed in a High security level institution unless the PSF has been waived.

**K**      **Violent Behavior.**  A **female** inmate whose current term of confinement or history involves two convictions (or findings of commission of a prohibited act by the DHO) for serious incidents of violence within the last five

P5100.08
9/12/2006
Chapter 5, Page 12

years will be assigned to at least a Low security level institution, unless the PSF has been waived.

**CODE**        **PSF - DESCRIPTION**

L          **Serious Escape.**  A **female** inmate who has been involved in a serious escape within the last ten years, including the current term of confinement, will be assigned to the Carswell Administrative Unit, unless the PSF has been waived.

           A **male** inmate who has escaped from a secure facility (prior or instant offense) with or without the threat of violence or who escapes from an open institution or program with a threat of violence will be housed in at least a Medium security level institution, unless the PSF has been waived.

M          **Prison Disturbance.**  A **male** or **female** inmate who was involved in a serious incident of violence within the institution and was found guilty of the prohibited act(s) of Engaging, Encouraging a Riot, or acting in furtherance of such as described in, but not limited to institution disciplinary codes such as 103, 105, 106, 107, 212, 213 or 218.  Such a finding must be in conjunction with a period of simultaneous institution disruptions.  Males will be housed in at least a HIGH security level institution and females will be assigned to the Carswell Administrative Unit, unless the PSF has been waived.

N          **Juvenile Violence.**  A **male** or **female** offender, currently of juvenile age, who has any documented single instance of violent behavior, past or present, which resulted in a conviction, a delinquency adjudication, or finding of guilt.  Violence is defined as aggressive behavior causing serious bodily harm or death or aggressive or intimidating behavior likely to cause serious bodily harm or death (e.g., aggravated assault, intimidation involving a weapon, or arson).

O          **Serious Telephone Abuse.**  A **male** or **female** inmate who utilizes the telephone to further criminal activities

P5100.08
9/12/2006
Chapter 5, Page 13

or promote illicit organizations and who meets the
criteria outlined below, must be assigned a PSF for
Serious Telephone Abuse.   A conviction is **not required**
for the PSF if the Presentence Investigation Report
(PSR) or other official documentation clearly indicates
that the above behavior occurred or was attempted.   An
inmate who meets this criteria must be housed in at

P5100.08
9/12/2006
Chapter 5, Page 14

least a Low security level institution, unless the PSF
is waived.

The PSF should be entered if any **one** of the following
criteria applies.

(1) PSR or comparable documentation reveals the inmate
was involved in criminal activity facilitated by
the telephone who:

- meets the definition of a leader/organizer or
primary motivator; or

- utilized the telephone to communicate threats
of bodily injury, death, assaults, or
homicides; or

- utilized the telephone to conduct significant
fraudulent activity (actual or attempted) in
an institution; or

- leader/organizer who utilized the telephone
to conduct significant fraudulent activity
(actual or attempted) in the community; or,

- arranged narcotic/alcohol introductions while
confined in an institution.

(2) Federal law enforcement officials or a U.S.
Attorney's Office notifies the Bureau of Prisons
of a significant concern and need to monitor an
inmate's telephone calls;

(3) The inmate has been found guilty of a 100 or 200
level offense code for telephone abuse.

**NOTE:**     200 level offense codes will be reviewed
on a case-by-case basis.

(4) A Bureau of Prisons official has reasonable
suspicion and/or documented intelligence
supporting telephone abuse.

**NOTE:**     Any inmate who is assigned the Serious
Telephone Abuse PSF may be subject to
telephone restriction in accordance with

P5100.08
9/12/2006
Chapter 5, Page 15

the <u>Telephone Regulations for Inmates</u>
Program Statement.

**DISCONTINUED PUBLIC SAFETY FACTORS**

**D**    Firearms        **E** High Drug        **J** Designation Assessment

**Table 5-2**

| SECURITY DESIGNATION TABLE (MALES) | | |
|---|---|---|
| INMATE SECURITY LEVEL ASSIGNMENTS BASED ON CLASSIFICATION SCORE AND PUBLIC SAFETY FACTORS | | |
| Security Point Total | Public Safety Factors | Inmate Security Level |
| **0 - 11** | **No Public Safety Factors** | **Minimum** |
| | Deportable Alien | Low |
| | Juvenile Violence | Low |
| | Greatest Severity Offense | Low |
| | Sex Offender | Low |
| | Serious Telephone Abuse | Low |
| | Threat to Government Officials | Low |
| | Sentence Length | |
| |   Time remaining > 10 Yrs | Low |
| |   Time remaining > 20 Yrs | Medium |
| |   Time remaining > 30 Yrs (Includes non-parolable LIFE and Death penalty cases) | High |
| | Serious Escape | Medium |
| | Disruptive Group | High |
| | Prison Disturbance | High |
| **12 - 15** | **No Public Safety Factors** | **Low** |
| | Serious Escape | Medium |
| | Sentence Length | |
| |   Time remaining > 20 Yrs | Medium |
| |   Time remaining > 30 Yrs (Includes non-parolable LIFE and Death penalty cases) | High |
| | Disruptive Group | High |
| | Prison Disturbance | High |

P5100.08
9/12/2006
Chapter 5, Page 16

| 16 - 23 | **No Public Safety Factors** | **Medium** |
| | Disruptive Group | High |
| | Prison Disturbance | High |
| | Sentence Length | |
| |   Time remaining > 30 Yrs (Includes non-parolable LIFE and Death penalty cases) | High |
| **24 +** | | **High** |

**Table 5-3**

| SECURITY DESIGNATION TABLE (FEMALES) | | |
|---|---|---|
| INMATE SECURITY LEVEL ASSIGNMENTS BASED ON CLASSIFICATION SCORE AND PUBLIC SAFETY FACTORS | | |
| Security Point Total | Public Safety Factors | Inmate Security Level |
| **0 - 15** | **No Public Safety Factors** | **Minimum** |
| | Deportable Alien | Low |
| | Juvenile Violence | Low |
| | Serious Telephone Abuse | Low |
| | Sex Offender | Low |
| | Threat to Government Officials | Low |
| | Violent Behavior | Low |
| | Prison Disturbance | High |
| | Serious Escape | High |
| **16 - 30** | **No Public Safety Factors** | **Low** |
| | Prison Disturbance | High |
| | Serious Escape | High |
| **31 +** | | **High** |

---

| **CUSTODY CLASSIFICATION FORM INSTRUCTIONS (BP-338)** |

---

**INTRODUCTION.**  Custody classification is a procedure whereby an inmate is assigned a level of supervision according to their criminal history and institutional behavior/adjustment.  An inmate's custody level is an indication of how much staff supervision an inmate requires within and beyond the confines of the institution.

An inmate's first custody classification will be scored at the first program review following initial classification (approximately 7 months after arrival at an institution). Subsequent reviews will occur at least every 12 months, but may be conducted earlier in order to enable progress toward community activities. Custody classification will ordinarily occur every 12 months at a regularly scheduled program review.  Only changes which increase or decrease the overall security level assignment of the inmate, i.e. FRP refuse, incident report(s), new sentence, sentence reduction etc., should be scored outside of the 12 month cycle.

When transferring to another institution, inmates normally retain their custody assignments.  If the custody level is inconsistent with that authorized at the receiving institution, the sending institution will change the inmate's custody prior to transfer. Holdovers will retain their initial custody level assignments until their first regularly scheduled custody review at their designated facility for service of sentence.

At each annual custody review, a new Custody Classification Form (BP-338) will be completed, even though the scoring elements may not have changed from the previous form.  Only the most current BP-338 form will be retained in the Inmate Central File, except for those forms that must be retained to document appropriate review and approval for custody reductions (e.g., custody reductions for exception cases require the Warden, or designee, to sign the Custody Classification Form.  The form should be maintained to document the review and approval).  As set forth in the definition of "Maximum" custody, Chapter 2, a BP-338 form changing an inmate's custody to or from "Maximum" custody must be permanently maintained.

It should be clearly understood that the Custody Classification Form only recommends an inmate's custody.  The Unit Team and/or

Warden is the final review authority.  The intent of the Custody
Classification system is to permit staff to use professional
judgment within specific guidelines.  Custody changes are not
dictated solely by the point total.  However, when the Unit Team
decides not to follow the recommendation of the point total, they
must document the reason(s) for this decision in writing on the
Custody Classification Form, and inform the inmate.

| A. IDENTIFYING DATA | | |
|---|---|---|
| 1. INSTITUTION CODE | 2. UNIT | 3. DATE |
| 4. NAME | 5. REGISTER NUMBER | |

| 6. MANAGEMENT VARIABLES | A – NONE<br>B – JUDICIAL RECOMMENDATION<br>D – RELEASE RESIDENCE/PLANNING<br>E – POPULATION MANAGEMENT | G – CIMS<br>I – MED/PSYCH TREATMENT<br>N – PROGRAM PARTICIPATION<br>R – WORK CADRE | S – PSF WAIVED<br>U – LONG-TERM DETAINEE<br>V – GREATER SECURITY<br>W – LESSER SECURITY | |
|---|---|---|---|---|
| 7. PUBLIC SAFETY FACTORS | A – NONE<br>B – DISRUPTIVE GROUP (males only)<br>C – GREATEST SEVERITY OFFENSE (males only)<br>F – SEX OFFENDER<br>G – THREAT TO GOVERNMENT OFFICIALS<br>H – DEPORTABLE ALIEN | I – SENTENCE LENGTH (males only)<br>K – VIOLENT BEHAVIOR (females only)<br>L – SERIOUS ESCAPE<br>M – PRISON DISTURBANCE<br>N – JUVENILE VIOLENCE<br>O – SERIOUS TELEPHONE ABUSE | | |

1.  **INSTITUTION CODE.**  (Automatically displayed by SENTRY.)

2.  **UNIT.** (Automatically displayed by SENTRY.)

3.  **DATE.** (Automatically displayed by SENTRY.)

4.  **NAME.** (Automatically displayed by SENTRY.)

5.  **REGISTER NUMBER.** (Automatically displayed by SENTRY.)

6.  **MANAGEMENT VARIABLES.**  See Chapter 5, pages 1-6.

7.  **PUBLIC SAFETY FACTORS.** See Chapter 5, pages 7-13.

| B.  BASE SCORING |
|---|

1.  **TYPE OF DETAINER**

| 1. TYPE OF DETAINER | 0 = NONE<br>1 = LOWEST/LOW MODERATE | 3 = MODERATE<br>5 = HIGH | 7 = GREATEST | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the inmate's
detainer status.  Refer to the Offense Severity Scale (Appendix
A).  If multiple detainers have been filed, enter the point value
for the most serious charge.  Frequency and sentence length are
not considered.

The scoring of detainers on the Inmate Load and Security Designation Form (BP-337) may differ from the score received on the Custody Classification Form (BP-338).  If there is a pending charge, points based on the documented behavior are assigned on the type of detainer item; if the pending charge involves a probation violation, use the most severe documented behavior from the original offense as the basis for assigning points in the detainer scoring.  Only formally filed detainers are considered on the Custody Classification Form after the second regularly scheduled custody review.

- Score consecutive state sentences, lodged state detainers and/or state parole violation terms/warrants as detainers. Inmates should be informed that it is vitally important that all pending charges and detainers be resolved as quickly as possible so that institution programming and release planning can occur.

- Score concurrent state sentences, as a detainer only if it is expected that the state sentence will exceed the federal sentence and the state has formally filed a detainer.  Other formally filed state pending charges, consecutive sentences, and/or parole violation term/warrants will be scored as detainers.  Points will be assigned the same as they would be for a federal violation (see page 4 of this Chapter for further instructions).

- No points will be awarded for U.S. Parole Commission warrants (adjudicated or unadjudicated).  However, the original offense behavior will be factored into the criminal history points and the violation behavior (including new offense behavior) will be scored as the current offense.

- No points will be assigned for ICE detainers.  However, each case will be carefully reviewed to determine whether the PSF for Deportable Alien is applicable.

- If a formally filed detainer involves a probation violation, use the most severe documented behavior in the original offense as the basis for assigning points in the detainer scoring chart above.

2.  **SEVERITY OF CURRENT OFFENSE**

| 2. SEVERITY OF CURRENT OFFENSE | 0 = LOWEST  1 = LOW MODERATE | 3 = MODERATE  5 = HIGH | 7 = GREATEST | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the most severe documented instant offense behavior.  For multiple offenses, the highest score will be used when scoring the current offense.  Staff will consider the offense behavior of all sentences, including federal sentences that have a future

beginning date or a prior state or D.C. sentence if there was no physical release from custody.

Severity is determined by using the Offense Severity Scale (Appendix A).  Do not use instant offense behavior to also assign points on the "history" items on the Custody Classification Form.

**Example:**  According to the Presentence Investigation Report, the individual was involved in an Assault With Serious Injury (Greatest severity level) but pled guilty to a Simple Assault (Moderate severity level).  Assign the points on the basis of the more severe documented behavior, i.e., assign 7 points (Greatest severity level).  Do not use the current term of confinement information to assign points on the "history" items (numbers 5 and 6 on the Security Designation Data section of the BP-337).

**In determining "Severity of Current Offense" staff must review the Statement of Reasons, (attachment to the Judgment) and ensure the information provided is appropriately used in classifying the inmate.**

**Example:**  According to the Presentence Investigation Report the individual was involved in a drug conspiracy responsible for distribution of 31 grams of cocaine base "Crack", but was individually only responsible for 2 grams, he/she would be scored as Moderate Severity in this category.  However, the **STATEMENT OF REASONS**, indicates the Judge found the individual responsible for less than 1 gram; therefore, the appropriate scoring should be Low Moderate Severity.

- **Procedures for Parole, Mandatory Release, Special Parole Term, or Supervised Release Violator**

    If the violation was the result of new criminal conduct, regardless of conviction status, use the new criminal conduct for scoring "Severity of Current Offense" (see Appendix A).  If the violation behavior was a technical violation, score the "Severity of Current Offense" as Low Moderate Severity.

    The original offense behavior which occurred prior to the violation is considered past behavior and is not used in determining "Severity of Current Offense."

P5100.08
9/12/2006
Chapter 6, Page 6

● **Procedures for Probation Violator**

The original offense behavior that resulted in probation
should be used for scoring "Severity of Current Offense"
(see Appendix A).

However, if the new criminal conduct (violation behavior) is
more severe than the original offense behavior, then use
this behavior for scoring "Severity of Current Offense."
The most severe documented behavior between the original
offense and the violation behavior is to be used for scoring
"Severity of Current Offense."

## 3. MONTHS TO RELEASE DATE

| 3. MONTHS TO RELEASE _____ |
| --- |

If there is a current and valid sentence computation in SENTRY,
SENTRY will automatically enter the number of months remaining
into this field.  If however, there is not a complete Sentence
Computation/Projected Release Date in SENTRY, this entry must be
manually computed.  This item is not figured into the security
point total but impacts the Sentence Length Public Safety Factor.

## 4. CRIMINAL HISTORY SCORE

| 4. CRIMINAL HISTORY | **0** = 0-1 | | **4** = 4-6 | | **8** = 10-12 | |
| --- | --- | --- | --- | --- | --- | --- |
| SCORE | **2** = 2-3 | | **6** = 7-9 | | **10** = 13 + | |

SENTRY will automatically insert the score that was entered for
this item on the BP-337.  If this item was not entered on the BP-
337, insert the appropriate number of points that reflect the
Criminal History Score.  For further details on Criminal History
Score see Chapter 4, Section 8.

## 5. HISTORY OF ESCAPE OR ATTEMPTS

| 5. HISTORY OF ESCAPE | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| OR ATTEMPTS | MINOR | 0 | 1 | 1 | 2 | 3 | |
| | SERIOUS | 0 | 3(S) | 3(S) | 3(S) | 3(S) | |

Enter the appropriate number of points that reflect the escape
history of the individual, considering only those acts for which
there are documented findings of guilt (i.e., DHO, Court, Parole,
Mandatory Release, or Supervised Release Violation).  Escape
History includes the individual's entire background of escapes or
attempts to escape from confinement, or absconding from community

P5100.08
9/12/2006
Chapter 6, Page 7

supervision, excluding the current term of confinement.

**EXCEPTION:**      Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item.

State disciplinary findings are scored unless there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Fleeing or Eluding Arrest, Failure to Appear for traffic violations, runaways from foster homes and similar behavior should not be scored under the Escape History item, even if clearly documented, but should be considered on a case-by-case basis under the Management Variable "Greater Security." Failure to Appear or Flight to Avoid Prosecution for any offense however, must be counted when there is a documented finding of guilt.

In determining time frames, use the date of the documented occurrence. Documented information from juvenile or YCA adjudications can be used unless the record has been expunged or vacated.

Minor History of Escape - An escape from an open institution or program (e.g., minimum security facility, CCC, furlough) not involving any actual or threat of violence. Also includes military AWOL, Bail Reform Act, Flight to Avoid Prosecution, and Absconding from Community Supervision. There must be a finding of guilt.

Serious History of Escape - An escape from secure custody with or without threat of violence. Also includes escapes from an open facility or program with actual threat of violence. There must be a finding of guilt. S = 3 points and requires application of PSF L.

6. **HISTORY OF VIOLENCE**

| 6. HISTORY OF VIOLENCE | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|---|
| | MINOR | 0 | 1 | 1 | 3 | 5 | |
| | SERIOUS | 0 | 2 | 4 | 6 | 7 | |

Enter the appropriate number of points that reflect any history of violence, considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory

Release, or Supervised Release Violation).  This item includes
the individual's entire background of criminal violence,
excluding the current term of confinement.

**EXCEPTION:**    Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item.

State disciplinary findings are scored unless there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Severity of violence is determined by the offense behavior regardless of the conviction/finding of guilt offense.  History of Violence points combine both seriousness and recency of prior violent incidents to assess the propensity for violent behavior, where more points mean greater risk.  Therefore, if there is more than one incident of violence, score the combination of seriousness and recency that yields the highest point score. Prior periods of incarceration will be considered a "history" item if the inmate was physically released from custody and then returned to serve either a violation or a new sentence.  In determining time frames, use the date of the documented behavior. Documented information from juvenile or YCA adjudication can be used unless the record has been expunged or vacated.

Minor History of Violence -  Aggressive or intimidating behavior which is not likely to cause serious bodily harm or death (e.g., simple assault, fights, domestic disputes, etc.) There must be a finding of guilt.

Serious History of Violence -  Aggressive or intimidating behavior which is likely to cause serious bodily harm or death (e.g., aggravated assault, domestic violence, intimidation involving a weapon, incidents involving arson or explosives, rape, etc.).  There must be a finding of guilt.

**Example:**  If an offender was found guilty of homicide 20 years ago and a simple assault 3 years ago, assign 5 points for the simple assault.  Or in another case, the offender had guilty findings for homicide 12 years ago; aggravated assault 8 years ago; and fighting 2 years ago, score 6 points for the aggravated assault 8 years ago.

**NOTE:**    Attempted suicide, self-mutilation and possession of weapons are not applicable behaviors for History of Violence scoring.  In addition, verbal threats (such as Code 203- Threatening Bodily Harm) are to be viewed as minor violence.

## 7. **VOLUNTARY SURRENDER**

| 7. VOLUNTARY SURRENDER | **0** = NOT APPLICABLE | (**-3**) = VOLUNTARY SURRENDER | |
|---|---|---|---|

This item allows for the subtraction of three points from the "Base Score" (Item 11 below), when the Judgement indicates the inmate was ordered to voluntarily surrender.  Enter the appropriate number of points.  For purposes of this item, voluntary surrender means the inmate was not escorted by a law enforcement officer to either the U.S. Marshals Office or the place of confinement.

**NOTE:**     Supervised Release, Mandatory Release, and Parole Violators will not receive credit for Voluntary Surrender even if it is approved by the court.

## 8. **AGE**

| 8. AGE | **0** = 55 and over | **4** = 25 through 35 | |
|---|---|---|---|
| | **2** = 36 through 54 | **8** = 24 or less | |

SENTRY will automatically cross-reference the inmate's date of birth and assign the appropriate number of points that reflect his or her age.  Staff do not have to manually enter an offender's age.

## 9. **EDUCATIONAL LEVEL**

| 9. EDUCATION LEVEL | **0** = Verified High School Degree/GED | |
|---|---|---|
| | **1** = Enrolled in and making satisfactory progress in GED Program | |
| | **2** = No verified High School Degree/GED & not participating in GED Program | |

Enter the appropriate number of points, that reflect the inmate's education level as verified by the Education Department.

**NOTE:**     The scoring of this item on the Custody Classification form differs from the scoring on the Security Designation form.  Therefore, unit staff must reconcile information obtained since the inmate's previous score on this item.

In addition to the points assigned for the education level, the highest grade completed (HGC) will also be recorded on the BP-337.  For example an inmate who began but did not complete the 7th grade will be given a 6 in the HGC field.  Similarly, a GED will be given a 12, a college graduate a 16, a Master's degree an

P5100.08
9/12/2006
Chapter 6, Page 12

18, and a Ph.D. a 21 (the maximum allowed) in the HGC field.

P5100.08
9/12/2006
Chapter 6, Page 13

## 10.  DRUG/ALCOHOL ABUSE

| 10. DRUG/ALCOHOL ABUSE | **0** = Never/>5 Years | **1** = <5 Years | |
|---|---|---|---|

Enter the appropriate number of points that reflect drug or alcohol abuse by the inmate.  Examples of drug or alcohol abuse include: a conviction of a drug or alcohol related offense, a parole or probation violation based on drug or alcohol abuse, positive drug test, a DUI, detoxification, etc.  Absent any information similar to the above, an inmate's self report is sufficient to score this item.  If this information is unknown, enter a "U" and the item will be scored as zero.

## 11.  BASE SCORE

| 11. BASE SCORE (ADD B. ITEMS 1 – 10) | |
|---|---|

SENTRY will compute the base score based upon the points entered for Items 1 – 10 (excluding Item 3).  In cases where the total results in a negative number the base score will be set at zero.

## C. CUSTODY SCORING

## 1.  PERCENTAGE OF TIME SERVED

| 1. PERCENTAGE OF TIME SERVED | **3** = 0-25%  **4** = 26-75% | **5** = 76-90%  **6** = 91+% | |
|---|---|---|---|

Enter the number of points that reflect the percentage of time the inmate has already served on the present commitment at the time of the review.  To determine the percent, divide the number of months already served on the present sentence by the number of months of incarceration the inmate will have served upon reaching his/her projected release date.  If applicable, give credit for jail time.

**Example:**  An inmate has served 15 months (14 months at the institution, plus credit for one month jail time) of an anticipated total of 78 months of confinement.

$$\frac{\text{Actual Time Served}}{\text{Anticipated Time in Confinement}} = \frac{15}{78} = 19.2\%$$

Enter "3" , since 3 represents a range of 0 to 25%.

P5100.08
9/12/2006
Chapter 6, Page 15

2.  **PROGRAM PARTICIPATION**

| 2. PROGRAM PARTICIPATION | 0 = POOR | 1 = AVERAGE | 2 = GOOD | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the inmate's
level of initiative in programming.  This is based on the
inmate's active program involvement, eg. RPP, FRP, Drug education
or Treatment Programs, education programs, or any other suitable
programs as recommended by the Unit Team.  Unit Teams should
score this area at the time of the custody review so input may be
gained from all classification team members.

**NOTE:**      Inmates in "FRP Refuse", "RPP Refuse", or who refuse to
             participate in mandatory drug education or treatment
             programs will be scored with 0 points regardless of any
             other programs achievements.  Otherwise, assign points
             as follows:

GOOD - The inmate actively participates in multiple recommended
programs.

AVERAGE - The inmate could be participating in multiple
recommended programs but chooses to be involved in one at a time.
This also includes inmates who are on official waiting lists for
programs recommended by the Unit Team.

POOR - No program involvement, refuses to participate, or poor
participation in programs in which he/she is enrolled.

3.  **LIVING SKILLS**

| 3. LIVING SKILLS | 0 = POOR | 1 = AVERAGE | 2 = GOOD | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the inmate's
living skills during the past 12 months.  This is based on the
inmate's demeanor, attitude, personal accountability and nature
of interaction with staff and other inmates.  Incident Reports in
and of themselves are not the determining factor in assessing the
points on this item; however, the underlying behavior(s) may
influence the scoring of this item.  Unit Teams should score this
item at the time of the custody review so input may be gained
from all classification team members.

**NOTE:**      Inmates in "FRP Refuse", "RPP Refuse", or who refuse to
             participate in mandatory drug education or treatment
             programs will be scored with 0 points regardless of any

other programs achievements.  Otherwise, assign points as follows.

GOOD - The inmate fully complies with staff expectations. He/she consistently receives outstanding sanitation and work reports and impresses staff as a "model inmate" in all other aspects of adjustment.  He/she has developed a good rapport with staff.  This high level of responsibility is consistent throughout the year.

While behavior(s) of a minor concern may occur occasionally, they do not detract from the inmate's overall favorable performance. He/she is perceived by staff as attempting to program in a positive manner.  Some examples of such behavior(s) are as follows:

● Rare property/sanitation related counseling necessary; however, not as the result of or leading to an Incident Report or extra duty;

● Work reports that are excellent overall, though not all evaluation elements are rated as "outstanding;" and,

● Uncharacteristic instances of staff reported negative interactions or behavior that do not result in Incident Reports.

AVERAGE - The inmate generally complies with staff expectations although falls short of providing a full and complete effort. He/she has been counseled about sanitation, work performance and/or other aspects of adjustment; however, the inmate is not viewed as problematic.  The inmate's rapport with staff is satisfactory.  The inmate presents well personally; however, he/she fails to display any significant motivation for self-improvement.

POOR - The inmate consistently fails to meet staff expectations as evidenced by poor quarters sanitation, personal hygiene, negative interaction with staff/peers, or poor work reports.

## 4.  **TYPE AND NUMBER OF MOST SERIOUS INCIDENT REPORT(S)**

| 4. TYPE & NUMBER | **0** | = ANY GREAT (100) IN PAST 10 YRS | **3(A)**= 1 MOD      (300) IN PAST YR | |
|---|---|---|---|---|
| OF MOST | **1** | = > 1 HIGH (200) IN PAST 2 YRS | **3(B)**= >1 LOW MOD (400) IN PAST YR | |
| SERIOUS | **2(A)**= | 1 HIGH (200) IN PAST 2 YRS | **4** = 1 LOW MOD (400) IN PAST YR | |
| INCIDENT RPT | **2(B)**= | > 1 MOD (300) IN PAST YR | **5** = NONE | |

Enter the points that reflect the most serious Incident Report(s) received by the inmate.  This is determined by using the Institution Disciplinary Codes and Sanctions Severity Scale. Points are assigned based on the most severe Incident Report(s) for which the inmate has been found guilty by either the Unit Disciplinary Committee (UDC) or the Discipline Hearing Officer (DHO), within the specified time frames.  Points are to be assigned only for the current period of incarceration.

**NOTE:**      Disciplinary findings while an inmate is housed under BOP authority in non-BOP correctional facilities should be scored if received during the current period of incarceration unless there is documentation that the disciplinary proceeding(s) did not afford due process protection to the inmate.

**Example:**  If an inmate has been found guilty of three HIGH severity Incident Reports within the past two years, he/she would receive a score of "1."  If the inmate has only received one HIGH severity incident report within the past two years, the inmate would receive a score of "2(a)."

**NOTE:**      Greatest severity Incident Reports merit a score of "0" regardless of the total number received in the last ten years.

The letter characters assigned to numerical scores 2 and 3 are merely used to differentiate between these items which have identical numerical values.  The letter character is not used for computation.

**NOTE:**      For supervised release, mandatory release, and parole violators, Incident Reports received during a previous period of confinement should be used, if they apply, for scoring "History of Escape or Violence," and "Drug/Alcohol Abuse."  However, Incident Reports received during a previous period of confinement will not be counted when scoring "Type and Number of Most Serious Incident Reports" and "Frequency of Incident Reports" since this behavior occurred during a previous period of confinement.  Only Incident Reports received during the current supervised release and parole violator term will be counted in these categories.

5.  **FREQUENCY OF INCIDENT REPORTS**

| 5. FREQUENCY OF INCIDENT REPORTS (IN PAST YEAR) | **0** = 6+ **1** = 2 THRU 5 | **2** = ONE **3** = NONE | |

Enter the appropriate number of points that reflect the frequency of Incident Reports.

This is determined by assigning points based on the number of Incident Reports for which the inmate has been found guilty by either the Unit Discipline Committee or the Discipline Hearing Officer during the past 12 months.

6. **FAMILY/COMMUNITY TIES**

| 6. FAMILY/COMMUNITY TIES   **3** = NONE OR MINIMAL | **4** = AVERAGE OR GOOD | |

Enter the number of points that reflect the level of family and community ties.  This is based on the inmate's efforts to build, maintain and strengthen family/community ties rather than the unilateral efforts of the family/community to provide support and assistance to the inmate.  Consideration should be given to the following:

- Financial support (not to include FRP participation);

- Visiting (consider inmate's efforts in establishing visiting list, frequency of visits, and who is visiting);

- Development of phone list with focus on family, employment, and community;

- Sending and receiving regular correspondence;

- Participation in Institution Release Preparation Program and institution sponsored mock job fairs;

- Involvement in parenting program and other family oriented activities;

- Contacts with social service providers to promote/enhance family stability (i.e., school guidance counselors, welfare workers, treatment providers);

- Contact with Prisoner Visitation Services;

- Participation in institution sponsored community service

opportunities (i.e., Toys for Tots, Make a Wish Foundation, community gardens, Special Olympics); and,

- Voluntary involvement with community activities.

Score each inmate based on his/her unique circumstances while focusing on what the inmate does to maintain, build or strengthen these ties.  To best accomplish this, Unit Teams should score this item at the custody review so input can be gained from all classification team members and possibly even the inmate.

**Examples:**

Inmates who demonstrate no initiative to further and/or enhance relationships with supportive parents/spouse/children should be scored as "none or minimal." (e.g., visiting and phone lists that do not include family members, no effort to provide financial support for children);

Inmates with limited financial resources who have parents/spouse/children living significant distances from their designated facilities, and request to have these family members placed on their visiting and phone lists, and send and receive frequent letters from family and make phone calls to them when funds are available.  These inmates score as "average or good;" and,

Inmates with no surviving parents, siblings, spouse, or children may receive an "average or good" rating by developing contacts through Prisoner Visitation Services (PVS) and participation in community based activities and community service opportunities.

7. **CUSTODY TOTAL**

| 7. CUSTODY TOTAL (ADD C. 1 - 6) | |
|---|---|

Add the points in items 1 through 6, Section C, and enter the sum in this block.

8. **CUSTODY VARIANCE**

| 8. CUSTODY VARIANCE (FROM APPROPRIATE TABLE ON BP-338, PAGE 2) | |
|---|---|

The Custody Variance adjusts the inmate's total security points as specified in Tables 6-1(M) and 6-1(F) based upon the inmates

P5100.08
9/12/2006
Chapter 6, Page 20

custody score.  If the appropriate table indicates a value other
than zero the application of the Custody Variance will:

* add points to the base score, thus raising the security
  level and increasing the custody (when the value is
  positive); or,

* subtract points from the base score, thus lowering the
  security level and decreasing the custody (when the value is
  negative).

**Table 6-1(M)**

| Male Custody Variance Table | | CUSTODY TOTAL | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| B S A C S O E R E | 0–11 | +4 | +4 | +3 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | −1 | −1 | −2 | −3 | −4 | −5 | −5 |
| | 12–15 | +4 | +4 | +3 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | 0 | −1 | −2 | −3 | −4 | −5 | −5 |
| | 16–23 | +8 | +6 | +5 | +4 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | −1 | −1 | −2 | −2 | −3 |
| | 24+ | +8 | +6 | +5 | +4 | +4 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | 0 | −1 | −1 | −2 | −3 |

**Example:**  A male inmate has a Base Score of 17 points and a
Custody Total of 11 points.  By using the Custody Variance
Matrix, the intersecting point for these two items is +3.  Thus,
+3 is the Custody Variance score that will be entered on Item 8,
Section C.

**Table 6-1(F)**

| Female Custody Variance Table | | CUSTODY TOTAL | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| B S A C S O E R E | 0–15 | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | −2 | −4 | −8 | −12 | −16 |
| | 16–30 | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | 0 | −4 | −8 | −12 | −16 |
| | 31+ | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | 0 | 0 | −1 | −5 | −8 |

**Example:**  A female inmate has a Base Score of 17 points and a
Custody Total of 11 points.  By using the Custody Variance
Matrix, the intersecting point for these two items is +2.  Thus,
+2 is the Custody Variance score that will be entered on Item 8,
Section C.

9.  **SECURITY TOTAL**

| 9. SECURITY TOTAL (ADD OR SUBTRACT CUSTODY VARIANCE (C.8) TO BASE SCORE (B.10)) | |
|---|---|

Apply the Custody Variance Score to the Base Score, and enter the result on Item 10, Section C.

**Example:**  An inmate has a Base Score of 16 and a Custody Variance Score of +4.  By applying +4 to 16, a Security Total of 20 is obtained and entered on Item 9, Section C.

**NOTE:**      If the Custody Variance score is 0, the figure entered
              will be exactly the same as the Base Score.  If the
              application of the Custody Variance to the Base Score
              results in a negative number, use 0.

## 10.  SCORED SECURITY LEVEL

| 10. SCORED SECURITY LEVEL      _____ |
| --- |

An inmate's Security Level is determined by the Security Total
and any applicable Public Safety Factors (see Chapter 5).

## 11.  MANAGEMENT SECURITY LEVEL (MSL)

| 11. MANAGEMENT SECURITY LEVEL _____ |
| --- |

A Security Level which is entered by the DSCC or Central Office
upon application of any of the three MSL Management Variables
(PSF Waived, Greater Security, Lesser Security).  The MSL
overrides the inmate's scored security level.  If there was a
previously entered MSL, it will automatically appear in this
position.

## 12.  CUSTODY CHANGE CONSIDERATION

To determine eligibility for a custody change, the following
procedures apply:

- If the Custody Variance Score (Section C, Item 8) is in
  the positive (+) range, consider a custody increase;

- If the Custody Variance Score (Section C, Item 8) is 0,
  the inmate's present custody is continued; or,

- If the Custody Variance Score (Section C, Item 8) is in
  the negative (-) range, consider a custody decrease.

## SECTION D.  INSTITUTION ACTION

## 1.  TYPE OF REVIEW

| 1. TYPE OF REVIEW     (EXCEPTION OR REGULAR) | |
| --- | --- |

An inmate should be handled as an exception case if there is
documentation of the following:

P5100.08
9/12/2006
Chapter 6, Page 24

- **Public Safety Factors**.  Any inmate with a PSF.  If the PSF has been waived the case is still considered an exception;

- **Central Inmate Monitoring Assignment**.  An inmate with a CIM assignment, excluding state prisoners and separation cases; or,

- **Other**.  The Warden may specify in writing other offenses or cases that require exception review.

If the inmate does not meet any of the above criteria the "Type of Review" will be "Regular."  For Regular Cases, the Unit Team has authority to make custody assignments, and the Unit Manager is the signature authority on the BP-338.  For Exception Cases, the Warden or designee is the approving official and retains signature authority for the BP-338 whenever there is a decrease in custody.  Unit staff will indicate on the BP-338 form the reason for the Exception Case, only in those instances in which the unit team will make a recommendation for a reduction in custody level.

2.  **CURRENT CUSTODY**

| 2. CURRENT CUSTODY  (MAXIMUM, IN, OUT, COMMUNITY) | |
|---|---|

Check the proper code for the inmate's current custody:

    MAX = MAXIMUM, IN = IN, OUT = OUT, COM = COMMUNITY

3.  **NEW CUSTODY**

| 3. NEW CUSTODY  (MAXIMUM, IN, OUT, COMMUNITY) | |
|---|---|

Check the proper code for the inmate's new custody:

    MAX = MAXIMUM, IN = IN, OUT = OUT, COM = COMMUNITY

As indicated below, the Custody Classification Form only recommends; the final decision rests with the review authority. With the exceptions noted previously in Item 1, Type of Review, the Unit Team has the following options:

101

P5100.08
9/12/2006
Chapter 6, Page 25

**Table 6-2**

| BP-338 FORM RECOMMENDS | CLASSIFICATION TEAM OPTIONS |
|---|---|
| Custody Increase(+) range | Increase custody one level<br>or<br>Continue same custody assignment and document why |
| Custody Decrease(-) range | Decrease custody one level<br>or<br>Continue same custody assignment and document why |
| Continue Present Custody | Continue same custody assignment<br>or<br>(Refer to the Warden, see below) |

The custody level should normally be reduced or increased by only one level (i.e., a reduction of IN would be to OUT, not to COMMUNITY; an increase from COMMUNITY would be to OUT, not to IN).  However, an exception regarding increases can be made for disciplinary cases involving prohibited acts of the Greatest Severity or escape, provided it is justified by the Unit Team in a memo to the inmate's central file with a copy to the inmate.

Additionally, transfer to a CCC may require the custody level to be decreased more than one level.  If the inmate is receiving a custody reduction solely for the purpose of transferring to a CCC, a new Custody Classification Form (BP-338) does not need to be completed.  Approval for a decrease to COMMUNITY custody is granted by virtue of the Warden's approval and signature on the Institution Referral for CCC Placement (BP-210).

While it is mandatory that COMMUNITY custody be effected at the time of transfer, it may not be appropriate to reduce the inmate's custody level prior to the date of transfer (e.g., it would not be appropriate for an IN custody inmate at a MEDIUM security level institution to have COMMUNITY custody while still housed at the institution).  In such cases, upon receipt of a CCC acceptance date, a SENTRY future assignment would be established for the date of transfer.  The effective time for the reduction would be 12:01 AM.  An inmate must be assigned COMMUNITY custody status prior to transfer to a CCC.

If the Custody Variance (Section C, Item 8) is zero (Continue Present Custody), and the Unit Team believes that there is a compelling reason to change the inmate's custody, the Unit Team will refer the case to the Warden, who is the deciding official.

4. **ACTION**

| 4. ACTION:      (APPROVE, DISAPPROVE) | |
|---|---|

For exception cases only, the Warden or designee should check the appropriate box indicating either approval or disapproval of the Unit Team's decision.  If the Warden disagrees with the form, he/she will indicate the reasons on the 338 form.  For regular cases, the Unit Manager will take this action.

5. **DATE OF NEXT REVIEW**

| 5. DATE OF NEXT REVIEW | |
|---|---|

Enter the month and year of the next scheduled review.

6. **CHAIRPERSON**

| 6. CHAIRPERSON |
|---|
| _____<br>NAME AND SIGNATURE |

The Unit Manager will print his or her name and sign the form in the space provided.

7. **EXCEPTION REVIEW**

| 7. EXCEPTION REVIEW |
|---|
| _____<br>NAME (WARDEN OR DESIGNEE) AND SIGNATURE |

This item is reserved for the Warden or designee's printed name and signature if the inmate is an exception case as defined in Item 1 of this section.  If the Warden or designee disapproves, the reason will be documented on the Custody Classification Form (BP-338) and a copy provided to the inmate.

8. **SUMMARY OF FINAL ACTION**

| 8. SUMMARY OF FINAL ACTION: | SECURITY LEVEL | |
|---|---|---|
| | CUSTODY | |

After all action is complete (exception cases signed off, etc.,)

P5100.08
9/12/2006
Chapter 6, Page 27

the final outcome will be entered.  Upon completion, the form is
to be filed in the Inmate Central File, Section 2, and the
appropriate custody assignment updated in SENTRY.

P5100.08
9/12/2006
Chapter 6, Page 28

**BP-338 CUSTODY CLASSIFICATION FORM**
**PAGE 1**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| A.   I D E N T I F Y I N G   D A T A |
|---|

| 1. INSTITUTION CODE | 2. UNIT | 3. DATE |
|---|---|---|

| 4. NAME | 5. REGISTER NUMBER |
|---|---|

| 6. MANAGEMENT VARIABLES | **A** – NONE<br>**B** – JUDICIAL RECOMMENDATION<br>**D** – RELEASE RESIDENCE/PLANNING<br>**E** – POPULATION MANAGEMENT | **G** – CIMS<br>**I** – MED/PSYCH TREATMENT<br>**N** – PROGRAM PARTICIPATION<br>**R** – WORK CADRE | **S** – PSF WAIVED<br>**U** – LONG TERM DETAINEE<br>**V** – GREATER SECURITY<br>**W** – LESSER SECURITY | |
|---|---|---|---|---|

| 7. PUBLIC SAFETY FACTORS | **A** – NONE<br>**B** – DISRUPTIVE GROUP (males only)<br>**C** – GREATEST SEVERITY OFFENSE (males only)<br>**F** – SEX OFFENDER<br>**G** – THREAT TO GOVERNMENT OFFICIALS<br>**H** – DEPORTABLE ALIEN | **I** – SENTENCE LENGTH (males only)<br>**K** – VIOLENT BEHAVIOR (females only)<br>**L** – SERIOUS ESCAPE<br>**M** – PRISON DISTURBANCE<br>**N** – JUVENILE VIOLENCE<br>**O** – SERIOUS TELEPHONE ABUSE | |
|---|---|---|---|

| B.   B A S E   S C O R I N G |
|---|

| 1. TYPE OF DETAINER | **0** = NONE<br>**1** = LOWEST/LOW MODERATE | **3** = MODERATE<br>**5** = HIGH | **7** = GREATEST | |
|---|---|---|---|---|
| 2. SEVERITY OF CURRENT OFFENSE | **0** = LOWEST<br>**1** = LOW MODERATE | **3** = MODERATE<br>**5** = HIGH | **7** = GREATEST | |
| 3. MONTHS TO RELEASE | _____ | | | |
| 4. CRIMINAL HISTORY SCORE | **0** = 0-1<br>**2** = 2-3 | **4** = 4-6<br>**6** = 7-9 | **8** = 10-12<br>**10** = 13 + | |

| 5. HISTORY OF ESCAPE OR ATTEMPTS | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | 0 <5 YEARS | |
|---|---|---|---|---|---|---|---|
| | MINOR | **0** | **1** | **1** | **2** | **3** | |
| | SERIOUS | **0** | **3(S)** | **3(S)** | **3(S)** | **3(S)** | |

| 6. HISTORY OF VIOLENCE | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|---|
| | MINOR | **0** | **1** | **1** | **3** | **5** | |
| | SERIOUS | **0** | **2** | **4** | **6** | **7** | |

| 7. VOLUNTARY SURRENDER STATUS | **0** = NOT APPLICABLE | | **(-3)** = VOLUNTARY SURRENDER | |
|---|---|---|---|---|
| 8. AGE | **0** = 55 and over<br>**2** = 36 through 54 | **4** = 25 through 35<br>**8** = 24 or less | | |
| 9. EDUCATION LEVEL | **0** = Verified High School Degree/GED<br>**1** = Enrolled in and making satisfactory progress in GED Program<br>**2** = No verified High School Degree/GED & not participating in GED Program | | | |
| 10. DRUG/ALCOHOL ABUSE | **0** = Never/>5 Years | **1** = <5 Years | | |
| 11. BASE SCORE (ADD §B. ITEMS 1 - 10) | | | | |

| C. CUSTODY SCORING |
|---|

| 1. PERCENTAGE OF TIME SERVED | **3** = 0-25%<br>**4** = 26-75% | **5** = 76-90%<br>**6** = 91+% | | |
|---|---|---|---|---|
| 2. PROGRAM PARTICIPATION | **0** = POOR | **1** = AVERAGE | **2** = GOOD | |
| 3. LIVING SKILLS | **0** = POOR | **1** = AVERAGE | **2** = GOOD | |
| 4. TYPE & NUMBER OF MOST SERIOUS INCIDENT RPT | **0** = ANY GREAT (100) IN PAST 10 YRS<br>**1** = > 1 HIGH (200) IN PAST 2 YRS<br>**2(A)** = 1 HIGH (200) IN PAST 2 YRS<br>**2(B)** = > 1 MOD (300) IN PAST YR | **3(A)** = 1 MOD (300) IN PAST YR<br>**3(B)** = >1 LOW MOD (400) IN PAST YR<br>**4** = 1 LOW MOD (400) IN PAST YR<br>**5** = NONE | | |
| 5. FREQUENCY OF INCIDENT REPORTS (IN PAST YEAR) | **0** = 6+<br>**1** = 2 THRU 5 | **2** = ONE<br>**3** = NONE | | |
| 6. FAMILY/COMMUNITY TIES | **3** = NONE OR MINIMAL | **4** = AVERAGE OR GOOD | | |
| 7. CUSTODY TOTAL (ADD § C. 1 - 6) | | | | |
| 8. CUSTODY VARIANCE (FROM APPROPRIATE TABLE ON BP-338, PAGE 2) | | | | |
| 9. SECURITY TOTAL (ADD OR SUBTRACT CUSTODY VARIANCE (§ C.8) TO BASE SCORE (§ B.11) | | | | |
| 10. SCORED SECURITY LEVEL _____ | 11. MANAGEMENT SECURITY LEVEL _____ | | | |

105

P5100.08
9/12/2006
Chapter 6, Page 29

| BP-338 **CUSTODY CLASSIFICATION FORM**<br>**PAGE 2** | **U.S. DEPARTMENT OF JUSTICE**<br>**FEDERAL BUREAU OF PRISONS** |
|---|---|

| SECTION D:   INSTITUTION ACTION | |
|---|---|

| 1.   TYPE OF REVIEW:      (EXCEPTION OR REGULAR) | |
|---|---|
| 2.   CURRENT CUSTODY:  (MAXIMUM, IN, OUT, COMMUNITY) | |
| 3.   NEW CUSTODY:  (MAXIMUM, IN, OUT, COMMUNITY) | |
| 4.   ACTION:      (APPROVE, DISAPPROVE) | |
| 5.   DATE OF NEXT REVIEW | |

6.   CHAIRPERSON

_____
NAME AND SIGNATURE

7.   EXCEPTION REVIEW

_____
NAME (WARDEN OR DESIGNEE) AND SIGNATURE

| 8.   SUMMARY OF FINAL ACTION:                    SECURITY LEVEL | |
|---|---|
| CUSTODY | |

| CUSTODY CHANGE RECOMMENDATIONS BASED ON CUSTODY VARIANCE | |
|---|---|
| IF CUSTODY VARIANCE IS IN THE (+) RANGE | CONSIDER A CUSTODY INCREASE |
| IF CUSTODY VARIANCE IS IN THE (-) RANGE | CONSIDER A CUSTODY DECREASE |
| IF CUSTODY VARIANCE IS ZERO | CONTINUE PRESENT CUSTODY |

**Male Custody Variance Table** — CUSTODY

| BASE SCORE | | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0-11 | +4 | +4 | +3 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | -1 | -1 | -2 | -3 | -4 | -5 | -5 |
| | 12-15 | +4 | +4 | +3 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | 0 | -1 | -2 | -3 | -4 | -5 | -5 |
| | 16-23 | +8 | +6 | +5 | +4 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | -1 | -1 | -2 | -2 | -3 |
| | 24+ | +8 | +6 | +5 | +4 | +4 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | 0 | -1 | -1 | -2 | -3 |

**Female Custody Variance Table** — CUSTODY

| BASE SCORE | | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0-15 | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | -2 | -4 | -8 | -12 | -16 |
| | 16-30 | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | 0 | -4 | -8 | -12 | -16 |
| | 31+ | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | 0 | 0 | -1 | -5 | -8 |

P5100.08
9/12/2006
Chapter 7, Page 1

---

## INMATE TRANSFER

---

**TRANSFER PROCEDURES.**  Transfers (also known as redesignations) are used to move inmates from one institution to another as needed, with each type of transfer having a specific objective. The following are some of the more frequent reasons for a transfer:

- institution classification;
- nearer release;
- disciplinary/close supervision;
- adjustment;
- medical/psychological treatment;
- temporary transfers;
- training purposes/program participation;
- Institution Hearing Program;
- pre-release; and,
- transfers from CCC's.

After review and approval by the Unit Team, a transfer request is submitted via the Request for Transfer/Application of Management Variable (409) to the DSCC.  The procedures for completing the 409 are outlined below and may only be waived or modified with the approval of the Assistant Director, Correctional Programs Division, Washington, D.C. or his/her designee.

1. **Inmate's Medical Status**.  Include current, complete, and accurate available information concerning any medical problem that might affect redesignation;

2. **Institution Adjustment.**  Include a brief description of the inmate's adjustment during this period of incarceration with emphasis on recent adjustment;

3. **Rational for Referral**.  Include a complete, specific justification and support for the requested action;

4. **Parole Hearing Scheduled.**  Indicate whether or not the inmate is eligible for a parole hearing.  If yes, indicate the date of the hearing.  (See SALLYPORT for a current listing of parole/non-parole institutions).

P5100.08
9/12/2006
Chapter 7, Page 2

5.  **Past or Present Behavior and/or Management Concerns**.  Note any past or present behavior and/or management concerns which may affect placement (i.e., history of arrests or disruptive behavior which may not have resulted in a conviction, inmates preference regarding this request, etc.).  Also note any Security Threat Group concerns/associations.  In addition, it is necessary for staff to closely review each case submitted for any CIM concerns. Any CIM concerns should be noted on the 409 if applicable. However, it is not necessary for staff to route a Request for CIM Activity Clearance with each transfer request since CIM activity clearance is included in the redesignation for all CIM assignments except WITSEC cases.  Redesignations between same security level institutions are discouraged, except for CIM purposes, nearer release purposes, or other unusual circumstances.  Copies of all transfer requests for Disruptive Group Members will be forwarded to the Intelligence Section, Central Office, via GroupWise upon approval of the transfer. Additionally, the institution Special Investigative Supervisor should also receive a copy of the transfer request; and

6.  **BP-337/BP-338 Discrepancies**.  Include a brief description of any scoring changes between the BP-337 and BP-338.

Complete all required information, then route the request through normal institutional review channels for approval by the CEO.  After approval by the CEO, it may be routed to the DSCC Administrator from the unit's mailbox.  The Unit Team will enter the appropriate "DST" assignment (see below) into SENTRY as confirmation that a redesignation request has been submitted to the DSCC or OMDT.  Enter this SENTRY assignment under the "DST" category using the "Update Inmate Assignment" transaction.

- Enter "W REDES R" if the transfer request is for a routine transfer.

- Enter "W REDES M" if the transfer request requires a review by the OMDT (Medical Designator).

Once the e-mail requesting redesignation is received, DSCC staff will at a minimum review the following SENTRY transactions to determine if the inmate is appropriate for redesignation:

> CIM Clearance and Separatee Data;
> Inmate Load Data;
> Inmate Profile;
> Custody Classification Form;

Security/Designation Data Form; and,
Chronological Disciplinary Record.

If the transfer is approved, DSCC staff will enter the information and the appropriate destination (DST) assignment in SENTRY on the "Enter Redesignation" screen and will also note the approved institution transfer code.  The method of transportation is at the discretion of the Warden.  Should a change in DST be required, DSCC staff will make the change in SENTRY prior to the inmate's arrival at the designated institution.

If the transfer is denied, DSCC staff will indicate the denial on the "Update Inmate Remarks" screen and will also delete the "W REDES" from SENTRY.  Unit staff should closely monitor SENTRY for deletions of the "W REDES" transaction.

1.  **INSTITUTION CLASSIFICATION TRANSFERS.**  These transfers are typically referred to as either "Lesser Security" (Code 308) transfers or "Greater Security" (Code 307) transfers.

   a.  **Security Level Changes**

      (1) When a decrease in the inmate's security level is indicated by the Custody Classification Form, transfer of the inmate to a lower security level institution should be considered.

      (2) Likewise, an increased security level may be indicated in a similar fashion.  The security total may increase to a higher security level range.

If an updated security scoring, combined with Public Safety Factors, indicate that an inmate is rated at a different security level, the inmate must be referred to the DSCC for either transfer or application of a Management Variable.  For example, if an inmate in a Low security level institution is reclassified to Minimum security, the case must be referred for transfer or application of a Management Variable.  If transfer is denied, DSCC staff will apply an appropriate Management Variable and add a Management Security Level, if applicable.

   b.  **Custody Level Changes.**  During an inmate's custody review, a custody level may be increased or decreased (ordinarily, only one level at a time) indicating a transfer is appropriate.  For example:

109

(1)   A Medium security level inmate has OUT custody, and
becomes eligible for COMMUNITY custody.  If the Unit Team
decides to reduce custody, the inmate would normally be
referred for redesignation to a Low or Minimum security
level facility, since Medium security level institutions do
not house COMMUNITY custody inmates.  If approved for
transfer by the DSCC, the Management Variable of Lesser
Security will be applied and the Management Security Level
will be changed accordingly.

(2)   An inmate's transfer to a higher security institution
could be triggered by an increase in custody needs.  For
example, a Medium security level inmate with IN custody
becomes eligible for a custody increase.  The team agrees to
increase the custody to Maximum.  Since Medium security
level facilities are not authorized to house Maximum custody
inmates, the inmate must be referred for transfer to a High
security level institution and the MSL changed in accordance
with the application of an MGTV.

2.   **NEARER RELEASE TRANSFERS (Code 313)**.  Nearer release
transfers move the inmate closer to their legal residence or
release destination, consistent with their security level.
Inmates may be considered for a nearer release transfer only
after serving 18 consecutive months of clear conduct in a general
population.  Nearer release transfers should be incorporated with
"Lesser Security" transfers whenever possible.  Once the inmate
has been transferred within 500 miles of his or her release
residence, no further referrals will be made for nearer release
transfer consideration.

Transfer to a facility in an area other than the inmate's legal
residence or sentencing district may be considered by the
inmate's Unit Team provided the inmate can provide strong
evidence of community and/or family support.  Institution staff
should use sound correctional judgment when reviewing such
requests for transfer to ensure the transfer is consistent with
guidelines established in this chapter.

Inmates with an Order for Deportation, an Order of Removal, an
ICE detainer for an unadjudicated offense(s) or an ICE detainer
for a hearing will not be transferred for nearer release purposes
since they will be returning to the community outside, rather
than inside, the United States upon release.

3.   **WITSEC TRANSFERS**.  All movement of Witness Security cases is

coordinated exclusively through the Inmate Monitoring Section of the Correctional Programs Branch, Central Office. Witness Security cases will not be transferred without authorization from that office. Witness Security inmates who require medical or mental health treatment at a medical center must also be approved by the Medical Designator.

If the inmate is classified as a WITSEC case, a copy of the medical referral will be sent simultaneously to the Inmate Monitoring Section (IMS) and the Medical Designator. The Inmate Monitoring Section will coordinate with the OMDT regarding an appropriate placement. Placement will be based on available medical resources, security needs, bed space availability, and the inmate's need for medical care. IMS will enter activity clearances for WITSEC cases.

4. **DISCIPLINARY/CLOSE SUPERVISION TRANSFERS (Codes 309/323)**. An act(s) of documented institution misconduct may result in an inmate's transfer to another institution, normally of greater security, for disciplinary reasons. Wardens may recommend same security level transfers only when placement at a greater security level institution is not possible or other overriding circumstances exist.

Disciplinary or Close Supervision transfer requests will be sent electronically to the DSCC Administrator and contain the following information:

    (a)  Request for Transfer/Application of Management Variable (must be thorough and specific);

    (b)  Close Supervision investigation report, if requested; and,

    (c)  Intelligence data or supporting memorandum if requested.

Institution staff should carefully review the management of 309/323 cases on an individual basis, applying sound correctional judgment that considers the safety and security of the inmate, the institution and its staff and the community.

5. **ADJUSTMENT TRANSFERS (Code 330)**. All transfer referrals submitted as Code 330 transfers for adjustment purposes will be reviewed by the DSCC. Adjustment purposes transfer requests will be sent electronically to the DSCC Administrator via Form 409.

DSCC staff will ensure that the transfer does not meet the requirements of an unverified protection transfer, Code 323.

6. **MEDICAL AND PSYCHIATRIC TRANSFERS (Codes 331-336 and 338, 339)**. Medical designations and transfers are approved by the Central Office Medical Designator, Office of Medical Designations and Transportation (OMDT). The Central Office Medical Designator assigns inmates to Medical Referral Centers (MRC), institutions with medical resources, or non-Bureau community care centers to provide needed medical services. Medical redesignations are initiated for inmates with acute medical, surgical, or psychiatric condition, or for those inmates who have chronic care needs that cannot be addressed at the parent institution. Transfers will be classified as either (a) Emergency, (b) Routine/Urgent, or (c) Routine.

If an inmate objects, either in writing or through his or her attorney, to a transfer for psychiatric/mental health treatment, the provisions of 18 U.S.C. § 4245 may apply. Staff will suspend transfer action in such cases and refer the matter to their Regional Counsel for review. The Regional Counsel will notify the institution when the transfer action can be re-instituted.

a. **Emergency Transfer** - An emergency transfer is a medical, surgical, or psychiatric situation determined by medical/mental health staff that requires immediate, direct transportation. This includes inmates not medically or psychiatrically capable of transport via routine BOP air/surface transportation, e.g., bus, commercial air, or USMS/Bureau airlift. Direct transportation is defined as air ambulance, air charter, or ground ambulance and, in some instances, an institution vehicle may be utilized.

b. **Routine/Urgent Transfer** - A routine/urgent transfer is initiated for medical, surgical, or psychiatric treatment that is not an emergency, however must be transported directly to a MRC, typically within two to three weeks of designation.

Routine urgent transfers require direct transfer to the MRC because of the acuity of their medical, surgical, or psychiatric condition, or because MRC-based services need to be initiated within an appropriate time frame. Holdover housing at a county jail or Bureau general population institution is not permissible.

c. **Routine Transfer** - A routine transfer is initiated for medical, surgical, or psychiatric treatment that is not an emergency and time en-route is not a major factor. Routine

transfers may travel by any available means.

   d.   **Procedures for Initiating Emergency, Routine/Urgent, and
Routine Transfer Requests.**   All transfer requests for medical,
surgical, or psychiatric designations will be initiated via
GroupWise on the Medical/Surgical and Psychiatric Referral
Request Form (BP-770) available on SALLYPORT.   The HSA, with
input from the Clinical Director and other providers involved
with the inmate's care (e.g., mid-level providers, psychologists,
consultant physicians), is responsible for completing the BP-770.
The referring institution Warden must review the BP-770 and
authorize the request for transfer.

The BP-770 serves as the redesignation, transportation, and
security worksheet from which the actual redesignation is made.
It will also serve as the emergency referral request form,
documentation of the inmate's condition and the reason for
transfer.   Accordingly, it is essential that the BP-770 be
completed thoroughly and accurately.

The Medical Designator will review each request for redesignation
and approve or deny the requested transfer.   Based on clinical
information and in consultation with the Medical Director, the
Medical Designator may change the urgency level of the request.

OMDT will authorize CIM clearance (if appropriate) and enter
approved transfers to an appropriate BOP facility in SENTRY on
the "Enter Redesignation" screen.

   e.   **Completion of Treatment** - All requests for redesignation to
the parent facility upon completion of Medical/Surgical or
Psychiatric treatment, or to another medical facility for
continuation of treatment, will be initiated by the facility
currently housing the inmate via GroupWise on the Discharge
Transfer Summary form.   This form serves as the designation,
transportation, and security worksheet from which the
redesignation is made.

Medical cases are normally returned to their parent facility
unless the DSCC approves a change in the parent facility based on
clinical justification provided prior to redesignation by the
Medical Designator.

7.   **TEMPORARY TRANSFERS.**   It is sometimes necessary to
temporarily transfer an inmate to a contract facility or other
Bureau institution.   This is normally for security reasons, when

the current institution does not have a Special Housing Unit.  In
such cases, institution staff will forward a request for
temporary transfer approval from the Warden to the DSCC.  The
request will include the rationale for transfer, with assurance
that the receiving facility is in agreement with the temporary
transfer.  Transfer approval must be obtained prior to the
transfer during normal working hours, or if after hours, the next
work day.  A copy of this request will be routed to the
appropriate CCM office, if the transfer is to a contract
facility.

8.   **TRANSFERS FOR TRAINING PURPOSES OR PROGRAM PARTICIPATION.**
An inmate is ordinarily only transferred for specialized national
programs not offered at the parent facility to include:

>     (a)   Residential Drug Treatment Program;
>     (b)   Life Connections Program;
>     (c)   Special Management Unit; and
>     (d)   Sex Offender Programs.

When placement for program participation is inconsistent with the
assigned security level, the appropriate Management Variable must
be applied by the DSCC.  Ordinarily, the inmate will be returned
to the referring institution upon completion of the specialized
training or program if the inmate has 18 months or more remaining
until the inmate's release date at the time of the transfer.
Further, if the program facility is nearer to the inmate's
release residence, than is the referring institution, the inmate
may remain at the program facility.

9.   **INSTITUTION HEARING PROGRAM TRANSFERS.**  The Institution
Hearing Program (IHP) is a coordinated effort by the Bureau, ICE,
and the EOIR to provide deportation or exclusion proceedings to
sentenced aliens as expeditiously as possible after the date of
conviction.  Eligibility, designation, classification, and
transfer procedures are specifically outlined in Bureau
directives.  IHP sites have been established for male and female
non-U.S. citizens who are serving federal sentences to ensure a
deportation or exclusion hearing is conducted early in their
sentence instead of at the end of their sentence.

10.   **TRANSFERS TO SATELLITE CAMPS.**  The Warden of an institution
with a satellite camp may transfer an inmate from the main
institution to the camp if the inmate is assigned an appropriate
security and/or custody level. The Camp Administrator of a
satellite camp adjacent to a Low or Medium security level

P5100.08
9/12/2006
Chapter 7, Page 9

institution may temporarily transfer the inmate to the main
institution for disciplinary purposes (i.e., disciplinary
segregation).  If a need for an immediate redesignation arises,
the inmate may be placed as a holdover in Administrative
Detention at the main institution while approval is sought from
the DSCC for redesignation to that institution or another
institution.

An inmate may travel via "unescorted transfer" from a low or
minimum security level institution to a minimum security level
institution if the inmate is a minimum security level inmate and
has OUT or COMMUNITY custody.  The inmate's family (on the
approved visiting list) may provide transportation to the
receiving institution only if the inmate is transferring from a
minimum security level institution to another minimum security
level institution, and if approved by the Warden.  The inmate's
family is expected to bear all transportation costs.  The inmate
must go directly from the sending institution to the receiving
institution.

   The Warden may authorize clearance for the transfer of a CIM
Case, with the exception of WITSEC cases, to the satellite camp
of the parent facility provided established regulations for
regular transfer authority have been met. (Refer to the CIM
Manual for more specific details).

11.   **PRE-RELEASE TRANSFERS**.  Inmates in federal and contract
institutions may be transferred to CCCs in accordance with the
Program Statement Community Corrections Center (CCC) Utilization
and Transfer Procedure.  Inmates who have been approved for CCC
referral and are otherwise appropriate for camp placement are to
be transferred to a camp for intermediate placement if at all
practicable.  Inmates should be encouraged to complete all or
most of the Institution Release Preparation Program at the parent
institution prior to transfer.

   The parent institution is to complete the CCC referral packet
and the camp should be closer to the inmate's release residence.
This process should be completed to allow the inmate a minimum of
a 60-day placement at the camp prior to the reporting date at the
CCC.  CCC referrals may be made 12 to 18 months in advance of an
anticipated reporting date with the concurrence of local CCM
offices.  A notation that the CCC referral was made with a
specific projected placement date should be included in the
request for institution transfer, and the transfer request should
be prepared at the same time as the CCC referral.

12.  **TRANSFERS FROM CCC'S.**  When an inmate fails to meet the conditions of CCC placement, the CCM should designate the inmate to the parent institution with consideration given to the following criteria for designation:

> (a)  local manday detention rates;
> (b)  availability of Bureau Detention Centers;
> (c)  budgetary constraints;
> (d)  projected release date; and,
> (e)  distance to parent facility.

When returning the inmate to the parent institution is not cost effective, the Community Corrections Office will refer the case to the DSCC for designation.  DSCC staff, will make the designation, and should consider the closest institution commensurate with the inmate's security needs.  When the DSCC designates the inmate to a facility, DSCC staff will notify the parent institution to facilitate the forwarding of the central file.

13.  **LONG-TERM DETAINEES.**  The authority for the redesignation of long-term detainees rests with the Detention Services Branch, Correctional Programs Division, Central Office.  Refer to the current Program Statement <u>Mariel Cuban Detainees</u> for transfer procedures.  Transfers for medical or mental health treatment however, shall be referred to the Central Office Medical Designator.  Mariel Cubans who are sentenced, and therefore not detainees, are handled in a routine fashion by DSCC staff.

14.  **IN-TRANSIT DATA FORM**

a.  Upon notice that an inmate is being transferred or temporarily released to an authorized law enforcement officer (e.g., U.S. Marshal, state law enforcement officer, or Bureau bus officer), the Unit Manager will ensure the following:

> •  The top portion of the SENTRY automated In-Transit Data Form is accurate and the bottom portion is completed;
>
> •  CIM, YCA, DCYRA and any other important information is included in the space for "Non-Routine Security Needs;"
>
> •  CIM separation information is accurate, up-to-date and the SENTRY generated "CIM Clearance and Separatee Data" is attached to the In-Transit Data Form; and,

116

- The In-Transit Data Form is signed, dated, and forwarded to ISM staff who will attach a current inmate photograph and provide the form to the transporting officer.

**NOTE:** The most recent In-Transit Data Form is maintained in the Inmate Central File.  The "CIM Clearance and Separatee Data" display will not be filed with the In-Transit Data Form.

   b.  Upon receipt of the In-Transit Data Form, ISM staff will ensure the following:

- The information indicated on the top portion of the form is correct.  SENTRY update functions should be executed in the event that the data is not accurate;

- The Sentencing Remarks should include the offenses and the length of sentence as noted on the Judgment.  If this information is not accurate, the load data should be updated;

- The Detainer Remarks should indicate all active detainers and the charge or offense.  If the detainer has been litigated, information regarding the sentence imposed or time remaining to serve should be listed. If this information is not current, the commitment should be updated; and,

- Initials are placed below the detainer remarks indicating that the information has been confirmed and is accurate and up-to-date.

15.  **TRANSFER CODES.** The reason for transfer, as shown by one of the codes listed at the end of this chapter, must be provided in the top portion of the Transfer Order.  If there is more than one reason for transfer, the most pertinent code should be used. Note that all Unescorted Transfers are Discharge Code - FURL TRANS for Furlough Transfer.

16.  **SPECIAL REQUIREMENTS**

   a.  An inmate having a detainer or pending charge may be transferred to any institution for which he or she properly classifies; however, generally when there is a formally filed detainer, the inmate is not to be transferred to an institution more distant from the detaining authority unless there is

117

substantial reason to believe the detainer will be dropped or the
pending charge will not be prosecuted.

   An inmate who indicates an intention to oppose extradition is
not to be transferred within the last 30 calendar days prior to
release to an institution in the state that placed the detainer.
Such cases, and others in which there are legal or jurisdictional
problems, are to be referred to the Regional Correctional
Programs  Administrator (See Program Statement Inmate Systems
Management Manual.

   b.  When there is reason to transfer an inmate to a non-federal
institution for concurrent service of federal and state
sentences, the Warden will refer the case to the DSCC
Administrator.  Refer to the Program Statement, Transfer of a
Prisoner to State Custody Prior to Release from the Federal
Sentence, for procedures.

17.  **RELATIONSHIPS WITH OTHER AGENCIES**

   a.  **U.S. Parole Commission.**  Parolable inmates must be housed
at a parolable institution in accordance with their parole
hearing requirements unless a hearing is no longer required.

   b.  **Administrative Office of the U.S. Courts.**  The court of
conviction may recommend to the Attorney General or the Bureau
that the defendant be retained at, or transferred to, a place of
confinement near the place of trial or the court of appeals, for
a period reasonably necessary to permit the defendant to assist
in the preparation of his or her appeal.  Upon receiving this
recommendation, the Bureau will make every effort to place the
inmate in such a facility.  If a reason exists for not placing
the inmate in that facility, the court must be notified of the
situation and an attempt will be made to arrive at an acceptable
place of confinement.
   Ordinarily, complicated jurisdictional or legal problems should
be resolved before transfer.  Ordinarily, the sending Case
Management Coordinator will determine if an inmate has legal
action pending in the district in which confined.  If so, the
individual should not be transferred without prior consultation
with the appropriate U.S. Attorney or Regional Counsel, or both.
Under Rule 23(a) of the Federal Rules of Appellate Procedures, an
inmate may not be transferred, pending review of a Habeas Corpus
proceeding commenced before a court, without the approval of the
court.  Approval for transfer should be sought through the U.S.
Attorney or Regional Counsel in cases where a Habeas Corpus
petition is pending.

c.  **Non-Federal Authorities**.  The decision to accept a state prisoner in the Bureau is the responsibility of the DSCC Administrator.  When notifying the state authority of acceptance, the state's contract code will be identified.

The Office of Procurement, Central Office is responsible for negotiating contracts for housing state prisoners.  If it is necessary to transfer a federal inmate to a local jail, the sending institution must immediately notify the U.S. Marshals and the CCM, preferably prior to the transfer.

d.  **Military Inmates**.  The DSCC will accept a military or Coast Guard inmate recommended for transfer to federal custody if, after examination of all available information, the Bureau can provide appropriate resources for the inmate's needs.  The DSCC will be responsible for the designation and redesignation of all military and Coast Guard inmates accepted for service of their sentence in Bureau custody.

In some cases, special agreements or Memoranda of Understanding (MOU) have been established with various military branches.  These MOUs give direction to Bureau staff regarding which Bureau regulations and policies apply to the military inmates.  Pursuant to 10 U.S.C. § 858, staff should be aware that military or Coast Guard inmates confined in Bureau institutions are subject to the same discipline and treatment as other inmates in those institutions.

Additionally, the Bureau will accept the sentence computation provided by the military or Coast Guard authorities with the exception that the Bureau will release such inmates, if not paroled, under the provisions of 18 U.S.C. § 4164 provided they have accrued good time deductions in excess of 180 days.  DSCC staff will refer to the appropriate military or Coast Guard authorities for resolution of suspected sentence computation errors or discrepancies, or challenges to the sentence computation by the inmate or his or her representative, or both.
Once a military inmate comes into Bureau custody, all notifications and requirements apply as if he or she were a Bureau inmate, i.e., VWP notification, VCCLEA notification, Sex Offender Notification, and IFRP requirements.  Notification to the military is also required at least 30 days prior to the inmate's release.

18.  **STATE PLACEMENT**.  Inmates who have exhausted available

P5100.08
9/12/2006
Chapter 7, Page 14

resources within the Bureau, should be referred for placement in an appropriate non-federal facility under contract with the Bureau.  Preparation of a transfer referral to merely "exhaust" all BOP resources is not required when the inmate is clearly not appropriate for any facility within the Bureau.

a. **Placement Procedures.**  The Warden will prepare a memorandum to the DSCC Administrator outlining the reasons for state placement of a federal inmate.  This memorandum will be forwarded along with supporting documentation and classification material that will, at a minimum, include the following:

(1) Presentence Investigation Report;

(2) Two copies of the Judgment;

(3) Relevant SENTRY data;

(4) Current Progress Report; and,

(5) Any Disciplinary or SIS Reports.

If the DSCC Administrator approves an inmate for state placement, DSCC staff will select a state correctional system for referral.  The system selected will be based on the type of facilities within the system; available bed space; court status (state systems that are under injunction because of overcrowding or violations of inmates' civil rights will not be used), and the state's willingness to accept federal boarders.  Once a suitable state correctional system has been identified, DSCC staff will forward the transfer packet to the appropriate Community Corrections Regional Administrator, overseeing the state in which the DSCC Administrator has identified for possible placement. DSCC staff may make up to two referrals per inmate at a time, and continue this process until an appropriate placement is secured. The CCRA will work through the local CCM office which will refer the case for state placement.  The CCM office will advise the CCRA of the response from the state authority/Department of Corrections.  If approved for placement, the CCRA will initiate SENTRY redesignation procedures, and forward the inmate file to the CCM office.  If not approved for placement the CCRA will advise the DSCC Administrator, who will continue to secure a suitable state placement.

The CCM office with state monitoring authority in which the inmate is eventually housed assumes full responsibility for the

inmate, including biennial reviews and subsequent transfer
authority.  State placement materials containing, at a minimum, a
Progress Report, Presentence Investigation Report, and all
memoranda pertaining to the state placement, will be forwarded to
and maintained by the CCM office after the inmate has been
approved for placement.

If an inmate is approved for permanent return to the Bureau,
the place of confinement will be determined by the DSCC.  If an
inmate is returned to the Bureau for medical treatment, the
inmate will be returned to the state when the medical treatment
is completed.  Occasionally, returning the inmate to the
originating state may not be appropriate.  In such cases, the
DSCC will obtain a new place of incarceration for the inmate,
after consultation with the Office of Medical Designation and
Transportation.

b.  **Post-Placement Monitoring**.  After a federal inmate has been
placed in a state contract facility, the appropriate CCM will
review the case every two years beginning from the date of the
inmate's arrival to determine whether the inmate is still
appropriate for state placement.  The CCM's cover memorandum
containing a recommendation and a Progress Report provided by the
state contract facility will be forwarded to DSCC staff who will
make a determination for continued state placement or return to
Bureau custody.

If the inmate requires continued placement in that state
facility, DSCC staff will enter a notation on the SENTRY "CIM
Clearance and Separatee Data" screen indicating such.  However,
if state placement is no longer necessary, the inmate will be
redesignated to Bureau custody by the DSCC.

Inmates serving a sentence of Death will also be reviewed for
continued state placement.  Information received from Community
Corrections staff during the review of the contract may be used
to make a determination for continued state placement.

The DSCC is responsible for monitoring and tracking state
placement requests received from BOP institutions.  The CCRA will
prepare a quarterly report (statistical/narrative) which will be
forwarded to the DSCC Administrator.

19.  **SECONDARY DESIGNATION.**  Upon initial designation, an inmate may be designated specifically for a parole hearing or program participation, and as a result, may require a secondary designation upon completion of the activity.  If upon completion of the activity, staff determine that the secondary designation is no longer appropriate, the DSCC will be notified for reconsideration.  Otherwise, when the conditions of the initial designation are met, institution staff will prepare a Transfer Order for signature of the sending institution Warden and arrangements will be made for movement of the inmate through routine procedures.

A secondary designation will not normally be made for cases designated for medical or psychiatric treatment.  The medical center or reviewing institution will notify the Medical Designator upon completion of evaluation or treatment.  Approval will be given for a secondary designation at that time.  This approval will be based on medical requirements of the inmate and resources of the secondary designation.

20.  **POPULATION MANAGEMENT.**  The Assistant Director, Correctional Programs Division periodically reviews each institution's Rated and Designation Capacities.  Occasionally, it is necessary to impose a moratorium or population cap on a particular institution to avoid or reduce overcrowding.  The Assistant Director, Correctional Programs Division, with the approval of the Population Management Subcommittee of the Executive Staff, may impose a moratorium on other facilities including the Medical Referral Center general population units.  The Assistant Director, Health Services Division, with the approval of the Population Management Subcommittee of the Executive Staff, may authorize a moratorium or population cap for Medical Referral Centers (excluding general population).

   a.  Referral Procedures

      (1) The Warden of the institution recommends to the Regional Director that a moratorium or population cap be established.

      (2) The Regional Director reviews the request, and if in agreement, contacts the Assistant Director, Correctional Programs Division, or the Assistant Director, Health Services Division, and either requests a population cap or total moratorium.

   A population cap places a ceiling on the number of inmates that can be designated to a facility.  A total moratorium is defined

P5100.08
9/12/2006
Chapter 7, Page 17

as a complete cessation of all initial designations and redesignations to an institution or DFCL assignment.

In extreme circumstances, the Assistant Director, Correctional Programs or Health Services Division with concurrence of the Subcommittee may direct that inmates en route to a facility be redesignated.  When a moratorium or population cap is imposed, a termination date will be established.  The cap or moratorium will be terminated on that date unless the Regional Director contacts the appropriate Assistant Director, Correctional Programs or Health Services Division, and obtains an extension.

(3) The appropriate Assistant Director will issue a GroupWise e-mail notifying the DSCC Administrator and Chief Executive Officers of the cap or moratorium.

21. **INSTITUTIONS WITH SPECIAL MISSIONS**

a. **FCI Oakdale**.  The Bureau, ICE, and the Executive Office for Immigration Review (EOIR) work closely together to meet the requirements of the Immigration Reform and Control Act of 1986, by ensuring the expeditious review of criminal aliens for deportation.  Beds are available for federally sentenced aliens, who are subject to administrative proceedings under the Immigration and Naturalization Act.  Such inmates are transferred to FCI Oakdale for disposition of their ICE detainer prior to completion of their federal sentence.

Mexican and Cuban nationals are not eligible for the Oakdale Criminal Alien Program.  The following procedures apply for the actual selection and designation of inmates to the Oakdale Criminal Alien Program.

(1)  The ICE Officer in Charge at FCI Oakdale will monitor the inmate male population via SENTRY to identify criminal aliens appropriate for the program at FCI Oakdale.  After they have been identified, ICE staff will place a detainer on these individuals through the DSCC.  Each week DSCC staff will compile a list of the criminal aliens who are to be released within the next year.  A courtesy list will be submitted, via GroupWise, to FCI Oakdale for monitoring purposes.

(2)  ICE staff at FCI Oakdale will forward to DSCC staff information on alien inmates via GroupWise to assist in the movement of inmates to FCI Oakdale at a later date.  The movement of inmates to FCI Oakdale will be authorized and coordinated by

the DSCC.  DSCC staff will ensure CIM clearance is obtained and
the Custody Classification form reflects appropriate use of any
Management Variable.

(3)  Inmates will be redesignated no later than seven months
from a firm projected release date.  Once approved for transfer,
institution and transportation staff will immediately schedule
the inmate for movement to FCI Oakdale.  Institution staff will
notify the Oakdale CMC if the inmate is not en route within 15
working days of the transfer approval.  The central file should
contain a current Progress Report and all pertinent case
management activities should be completed prior to transfer
including fines and the ordering of parole certificates, when
applicable, or preparation of other release documents as
required.

(4) ISM staff will ensure any other detainers lodged against
those inmates approved for transfer are resolved and the
detaining authority notified before the inmate is transferred to
FCI Oakdale.

(5)  Because of unforeseen circumstances, some criminal
aliens may be inappropriate for transfer to FCI Oakdale.  ICE
staff at FCI Oakdale will notify DSCC staff when this occurs and
will advise of any additional action necessary to coordinate the
resolution of the inmate's citizenship/release status.
Conversely, institution staff are to contact DSCC staff if they
believe a transfer should not occur.  If the transfer is deemed
inappropriate, DSCC staff will delete the Oakdale "DST" transfer
approval.

(6)  The Detention Services Branch, Correctional Programs
Division, Central Office will assist with coordination of the
Oakdale Criminal Alien Program and will act as the primary
liaison with ICE and EOIR Headquarters on matters of mutual
interest affecting the program's development and/or modification.
Any questions regarding these matters should be directed to that
office.

  b.  **USP Marion/ADX Florence**.  USP Marion/ADX Florence general
population units are designed for male inmates who have
demonstrated an inability to function in a less restrictive
environment without being a threat to others, or to the secure
and orderly operation of the institution.

(1)  **Referral Procedures and Criteria**.  Prior to referring

an inmate to USP Marion or ADX Florence, redesignation to another
high security institution should be considered first.  If
transfer to another institution is not appropriate, Wardens will
refer the proposed USP Marion or ADX Florence case to North
Central Regional Director.  The North Central Region will
designate the inmate as appropriate.

Assignment to USP Marion or ADX Florence will ordinarily be
made without regard for such factors as release destination or
program needs, such as education and vocational training.  Prior
to transfer to USP Marion or ADX Florence, staff at the sending
institution will ensure that the inmate is assigned Maximum
custody.  While in transit to USP Marion or ADX Florence, inmates
will be housed and provided visiting, correspondence, and
telephone privileges as if confined at USP Marion or ADX
Florence.

Inmates currently diagnosed as suffering from serious
psychiatric illnesses should not be referred for placement at
either USP Marion or ADX Florence.

(2) **Referral Packet for USP Marion or ADX Florence**.  The
referral packet for either USP Marion or ADX Florence general
population will include the following items:

(a)  A memorandum from the Warden to the North Central
Regional Director with the specific rationale supporting the
institution's recommendation;

(b)  Copies of all disciplinary reports, investigative
materials or other official documentation related to the behavior
prompting the referral;

(c)  A current Progress Report;

(d)  A copy of the inmate's latest Presentence
Investigation Report; and,

(e)  A recent psychiatric or mental health evaluation.

Inmates with severe or chronic behavior patterns that cannot
be addressed in any other Bureau institution should be referred
to ADX Florence general population, and those who are somewhat
less problematic should be referred to USP Marion.  In describing
the reasons underlying the referral, the Warden should explain
why he or she has selected USP Marion or ADX Florence,

respectively.

(3) **Acceptance or Rejection of Referrals**.  The North Central Regional Director has final review authority for referrals to the USP Marion and ADX Florence general population units.  In some cases, the Regional Director may approve placement at USP Marion when a referral has been submitted for ADX Florence and vice versa.

A response to a recommendation for USP Marion or ADX Florence placement will ordinarily be made by the North Central Regional Director within 60 calendar days after receiving the referral packet from the referring institution.  Approval or denial will be noted in SENTRY on the inmate's "CIM Clearance and Separatee Data" screen, with a brief memorandum from the North Central Regional Director to the requesting Warden to follow.

(4) **Transfer from USP Marion or ADX Florence**.  Once an inmate successfully completes the USP Marion or ADX Florence program, the Warden will submit a transfer request to the North Central Regional Director.  Upon the North Central Regional Director's approval the request will be forwarded to the DSCC for determination of an appropriate facility.  Inmates will ordinarily be transferred from USP Marion or ADX Florence using Code 308 - Lesser Security.  Ordinarily, inmates completing the ADX Florence program will be transferred to a High Security facility, other than USP Marion.

(5) **USP Marion Failures**.  Inmates who continue to exhibit disruptive misconduct at USP Marion may be considered for referral to ADX Florence general population or the Control Unit.

c. **FMC Carswell Administrative Unit**

(1) **Initial Designations**.  Initial designations may only occur in extraordinary situations by DSCC staff.

(2) **Redesignation Criteria**.  The FMC Carswell Administrative Unit is designed to house females exhibiting any of the following:

- A history of escape or attempted escape from a secure institution;

- Demonstrated repeated incidents of assaultive or predatory behavior;

- Demonstrated chronic behavior problems; and/or

- Special management concerns.

(3)  **Referral** for transfer to the FMC Carswell Administrative Unit will be submitted via the Request for Transfer/Application of Management Variable (409) to the DSCC Administrator.

(4)  **Acceptance or Rejection of Referrals**.  The DSCC Administrator has final review authority for referrals to FMC Carswell Administrative Unit.

| TRANSFER CODES | |
|---|---|
| CODE | DESCRIPTION |
| 276 | **FURLOUGH TRANSFER**: Unescorted furlough transfer to a CCC. |
| 307 | **INSTITUTION CLASSIFICATION**: Transfer to an institution with greater security (e.g., Low to Medium). |
| 308 | **INSTITUTION CLASSIFICATION**: Transfer to an institution with less security (e.g., High to Medium). |
| 309 | **DISCIPLINARY**: Transfer as a result of an act(s) of misconduct related to documented poor institutional adjustment.  See Program Statement on Discipline and Special Housing Unit. |
| 313 | **NEARER RELEASE**: Transfer for the purpose of placing an inmate in an institution nearer the release destination or to facilitate the release process. |
| 314 | **TRAINING PURPOSES**: Discontinued (Use Code 324). |
| 315 | **TRAINING COMPLETED**: Discontinued (Use Code 325). |
| 316 | **TEMPORARY TRANSFER**: Transfer to the custody of U.S. Marshals or local authority. |
| 317 | **RELIEVE OVERCROWDING**: Transfer to relieve overcrowding at a facility. |
| 318 | **INCREASE POPULATION**: Transfer to build a population, usually upon activation of a new facility. |
| 319 | **DRUG ABUSE PROGRAM**: Transfer to participate in a specialized Drug Abuse Program. |
| 320 | **WORK/STUDY RELEASE: Discontinued.** |
| 321 | **TRANSFER TO CONTROL UNIT**: Transfer to Control Unit (see Chapter 7, Section 4). |
| 322 | **TRANSFER FROM CONTROL UNIT**: Transfer from Control Unit (See Chapter 7, Section 4). |
| 323 | **CLOSE SUPERVISION CASE**: Transfer as a result of an investigation that indicates a safety, security, or escape risk.  Includes verified and unverified protection cases. |
| 324 | **PROGRAM PARTICIPATION**: Transfer for a parole hearing or to participate in a specialized program. |
| 325 | **PROGRAM COMPLETED/WITHDRAWAL/REMOVAL**: Return to the original institution following the completion, withdrawal, or removal from a specialized program. |
| 326 | **CONCURRENT SERVICE IN NON-FEDERAL FACILITY**: Transfer to non-federal facility (excluding CCC) for service of concurrent federal and state sentences. |
| 327 | **BOARDING IN NON-FEDERAL FACILITY**: Transfer to non-federal facility (excluding CCC) for service of federal sentences only. |

P5100.08
9/12/2006
Chapter 7, Page 23

| TRANSFER CODES | |
|---|---|
| CODE | DESCRIPTION |
| 328 | **RETURN FROM NON-FEDERAL FACILITY:** Return from non-federal facility to federal institution for service of federal sentence only. |
| 330 | **ADJUSTMENT PURPOSES:** Transfer for the purpose of placing the inmate in a new setting due to poor institutional adjustment or CIM concerns.  This code differs from a 323 Close Supervision Transfer in that an SIS investigation is not normally conducted. |
| 331 | **TRANSFER FOR MEDICAL TREATMENT:** Transfer from general population for the purpose of obtaining medical/physical treatment in a Medical Referral Center.  Requires a change to a CARE 4 assignment. |
| 332 | **MEDICAL TREATMENT COMPLETED:** Return from Medical Referral Center to general population after treatment for medical/physical treatment.  Requires a change from CARE 4 assignment to a lesser care level assignment. |
| 333 | **TRANSFER FOR PSYCHOLOGICAL/PSYCHIATRIC EVALUATION:** Transfer from general population for the purpose of obtaining psychiatric treatment in a Medical Referral Center.  Requires a change to a CARE 4 assignment. |
| 334 | **PSYCHOLOGICAL/PSYCHIATRIC EVALUATION COMPLETED:** Return from a Medical Referral Center to general population after obtaining psychiatric treatment.  Requires a change from CARE 4 assignment to a lesser care level assignment. |
| 335 | **TRANSFER FOR HOSPITALIZATION AND TREATMENT:** Transfer between BOP Medical Referral Centers for continued medical/physical or psychiatric treatment.  (SPG to BUT).  CARE 4 assignment remains intact. |
| 336 | **HOSPITALIZATION AND TREATMENT COMPLETED:** Discontinued (See Code 332). |
| 337 | **OTHER:** This category may be used only when no other transfer code above applies. (DISCONTINUED) |
| 338 | **DECREASE IN MEDICAL CARE LEVEL:** Transfer used when there has been a decrease in the inmate's medical care level and the inmate no longer requires the higher level of medical services.  This code is to be used when the transfer occurs between non-MRC institutions and when there is a decrease from the CARE assignments 2 and 3 only. |
| 339 | **INCREASE IN MEDICAL CARE LEVEL:** Transfer used when there has been an increase in the inmate's medical care level and inmate is being transferred for the sole purpose of requiring increased medical resources.  This code is to be used when the transfer occurs between non-MRC institutions and when there is an increase from the CARE assignments 1 and 2 only. |

| 369 | **FACILITY REORGANIZATION**: Transfer based on a mission change of the institution. |
|-----|-------------------------------------------------------------------------------------|

P5100.08
9/12/2006
Appendix A, Page 1

## OFFENSE SEVERITY SCALE

| GREATEST SEVERITY |
|---|

**Aircraft Piracy** - placing plane or passengers in danger
**Arson** - substantial risk of death or bodily injury
**Assault** - serious bodily injury intended or permanent or
   life threatening bodily injury resulting)
**Car Jacking** - any
**Drug Offense** - see criteria below*
**Escape** - closed institution, secure custody, force or
   weapons used
**Espionage** - treason, sabotage, or related offenses
**Explosives** - risk of death or bodily injury
**Extortion** - weapon or threat of violence
**Homicide or Voluntary Manslaughter** - any
**Kidnaping** - abduction, unlawful restraint, demanding or
   receiving ransom money
**Robbery** - any
**Sexual offenses** - rape, sodomy, incest, carnal knowledge,
   transportation with coercion or force for commercial
   purposes
**Toxic Substances/Chemicals**: - weapon to endanger human life
**Weapons** - distribution of automatic weapons, exporting
   sophisticated weaponry, brandishing or threatening use of
   a weapon

* Any **drug offender** whose current offense includes the following
criteria will be scored in the Greatest severity category:

The offender was part of an organizational network and he or she organized
or maintained ownership interest/profits from **large-scale** drug activity,
***AND***
The drug amount equals or exceeds the amount below:

**Cocaine** - greater than or equal to 10,000 gm, 10 K, or 22 lb
**Cocaine Base "Crack"**   - greater than or equal to 31 gm
**Hashish** - greater than or equal to 250,000 gm, 250 K, or 551 lb
**Marijuana** - greater than or equal to 620,000 gm, 620 K, or 1,367 lb
**PCP** - greater than or equal to 100,000 mg, 100 gm, or 20,000 dosage units
**Heroin or Opiates** - greater than or equal to 2,000 gm, 2 K, or 4.4 lb
**Methamphetamine** - greater than or equal to 16,000 gm, 17 K, or 35 lbs
**Other illicit drugs**: - Amphetamine, Barbiturates, LSD, etc. greater than
or equal to 250,000 dosage units

P5100.08
9/12/2006
Appendix A, Page 2

| HIGH SEVERITY |
|---|

**Arson** - other
**Cruelty to Children** - any
**Drugs (For Females only)**
    **Cocaine** - greater than or equal to 10,000 gm, 10 K, Or 22 lb
    **Cocaine Base "Crack"** - greater than or equal to 31 gm
    **Hashish** - greater than or equal to 250,000 gm, 250 K, Or 551 lb
    **Marijuana** - greater than or equal to 620,000 gm, 620 K, Or 1,367 lb
    **PCP** - greater than or equal to 100,000 mg, 100 gm, or 20,000 dosage units
    **Heroin or Opiates** - greater than or equal to 2,000 gm, 2 K, or 4.4 lb
    **Methamphetamine** - greater than or equal to 16,000 gm, 17 K, or 35 lb
    **Other illicit drugs** - Amphetamine, Barbiturates, LSD etc. - greater than or equal to 250,000 dosage units
**Explosives** - other
**Extortion** - other
**Involuntary manslaughter** - includes vehicular homicide
**Residential Burglary** - with evidence that occupants were in dwelling during the commission of the offense
**Rioting** - any
**Sexual Offenses** - sexual exploitation of children, unlawful sexual conduct with a minor, pornography
**Stalking** - any
**Threatening Communications** - with conduct evidencing intent to carry out such threat
**Toxic Substances/Chemicals** - other

P5100.08
9/12/2006
Appendix A, Page 3

```
┌──────────────────────────────────────────────────────────────────────┐
│                          MODERATE SEVERITY                             │
├──────────────────────────────────────────────────────────────────────┤
```

**Assault** - other

**Auto Theft** - any

**Breaking and Entering** - any

**Burglary** - other

**Child Abandonment** - any

**Contempt of Court** - criminal contempt

**Drugs Cocaine** - greater than or equal to 400 gm, .4 K, or .88 lb

    **Cocaine Base "Crack"** - greater than or equal to 1 gm

    **Hashish** - greater than or equal to 11,000 gm, 11 K, or 24 lb

    **Marijuana** - greater than or equal to 25,000 gm, 25 K, or 55 lb

    **PCP** - greater than or equal to 4,000 mg, 4 gm, or .14 oz

    **Heroin or Opiates** - greater than or equal to 80 gm, .08 K, or .18 lb

    **Methamphetamine** - greater than or equal to 667 gm, .67 K, or 1.47 lb

    **Other illicit drugs** - Amphetamine, Barbiturates, LSD, etc. greater than or equal to 10,000 dosage units, .05 K, or .11 lb

**Escape** - walkaway from open institution, failure to appear/bail reform act, no threat of violence involved

**Immigration Offenses** - transportation of unlawful aliens

**Obstruction of Justice** - any

**Property Offenses** - over $250,000, includes theft, fraud, tax evasion, forgery, currency offenses

**Sexual Offenses** - other

**Weapons** - other

```
┌──────────────────────────────────────────────────────────────────────┐
│                        LOW-MODERATE SEVERITY                          │
├──────────────────────────────────────────────────────────────────────┤
```

**Bigamy** - Polygamy

**Drugs Cocaine** - less than 400 gm, .4 K, or .88 lb

    **Cocaine Base "Crack"** - less than 1 gm

    **Hashish** - less than 11,000 gm, 11 K, or 24 lb

    **Marijuana** - less than 25,000 gm, 25 K, or 55 lb

    **PCP** - less than 4,000 mg, 4 gm, or .14 oz

    **Heroin or Opiates** - less than 80 gm, .08 K, or .18 lb

    **Methamphetamine** - less than 667 gm, .67 K, or 1.47 lb

    **Other illicit drugs** - Amphetamine, Barbiturates, LSD, etc., less than 10,000 dosage units, .05 K, or .11 lb

**Indecent Exposure** - indecent acts, lewd behavior

**Immigration Offenses** - other

**Post-Release Supervision Violation** - technical, administrative

**Property Offenses** - valued between $2,000 and $250,000)

P5100.08
9/12/2006
Appendix A, Page 4

| LOWEST SEVERITY |
|---|
| **Drugs** - personal use<br>**Gambling Law Violation** - any<br>**Liquor Law Violation** - any<br>**Property Offenses** - less than $2,000<br>**Suspicion** - any<br>**Traffic Laws** - any<br>**Vagrancy** - any<br>**Vandalism** - any |

| MARIJUANA EQUIVALENT CHART ||
|---|---|
| DRUG | MARIJUANA EQUIVALENT |
| 1 gm of Heroin | 1000 gm |
| 1 gm of Cocaine Powder | 200 gm |
| 1 gm of Methamphetamine | 2000 gm |
| 1 gm of LSD | 100,000 gm |
| 1 gm of "crack" cocaine | 20,000 gm |
| 1 gm of Hashish Oil | 50 gm |
| For other drug equivalents, please refer to the U.S. Sentencing Commission Guidelines Manual. ||

| MEASUREMENT CONVERSION TABLE ||
|---|---|
| 1 oz = 28.35 gm<br>1 lb = 453.6 gm<br>1 lb = 0.4536 kg<br>1 gal = 3.785 liters<br>1 qt = 0.946 liters | 1 gm = 1 ml (liquid)<br>1 liter = 1,000 ml<br>1 kg = 1,000 gm<br>1 gm = 1,000 mg<br>1 grain = 64.8 mg |

P5100.08
9/12/2006
Appendix A, Page 5

---

**DEFINITION OF ROLES INVOLVED IN DRUG OFFENSES**

---

To determine whether an individual involved with a drug offense
rose to the level of an organizer or leader, read the "Offense
Conduct" section of the Presentence Investigation Report, and any
other available information (i.e., Statement of Reasons, U.S.
Attorney Report, etc.) to determine what the individual's role
was in the criminal activity.  The role definitions below are
grouped into two categories:  Those that rise to the level of
organizer/leader; and, those that do not.

---

**ORGANIZER/LEADER**

---

**Importer/High-Level Supplier**: imports or otherwise supplies large
quantities of drugs; is at or near the top of the distribution
chain; has ownership interest in drugs (not merely transporting
drugs for another individual); usually supplies drugs to other
drug distributors and does not deal in retail amounts; may employ
no or very few subordinates.

**Organizer/Leader**: organizes, leads, directs, or otherwise runs a
drug distribution organization.  Receives the largest share of
the profits and has the greatest decision-making authority.

**Grower/Manufacturer**: grows, cultivates, or manufactures a
controlled substance, and is the principal owner of the drugs.
(Keep in mind, the intent of this definition is to capture the
individual who has the capability to manufacture enormous amounts
of drugs in his garage/lab for example, and not the individual
who is growing only five marijuana plants in his basement.)

**Financier/Money Launderer**: provides money for purchase,
importation, manufacture, cultivation, transportation, or
distribution of drugs; launders proceeds of drug sales or
purchases.

**Aircraft Pilot/Vessel Captain**: pilots vessel or aircraft;
requires special skill; does not include inmate who is the only
participant directing a small boat (i.e., a speed boat) onto
which drugs had been loaded from a "mother ship" (such person is
a courier).

P5100.08
9/12/2006
Appendix A, Page 6

---

### NOT A DRUG ORGANIZER/LEADER

---

**Manager**: serves as a lieutenant to assist one of the above;
manages all or a significant portion of the manufacturing,
importation, or distribution operation; takes instructions from
one of the above and conveys to subordinates; directly supervises
at least one other co-participant in an organization of at least
five co-participants.

**Bodyguard/Strongman/Debt Collector**: provides physical and
personal security for another co-participant in the offense;
collects debts owed, or punishes recalcitrant persons.

**Chemists/Cooks/Chemical Supplier**: produces LSD, methamphetamine,
crack cocaine, or other illegal drugs, but does not qualify as a
Grower/Manufacturer because he/she is not the principal owner of
the drugs.  Chemical supplier does not handle drugs themselves
but engages in the unlawful diversion, sale, or furnishing of
listed chemicals or equipment used in the synthesis or
manufacturing of controlled substances.

**Supervisor**: supervises at least one other co-participant,
however, has limited authority and does not qualify as a Manager.

**Street-Level Dealer**: distributes retail quantities directly to
the user.

**Broker/Steerer/Go-Between**: arranges for two parties to buy/sell
drugs, or directs potential buyer to a potential seller.

**Courier**: transports or carries drugs with the assistance of a
vehicle or other equipment.  Includes situations where
individual, who is otherwise considered to be a crew member, is
the only participant directing a vessel (e.g., a speed boat) onto
which drugs had been loaded from a "mother ship".

**Mule**: transports or carries drugs internally or on their person,
often by airplane, or by walking across a border.  Also includes
an individual who only transports or carries drugs in baggage,
souvenirs, clothing, or otherwise.

**Renter/Storer**: provides (for profit/compensation) own residence,
structures (barns, storage bins, buildings), land, or equipment
for use to further the offense.  This inmate is distinguished
from the enabler because he/she is paid (in some way) for his/her

services.

**Money runner**: transports/carries money and/or drugs to and from the street-level dealer.

**Off-loader/Loader**: performs the physical labor required to put large quantities of drugs into storage, hiding, or onto some mode of transportation.

**Gopher/Lookout/Deckhand/Worker/Employee**: performs very limited, low-level function in the offense (whether or not ongoing); includes running errands, answering the telephone, receiving packages, packaging the drugs, manual labor, acting as lookout to provide early warnings during meetings, exchanges, or off-loading, or acting as deckhand/crew member on vessel or aircraft used to transport large quantities of drugs.

**Enabler** (Passive): plays no more than a passive role in the offense, knowingly permitting a certain unlawful criminal activity to take place without actually being involved with the activity; may be coerced or unduly influenced to play such a function (e.g., a parent or grandparent threatened with displacement from a home unless they permit the activity to take place), or may do so as "a favor" (without compensation).

**User Only**: possessed small amount of drugs apparently for personal use only; no apparent function in any conspiratorial criminal activity.

**Wholesaler**: sells more than retail/user-level quantities (greater than one ounce) in a single transaction.

P5100.08
9/12/2006
Appendix A, Page 8

| SPECIAL INSTRUCTIONS |
| --- |

In the case of an offense involving marijuana plants, one plant equals 100 grams (or the actual weight of the useable marijuana, whichever is greater).

If the offense includes several types of drugs, compute the marijuana equivalent and total the sum to arrive at a grand total.  For example, if the inmate has marijuana, cocaine, and heroin, compute the cocaine and heroin to an equivalent amount of marijuana and hold the inmate accountable for the sum total of the equivalent amount of marijuana.

Offenses not listed will be assigned a severity category according to the most comparable listed offense.

Score any attempt, aiding and abetting, conspiracy, misprision of a felony, and accessory after the fact in the same severity category as the underlying offense.  Total offense behavior is to be considered, utilizing the most serious offense or act committed.  However, in drug conspiracy cases, the individual will be held accountable as documented by the Judge in the Statement of Reasons.  If the Statement of Reasons is not attached, the Case Manager will review the Presentence Investigation Report to determine the individual's specific reported behavior, and not hold the individual accountable for the entire drug conspiracy empire.

If committed as a parole, mandatory release, special parole term, or supervised release violator as a result of a new conviction, use that new offense behavior for scoring "Severity of Current Offense."

If committed as a probation violator, use the most severe documented behavior between the original offense that prompted probation and the new criminal conduct (violation behavior) for scoring "Severity of Current Offense."

For this Program Statement's purposes, sentences with a specific finding of "withheld adjudication" will be considered the same as if the Judge made a finding of guilt.

P5100.08
9/12/2006
Appendix B, Page 1

## WAIVER FOR MISDEMEANANTS

I, _____, _____

      (Name of Inmate)              (Register Number)

have been convicted under_____

                             (Offense Code and Title)

_____

and committed to the custody of the Attorney General or the
Bureau of Prisons for service of a misdemeanor sentence, do
hereby waive my right as a misdemeanant offender to serve my
sentence in a facility other than a high security level
institution.  I understand my conviction could entitle me to be
placed in a Minimum, Low, or Medium level institution, as deemed
appropriate by the Bureau of Prisons; however, I voluntarily
waive my right to such placement.  I further understand that this
waiver does not prevent the Federal Bureau of Prisons from
transferring me to a Minimum, Low, or Medium security level
institution in the future, if appropriate.


_____     _____

     Inmate's Signature               Date


_____

       Witness

_____

       Witness

139

P5100.08
9/12/2006
Appendix C, Page 1

```
                STANDARD ABBREVIATIONS/TERMS (BP-337)
```

| | |
|---|---|
| ADW | Assault with a Deadly Weapon |
| ALC | Alcohol |
| ATT | Attempt |
| BRA | Bail Reform Act (constitutes escape) |
| CC | Concurrent |
| CC FRD | Credit Card Fraud |
| COC | Cocaine |
| CONSP | Conspiracy |
| CRK | Crack |
| CS | Consecutive |
| D/DS | Day/days |
| DETN | Detainer |
| DRG | Drug |
| DUI | Driving under the influence |
| DWI | Driving while influenced |
| DWOL | Driving without a License |
| DWP/DWIP | Dismissed without/with Prejudice |
| ESS | Execution of Sentence Suspended (If part of the sentence was imposed score as prior.  If the entire sentence was suspended, do not count as prior, HOWEVER, if the offense involved escape or violence, score under appropriate history item.) |
| F/A | Firearm |
| FTA | Failure to Appear (constitutes escape) |
| GD | Good |
| GTA | Grand Theft Auto |
| H/G | Handgun |
| HX | History |
| IR | Incident Report |
| ISS | Imposition of Sentence Suspended (If part of the sentence was imposed score as prior.  If the entire sentence was suspended, do not count as prior, HOWEVER, if the offense involved escape or violence, score under appropriate history item.) |
| ITSMV | Interstate Transportation of Stolen Motor Vehicle |
| JTC | Jail Time Credit |
| LOC | Lack of Cooperation |
| LOP | Loss of Privileges |
| M/MOS | Month/months |
| MH | Mental health |
| MJ | Marijuana |
| PBJ | Probation Before Judgment |
| PC | Pending Charge |
| PED | Parole Eligibility Date |
| PLIO | Pled to Lesser Instant Offense |
| PROB | Probation |

P5100.08
9/12/2006
Appendix C, Page 2

```
PSY          Psychological/Psychiatric
PWITD        Possession with Intent to Distribute
PV           Parole Violation
```

| STANDARD ABBREVIATIONS/TERMS (BP-337) |
|:---:|

```
SRV          Supervised Release Violation
TRD          Tentative Release Date
UUV          Unauthorized Use of a Vehicle
VOP          Violation of Probation
WPN          Weapon
Y/YRS        Year/years
```

Form 409, **REQUEST FOR TRANSFER/APPLICATION OF MANAGEMENT VARIABLE**
is available on BOPDOCS

# Attachment B



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:            RSD/FOB
NUMBER:     5200.04
DATE:          January 18, 2017

# Transgender Offender Manual

/s/
*Approved*:  Thomas R. Kane
Acting Director, Federal Bureau of Prisons

## 1. PURPOSE AND SCOPE

To ensure the Bureau of Prisons (Bureau) properly identifies, tracks, and provides services to the transgender population.

a**. Program Objectives**.  Expected results of this program are:

- This policy is meant to provide guidance to staff in dealing with the unique issues that arise when working with transgender inmates.
- Institutions ensure transgender inmates can access programs and services that meet their needs as appropriate, and prepare them to return to the community.
- Sufficient resources will be allocated to deliver appropriate services to transgender inmates.
- Staff will be offered training, enabling them to work effectively with transgender inmates.
- To support staff's understanding of the increased risk of suicide, mental health issues and victimization of transgender inmates.

b. **Institution Supplement**.  None required.  Should local facilities make any changes outside changes required in national policy or establish any additional local procedures to implement national policy, the local Union may invoke to negotiate procedures or appropriate arrangements.

## 2. DEFINITIONS

*Gender* – a construct used to classify a person as male, female, both, or neither.  Gender encompasses aspects of social identity, psychological identity, and human behavior.

144

*Gender identity* – a person's sense of their own gender, which is communicated to others by their gender expression.

*Gender expression* – includes mannerisms, clothing, hair style, and choice of activities.

*Gender nonconforming* – a person whose appearance or manner does not conform to traditional societal gender expectations.

*Transgender* – the state of one's gender identity not matching one's biological sex.  For the purposes of this policy, a transgender inmate is one who has met with a Bureau of Prisons psychologist and signed the form indicating consent to be identified within the agency as transgender. This step allows for accommodations to be considered.

*Cisgender* – the state of one's gender identity matching one's biological sex.

*Sexual orientation* – the direction of one's sexual interest towards members of the same, opposite, or both genders (e.g., heterosexual, homosexual, bisexual, asexual).  Sexual orientation and gender identity are not related.

*Gender Dysphoria* (GD) – a mental health diagnosis currently defined by DSM-5 as, "A strong and persistent cross-gender identification. It is manifested by a stated desire to be the opposite sex and persistent discomfort with his or her biologically assigned sex."  Not all transgender inmates will have a diagnosis of GD, and a diagnosis of GD is not required for an individual to be provided services.

*Intersex* – a person whose sexual or reproductive anatomy or chromosomal pattern does not seem to fit typical biological definitions of male or female.  Not all intersex people identify as transgender; unless otherwise specified, this policy does not apply to intersex people who do not identify as transgender.

*Transitio*n – measures that change one's gender expression or body to better reflect a person's gender identity.

3.  **STAFF RESPONSIBILITIES**

The following Bureau components are responsible for ensuring consistent establishment of the programs, services, and resource allocations necessary for transgender offenders.

a. **Central Office**

(1)  The **Female Offender Branch** is the agency's primary source and point of contact on classification, management, and intervention programs and practices for transgender inmates in Bureau custody.  The Branch is responsible for the following functions as they relate to transgender inmates:

- Engaging stakeholders, including serving as the primary point of contact on issues affecting transgender inmates with judges, political figures, and advocacy groups.
- Ensuring the Bureau offers appropriate services to transgender inmates.
- Preparing budgetary requests to deliver national and pilot programs or services affecting transgender inmates.
- Providing guidance and direction to Regional staff and institution leadership on transgender issues.
- Developing and implementing staff training on transgender issues.
- Building a research-based foundation for the Bureau's work with transgender inmates.
- Presenting at internal and external conferences/events regarding the agency's transgender inmates' practices.
- Developing and monitoring monthly reports on the transgender population and institutional programs.
- Issuing an annual report on the state of transgender offenders in the Bureau that will be made available to all staff and stakeholders.
- Advising agency leadership on transgender inmate needs.
- Conducting an annual survey of transgender inmates in the Bureau and sharing results with internal and external stakeholders.
- Providing national oversight of pilot programs and initiatives serving transgender offenders.

(2)  The **Health Services Division** oversees all medical and psychiatric activity as it applies to transgender inmates.  Guidance on the most current research-driven clinical medical and psychiatric care of transgender inmates will be provided by the Medical Director.

The Health Services Division also has oversight of a Transgender Clinical Care Team (TCCT).  This team will be comprised of Physicians, Pharmacists, and Psychiatrists.  Social Workers, Psychologists, and other clinical providers can also be included when appropriate.  The TCCT will offer advice and guidance to health services staff on the medical treatment of transgender inmates and/or inmates with GD.  Medical staff can raise issues to the TCCT through the Health Services Division.

(3)  The **Psychology Services Branch** oversees all psychological mental health programs and services as they apply to transgender inmates, to include providing advice and guidance on

identification and evaluation of transgender inmates, and making recommendations for treatment needs of transgender inmates and/or inmates with GD.

(4)  **Central Office Branches/Divisions** of Correctional Services, Psychology Services, Education, Correctional Programs, Reentry Affairs, Residential Reentry Management, Health Services, Health Programs, Social Work, Office of General Counsel, and Trust Fund meet annually with the Female Offender Branch to discuss transgender population needs and evaluate current gender-responsive services.  The National Union and the Central Office LGBT Special Emphasis Program Manager will be invited to attend these meetings.

(5)  The **Transgender Executive Council (TEC)** will consist of staff members from the Health Services Division, the Female Offender Branch, Psychology Services, the Correctional Programs Division, the Designation and Sentence Computation Center (DSCC), and the Office of General Counsel.  The TEC will meet a minimum of quarterly to offer advice and guidance on unique measures related to treatment and management needs of transgender inmates and/or inmates with GD, including designation issues.  Institution staff and DSCC staff may raise issues on specific inmates to the TEC through the Female Offender Branch.  The National PREA Coordinator is consulted as needed.

b.  **Regional Offices**

■  Provide oversight to institutions regarding services and other relevant trends managing transgender inmates.
■  Assign transgender responsibilities to the Regional Female Offender/Transgender Coordinator Collateral Duty Assignment.  This individual meets quarterly with the Female Offender Branch to discuss staffing and programming needs.

c.  **Institutions**

The institution CEO will establish a multi-disciplinary approach to the management of transgender inmates; specifically:
■  Ensure transgender inmates have access to services.
■  Enter tracking information for self-identified transgender inmates by updating SENTRY and other databases (e.g., PDS), as appropriate.
■  Provide appropriate reentry resources that may be specific to the population.
■  Advise the Local Union of transgender inmate management issues, as appropriate.

4.  **STAFF TRAINING**

Staff will be provided specialized training in working with unique issues when managing transgender inmates, with refresher training at annual training.  Institutions housing known transgender inmates should provide additional training, if needed.

The Female Offender Branch will be responsible for developing training materials and current information on the management of transgender inmates.  This information will be made available to staff on the Female Offender Branch Sallyport page.

In addition, the Prison Rape Elimination Act (PREA) regulations incorporated into the BOP Program Statement **Sexually Abusive Behavior Prevention and Intervention Program** have training requirements concerning pat searches and communication skills for transgender inmates.  See 28 C.F.R. § 115.15(f) and 115.31 (a) (9).  Please refer to this Program Statement regarding implementation of those training requirements.

Staff will be provided adequate time to complete these trainings during duty hours.

5.  **INITIAL DESIGNATIONS**

The PREA regulations, incorporated into the Program Statement **Sexually Abusive Behavior Prevention and Intervention Program**, state in section 28 C.F.R. § 115.42 (c):

> **"In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates…the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems."**

Upon receipt of information from a Pre-Sentence Report, court order, U.S. Attorney's Office, defense counsel, the offender, or other source that an individual entering BOP custody is transgender, designations staff will refer the matter to the TEC for advice and guidance on designation.

Institution staff managing pretrial or holdover offenders may also refer cases to the TEC for review.  Any TEC recommendations concerning pretrial inmates will be coordinated with the appropriate United States Marshal's Office.

The TEC will consider factors including, but not limited to, an inmate's security level, criminal and disciplinary history, current gender expression, medical and mental health needs/information, vulnerability to sexual victimization, and likelihood of perpetrating abuse.  The TEC may also consider facility-specific factors, including inmate populations, staffing

patterns, and physical layouts (e.g., types of showers available).  The TEC will recommend housing by gender identity when appropriate.

## 6.  INTAKE SCREENING

The PREA regulations in 28 C.F.R. part 115, Subpart A, incorporated into the Program Statement **Sexually Abusive Behavior Prevention and Intervention Program** and the Program Statement **Intake Screening,** address intake screening.  Screening of transgender inmates will be conducted in accordance with these policies and all other applicable policies and procedures.

## 7.  HOUSING AND PROGRAMMING ASSIGNMENTS

During Initial classification and Program Reviews, Unit Management staff will twice-yearly review the inmate(s) current housing unit status and programming available for transgender inmates; this review will be documented by Unit Management.

The reviews will consider on a case-by-case basis that the inmate placement does not jeopardize the inmate's health and safety and does not present management or security concerns.

In making housing unit and programming assignments, a transgender or intersex inmate's own views with respect to his/her own safety must be given serious consideration.

Transgender inmates shall be given the opportunity to shower separate from other inmates.

The agency shall not place transgender or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status, unless such placement is in a dedicated facility, unit, or wing established in connection with a consent decree , legal settlement, or legal judgment for the purpose of protecting such inmates.

In order for an inmate to be considered for transfer to another location, including a facility housing individuals of the inmate's identified gender, the Warden should consult with the TEC prior to submitting a designation request to the DSCC, but this is not required.

## 8.  DOCUMENTATION AND SENTRY ASSIGNMENTS

a.  **Medical and Mental Health Information**.  Medical and mental health information for transgender inmates will be maintained in the current electronic recordkeeping system in accordance with the Program Statement **Health Information Management**.  Medical and mental health information is considered confidential, and may only be released in accordance with appropriate laws, rules, and regulations.

b.  **Initial Screening**.  For initial designations, designations staff will assign Case Management Activity (CMA) SENTRY assignments if information in the PSR or other documentation indicates a likely transgender identity.  The screening codes will be:

> SCRN M2F – inmate should be screened for male to female.
> SCRN F2M – inmate should be screened for female to male.

Any inmate arriving at the designated institution with a screening code is to be referred to the Chief Psychologist or designee for review within 14 days.  If the code was assigned in error, the screening code will be removed by the psychologist.  If the inmate identifies as transgender, the psychologist will replace the screening code with an identifying code, as indicated below.  Holdover facilities will be exempt from this initial screening requirement, as limited available records and brevity of stay do not allow for a comprehensive screening.

Any inmate who arrives without a screening code but identifies as transgender during intake, or at any time during the incarceration period, is referred to the Chief Psychologist or designee and interviewed within 14 days of the inmate notification.  Inmates in pretrial status at Bureau facilities may also receive a SENTRY code.

c.  **Notification to Staff and Tracking**.  After consultation with Psychology Services, and if the inmate affirms his/her transgender identity, the screening code will be updated to a permanent assignment by a psychologist:

> TRN M2F – inmate is male to female transgender (transgender female).
> TRN F2M – inmate is a female to male transgender (transgender male).

The inmate must request to Psychology Services staff that the CMA assignment be entered, and the inmate consents that all staff will therefore be notified that the individual is transgender.  The inmate's request will be documented on BP-A1110, Case Management Activity (CMA) SENTRY Assignment Consent Form for Transgender Inmates (included as Attachment A to this policy).  Psychology Services will maintain the form in the electronic mental health record and forward a copy of the form to the Unit Team.  The Unit Team will maintain the form in the FOI Exempt section of the Central File.

Staff should consult the CMA assignment when interacting with the inmate; e.g., use of pronouns, searches, commissary items, etc., as indicated below.

If there are questions about the need to continue a CMA assignment, the Warden should contact the Female Offender Branch.  Should the CMA assignment change, staff members will not be disciplined for the continued provision of accommodations or use of pronouns.

### 9.  HORMONE AND MEDICAL TREATMENT

Hormone or other medical treatment may be provided after an individualized assessment of the requested inmate by institution medical staff.  Medical staff should request consultation from Psychology Services regarding the mental health benefits of hormone or other medical treatment.  If appropriate for the inmate, hormone treatment will be provided in accordance with the Program Statement **Patient Care** and relevant clinical guidance.  Questions concerning hormone treatment may be referred to the TCCT.

In the event this treatment changes the inmate's appearance to the extent a new identification card is needed, the inmate will not be charged for the identification card.

### 10.  INSTITUTION PSYCHOLOGY SERVICES

Bureau psychologists are available to provide assessment and treatment services for transgender inmates, if appropriate.  Guidance on assessment procedures will be provided by the Psychology Services Branch.

If an inmate identifies as transgender, the psychologist will provide the inmate with information regarding the range of treatment options available in the Bureau and their implications.  In addition, based upon the psychologist's preliminary assessment and the inmate's expressed interest, a referral to the Clinical Director and/or Chief Psychiatrist may be generated.  While the initial interview must be scheduled within 14 days, an assessment may take longer in some instances.

In addition to a referral to medical services, a transgender inmate may be offered individual psychotherapy.  Individual psychotherapy goals might include: (1) helping the inmate to live more comfortably within a gender identity and deal effectively with non-gender issues; (2) emphasizing the need to set realistic life goals related to daily living, work, and relationships, including family of origin; (3) seeking to define and address issues that may have undermined a stable lifestyle, such as substance abuse and/or criminality; and (4) addressing any co-occurring mental health issues.  Mood disorders, anxiety disorders, substance use disorders, and personality disorders, etc., may also be present; any effective treatment plan will fully address these symptoms.

If an institution has multiple transgender inmates, a support group facilitated by a mental health provider may also be a component of the treatment plan.  Common concerns of transgender inmates, which may be addressed effectively in a group setting, include self-esteem issues and relationship issues.

Psychologists who provide mental health treatment for transgender inmates address all mental health needs, including suicide risk, if present.

Psychologists working with transgender inmates are encouraged to consult the Reentry Services Division in Central Office for additional resources.

## 11. **PRONOUNS AND NAMES**

Staff interacting with inmates who have a CMA assignment of transgender can use the authorized gender-neutral communication with inmates (e.g., by the legal last name or "Inmate" last name).  Transgender inmates often prefer to be called by pronouns of their identified gender identity.  Staff may choose to use these gender-specific pronouns or salutations per the inmate's request, and will not be disciplined for doing so.

An official committed name change while in BOP custody must be done consistent with the Program Statement **Correctional Systems Manual**, Chapter 4.  The name entered on the inmate's Judgement and Commitment Order will remain the official committed name for all Bureau records (incident reports, progress reviews, sentence calculations, etc.).  However, any additional names or aliases can be entered into SENTRY as appropriate.

## 12. **PAT SEARCHES**

Pat searches of transgender inmates will be conducted in accordance with the Program Statement **Searches of Housing Units, Inmates, and Inmate Work Areas**.  The policy language, included here as a reference, states:

 "Transgender Inmates – For purposes of pat searching, inmates will be pat-searched in accordance with the gender of the institution, or housing assignment, in which they are assigned.  Transgender inmates may request an exception.  The exception must be pre-authorized by the Warden, after consultation with staff from Health Services, Psychology Services, Unit Management, and Correctional Services.  Exceptions must be specifically described (e.g., "pat search only by female staff"), clearly communicated to relevant staff through a memorandum, and reflected in SENTRY (or other Bureau database; e.g., posted picture file).  Inmates should be provided a personal identifier (e.g., notation on commissary card, etc.) that indicates their individual exception, to be carried at all times and presented to staff prior to pat searches."

It is recommended the inmate request the exception by submitting an Inmate Request to Staff (BP-A0148) to the Warden. The Warden will consult with the departments listed above, and the memo approving or denying the request will be generated by the Warden's Office.

Inmates who are granted this exception under policy may have it reversed by the Warden if found to have violated institution rules concerning contraband.

In exigent circumstances, any staff member may conduct a pat search of any inmate consistent with the Program Statement **Searches of Housing Units, Inmates, and Inmate Work Areas**.

13. **VISUAL SEARCHES**

For purposes of a visual search, inmates will be searched in accordance with the gender of the institution, or housing assignment, to which they are assigned.  The visual search shall be made in a manner designed to ensure as much privacy to the inmate as practicable.  Staff should consider the physical layout of the institution, and the characteristics of an inmate with a transgender CMA assignment, to adjust conditions of the visual search as needed for the inmate's privacy.

Transgender inmates may also request an exception to be visually searched by a staff member of the inmate's identified gender.  The exception must be pre-authorized by the Warden, after consultation with staff from Health Services, Psychology Services, Unit Management, and Correctional Services.  Exceptions must be specifically described (e.g., "visual search only by female staff"), clearly communicated to relevant staff through a memorandum, and reflected in SENTRY (or other Bureau database; e.g., posted picture file).  Inmates should be provided a personal identifier (e.g., notation on commissary card, etc.) that indicates their individual exception, to be carried at all times and presented to staff prior to visual searches.

It is recommended the inmate request the exception by submitting an Inmate Request to Staff (BP-A0148) to the Warden.  The Warden will consult with the departments listed above, and the memo approving or denying the request will be generated by the Warden's Office.

Inmates who are granted this exception under policy may have it reversed by the Warden if found to have violated institution rules concerning contraband.

Transgender inmates placed at an institution or in a housing unit that does not correspond with their identified gender, and who are granted an exemption as indicated above, will be searched by: bargaining unit staff of the inmate's identified gender who consent to participate in the search; management staff of the inmate's identified gender who consent to participate in the search; or available Health Services clinical staff.

Transgender inmates placed at an institution or in a housing unit of their identified gender will be searched by bargaining unit staff of the inmate's identified gender who consent to participate in the search; management staff of the inmate's identified gender; or available medical staff.

Institutions should consider using available body scanning technology in lieu of visual searches of transgender inmates.

In exigent circumstances, any staff member may conduct a visual search of any inmate consistent with the Program Statement **Searches of Housing Units, Inmates, and Inmate Work Areas**.

14.  **CLOTHING AND COMMISSARY ITEMS**

Consistent with safety and security concerns, inmates with the CMA assignment of transgender will have the opportunity to have undergarments of their identified gender even if they are not housed with inmates of the identified gender.  Institutional laundry will have available institutional undergarments that fulfill the needs of transgender inmates.  Undergarments will not have metal components.

Standardized lists of Commissary items for transgender inmates are available in accordance with the Program Statement **Trust Fund/Deposit Manual**.

Additional items based on an individualized assessment of the transgender inmate may be approved by the Warden.  Additional items may be provided by the institution or purchased by the inmate, as appropriate.

Inmates who purchase and/or are provided items under this section will be subject to disciplinary sanctions, including the removal of these items, if they are found to have violated institution rules relating to the possession of these items.

15.  **REENTRY NEEDS**

In accordance with the Program Statement **Release Preparation Program**, institution staff should assist transgender inmates in addressing these issues prior to release or placement in a Residential Reentry Center/Home Confinement.

During initial classifications and Program Reviews, Unit Management will formulate a pre-release plan that will assist transgender inmates in obtaining appropriate identification, finding housing and employment, and providing community resources to reintegrate into the community.

The Reentry Affairs Coordinator may assist staff with identifying these resources.  Institution and/or Regional Social Workers should be contacted concerning the continuity of medical care.

The Female Offender Branch and/or Social Workers can be contacted to provide guidance and resources for reentry needs of transgender inmates.

## 16.  ADMINISTRATIVE REMEDIES

Inmates may use the procedures of the Program Statement **Administrative Remedy Program** concerning any issues relating to this policy.

**REFERENCES**

*Program Statements*

| | |
|---|---|
| P1330.18 | Administrative Remedy Program (1/6/14) |
| P4500.11 | Trust Fund/Deposit Fund Manual (4/9/15) |
| P5100.08 | Security Designation and Custody Classification Manual (9/12/06) |
| P5290.15 | Intake Screening (3/30/09) |
| P5310.12 | Psychology Services Manual (03/07/95) |
| P5310.16 | Treatment and Care of Inmates with Mental Illness (5/1/14) |
| P5322.13 | Inmate Classification and Program Review (5/16/14) |
| P5324.08 | Suicide Prevention (4/5/07) |
| P5324.12 | Sexually Abusive Behavior Prevention and Intervention Program (6/4/15) |
| P5325.07 | Release Preparation Program (12/31/07) |
| P5521.06 | Searches of Housing Units, Inmates, and Inmate Work Areas (6/4/15) |
| P5800.15 | Correctional Systems Manual (9/23/16) |
| P6031.04 | Patient Care (6/3/14) |
| P6090.04 | Health Information Management (3/2/15) |

*Federal Regulations*
28 CFR part 115

*Additional Resources For Clinicians*
Diagnostic and Statistical Manual of Mental Disorders (DSM), most current version.
World Professional Association for Transgender Health (WPATH) standards.

*BOP Forms*

| | |
|---|---|
| BP-A0148 | Inmate Request to Staff |
| BP-A1110 | Case Management Activity (CMA) SENTRY Assignment Consent Form for Transgender Inmates |

*ACA Standards (see Program Statement, **Directives Management Manual**, sections 2.5 and 10.3)*

- American Correctional Association Standards for Adult Correctional Institutions, 4th Edition: 4-4056M, 4-4084M, 4-4084.1M, 4-4133M, 4-4180M, 4-4194M, 4-4278M, 4-4281.1M, 4-4281.2M, 4-4281.3M, 4-4281.4M, 4-4281.5M, 4-4281.6M, 4-4281.7M, 4-4281.8M, 4-4362M, 4-4371M, 4-4406M.
- American Correctional Association Performance Based Standards for Adult Local Detention Facilities, 4th Edition:  4-ALDF-2A-29, 4-ALDF-2A-32, 4-ALDF-2A-34, 4-ALDF-6B-03, 4-ALDF-2C-03, 4-ALDF-4C-22M, 4-ALDF-4C-30M, 4-ALDF-4D-22, 4-ALDF-4D-22-1, 4-

ALDF-4D-22-2, 4-ALDF-4D-22-3, 4-ALDF-4D-22-4, 4-ALDF-4D-22-5, 4-ALDF-4D-22-6M, 4-ALDF-4D-22-7, 4-ALDF-4D-22-8, 4-ALDF-7B-08, 4-ALDF-7B-10, 4-ALDF-7B-10-1.

- ■ American Correctional Association Standards for Administration of Correctional Agencies, 2nd Edition:  None.

- ■ American Correctional Association Standards for Correctional Training Academies:  None.

*Records Retention*

Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

**Attachment A.   Case Management Activity (CMA) SENTRY Assignment**
**Consent Form for Transgender Inmates (BP-A1110)**

I agree that Bureau of Prisons staff may enter a CMA assignment on SENTRY concerning my gender identity.

I understand that this CMA assignment will identify me as transgender to all staff members.

I understand that the purpose of the CMA assignment is to assist staff members in providing programs and taking measures as described in the Program Statement **Transgender Offender Manual**.

I understand that specific medical and mental health information will not be disclosed to all staff using the CMA assignment; specific medical and mental health information is maintained separately.

Inmate Name:

Register Number:

Signature:

Date:

# Attachment C

                         AS OF 07-21-2017

REGNO..: 20446-009 NAME: FLEMING, RHONDA ANN

                    RESP OF: CRW
                    PHONE..: 817-782-4000    FAX: 817-782-4875
                                             RACE/SEX...: BLACK / FEMALE
                                             AGE:  51
PROJ REL MT: GOOD CONDUCT TIME RELEASE       PAR ELIG DT: N/A
PROJ REL DT: 03-23-2034                       PAR HEAR DT:

G0002      MORE PAGES TO FOLLOW . . .

160

```
                            AS OF 07-21-2017


REGNO..: 20446-009 NAME: FLEMING, RHONDA ANN


                     RESP OF: CRW
                     PHONE..: 817-782-4000    FAX: 817-782-4875
HOME DETENTION ELIGIBILITY DATE: 09-23-2033


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  03-23-2034 VIA GCT REL


----------------------CURRENT JUDGMENT/WARRANT NO: 030 ------------------------

COURT OF JURISDICTION...........: TEXAS, SOUTHERN DISTRICT
DOCKET NUMBER...................: 4:07CR00513-001
JUDGE...........................: MILLER
DATE SENTENCED/PROBATION IMPOSED: 01-22-2010
DATE COMMITTED..................: 03-16-2010
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $6,700.00       $00.00          $00.00       $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO        AMOUNT: $6,294,315.46

------------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....: 153
OFF/CHG: 18:371,1347, & 1343 CONSPIRACY TO COMMIT HEALTH CARE FRAUD &
         WIRE FRAUD (CT 1) 18:1347 & 2 HEALTH CARE FRAUD A&A (CT 2-36)

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   120 MONTHS
 TERM OF SUPERVISION............:     3 YEARS
 DATE OF OFFENSE................: 03-10-2004

------------------------CURRENT OBLIGATION NO: 020 ---------------------------
OFFENSE CODE....: 820
OFF/CHG: 18:1343 & 2 WIRE FRAUD AIDING & ABETTING (CTS 37-46)
         18:1956(A)(1)(A)(I) MONEY LAUNDERING PROMOTION (CTS 47-54)
         18:1956(A)(1)(B)(I) MONEY LAUNDERING CONCEALMENT (CTS 55-62)
         18:1957 ENGAGING IN MONETARY TRANSACTIONS IN PROPERTY DERIVED
         FROM SPECIFIED UNLAWFUL ACTIVITY (CTS 63-67)

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   240 MONTHS




G0002       MORE PAGES TO FOLLOW . . .
```

161

                        AS OF 07-21-2017

REGNO..: 20446-009 NAME: FLEMING, RHONDA ANN


                    RESP OF: CRW
                    PHONE..: 817-782-4000   FAX: 817-782-4875
 TERM OF SUPERVISION............:    3 YEARS
 DATE OF OFFENSE................: 03-10-2004

------------------------CURRENT COMPUTATION NO: 030 -------------------------

COMPUTATION 030 WAS LAST UPDATED ON 06-10-2011 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 11-01-2011 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 030: 030 010, 030 020

DATE COMPUTATION BEGAN..........: 01-22-2010
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:    360 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    30 YEARS
AGGREGATED TERM OF SUPERVISION..:    3 YEARS
EARLIEST DATE OF OFFENSE........: 03-10-2004

JAIL CREDIT.....................:   FROM DATE     THRU DATE
                                    12-18-2007    01-21-2010

TOTAL PRIOR CREDIT TIME.........: 766
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 1364
TOTAL GCT EARNED................: 432
STATUTORY RELEASE DATE PROJECTED: 03-23-2034
EXPIRATION FULL TERM DATE.......: 12-16-2037
TIME SERVED.....................:    9 YEARS      7 MONTHS      5 DAYS
PERCENTAGE OF FULL TERM SERVED..:  31.9

G0002      MORE PAGES TO FOLLOW . . .

REGNO..: 20446-009 NAME: FLEMING, RHONDA ANN

                    RESP OF: CRW
                    PHONE..: 817-782-4000    FAX: 817-782-4875

PROJECTED SATISFACTION DATE.....: 03-23-2034
PROJECTED SATISFACTION METHOD...: GCT REL

G0002      MORE PAGES TO FOLLOW . . .

163

REGNO..: 20446-009 NAME: FLEMING, RHONDA ANN

                        RESP OF: CRW

HOME DETENTION ELIGIBILITY DATE: 10-10-2006

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  12-11-2006 VIA GCT REL

------------------------PRIOR JUDGMENT/WARRANT NO: 020 ------------------------
COURT OF JURISDICTION...........: TEXAS, SOUTHERN DISTRICT
DOCKET NUMBER...................: 4:04CR00502-001
JUDGE...........................: HARMON
DATE SENTENCED/PROBATION IMPOSED: 12-13-1995
DATE SUPERVISION REVOKED........: 03-01-2005
TYPE OF SUPERVISION REVOKED.....: REG
DATE COMMITTED..................: 05-04-2005
HOW COMMITTED...................: COMMIT OF SUPERVISED REL VIOL
PROBATION IMPOSED...............: NO


                FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $50.00         $00.00          $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT: $00.00

-------------------------PRIOR OBLIGATION NO: 010 -------------------------
OFFENSE CODE....: 157
OFF/CHG: SRV - 18 U.S.C. 1029(A)(2), ACCESS DEVICE FRAUD.

 SENTENCE PROCEDURE.............: SUPERVISED REL VIOLATION VCCLEA NON-VIOL
 SENTENCE IMPOSED/TIME TO SERVE.:    24 MONTHS
 CLASS OF OFFENSE...............: CLASS C FELONY
 DATE OF OFFENSE................: 08-08-1995

G0002      MORE PAGES TO FOLLOW . . .

164

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 167 of 518   PageID 1097

REGNO..: 20446-009 NAME: FLEMING, RHONDA ANN

                    RESP OF: CRW
                    PHONE..: 817-782-4000   FAX: 817-782-4875
--------------------------PRIOR COMPUTATION NO: 020 --------------------------

COMPUTATION 020 WAS LAST UPDATED ON 09-09-2005 AT BRY AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 020:   020 010

DATE COMPUTATION BEGAN..........: 03-18-2005
TOTAL TERM IN EFFECT............:   24 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    2 YEARS
EARLIEST DATE OF OFFENSE........: 08-08-1995

JAIL CREDIT....................:   FROM DATE    THRU DATE
                                   02-10-2005   02-11-2005

TOTAL PRIOR CREDIT TIME.........: 2
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 94
TOTAL GCT EARNED...............: 94
STATUTORY RELEASE DATE PROJECTED: 12-11-2006
EXPIRATION FULL TERM DATE.......: 03-15-2007
TIME SERVED....................:    1 YEARS      8 MONTHS     26 DAYS
PERCENTAGE OF FULL TERM SERVED..: 87.1

ACTUAL SATISFACTION DATE........: 12-11-2006
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: CHN
ACTUAL SATISFACTION KEYED BY....: JMA

DAYS REMAINING..................: 94
FINAL PUBLIC LAW DAYS...........: 0

G0002       MORE PAGES TO FOLLOW . . .

REGNO..: 20446-009 NAME: FLEMING, RHONDA ANN

                    RESP OF: CRW

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  03-28-1997 VIA GCT REL

-----------------------PRIOR JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION...........: ARKANSAS, EASTERN DISTRICT
DOCKET NUMBER...................: 4:95CR00176-001
JUDGE...........................: WRIGHT
DATE SENTENCED/PROBATION IMPOSED: 12-13-1995
DATE COMMITTED..................: 01-25-1996
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $50.00         $00.00          $00.00       $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

-------------------------PRIOR OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  157
OFF/CHG: 18 U.S.C. 1029(A)(2), ACCESS DEVICE FRAUD.

  SENTENCE PROCEDURE.............: 3559 VCCLEA NON-VIOLENT SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   21 MONTHS
  TERM OF SUPERVISION............:    3 YEARS
  CLASS OF OFFENSE...............: CLASS C FELONY
  DATE OF OFFENSE................: 08-08-1995

G0002       MORE PAGES TO FOLLOW . . .

166

```
REGNO..: 20446-009 NAME: FLEMING, RHONDA ANN


                     RESP OF: CRW
                     PHONE..: 817-782-4000    FAX: 817-782-4875
--------------------------PRIOR COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 02-27-1997 AT CRW AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:   010 010


DATE COMPUTATION BEGAN..........: 12-13-1995
TOTAL TERM IN EFFECT............:    21 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     1 YEARS      9 MONTHS
EARLIEST DATE OF OFFENSE........: 08-08-1995

JAIL CREDIT....................:   FROM DATE     THRU DATE
                                   08-08-1995    09-11-1995
                                   10-11-1995    12-12-1995


TOTAL PRIOR CREDIT TIME.........: 98
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 68
TOTAL GCT EARNED................: 54
STATUTORY RELEASE DATE PROJECTED: 03-30-1997
EXPIRATION FULL TERM DATE.......: 06-06-1997
TIME SERVED....................:     1 YEARS      6 MONTHS     22 DAYS
PERCENTAGE OF FULL TERM SERVED..:  89.0


ACTUAL SATISFACTION DATE........: 03-28-1997
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: CRW
ACTUAL SATISFACTION KEYED BY....: CAT

DAYS REMAINING..................: 68
FINAL PUBLIC LAW DAYS...........: 2







G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

167

# Attachment D

REGNO..: 10965-023 NAME: DRIEVER, JEANETTE

                         RESP OF: CRW
                         PHONE..: 817-782-4000    FAX: 817-782-4875
                                                  RACE/SEX...: AMERICAN INDIAN / FEMA
                                                  AGE:  39
PROJ REL MT: GOOD CONDUCT TIME RELEASE            PAR ELIG DT: N/A
PROJ REL DT: 04-15-2018                           PAR HEAR DT:

G0002      MORE PAGES TO FOLLOW . . .

169

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 172 of 518   PageID 1102

REGNO..: 10965-023 NAME: DRIEVER, JEANETTE

                    RESP OF: CRW
                    PHONE..: 817-782-4000    FAX: 817-782-4875
HOME DETENTION ELIGIBILITY DATE: 10-16-2017

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  04-15-2018 VIA GCT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 020 -----------------------

COURT OF JURISDICTION...........: NEW MEXICO
DOCKET NUMBER...................: 1:14CR00604-003MCA
JUDGE..........................: ARMIJO
DATE SENTENCED/PROBATION IMPOSED: 08-26-2015
DATE COMMITTED..................: 12-01-2015
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


                FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00        $00.00          $00.00       $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 391
OFF/CHG: 21:846 CONSPIRACY TO VIOLATE 21:841(B)(1)(C)

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   60 MONTHS
 TERM OF SUPERVISION............:    5 YEARS
 DATE OF OFFENSE................: 11-06-2013

---------------------CURRENT JUDGMENT/WARRANT NO: 030 -----------------------

COURT OF JURISDICTION...........: NEW MEXICO
DOCKET NUMBER...................: 5:13CR01173-001MCA
JUDGE..........................: ARMIJO
DATE SENTENCED/PROBATION IMPOSED: 05-27-2011
DATE SUPERVISION REVOKED........: 08-26-2015
TYPE OF SUPERVISION REVOKED.....: REG
DATE COMMITTED..................: 12-01-2015
HOW COMMITTED...................: COMMIT OF SUPERVISED REL VIOL
PROBATION IMPOSED...............: NO




G0002      MORE PAGES TO FOLLOW . . .

170

REGNO..: 10965-023 NAME: DRIEVER, JEANETTE


                    RESP OF: CRW
                    PHONE..: 817-782-4000    FAX: 817-782-4875
                    FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00        $00.00         $00.00       $00.00


RESTITUTION...: PROPERTY: NO  SERVICES: NO        AMOUNT: $00.00

-----------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....: 391
OFF/CHG: 21:841(A)(1) & 846 CONSPIRACY TO DISTRIBUTE 500 GRAMS OR MORE
        OF METHAMPHETAMINE; SRT VIOLATOR

 SENTENCE PROCEDURE.............: SUPERVISED RELEASE VIOLATION PLRA
 SENTENCE IMPOSED/TIME TO SERVE.:   651 DAYS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CC TO 020 010
 DATE OF OFFENSE................: 04-28-2009

------------------------CURRENT COMPUTATION NO: 020 -----------------------

COMPUTATION 020 WAS LAST UPDATED ON 07-22-2016 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 11-10-2015 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 020: 020 010, 030 010

DATE COMPUTATION BEGAN..........: 08-26-2015
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:   60 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    5 YEARS
AGGREGATED TERM OF SUPERVISION..:    5 YEARS
EARLIEST DATE OF OFFENSE........: 04-28-2009

JAIL CREDIT.....................:   FROM DATE    THRU DATE
                                   11-06-2013   11-07-2013
                                   11-14-2013   08-25-2015




G0002       MORE PAGES TO FOLLOW . . .

171

REGNO..: 10965-023 NAME: DRIEVER, JEANETTE

                        RESP OF: CRW
                        PHONE..: 817-782-4000    FAX: 817-782-4875
TOTAL PRIOR CREDIT TIME.........: 652
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 211
TOTAL GCT EARNED................: 135
STATUTORY RELEASE DATE PROJECTED: 04-15-2018
EXPIRATION FULL TERM DATE.......: 11-12-2018
TIME SERVED.....................:     3 YEARS      8 MONTHS      9 DAYS
PERCENTAGE OF FULL TERM SERVED..: 73.7

PROJECTED SATISFACTION DATE.....: 04-15-2018
PROJECTED SATISFACTION METHOD...: GCT REL

G0002       MORE PAGES TO FOLLOW . . .

172

REGNO..: 10965-023 NAME: DRIEVER, JEANETTE

                       RESP OF: CRW

HOME DETENTION ELIGIBILITY DATE: 08-21-2012

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  01-18-2013 VIA GCT REL

-----------------------PRIOR JUDGMENT/WARRANT NO: 010 -----------------------
COURT OF JURISDICTION...........: IDAHO
DOCKET NUMBER...................: 08-CR-00344-006-BLW
JUDGE...........................: WINMILL
DATE SENTENCED/PROBATION IMPOSED: 05-27-2011
DATE COMMITTED..................: 07-27-2011
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


              FELONY ASSESS  MISDMNR ASSESS  FINES         COSTS
NON-COMMITTED.: $100.00       $00.00        $00.00        $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

--------------------------PRIOR OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 391
OFF/CHG: 21:841(A)(1) & 846 CONSPIRACY TO DISTRIBUTE 500 GRAMS OR MORE
         OF METHAMPHETAMINE

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:    50 MONTHS
 TERM OF SUPERVISION............:     5 YEARS
 DATE OF OFFENSE................: 04-28-2009

G0002       MORE PAGES TO FOLLOW . . .

173

```
REGNO..: 10965-023 NAME: DRIEVER, JEANETTE

                     RESP OF: CRW
                     PHONE..: 817-782-4000    FAX: 817-782-4875
-------------------------PRIOR COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 07-12-2011 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 07-13-2011 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:    010 010

DATE COMPUTATION BEGAN..........: 05-27-2011
TOTAL TERM IN EFFECT............:    50 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    4 YEARS       2 MONTHS
EARLIEST DATE OF OFFENSE........: 04-28-2009

JAIL CREDIT.....................:    FROM DATE     THRU DATE
                                     06-04-2009    05-26-2011

TOTAL PRIOR CREDIT TIME.........: 722
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 196
TOTAL GCT EARNED................: 196
STATUTORY RELEASE DATE PROJECTED: 01-19-2013
EXPIRATION FULL TERM DATE.......: 08-03-2013
TIME SERVED.....................:    3 YEARS       7 MONTHS     15 DAYS
PERCENTAGE OF FULL TERM SERVED..: 87.0

ACTUAL SATISFACTION DATE........: 01-18-2013
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: CEP
ACTUAL SATISFACTION KEYED BY....: JSP

DAYS REMAINING..................: 196
FINAL PUBLIC LAW DAYS...........: 1




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

174

# Attachment E

REGNO..: 47394-177 NAME: LITTLE, CHARLSA SUZANNE

                         RESP OF: BRY
                         PHONE..: 979-823-1879     FAX: 979-821-3316
                                                   RACE/SEX...: WHITE / FEMALE
                                                   AGE:  37
PROJ REL MT: GOOD CONDUCT TIME RELEASE             PAR ELIG DT: N/A
PROJ REL DT: 11-20-2020                            PAR HEAR DT:

G0002      MORE PAGES TO FOLLOW . . .

176

REGNO..: 47394-177 NAME: LITTLE, CHARLSA SUZANNE

                        RESP OF: BRY
                        PHONE..: 979-823-1879   FAX: 979-821-3316
HOME DETENTION ELIGIBILITY DATE: 05-20-2020

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  11-20-2020 VIA GCT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION...........: TEXAS, NORTHERN DISTRICT
DOCKET NUMBER...................: 4:13-CR-222-0 (06)
JUDGE...........................: O'CONNOR
DATE SENTENCED/PROBATION IMPOSED: 05-05-2014
DATE COMMITTED..................: 07-31-2014
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00        $00.00          $00.00       $00.00

RESTITUTION...: PROPERTY: NO  SERVICES: NO       AMOUNT: $00.00

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 391
OFF/CHG: 21:846 CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE A
         CONTROLLED SUBSTANCE

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   96 MONTHS
 TERM OF SUPERVISION............:    4 YEARS
 DATE OF OFFENSE................: 11-14-2013

G0002       MORE PAGES TO FOLLOW . . .

177

REGNO..: 47394-177 NAME: LITTLE, CHARLSA SUZANNE

                      RESP OF: BRY
                      PHONE..: 979-823-1879   FAX: 979-821-3316
------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 01-28-2015 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 09-04-2014 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 05-05-2014
TOTAL TERM IN EFFECT............:   96 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    8 YEARS
EARLIEST DATE OF OFFENSE........: 11-14-2013

JAIL CREDIT.....................:   FROM DATE    THRU DATE
                                    11-14-2013   05-04-2014

TOTAL PRIOR CREDIT TIME.........: 172
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 358
TOTAL GCT EARNED................: 141
STATUTORY RELEASE DATE PROJECTED: 11-20-2020
EXPIRATION FULL TERM DATE.......: 11-13-2021
TIME SERVED.....................:    3 YEARS      8 MONTHS      5 DAYS
PERCENTAGE OF FULL TERM SERVED..: 46.0

PROJECTED SATISFACTION DATE.....: 11-20-2020
PROJECTED SATISFACTION METHOD...: GCT REL

S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

178

# Attachment F

REGNO..: 08064-003 NAME: RHAMES, BRENDA BROUGHTO

                        RESP OF: CRW
                        PHONE..: 817-782-4000    FAX: 817-782-4875
                                                 RACE/SEX...: WHITE / FEMALE
                                                 AGE:  63
PROJ REL MT: GOOD CONDUCT TIME RELEASE           PAR ELIG DT: N/A
PROJ REL DT: 04-08-2020                          PAR HEAR DT:

G0002       MORE PAGES TO FOLLOW . . .

180

                             AS OF 07-21-2017

REGNO..: 08064-003 NAME: RHAMES, BRENDA BROUGHTO


                    RESP OF: CRW
                    PHONE..: 817-782-4000   FAX: 817-782-4875
HOME DETENTION ELIGIBILITY DATE: 11-06-2019


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  04-08-2020 VIA GCT REL


----------------------CURRENT JUDGMENT/WARRANT NO: 030 -----------------------

COURT OF JURISDICTION...........: ALABAMA, SOUTHERN DISTRICT
DOCKET NUMBER...................: 1:15-CR-00292-KD-C(1
JUDGE...........................: DUBOSE
DATE SENTENCED/PROBATION IMPOSED: 07-29-2016
DATE COMMITTED..................: 08-30-2016
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


                FELONY ASSESS  MISDMNR ASSESS  FINES       COSTS
NON-COMMITTED.: $400.00        $00.00          $00.00      $00.00

RESTITUTION...: PROPERTY: NO  SERVICES: NO      AMOUNT: $156,658.63

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 156
OFF/CHG: 18:1344A.F BANK FRAUD, CT. 1-4

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:    51 MONTHS
 TERM OF SUPERVISION............:     5 YEARS
 DATE OF OFFENSE................: 11-30-2014


G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 184 of 518   PageID 1114

REGNO..: 08064-003 NAME: RHAMES, BRENDA BROUGHTO

                     RESP OF: CRW
                     PHONE..: 817-782-4000   FAX: 817-782-4875
------------------------CURRENT COMPUTATION NO: 030 -------------------------

COMPUTATION 030 WAS LAST UPDATED ON 08-18-2016 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 08-19-2016 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 030: 030 010

DATE COMPUTATION BEGAN..........: 07-29-2016
TOTAL TERM IN EFFECT............:   51 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    4 YEARS      3 MONTHS
EARLIEST DATE OF OFFENSE........: 11-30-2014

JAIL CREDIT.....................:   FROM DATE    THRU DATE
                                    07-10-2015   07-10-2015
                                    11-05-2015   11-05-2015
                                    01-13-2016   01-13-2016

TOTAL PRIOR CREDIT TIME.........: 3
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 200
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: 04-08-2020
EXPIRATION FULL TERM DATE.......: 10-25-2020
TIME SERVED.....................:   11 MONTHS    26 DAYS
PERCENTAGE OF FULL TERM SERVED..: 23.2

PROJECTED SATISFACTION DATE.....: 04-08-2020
PROJECTED SATISFACTION METHOD...: GCT REL

G0002      MORE PAGES TO FOLLOW . . .

182

REGNO..: 08064-003 NAME: RHAMES, BRENDA BROUGHTO

                    RESP OF: CRW

HOME DETENTION ELIGIBILITY DATE: 10-11-2007

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  12-12-2007 VIA GCT REL

-----------------------PRIOR JUDGMENT/WARRANT NO: 020 -----------------------

COURT OF JURISDICTION...........: ALABAMA, SOUTHERN DISTRICT
DOCKET NUMBER...................: 1:02CR00010-001-WS
JUDGE...........................: STEELE
DATE SENTENCED/PROBATION IMPOSED: 08-30-2002
DATE SUPERVISION REVOKED........: 01-20-2005
TYPE OF SUPERVISION REVOKED.....: REG
DATE COMMITTED..................: 05-11-2006
HOW COMMITTED...................: COMMIT OF SUPERVISED REL VIOL
PROBATION IMPOSED...............: NO


               FELONY ASSESS  MISDMNR ASSESS  FINES       COSTS
NON-COMMITTED.: $100.00       $00.00          $00.00      $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $70,000.00

--------------------------PRIOR OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  156
OFF/CHG: 18:1344, BANK FRAUD

 SENTENCE PROCEDURE.............: SUPERVISED RELEASE VIOLATION PLRA
 SENTENCE IMPOSED/TIME TO SERVE.:    24 MONTHS
 CLASS OF OFFENSE...............: CLASS B FELONY
 DATE OF OFFENSE................: 06-30-2000

G0002       MORE PAGES TO FOLLOW . . .

183

REGNO..: 08064-003 NAME: RHAMES, BRENDA BROUGHTO

                        RESP OF: CRW
                        PHONE..: 817-782-4000    FAX: 817-782-4875
--------------------------PRIOR COMPUTATION NO: 020 --------------------------

COMPUTATION 020 WAS LAST UPDATED ON 09-21-2006 AT BRY AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 020:    020 010

DATE COMPUTATION BEGAN..........: 03-16-2006
TOTAL TERM IN EFFECT............:    24 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    2 YEARS
EARLIEST DATE OF OFFENSE........: 06-30-2000

TOTAL PRIOR CREDIT TIME.........: 0
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 94
TOTAL GCT EARNED................: 94
STATUTORY RELEASE DATE PROJECTED: 12-12-2007
EXPIRATION FULL TERM DATE.......: 03-15-2008
TIME SERVED.....................:    1 YEARS      8 MONTHS      27 DAYS
PERCENTAGE OF FULL TERM SERVED..: 87.1

ACTUAL SATISFACTION DATE........: 12-12-2007
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: BRY
ACTUAL SATISFACTION KEYED BY....: CDY

DAYS REMAINING..................: 94
FINAL PUBLIC LAW DAYS...........: 0

G0002      MORE PAGES TO FOLLOW . . .

184

REGNO..: 08064-003 NAME: RHAMES, BRENDA BROUGHTO

                        RESP OF: CRW

HOME DETENTION ELIGIBILITY DATE: 11-30-2003

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  01-15-2004 VIA GCT REL

------------------------PRIOR JUDGMENT/WARRANT NO: 010 ------------------------

COURT OF JURISDICTION...........: ALABAMA, SOUTHERN DISTRICT
DOCKET NUMBER...................: 1:02CR00010-001
JUDGE...........................: VOLLMER
DATE SENTENCED/PROBATION IMPOSED: 08-30-2002
DATE COMMITTED..................: 12-12-2002
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


                FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00        $00.00          $00.00       $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $70,000.00

-------------------------PRIOR OBLIGATION NO: 010 -------------------------
OFFENSE CODE....: 156
OFF/CHG: 18 USC 1344, BANK FRAUD

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   18 MONTHS
 TERM OF SUPERVISION............:    5 YEARS
 DATE OF OFFENSE................: 06-30-2000

G0002      MORE PAGES TO FOLLOW . . .

185

REGNO..: 08064-003 NAME: RHAMES, BRENDA BROUGHTO


                    RESP OF: CRW
                    PHONE..: 817-782-4000   FAX: 817-782-4875
--------------------------PRIOR COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 12-12-2002 AT MNA AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:   010 010


DATE COMPUTATION BEGAN..........: 11-20-2002
TOTAL TERM IN EFFECT............:  18 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:   1 YEARS      6 MONTHS
EARLIEST DATE OF OFFENSE........: 06-30-2000

JAIL CREDIT.....................:  FROM DATE      THRU DATE
                                   09-13-2001     09-14-2001
                                   09-26-2001     09-28-2001
                                   03-12-2002     03-12-2002
                                   03-20-2002     05-07-2002

TOTAL PRIOR CREDIT TIME.........: 55
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 70
TOTAL GCT EARNED................: 70
STATUTORY RELEASE DATE PROJECTED: 01-15-2004
EXPIRATION FULL TERM DATE.......: 03-25-2004
TIME SERVED.....................:   1 YEARS      3 MONTHS     20 DAYS
PERCENTAGE OF FULL TERM SERVED..: 87.2


ACTUAL SATISFACTION DATE........: 01-15-2004
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: CMY
ACTUAL SATISFACTION KEYED BY....: VLW


DAYS REMAINING..................: 70
FINAL PUBLIC LAW DAYS...........: 0


G0000     TRANSACTION SUCCESSFULLY COMPLETED


186

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

RHONDA FLEMING, *et al.*,

        *Plaintiffs*,

      v.

UNITED STATES OF AMERICA, *et al.*,

        *Defendants*.

Civil No. 7:17-cv-0009-O

## DECLARATION OF JODY R. UPTON, WARDEN, FEDERAL MEDICAL CENTER, CARSWELL

I, Jody R. Upton, do hereby make the following declaration:

1. I, Jody Upton, am employed by the Federal Bureau of Prisons (BOP) as the Warden at the Federal Medical Center Carswell (FMC Carswell) in Fort Worth, Texas. I have been employed by the BOP since 1990. I have served in variety of positions during my career with the BOP. Some of my more recent positions include Warden, Federal Correctional Institution, El Reno, in El Reno, Oklahoma, from October 2011 to April 2013; Warden, Federal Correctional Complex, Beaumont, Medium, in Beaumont, Texas, from April 2007 to October 2011; and Deputy Regional Director, Southeast Region, in Atlanta, Georgia, from August 2005 to April 2007. I have been the Warden of FMC Carswell since April 2013.

2. As Warden, I am responsible for the administrative oversight and overall operation of FMC Carswell.

1

188

3. In this position, I have access to official records compiled and maintained by the BOP, including inmate files and BOP computerized records, some of which are located in SENTRY.

4. SENTRY is a real-time information system consisting of various applications for processing inmate information. Data collected and stored in the SENTRY system includes information related to the classification, discipline, and programs of federal inmates.

## PLAINTIFFS

5. I have reviewed the allegations made by Plaintiff, Rhonda Fleming, Federal Register Number 20446-009; Plaintiff, Jeanette Driever, Federal Register Number 10965-023; Plaintiff, Brenda Rhames, Federal Register Number 08064-003; and Plaintiff, Charlsa Little, Federal Register Number 47394-177, in the Third Amended Complaint and the allegations contained in Plaintiffs' Motion for Preliminary Injunction and supporting appendix.

6. Plaintiff Fleming has been designated to FMC Carswell since November 3, 2015. She was also designated to FMC Carswell from March 29, 2011 to June 18, 2013, and from March 16, 2010 to March 25, 2011. Attached to this declaration as Attachment A is a true and accurate of Inmate History, pertaining to Rhonda Fleming, dated August 10, 2017.

7. Plaintiff Fleming is currently housed on Unit 2 North at FMC Carswell. From November 3, 2015 to June 15, 2016, Plaintiff Fleming did not have a work assignment. From June 13, 2016, to June 15, 2016, Plaintiff Fleming was assigned to work in Food Service.

189

Inmates assigned to work in food service typically cook and serve meals and clean the dining room area under the supervision of FMC Carswell staff.

8. From June 15, 2016, Plaintiff Fleming has been assigned to work as an orderly on Unit 1 South and Unit 2 south at various times, and has had several periods of legal leave. She is currently assigned to work as a Unit 2 South orderly. The job assignment of "orderly" is a general job assignment and can include a variety of duties. Inmates who are assigned to work as orderlies are generally assigned to clean and maintain particular areas of the institution, usually by emptying trashes, mopping and buffing floors, or painting.

9. At times, an inmate may be approved for a brief absence from her work assignment, usually if she has an imminent court deadline and needs to complete legal work that cannot be completed in her leisure time. This is known as legal leave.

10. Plaintiff Driever has been designated to FMC Carswell since April 12, 2016. She was also designated to FMC Carswell from December 1, 2015, to March 29, 2016. Attached to this declaration as Attachment B is a true and accurate of Inmate History, pertaining to Jeanette Driever, dated August 10, 2017.

11. Plaintiff Driever is currently housed on Unit 2 South at FMC Carswell. At FMC Carswell, Plaintiff Driever's only job assignment has been a nursing assistant.

12. Plaintiff Rhames has been designated to FMC Carswell since August 30, 2016. Attached to this declaration as Attachment C is a true and accurate of Inmate History, pertaining to Brenda Rhames, dated August 10, 2017.

13. Plaintiff Rhames is currently housed on Unit 2 South. Plaintiff Rhames has been assigned to work in food service since September 19, 2016.

14. Plaintiff Little has been designated to FPC Bryan since March 8, 2017. She was designated to FMC Carswell from May 5, 2015 to March 8, 2017. From July 31, 2014 to January 29, 2015, she was designated to FPC Bryan. Attached to this declaration as Attachment D is a true and accurate of Inmate History, pertaining to Charlsa Little, dated August 10, 2017.

15. While Plaintiff Little was designated to FMC Carswell, she was housed on Unit 2 South. She was also assigned to work as an orderly in various areas of the institution and in the commissary. From June 8, 2015 to July 30, 3015, she was a compound orderly. From July 30, 2015 to September 29, 2015, she was a Hospital Recreation Orderly. From September 29, 2016 to November 1, 2016, she was an orderly on Unit 2 South. From November 1, 2016 to March 8, 2017, she was assigned to work in the commissary.

16. No male-to-female transgender inmates at FMC Carswell are housed in the same unit as Plaintiffs.

**FMC CARSWELL**

17. FMC Carswell is an administrative facility that houses female inmates. Administrative facilities are institutions with special missions, such as the treatment of inmates with serious or chronic medical problems or the containment of extremely dangerous, violent, or escape-prone inmates. Federal Prison Camps house minimum security inmates. FMC Carswell has an adjacent satellite federal prison camp that houses minimum security inmates.

18. FMC Carswell has several types of housing units, including medical units, mental health units, general population units, a Special Housing Unit (SHU) and an Administrative

4

191

Unit. FMC Carswell houses inmates of all security levels, except for medium security, because there is no medium security designation for female offenders.

19. There are three large, general population units known as Unit 1 North, Unit 2 North, and Unit 2 South at FMC Carswell. Unit 1 South houses the inmates enrolled in the Residential Drug Abuse Program but is otherwise a general population unit.

20. The cells in Units 1 North, 2 North, 1 South, and 2 South typically house four inmates in two bunk beds. The cells do not have doors, showers, or toilets. All showers and toilets are located in a common area. Toilets are located in stalls with doors or curtains and individual showers are contained in a stall or enclosed by a curtain that is clear at the foot and head area, but opaque in the middle. All inmates assigned to these units must use the individual shower stalls in the common area on their specifically assigned unit.

21. Another housing unit, Unit 3, has cubicles rather than cells. There are generally two inmates housed in each cubicle. All showers and restrooms are located in a common area. Toilets are contained in stalls with doors or curtains and individual showers are contained in a stall with a door or enclosed by a curtain that is clear at the foot and head area, but opaque in the middle. All inmates assigned to this unit must use the individual showers in the common area on their specifically assigned unit.

22. FMC Carswell's two medical units generally houses inmates with more serious medical conditions. Often, two inmates are housed in a cell if there are hospital beds or four inmates are housed in a cell if there are bunk beds. Some cells on these units have in-cell restrooms with a toilet and a shower. The restroom has a door that closes. The shower is enclosed by a curtain that is clear at the foot and head area, but opaque in the middle. Additionally, there are individual showers and toilets located in common areas on these

5

units. The individual showers and toilets located in the common areas are enclosed with doors or by a curtain that is clear at the foot and head area, but opaque in the middle. All inmates assigned to these units must use the individual showers and toilets in the common area on their specifically assigned unit, or in their specifically assigned cell if the cell contains such facilities.

23. Chronic Care 5, also known as CC5, also generally houses inmates with more serious medical conditions. Often, two inmates are housed in a cell if there are hospital beds or four inmates are housed in a cell if there are bunk beds. Some cells on these units have in-cell restrooms with a toilet and a shower. The restroom has a door that closes. The shower is enclosed by a curtain that is clear at the foot and head area, but opaque in the middle. Additionally, there are individual showers and toilets located in common areas on these units. The showers and toilets located in the common areas are enclosed with doors or by a curtain that is clear at the foot and head area, but opaque in the middle. Unit 5 also has a larger shower area for inmates with disabilities or other impairments; however, inmates are not required to use it and may use the handicap shower stall. All inmates assigned to these units must use the showers and toilets in the common area on their specifically assigned unit; or in their specifically assigned cell if the cell contains such facilities.

24. Unit 6 generally houses inmates with more serious medical conditions or inmates that require smaller housing units for adjustment or management purposes. Often, two inmates are housed in a cell if there are hospital beds or four inmates are housed in a cell if there are bunk beds. Some cells on these units have in-cell restrooms with a toilet and a shower. The restroom has a door that closes. The shower is enclosed by a curtain that is

6

193

clear at the foot and head area, but opaque in the middle. Additionally, there are individual showers and toilets located in common areas on these units. The individual showers and toilets located in the common areas are enclosed with doors or by a curtain that is clear at the foot and head area, but opaque in the middle. All inmates assigned to these units must use the individual showers and toilets in the common area on their specifically assigned unit, or in their specifically assigned cell if the cell contains such facilities.

25. The Special Housing Unit (SHU) is a housing unit where inmates are securely separated from the general inmate population and may be housed either alone or with other inmates. SHUs help ensure the safety, security, and orderly operation of correctional facilities by providing alternative housing assignments for inmates removed from the general population.

26. There are often four inmates per cell in SHU at FMC Carswell. A toilet is located in the cell. It is not behind a door or curtain. There is a shower in the cell and it is enclosed by a curtain that is clear at the foot and head area, but opaque in the middle. All inmates on this unit must use the shower in their assigned cell.

27. FMC Carswell also has mental health units and an Administrative Unit. The Administrative Unit houses inmates who due to the serious nature of their crimes or behavior during incarceration are not housed in general population. These units are not been described as I am not aware of any allegations in this case that pertain to those units.

194

## **INMATE UNIFORMS**

28. Inmates at FMC Carswell are required to wear inmate uniforms. The inmate uniform consists of a button-down, khaki-colored shirt and khaki pants, or a khaki-colored dress with a T-shirt underneath. Outside of the assigned work hours for a particular inmate, inmates are permitted to wear "leisure clothing" which consists of a sweat shirt and sweat pants, or a t-shirt and athletic shorts. The inmate uniform is the same for the FMC Carswell Camp inmates, except that their clothing is green instead of khaki. Memoranda containing the rules for inmate uniforms are posted in the common areas on the housing units.

29. Inmates are instructed to be dressed at all times. If an inmate needs to change clothes, she must go to the restroom or shower area to do so behind a door or curtain. Inmates are not permitted to dress or undress in the presence of staff or other inmates.

30.  Attached is as Exhibit E is a true and accurate copy of the memorandum issued by me regarding the uniform dress code for inmates, dated June 24, 2013. This memorandum is posted in the common areas of the housing units at FMC Carswell.


## **INMATE DISCIPLINE**

31. Attached is as Exhibit F, is a true and accurate copy of Program Statement 5270.09, Inmate Discipline Program.

32. The BOP has promulgated rules and published agency policy regarding inmate discipline. *See* 28 C.F.R. § 541 and Program Statement 5270.09, Inmate Discipline Program. The inmate discipline program ensures the safety, security, and orderly operation of BOP institutions, and the protection of the public, by allowing Bureau staff to impose

sanctions on inmates who commit prohibited acts. *See* Exhibit F, page 1.

33. When BOP staff have a reasonable belief that an inmate has committed a violation of a
Bureau regulation, he or she prepares an incident report.  A staff member provides the
inmate with a written copy of the charges and investigates the incident.  All relevant
materials are then forwarded to the Unit Disciplinary Committee (UDC) for an initial
hearing. *See* Exhibit F page 17 and 23-26.

34. After considering all of the evidence presented at the hearing, the UDC makes a decision.
The UDC may find that the inmate committed the prohibited act as charged, find that the
inmate committed a similar prohibited act, or find that the inmate did not commit the
prohibited act charged. In some cases, the UDC will refer the case to the DHO
(Discipline Hearing Officer) for further proceedings.  The DHO is an independent
hearing officer who is responsible for conducting discipline hearings and who imposes
sanctions for incidents of inmate misconduct referred for disposition by the UDC. *See*
Exhibit F, pages 23-36.

35. The DHO prepares a record of the proceedings, which reflects the specific evidence
relied upon by the DHO, the DHO's decision, and the sanction imposed. *See* Exhibit F,
page 34.

36. Sexual Assault, Threatening, Making Sexual Proposals or Threats, Engaging in Sexual
Acts, Indecent Exposure, and Being in an Unauthorized Area are all prohibited acts per
agency policy. *See* Exhibit F, pages 44-53.

196

## ALLEGATIONS OF INDECENT EXPOSURE, THREATS, OR OTHER MISCONDUCT

37. ████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████

38. The allegations in this lawsuit that transgender inmates identified in the Complaint have exposed themselves to the Plaintiffs on specific occasions have been investigated by FMC Carswell staff and appropriate action has been taken. To my knowledge, the Complaint's allegations of transgender inmates exposing themselves the Plaintiffs have not been substantiated.

39. If an inmate reports a threat of violence or harassment to me or other FMC Carswell staff, staff conduct a review or investigate the alleged conduct and appropriate action is taken.

40. The Special Investigative Services (SIS) Department typically conducts inmate investigations. The SIS Department will report to me their findings and recommendations as a result of their investigation and I will direct that appropriate action be taken after consulting their findings. Additionally, the Special Investigative Agent (SIA) conducts allegations of staff misconduct.

41. ████████████████████████████████████████████
███████████████████████████. However, that incident did not involve the Plaintiffs and resulted in action taken with respect to that inmate.

42. The allegations in this lawsuit that transgender inmates identified in the Complaint have harassed or made threats against the Plaintiffs have been investigated by FMC Carswell

staff and appropriate action has been taken. To my knowledge, the Complaint's allegations of transgender inmates threatening or harassing the Plaintiffs have not been substantiated.

## ALLEGATIONS OF RETALIATION

43. In June 2016, Plaintiff Fleming emailed me regarding her allegation that Unit Manager Cole-Rowls refused to give her a grievance and retaliated against Fleming by assigning her to a food service work detail. In this email, Plaintiff Fleming indicated that she was being retaliated against for reporting that an officer assaulted an inmate with a shoe. Plaintiff Fleming never mentioned transgender inmates or never said that she felt the retaliation was a result of her airing concerns regarding the transgender inmates. I referred the matter to the appropriate officials for review and I directed Plaintiff Fleming to the administrative remedy coordinator. Attached hereto as Exhibit G is a true and accurate copy of emails from Plaintiff Fleming dated May 28, 2016, and June 13, 2016, 6:59 a.m. and 7:01 a.m.

44. I am not aware of Ms. Cole-Rowls ever denying inmates administrative remedy forms or grievances.

45. The allegation that inmates at FMC Carswell are being retaliated against by staff for airing concerns regarding the designation of transgender inmates to FMC Carswell have been investigated and have not been substantiated.

46. Plaintiffs contend that any attempts to file administrative remedies related to their allegations regarding transgender inmates are futile based on an email that they characterize as explaining the national policy of the Bureau of Prisons. The purpose of

the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of her confinement. As Warden, I do not create national policy or designate inmates to institutions. The designation of inmates and reviews of national policy are generally handled at the region or central office level. Thus, Plaintiffs' concerns could be appropriately reviewed and addressed via the administrative remedy program, by filing a Request for Administrative Remedy, known as a BP-9, at the local institution; and receiving a response, from me, even if it was a denial. Plaintiffs needed a response, which could include a denial, at the local level in order to further pursue the administrative remedies by filing a Regional Administrative Remedy Appeal, known as a BP-10, at the region; and Central Office Administrative Remedy Appeal, known as a BP-11, at Central Office.

47. I have never attempted to thwart or discourage inmates, including Plaintiffs, from filing administrative remedies. I routinely refer inmates to the Administrative Remedy Program.

## **TRANSGENDER POPULATION**

48. Beginning in December 2013, male- to-female transgender inmates have been designated to FMC Carswell, when deemed appropriate, based on a case-by-case determination.

49. To my knowledge, there are currently no male-to-female transgender inmates designated to the Federal Prison Camp in Bryan.

199

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed on this __10__ day of August, 2017.

_____
Jody R. Upton
Warden
FMC Carswell
Federal Bureau of Prisons

13

200

# **Attachment A**

```
REG NO..: 20446-009 NAME....: FLEMING, RHONDA ANN
 CATEGORY: ARS          FUNCTION: PRT          FORMAT:

FCL      ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
CRW      A-DES      DESIGNATED, AT ASSIGNED FACIL 11-03-2015 1344 CURRENT
B06      RELEASE    RELEASED FROM IN-TRANSIT FACL 11-03-2015 1444 11-03-2015 1444
B06      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 11-03-2015 1030 11-03-2015 1444
OKL      HLD REMOVE HOLDOVER REMOVED             11-03-2015 0930 11-03-2015 0930
OKL      A-BOP HLD  HOLDOVER FOR INST TO INST TRF 10-26-2015 1700 11-03-2015 0930
A02      RELEASE    RELEASED FROM IN-TRANSIT FACL 10-26-2015 1800 10-26-2015 1800
A02      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 10-26-2015 1300 10-26-2015 1800
WAS      TRANSFER   TRANSFER                      10-26-2015 1200 10-26-2015 1200
WAS      A-DES      DESIGNATED, AT ASSIGNED FACIL 10-21-2014 1915 10-26-2015 1200
I-T      RELEASE    RELEASED FROM IN-TRANSIT FACL 10-21-2014 2015 10-21-2014 2015
I-T      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 10-21-2014 0530 10-21-2014 2015
A02      RELEASE    RELEASED FROM IN-TRANSIT FACL 10-21-2014 0530 10-21-2014 0530
A02      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 10-20-2014 1000 10-21-2014 0530
OKL      HLD REMOVE HOLDOVER REMOVED             10-20-2014 0900 10-20-2014 0900
OKL      A-BOP HLD  HOLDOVER FOR INST TO INST TRF 09-26-2014 1515 10-20-2014 0900
A01      RELEASE    RELEASED FROM IN-TRANSIT FACL 09-26-2014 1615 09-26-2014 1615
A01      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 09-26-2014 0644 09-26-2014 1615
TAL      TRANSFER   TRANSFER                      09-26-2014 0644 09-26-2014 0644
TAL      A-DES      DESIGNATED, AT ASSIGNED FACIL 02-27-2014 1025 09-26-2014 0644
I-T      RELEASE    RELEASED FROM IN-TRANSIT FACL 02-27-2014 1025 02-27-2014 1025
I-T      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-27-2014 0530 02-27-2014 1025
A01      RELEASE    RELEASED FROM IN-TRANSIT FACL 02-27-2014 0530 02-27-2014 0530
A01      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-26-2014 1000 02-27-2014 0530
OKL      HLD REMOVE HOLDOVER REMOVED             02-26-2014 0900 02-26-2014 0900
OKL      A-HLD      HOLDOVER, TEMPORARILY HOUSED  02-20-2014 1755 02-26-2014 0900
I-T      RELEASE    RELEASED FROM IN-TRANSIT FACL 02-20-2014 1855 02-20-2014 1855
I-T      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-19-2014 0530 02-20-2014 1855
A02      RELEASE    RELEASED FROM IN-TRANSIT FACL 02-19-2014 0530 02-19-2014 0530
A02      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-18-2014 1648 02-19-2014 0530
HOU      HLD REMOVE HOLDOVER REMOVED             02-18-2014 1548 02-18-2014 1548
HOU      A-HLD      HOLDOVER, TEMPORARILY HOUSED  09-25-2013 1700 02-18-2014 1548
I-T      RELEASE    RELEASED FROM IN-TRANSIT FACL 09-25-2013 1800 09-25-2013 1800
I-T      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 09-25-2013 0530 09-25-2013 1800
A01      RELEASE    RELEASED FROM IN-TRANSIT FACL 09-25-2013 0530 09-25-2013 0530
A01      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 09-24-2013 0627 09-25-2013 0530
TAL      FED WRIT   RELEASE ON FEDERAL WRIT       09-24-2013 0627 02-27-2014 1025
TAL      A-DES      DESIGNATED, AT ASSIGNED FACIL 07-09-2013 1800 09-24-2013 0627
I-T      RELEASE    RELEASED FROM IN-TRANSIT FACL 07-09-2013 1800 07-09-2013 1800
I-T      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-09-2013 0530 07-09-2013 1800
A01      RELEASE    RELEASED FROM IN-TRANSIT FACL 07-09-2013 0530 07-09-2013 0530
A01      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-08-2013 0915 07-09-2013 0530


G0002      MORE PAGES TO FOLLOW . . .
```

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 205 of 518   PageID 1135

```
  REG NO..: 20446-009 NAME....: FLEMING, RHONDA ANN
  CATEGORY: ARS        FUNCTION: PRT        FORMAT:


FCL    ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
OKL    HLD REMOVE HOLDOVER REMOVED            07-08-2013 0815 07-08-2013 0815
OKL    A-BOP HLD  HOLDOVER FOR INST TO INST TRF 06-18-2013 0845 07-08-2013 0815
B06    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-18-2013 0945 06-18-2013 0945
B06    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-18-2013 0535 06-18-2013 0945
CRW    TRANSFER   TRANSFER                      06-18-2013 0435 06-18-2013 0435
CRW    A-DES      DESIGNATED, AT ASSIGNED FACIL 03-29-2011 1943 06-18-2013 0435
CRW    LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN 03-25-2011 1435 03-29-2011 1943
CRW    A-DES      DESIGNATED, AT ASSIGNED FACIL 03-16-2010 1322 03-25-2011 1435
9-L    RELEASE    RELEASED FROM IN-TRANSIT FACL 03-16-2010 1422 03-16-2010 1422
9-L    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-17-2010 1752 03-16-2010 1422
DSC    ADMIN REL  ADMINISTRATIVE RELEASE        02-17-2010 1652 02-17-2010 1652
DSC    A-ADMIN    ADMINISTRATIVE ADMISSION      02-17-2010 1623 02-17-2010 1652
CRW    REDACTED                                10-24-2008 1304 02-17-2010 1623
CRW    REDAC                                   08-12-2008 1416 10-24-2008 1304
HOU    PRE REMOVE PRE SENT DETAINEE REMOVED    08-12-2008 0845 08-12-2008 1416
HOU    A-PRE      PRE-SENT ADMIT, ADULT         07-24-2008 2123 08-12-2008 0845
HOU    ADM CHANGE RELEASE FOR ADMISSION CHANGE 07-24-2008 2122 07-24-2008 2123
HOU    A-HLD      HOLDOVER, TEMPORARILY HOUSED  07-22-2008 1725 07-24-2008 2122
CRW    REDACTED                                07-22-2008 1353 07-22-2008 1725
CRW    REDAC                                   06-04-2008 1418 07-22-2008 1353
B06    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-04-2008 1518 06-04-2008 1518
B06    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-04-2008 1100 06-04-2008 1518
OKL    HLD REMOVE HOLDOVER REMOVED            06-04-2008 1000 06-04-2008 1000
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  05-30-2008 1755 06-04-2008 1000
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 05-30-2008 1855 05-30-2008 1855
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-30-2008 1430 05-30-2008 1855
HOU    HLD REMOVE HOLDOVER REMOVED            05-30-2008 1330 05-30-2008 1330
HOU    A-HLD      HOLDOVER, TEMPORARILY HOUSED  02-12-2008 1409 05-30-2008 1330
CHN    GCT REL    GOOD CONDUCT TIME RELEASE     12-11-2006 1332 02-12-2008 1409
CHN    A-DES      DESIGNATED, AT ASSIGNED FACIL 10-10-2006 1601 12-11-2006 1332
0-I    RELEASE    RELEASED FROM IN-TRANSIT FACL 10-10-2006 1701 10-10-2006 1701
0-I    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 10-10-2006 0949 10-10-2006 1701
BRY    FURL TRANS FURL W/UNESCORTED TRF TO A CCC 10-10-2006 0849 10-10-2006 0849
BRY    A-DES      DESIGNATED, AT ASSIGNED FACIL 06-23-2006 0908 10-10-2006 0849
BRY    LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN 06-23-2006 0746 06-23-2006 0908
BRY    A-DES      DESIGNATED, AT ASSIGNED FACIL 05-04-2005 1208 06-23-2006 0746
7-E    RELEASE    RELEASED FROM IN-TRANSIT FACL 05-04-2005 1308 05-04-2005 1308
7-E    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-04-2005 1020 05-04-2005 1308
HOU    HLD REMOVE HOLDOVER REMOVED            05-04-2005 0920 05-04-2005 0920
HOU    A-HLD      HOLDOVER, TEMPORARILY HOUSED  03-18-2005 1440 05-04-2005 0920
HOU    BAIL/BOND  BAIL/BOND                     02-11-2005 1415 03-18-2005 1440




G0002      MORE PAGES TO FOLLOW . . .
```

203

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 206 of 518   PageID 1136

```
  REG NO..: 20446-009 NAME....: FLEMING, RHONDA ANN
  CATEGORY: ARS        FUNCTION: PRT        FORMAT:

FCL      ASSIGNMENT  DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
HOU      A-HLD       HOLDOVER, TEMPORARILY HOUSED 02-10-2005 1629 02-11-2005 1415
CRW      GCT REL     GOOD CONDUCT TIME REL (CCCA) 03-28-1997 1049 02-10-2005 1629
CRW      A-DES       DESIGNATED, AT ASSIGNED FACIL 12-23-1996 1536 03-28-1997 1049
6-S      RELEASE     RELEASED FROM IN-TRANSIT FACL 12-23-1996 1536 12-23-1996 1536
6-S      A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 12-23-1996 1531 12-23-1996 1536
CRW      TRANSFER    TRANSFER                     12-23-1996 1531 12-23-1996 1531
CRW      A-HLD       HOLDOVER, TEMPORARILY HOUSED 10-29-1996 1555 12-23-1996 1531
0-I      RELEASE     RELEASED FROM IN-TRANSIT FACL 10-29-1996 1655 10-29-1996 1655
0-I      A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 10-29-1996 1354 10-29-1996 1655
BRY      TEMP REM    TEMPORARY REMOVAL            10-29-1996 1254 12-23-1996 1535
BRY      A-DES       DESIGNATED, AT ASSIGNED FACIL 01-25-1996 1520 10-29-1996 1254
0-W      RELEASE     RELEASED FROM IN-TRANSIT FACL 01-25-1996 1620 01-25-1996 1620
0-W      A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 01-25-1996 1300 01-25-1996 1620
CDA      HLD REMOVE  HOLDOVER REMOVED             01-25-1996 1200 01-25-1996 1200
CDA      A-HLD       HOLDOVER, TEMPORARILY HOUSED 01-24-1996 2239 01-25-1996 1200
6-K      RELEASE     RELEASED FROM IN-TRANSIT FACL 01-24-1996 2339 01-24-1996 2339
6-K      A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 01-24-1996 1345 01-24-1996 2339
OKL      HLD REMOVE  HOLDOVER REMOVED             01-24-1996 1245 01-24-1996 1245
OKL      A-HLD       HOLDOVER, TEMPORARILY HOUSED 01-04-1996 1500 01-24-1996 1245
1-S      RELEASE     RELEASED FROM IN-TRANSIT FACL 01-04-1996 1600 01-04-1996 1600
1-S      A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 12-22-1995 1058 01-04-1996 1600
CNO      ADMIN REL   ADMINISTRATIVE RELEASE       12-22-1995 0958 12-22-1995 0958
CNO      A-ADMIN     ADMINISTRATIVE ADMISSION     12-22-1995 0856 12-22-1995 0958
```

```
G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

# Attachment B

```
REG NO..: 10965-023 NAME....: DRIEVER, JEANETTE
CATEGORY: ARS        FUNCTION: PRT        FORMAT:

FCL      ASSIGNMENT DESCRIPTION                   START DATE/TIME STOP  DATE/TIME
CRW      A-DES      DESIGNATED, AT ASSIGNED FACIL  04-12-2016 1508 CURRENT
B06      RELEASE    RELEASED FROM IN-TRANSIT FACL  04-12-2016 1608 04-12-2016 1608
B06      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-12-2016 1115 04-12-2016 1608
OKL      HLD REMOVE HOLDOVER REMOVED               04-12-2016 1015 04-12-2016 1015
OKL      A-HLD      HOLDOVER, TEMPORARILY HOUSED   04-11-2016 0905 04-12-2016 1015
I-T      RELEASE    RELEASED FROM IN-TRANSIT FACL  04-11-2016 1005 04-11-2016 1005
I-T      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-02-2016 0530 04-11-2016 1005
A01      RELEASE    RELEASED FROM IN-TRANSIT FACL  04-02-2016 0530 04-02-2016 0530
A01      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-01-2016 0830 04-02-2016 0530
OKL      HLD REMOVE HOLDOVER REMOVED               04-01-2016 0730 04-01-2016 0730
OKL      A-HLD      HOLDOVER, TEMPORARILY HOUSED   03-29-2016 0845 04-01-2016 0730
B06      RELEASE    RELEASED FROM IN-TRANSIT FACL  03-29-2016 0945 03-29-2016 0945
B06      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 03-29-2016 0501 03-29-2016 0945
CRW      FED WRIT   RELEASE ON FEDERAL WRIT        03-29-2016 0401 04-12-2016 1508
CRW      A-DES      DESIGNATED, AT ASSIGNED FACIL  12-01-2015 1441 03-29-2016 0401
B06      RELEASE    RELEASED FROM IN-TRANSIT FACL  12-01-2015 1541 12-01-2015 1541
B06      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-01-2015 1030 12-01-2015 1541
OKL      HLD REMOVE HOLDOVER REMOVED               12-01-2015 0930 12-01-2015 0930
OKL      A-HLD      HOLDOVER, TEMPORARILY HOUSED   11-24-2015 1630 12-01-2015 0930
9-L      RELEASE    RELEASED FROM IN-TRANSIT FACL  11-24-2015 1730 11-24-2015 1730
9-L      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 10-05-2015 0958 11-24-2015 1730
DSC      ADMIN REL  ADMINISTRATIVE RELEASE         10-05-2015 0858 10-05-2015 0858
DSC      A-ADMIN    ADMINISTRATIVE ADMISSION       10-05-2015 0807 10-05-2015 0858
CEP      GCT REL    GOOD CONDUCT TIME RELEASE      01-18-2013 0800 10-05-2015 0807
CEP      A-HC SENT  HOME CONFINEMENT-SENTENCED     10-31-2012 0815 01-18-2013 0800
1-A      RELEASE    RELEASED FROM IN-TRANSIT FACL  10-31-2012 1015 10-31-2012 1015
1-A      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 10-31-2012 1013 10-31-2012 1015
CEP      TRANSFER   TRANSFER                       10-31-2012 0813 10-31-2012 0813
CEP      A-DES      DESIGNATED, AT ASSIGNED FACIL  07-25-2012 2137 10-31-2012 0813
4-H      RELEASE    RELEASED FROM IN-TRANSIT FACL  07-25-2012 2337 07-25-2012 2337
4-H      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-25-2012 1120 07-25-2012 2337
PHX      FURL TRANS FURL W/UNESCORTED TRF TO A CCC 07-25-2012 0820 07-25-2012 0820
PHX      A-DES      DESIGNATED, AT ASSIGNED FACIL  07-27-2011 0730 07-25-2012 0820
9-L      RELEASE    RELEASED FROM IN-TRANSIT FACL  07-27-2011 1030 07-27-2011 1030
9-L      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-09-2011 1245 07-27-2011 1030
DSC      ADMIN REL  ADMINISTRATIVE RELEASE         06-09-2011 1145 06-09-2011 1145
DSC      A-ADMIN    ADMINISTRATIVE ADMISSION       06-09-2011 1134 06-09-2011 1145
9-L      RELEASE    RELEASED FROM IN-TRANSIT FACL  06-09-2011 1234 06-09-2011 1234
9-L      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-02-2011 1242 06-09-2011 1234
DSC      ADMIN REL  ADMINISTRATIVE RELEASE         06-02-2011 1142 06-02-2011 1142
DSC      A-ADMIN    ADMINISTRATIVE ADMISSION       06-02-2011 1141 06-02-2011 1142


G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

206

# Attachment C

```
REG NO..: 08064-003 NAME....: RHAMES, BRENDA BROUGHTO
CATEGORY: ARS          FUNCTION: PRT          FORMAT:


FCL     ASSIGNMENT  DESCRIPTION                    START DATE/TIME STOP  DATE/TIME
CRW     A-DES       DESIGNATED, AT ASSIGNED FACIL  05-09-2017 1214 CURRENT
CRW     LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  05-09-2017 0935 05-09-2017 1214
CRW     A-DES       DESIGNATED, AT ASSIGNED FACIL  01-19-2017 1139 05-09-2017 0935
CRW     LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  01-19-2017 0913 01-19-2017 1139
CRW     A-DES       DESIGNATED, AT ASSIGNED FACIL  09-29-2016 1219 01-19-2017 0913
CRW     LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  09-29-2016 0724 09-29-2016 1219
CRW     A-DES       DESIGNATED, AT ASSIGNED FACIL  08-30-2016 1407 09-29-2016 0724
B06     RELEASE     RELEASED FROM IN-TRANSIT FACL  08-30-2016 1507 08-30-2016 1507
B06     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 08-30-2016 1110 08-30-2016 1507
OKL     HLD REMOVE  HOLDOVER REMOVED               08-30-2016 1010 08-30-2016 1010
OKL     A-HLD       HOLDOVER, TEMPORARILY HOUSED   08-17-2016 1440 08-30-2016 1010
9-L     RELEASE     RELEASED FROM IN-TRANSIT FACL  08-17-2016 1540 08-17-2016 1540
9-L     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 08-08-2016 0920 08-17-2016 1540
DSC     ADMIN REL   ADMINISTRATIVE RELEASE         08-08-2016 0820 08-08-2016 0820
DSC     A-ADMIN     ADMINISTRATIVE ADMISSION       08-08-2016 0804 08-08-2016 0820
BRY     GCT REL     GOOD CONDUCT TIME RELEASE      12-12-2007 1512 08-08-2016 0804
BRY     A-DES       DESIGNATED, AT ASSIGNED FACIL  11-16-2007 0927 12-12-2007 1512
BRY     LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  11-16-2007 0850 11-16-2007 0927
BRY     A-DES       DESIGNATED, AT ASSIGNED FACIL  10-26-2006 1037 11-16-2007 0850
BRY     FURL MED    FURLOUGH-MEDICAL               10-26-2006 0830 10-26-2006 1037
BRY     A-DES       DESIGNATED, AT ASSIGNED FACIL  05-11-2006 1506 10-26-2006 0830
A01     RELEASE     RELEASED FROM IN-TRANSIT FACL  05-11-2006 1606 05-11-2006 1606
A01     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 05-11-2006 0900 05-11-2006 1606
OKL     HLD REMOVE  HOLDOVER REMOVED               05-11-2006 0800 05-11-2006 0800
OKL     A-HLD       HOLDOVER, TEMPORARILY HOUSED   05-08-2006 1705 05-11-2006 0800
1-Q     RELEASE     RELEASED FROM IN-TRANSIT FACL  05-08-2006 1805 05-08-2006 1805
1-Q     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-17-2006 1724 05-08-2006 1805
CMY     ADMIN REL   ADMINISTRATIVE RELEASE         04-17-2006 1624 04-17-2006 1624
CMY     A-ADMIN     ADMINISTRATIVE ADMISSION       04-17-2006 0834 04-17-2006 1624
1-Q     RELEASE     RELEASED FROM IN-TRANSIT FACL  04-17-2006 0934 04-17-2006 0934
1-Q     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-12-2006 1655 04-17-2006 0934
CMY     ADMIN REL   ADMINISTRATIVE RELEASE         04-12-2006 1555 04-12-2006 1555
CMY     A-ADMIN     ADMINISTRATIVE ADMISSION       04-12-2006 1409 04-12-2006 1555
CMY     GCT REL     GOOD CONDUCT TIME RELEASE      01-15-2004 0830 04-12-2006 1409
CMY     A-DES       DESIGNATED, AT ASSIGNED FACIL  12-02-2003 1325 01-15-2004 0830
3-T     RELEASE     RELEASED FROM IN-TRANSIT FACL  12-02-2003 1425 12-02-2003 1425
3-T     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 12-02-2003 0912 12-02-2003 1425
MNA     FURL TRANS  FURL W/UNESCORTED TRF TO A CCC 12-02-2003 0812 12-02-2003 0812
MNA     A-DES       DESIGNATED, AT ASSIGNED FACIL  08-26-2003 1310 12-02-2003 0812
MNA     FURL SOC    FURLOUGH-SOCIAL                08-20-2003 0800 08-26-2003 1310
MNA     A-DES       DESIGNATED, AT ASSIGNED FACIL  07-25-2003 1151 08-20-2003 0800




G0002      MORE PAGES TO FOLLOW . . .
```

```
REG NO..: 08064-003 NAME....: RHAMES, BRENDA BROUGHTO
CATEGORY: ARS        FUNCTION: PRT        FORMAT:

FCL       ASSIGNMENT DESCRIPTION                START DATE/TIME STOP  DATE/TIME
3-T       RELEASE    RELEASED FROM IN-TRANSIT FACL 07-25-2003 1251 07-25-2003 1251
3-T       A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-15-2003 1150 07-25-2003 1251
MNA       STATE WRIT RELEASE ON STATE WRIT       07-15-2003 1050 07-25-2003 1151
MNA       A-DES      DESIGNATED, AT ASSIGNED FACIL 02-26-2003 1452 07-15-2003 1050
MNA       ESCORT TRP ESC TRIP OTHER THAN LOCAL HOSP 02-26-2003 1158 02-26-2003 1452
MNA       A-DES      DESIGNATED, AT ASSIGNED FACIL 12-11-2002 1056 02-26-2003 1158
4-W       RELEASE    RELEASED FROM IN-TRANSIT FACL 12-11-2002 1156 12-11-2002 1156
4-W       A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-11-2002 1038 12-11-2002 1156
TAL       HLD REMOVE HOLDOVER REMOVED            12-11-2002 1038 12-11-2002 1038
TAL       A-HLD      HOLDOVER, TEMPORARILY HOUSED 12-10-2002 1912 12-11-2002 1038
A01       RELEASE    RELEASED FROM IN-TRANSIT FACL 12-10-2002 1912 12-10-2002 1912
A01       A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-10-2002 1000 12-10-2002 1912
OKL       HLD REMOVE HOLDOVER REMOVED            12-10-2002 0900 12-10-2002 0900
OKL       A-HLD      HOLDOVER, TEMPORARILY HOUSED 12-03-2002 1330 12-10-2002 0900
1-W       RELEASE    RELEASED FROM IN-TRANSIT FACL 12-03-2002 1430 12-03-2002 1430
1-W       A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 10-25-2002 1527 12-03-2002 1430
COR       ADMIN REL  ADMINISTRATIVE RELEASE      10-25-2002 1527 10-25-2002 1527
COR       A-ADMIN    ADMINISTRATIVE ADMISSION    10-25-2002 1508 10-25-2002 1527




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

209

# **Attachment D**

```
REG NO..: 47394-177 NAME....: LITTLE, CHARLSA SUZANNE
CATEGORY: ARS        FUNCTION: PRT        FORMAT:

FCL      ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
BRY      A-DES      DESIGNATED, AT ASSIGNED FACIL 03-08-2017 1121 CURRENT
6-S      RELEASE    RELEASED FROM IN-TRANSIT FACL 03-08-2017 1221 03-08-2017 1221
6-S      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 03-08-2017 0840 03-08-2017 1221
CRW      TRANSFER   TRANSFER                      03-08-2017 0740 03-08-2017 0740
CRW      A-DES      DESIGNATED, AT ASSIGNED FACIL 05-05-2015 1505 03-08-2017 0740
B06      RELEASE    RELEASED FROM IN-TRANSIT FACL 05-05-2015 1605 05-05-2015 1605
B06      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-05-2015 1100 05-05-2015 1605
OKL      HLD REMOVE HOLDOVER REMOVED             05-05-2015 1000 05-05-2015 1000
OKL      A-BOP HLD  HOLDOVER FOR INST TO INST TRF 04-15-2015 1450 05-05-2015 1000
2-E      RELEASE    RELEASED FROM IN-TRANSIT FACL 04-15-2015 1550 04-15-2015 1550
2-E      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-15-2015 0800 04-15-2015 1550
CSA      HLD REMOVE HOLDOVER REMOVED             04-15-2015 0700 04-15-2015 0700
CSA      A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-29-2015 1300 04-15-2015 0700
0-I      RELEASE    RELEASED FROM IN-TRANSIT FACL 01-29-2015 1400 01-29-2015 1400
0-I      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-29-2015 1003 01-29-2015 1400
BRY      TRANS SEG  TRANSFER-SEGREGATION          01-29-2015 0903 04-15-2015 0800
BRY      A-DES      DESIGNATED, AT ASSIGNED FACIL 07-31-2014 1327 01-29-2015 0903
9-L      RELEASE    RELEASED FROM IN-TRANSIT FACL 07-31-2014 1427 07-31-2014 1427
9-L      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-20-2014 1458 07-31-2014 1427
DSC      ADMIN REL  ADMINISTRATIVE RELEASE        05-20-2014 1358 05-20-2014 1358
DSC      A-ADMIN    ADMINISTRATIVE ADMISSION      05-20-2014 1348 05-20-2014 1358

G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

# Attachment E

UNITED STATES GOVERNMENT

# memorandum

FEDERAL BUREAU OF PRISONS
Federal Medical Center, Carswell
Fort Worth, Texas

June 24, 2013

MEMORANDUM FOR ALL CONCERNED

FROM:                 Jody R. Upton, Warden

SUBJECT:              Uniform Dress Code for Population

Please be advised of the following institutional changes for the inmate population in lieu of Program Statement 5230.05, *Grooming*, dated November 4, 1996, which has been rescinded.  The only clothing authorized for wear inside the FMC and at the Satellite Camp is that clothing which is issued through the FMC Laundry Plant(including Khaki Dresses) or purchased through the commissary.  Effective July 1, 2013, the following guidelines apply Monday – Friday from 7:30 a.m. – 4:00 p.m., excluding weekends and federal holidays:

- Inmates must wear a clean government issued uniform, consisting of khaki pants, khaki button down shirt and a brown t-shirt.  When wearing the Khaki Uniform, all brown t-shirts must be tucked in and button down shirts must be buttoned up.  The inmate dress attire must be worn when reporting to all work details, Program Areas, Call-outs and in the Dining Hall.  Programming areas include Education and Religious Services.

- Detail supervisors may permit their details to wear the brown t-shirt un-tucked while working in assigned areas, but the t-shirt must be tucked in the pants at the end of their work assignment.  During the winter months the gray sweatshirt or thermals may be worn under the button down khaki shirt.  Also, gray sweatshirts may be worn over the brown khaki button down shirt.  Inmates choosing to wear the institution issue khaki dress must wear it with a t-shirt and undergarment underneath.  Khaki or gray shorts are restricted to the recreation area only.  Inmates will only be allowed to wear khaki or gray shorts going to and from the housing unit and recreation area.

- As noted in Institution Supplement 4500.07(4); *Laundry Procedures*, Item 4, j, (5), page 6:  Landscape Detail/Summer Uniforms, Laundry will begin issuing standard, non-altered institution shorts to all inmates assigned to Landscape details (Inside, Outside, and Base) no earlier than the first working day of June.  Inmates are only authorized to wear institution issued shorts during regular work hours on their assigned Landscape detail.  If an inmate is removed from a Landscape detail for any reason, the shorts must be returned to the Laundry.  Inmates must return all institution issued shorts to the Laundry by the first working day in October.  Inmates on the Landscape Detail will be allowed entrance for the noon meal in the standard, non-altered institution shorts as approved for the Landscape Detail during normal business hours Monday– Friday from 7:30 a.m. – 4:00 p.m.

- Inmates not scheduled to work will be allowed to wear gray sweat pants, sweatshirts, and approved shorts with a gray or brown t-shirt un-tucked while in the Recreation areas only.  This applies to the hours of 7:30 a.m. – 4:00 p.m., Monday – Friday.  During the morning and evening meals, inmates may wear the approved gray or khaki shorts, shirts, sweatshirts, and sweat pants before 7:30 a.m. and after 4:00 p.m. daily.  Inmates are required to wear undergarments, including bra and underwear at all times.  Pajamas and slippers/shower shoes will not be worn outside the housing units.  All non-religious hair wraps/head wear is prohibited outside the housing units.  Inmates are allowed to wear only approved religious head wear.

**GROOMING:**  All hair services are facilitated by the Education Department's Cosmetology Clinic.  Inmates must request services in writing via cop-out.  The cop-out must be complete to include the work detail supervisor's signature.  All hair color will follow color guidelines provided by the Cosmetology Instructor.  Certain haircuts and styles are prohibited such as faux-hawks or Mohawk styles or any other hairdo that may otherwise cause undue attention or interruption to the orderly running of the institution.

This memorandum supersedes information in the A&O Handbook.

# Attachment F



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:                     CPD/CSB
NUMBER:            5270.09
DATE:                  July 8, 2011
EFFECTIVE DATE:  August 1, 2011

# Inmate Discipline Program

                    /s/
*Approved*:   Thomas R. Kane
Acting Director, Federal Bureau of Prisons

## 1.   PURPOSE AND SCOPE

### § 541.1   Purpose.

**This subpart describes the Federal Bureau of Prisons' (Bureau) inmate discipline program.   This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts.   Sanctions will not be imposed in a capricious or retaliatory manner.   The Bureau's inmate discipline program is authorized by 18 U.S.C. 4042(a)(3).**

### § 541.2   Application.

**This program applies to sentenced and unsentenced inmates in Bureau custody. It also applies to sentenced and unsentenced inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons.**

This policy applies to all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities, including persons charged with or convicted of offenses against the United States; D.C. Code felony offenders; and persons held as witnesses, detainees, or otherwise. These provisions do not apply to Federal inmates designated to a non-Federal facility (e.g., inmates serving Federal sentences in state or county facilities).

**Federal Regulations from 28 Code of Federal Regulations, part 541, are shown in this type.**
Implementing instructions are shown in this type.

2.  **SUMMARY OF CHANGES**

a.   Establish Greatest and High severity level prohibited acts for sexual assault of any person. The Greatest severity level act (114) requires the use or threat of force.   The High severity level act (229) is for incidents without the use or threat of force.

b.   Increase the severity level of escapes from non-secure facilities from a High to a Greatest severity level prohibited act.

c.   Amend the Code 104 to include any instrument used as a weapon.

d.   Establish a Code 115 for destroying and/or disposing of any item during a search or attempt to search.

e.   Establish a High severity level prohibited act code for escape from a work detail, a non-secure institution, or other non-secure custody, including a community facility, with subsequent voluntary return to custody within four hours.

f.   Clarify possession of a cellular telephone or other electronic communications device is a Greatest severity level prohibited act.

g.   Increase the severity level of all alcohol-related offenses from a High to a Greatest severity level prohibited act.

h.   Establish a High severity level prohibited act code for stalking.

i.   Establish a High severity level prohibited act code for possession of stolen property.

j.   Establish a Moderate severity level prohibited act code for circulating a petition.

k.   Establish a High severity level prohibited act code for refusing to participate in a required physical test or examination unrelated to testing for drug abuse (e.g., DNA, HIV, TB).

l.   Increase the severity level for tattooing and self-mutilation to a High severity level prohibited act.

m.   Establish a Moderate severity level prohibited act code for the fraudulent or deceptive completion of a skills test.

n.   Increase the severity level for conducting a business to a Moderate severity level prohibited act.

o.   Establish a Moderate severity level prohibited act code for communicating gang affiliation.

p.   Establish Greatest, High, and Moderate severity level prohibited acts for abuse of the mail.

q.   Establish a sanction of monetary fine.

r.   Remove the formal sanctions of reprimand and warning.

s.   Increase the sanction of disciplinary segregation from a range of 7 to 60 days to a range of 1 to 18 months.

t.   Change from three work days to five work days for the UDC to ordinarily conduct a review.

u.   The Special Housing Unit policy (conditions of disciplinary segregation, administrative detention, and protection cases) has been removed and guidance is provided in a separate program statement.

### 3.   PRINCIPLES

Several general principles apply to every disciplinary action:

a.   Incident reports can be written by Bureau staff, Federal Prison Industries (FPI) staff, and Public Health Service (PHS) officers detailed to the Bureau.   Community Corrections Managers may take disciplinary action on inmates in contract RRC's.

b.   Staff take disciplinary action at such times and to the degree necessary to regulate an inmate's behavior within Bureau rules and institution guidelines and to promote a safe and orderly institution environment.

c.   Staff control inmate behavior in an impartial and consistent manner.

d.   Disciplinary action may not be capricious or retaliatory.

e.   Staff may not impose or allow corporal punishment of any kind.

### 4.   DIRECTIVES AFFECTED

a.   **Directive Rescinded**

P5270.08          Inmate Discipline and Special Housing Units (12/4/09)

b.   **Directives Referenced**

P1315.07          Inmate Legal Activities (11/5/99)
P1330.16          Administrative Remedy Program (12/31/07)

P1505.03     Language Translations Used in Official Documents (10/31/97)
P2000.02     Accounting Management Manual (10/15/86)
P4500.07     Trust Fund/Deposit Fund Manual (4/19/10)
P4700.05     Food Service Manual (6/12/06)
P5100.08     Inmate Security Designation and Custody Classification (9/12/06)
P5162.05     Categorization of Offenses (3/16/09)
P5180.05     Central Inmate Monitoring System (PS Only) (12/31/07)
P5180.06     Central Inmate Monitoring System (Operations Manual Only) (3/24/08)
P5212.07     Control Unit Programs (2/20/01)
P5215.05     Youth Corrections Act (YCA) Inmates and Programs (3/17/99)
P5264.08     Inmate Telephone Regulations (1/24/08)
P5265.14     Correspondence (4/5/11)
P5267.08     Visiting Regulations (5/11/06)
P5270.10     Special Housing Units (8/1/11)
P5322.12     Inmate Classification and Program Review (11/29/06)
P5360.09     Religious Beliefs and Practices (12/31/04)
P5380.08     Financial Responsibility Program, Inmate (8/15/05)
P5500.11     Correctional Services Manual (10/10/03)
P5500.12     Correctional Services Procedures Manual (10/10/03)
P5521.05     Searches of Housing Units, Inmates, and Inmate Work Areas (6/30/97)
P5580.07     Inmate Personal Property (12/28/05)
P5800.15     Correctional Systems Manual (1/1/09)
P5880.28     Sentence Computation Manual (CCCA of 1984) (7/20/99)
P5880.30     Sentence Computation Manual (Old Law, Pre-CCCA of 1984) (9/8/99)
P5880.32     Sentence Computation Manual (District of Columbia) (1/23/01)
P5884.03     Good Conduct Time Under the Prison Litigation Reform Act (3/31/06)
P7300.09     Community Corrections Manual (5/19/99)
P7331.04     Pretrial Inmates (1/31/03)

c.   Rules cited in this Program Statement are contained in 28 CFR § 541.2 and §§ 541.10-23.

5.   **AGENCY ACA ACCREDITATION PROVISIONS**

a.   American Correctional Association 4th Edition Standards for Adult Correctional Institutions:

4-4226, 4-4227, 4-4228, 4-4229, 4-4230, 4-4231, 4-4232, 4-4233, 4-4234, 4-4235, 4-4236, 4-4237, 4-4238, 4-4239, 4-4240, 4-4241, 4-4242, 4-4243, 4-4244, 4-4245, 4-4246, 4-4247, 4-4248, 4-4255, 4-4399

b.   American Correctional Association 4th Edition Performance-Based Standards for Adult Local Detention Facilities:

4-ALDF-2A-47, 4-ALDF-2A-50, 4-ALDF-3A-01, 4-ALDF-3A-02, 4-ALDF-4C-40, 4-ALDF-6C-01, 4-ALDF-6C-02, 4-ALDF-6C-03, 4-ALDF-6C-04, 4-ALDF-6C-05,

4-ALDF-6C-06, 4-ALDF-6C-07, 4-ALDF-6C-08, 4-ALDF-6C-09, 4-ALDF-6C-10, 4-ALDF-6C-11, 4-ALDF-6C-12, 4-ALDF-6C-13, 4-ALDF-6C-14, 4-ALDF-6C-15, 4-ALDF-6C-16, 4-ALDF-6C-17, and 4-ALDF-6C-18.

6.  **INSTITUTION SUPPLEMENTS**

None required.

7.  **NOTICE TO INMATE OF THE INMATE DISCIPLINE PROGRAM**

Staff must give each inmate a copy of the following documents promptly after his/her arrival at an institution:

- Summary of the Inmate Discipline System (Appendix B).
- Inmate Rights and Responsibilities (Appendix C).
- Prohibited Acts and Available Sanctions (Table 1).

Receipt of these documents must be noted on the intake screening form and maintained in the inmate's central file.   The receipt is kept in the inmate's central file.

To the extent reasonably available, a qualified staff member or translator will help an inmate who has a language or literacy problem, in accordance with the Program Statement **Language Translations Used in Official Documents**.

# CONTENTS

## Chapter 1

**§ 541.3   Prohibited acts and available sanctions**..............................................9
   (a)  Prohibited acts ...........................................................................9
   (b)  Available sanctions .....................................................................9
      (1)  Greatest Severity Level Offenses ...................................9
      (2)  High Severity Level Offenses ........................................9
      (3)  Moderate Severity Level Offenses ................................9
      (4)  Low Severity Level Offenses .......................................10
      (5)  All Severity Level Offenses .........................................10

**§ 541.4   Loss of good conduct sentence credit as a mandatory sanction** ..................11
   (a)  Groups that lose good conduct sentence credit ............................11
      (1)  VCCLEA – violent inmates ..........................................11
      (2)  PLRA inmates and D.C. Code offenders .....................11
   (b)  Amount of credit lost ..................................................................11
      (1)  Greatest Severity Level Offenses ................................11
      (2)  High Severity Level Offenses ......................................11
      (3)  Moderate Severity Level Offenses ..............................12
      (4)  Low Severity Level Offenses .......................................12

**Available Sanctions** ..................................................................................12
(A)  Recommend Parole Date Rescission or Retardation ...........................12
(B)  Forfeit Earned Statutory Good Time, Non-vested Good Conduct Time,
or Terminate or Disallow Extra Good Time ..........................................12
(B.1)  Disallowance of Good Conduct Time .............................................13
(C)  Disciplinary Segregation ....................................................................14
(D)  Make Monetary Restitution ................................................................15
(E)  Monetary Fine ....................................................................................15
(F)  Loss of Privileges...............................................................................15
(G)  Change Housing Quarters ..................................................................15
(H)  Remove from Program or Group Activity ..........................................15
(I)  Loss of Job .........................................................................................16
(J)  Impound Inmate's Personal Property .................................................16
(K)  Confiscate Contraband ......................................................................16
(L)  Restrict to Quarters ............................................................................16
(M)  Extra Duty...........................................................................................16

## Chapter 2

**§ 541.5   Discipline process** ....................................................................17
   (a)   Incident report .........................................................................17
   (b)   Investigation ............................................................................18
      (1)   Information ...........................................................................18
      (2)   Statement ..............................................................................18
      (3)   Informally resolving the incident report.............................20

## Chapter 3

**§ 541.6   Mentally ill inmates** ...............................................................21
   (a)   Competency to participate in disciplinary proceedings....................21
   (b)   Responsibility for conduct ......................................................21

## Chapter 4

**§ 541.7   Unit Discipline Committee (UDC) review of the incident report** .................23
   (a)   Available dispositions ..............................................................23
   (b)   UDC members..........................................................................23
   (c)   Timing .....................................................................................24
   (d)   Inmate appearance ...................................................................24
   (e)   Evidence ..................................................................................24
   (f)   Sanctions .................................................................................24
   (g)   Referral to the DHO .................................................................25
   (h)   Written report ..........................................................................25
   (i)   Appeals ....................................................................................25

## Chapter 5

**§ 541.8   Discipline Hearing Officer (DHO) hearing** ..................................27
   (a)   Available dispositions ..............................................................27
   (b)   Discipline Hearing Officer........................................................27
   (c)   Timing .....................................................................................27
   (d)   Staff representative ..................................................................27
      (1)   How to get a staff representative ........................................28
      (2)   How the staff representative will help ................................28
      (3)   How the staff representative may appear ...........................28
   (e)   Inmate appearance ...................................................................28
   (f)   Evidence and witnesses ...........................................................29
   (g)   Sanctions .................................................................................33
   (h)   Written report ..........................................................................34
   (i)   Appeals ....................................................................................35

**APPENDIXES**

**A.**  List of Forms .................................................................................................37

**B.**  Summary of Inmate Discipline System....................................................38

**C.**  Inmate Rights and Responsibilities ........................................................39

**D.**  Data Entry Instructions ...........................................................................41

**TABLES**

**1.**  Prohibited Acts and Available Sanctions ................................................44

**2.**  Additional Available Sanctions for Repeated Prohibited Acts
Within the Same Severity Level ...................................................................55

**CHAPTER 1.**

**§ 541.3   Prohibited acts and available sanctions.**

**(a)   *Prohibited acts.*   The list of prohibited acts are divided into four separate categories based on severity: Greatest; High; Moderate; and Low.   We describe the prohibited acts in Table 1 - Prohibited Acts and Available Sanctions.   Aiding, attempting, abetting, or making plans to commit any of the prohibited acts is treated the same as committing the act itself.**

**(b)   *Available sanctions.*   The list of available sanctions for committing prohibited acts is listed in Table 1 - Prohibited Acts and Available Sanctions.   If you commit repetitive prohibited acts, we can impose increased sanctions, as listed in Table 2 - Additional Available Sanctions for Repeated Prohibited Acts Within the Same Severity Level.**

(1)   **Greatest Severity Level Offenses**.   The Discipline Hearing Officer (DHO) imposes one or more of sanctions A through E.   Sanction B.1 must be imposed for a VCCLEA inmate rated "violent" (an inmate who, per the Violent Crime Control and Law Enforcement Act of 1994, committed a crime of violence on or after September 13, 1994) and for a PLRA inmate (an inmate sentenced for an offense committed on or after April 26, 1996, per the Prison Litigation Reform Act).   The DHO may impose any available sanctions (A through M) in addition to sanctions A through E.   All Greatest severity level charges must be referred to the DHO.

(2)   **High Severity Level Offenses**.   The DHO imposes one or more of sanctions A through M, and, except as noted in the sanction, may also suspend one or more sanctions A through M. Sanction B.1 must be imposed for a VCCLEA inmate rated "violent" and for a PLRA inmate. All High severity level charges must be referred to the DHO.

Prohibited Act Code 225, Stalking, is for the purpose of punishing repetitive inmate behavior, e.g., loitering, staring, leering, inappropriate remarks (short of insolence, profanity, or sexual proposals), that are not clearly covered by another prohibited act code.   When staff encounter such behavior, the inmate should be specifically warned that it is inappropriate and must cease. If the behavior fits another prohibited act code provision, the inmate should be charged with violating that specific provision instead of stalking.   Examples of other prohibited act code behavior that may be used instead of Code 225, Stalking, include, but are not limited to Insolence (Code 312), Being in an Unauthorized Area (Code 316), Threatening (Code 203), and Making a Sexual Proposal or Threat (Code 206).

(3)   **Moderate Severity Level Offenses**.   The DHO imposes at least one sanction A through M, but, except as noted in the sanction, may suspend any sanction(s) imposed. Sanction B.1 ordinarily must be imposed for a VCCLEA inmate rated "violent" and for a PLRA inmate.

Except for charges referred to the DHO, the Unit Discipline Committee (UDC) shall impose at least one sanction F through M, but may suspend any sanctions imposed.

The UDC ordinarily refers to the DHO a moderate severity level charge for a VCCLEA inmate rated "violent" or for a PLRA inmate if the inmate was found to have committed two moderate offenses during his/her current anniversary year (the 12-month period for which an inmate may be eligible to earn good conduct time [GCT]).   The UDC must document the reasons why a third charge for such an inmate was not referred to the DHO.

A prohibited act charge for 331 involving tobacco or nutritional supplements must be referred to the DHO for final disposition.

(4)   **Low Severity Level Offenses**.   The DHO imposes at least one sanction B.1, or D through M.   The DHO may suspend any sanction(s) imposed; however, a B.1 sanction may not be suspended.   Except for charges referred to the DHO, the UDC imposes at least one sanction F through M, but may suspend any sanction(s) imposed.

The UDC ordinarily refers to the DHO a low severity level charge for a VCCLEA inmate rated "violent" or for a PLRA inmate if the inmate had been found to have committed three low offenses during his/her current anniversary year.   The UDC must document the reasons why a charge for such an inmate was not referred to the DHO.

Sanction B.1 may be imposed on the Low severity level **only** if the inmate has committed a Low severity level prohibited act more than once within a six-month period (except for a VCCLEA inmate rated "violent" or a PLRA inmate).

(5)   **All Severity Level Offenses**.   In all categories of severity**, aiding** another person to commit any of these offenses, **attempting** to commit them, or **making plans** to commit them, **is considered equivalent to committing the offense itself**.   In these cases, the letter "A" is combined with the offense code.   For example, planning an escape is Escape, Code 102A. Attempting to adulterate food or drink is Code 209A.

When the prohibited act is **Interfering with a Staff Member in the Performance of Duties (Code 198, 298, 398 or 498) or Conduct Which Disrupts (Code 199, 299, 399, or 499)**, the DHO or UDC must specify the severity level of the conduct that is most comparable to an offense(s) at that severity level.   **Example:** "I find the act of Conduct Which Disrupts (Code 299) to be of High severity level, most comparable to the prohibited act of Engaging in a Group Demonstration (Code 212)."

**Suspensions of any sanction cannot exceed six months**.   Suspended sanctions may only be revoked and executed if the inmate is found to have committed a subsequent prohibited act. Only the DHO may execute, suspend, or revoke and execute suspension of sanctions A through E (B and B.1. may never be suspended).   The DHO or UDC may execute, suspend, or revoke and

execute suspensions of sanctions F through M.   The DHO may execute UDC-suspended sanctions.   However, the UDC may **not** execute DHO-suspended sanctions A through E.

When an inmate receives an incident report while on a DHO-imposed, but suspended sanction, the new incident report is forwarded by the UDC to the DHO, both for a final disposition on the new incident report, and for a disposition on the suspended sanction. This procedure is not necessary when the UDC informally resolves the new incident report.   The DHO may return an incident report to the UDC if a decision not to execute the suspended sanction is made.

The UDC or DHO may impose increased sanctions for repeated, frequent offenses per the guidelines in Table 2.

Noting that not all UDC or DHO decisions finding an inmate committed a prohibited act will result in a change to the inmate's security designation score, the Unit Team may recommend a greater security transfer, using their professional judgment, and in accordance with the policy on Inmate Security Designation and Custody Classification.

## § 541.4   Loss of good conduct sentence credit as a mandatory sanction.

**(a)   You will lose good conduct sentence credit as a mandatory disciplinary sanction if you are in one of the following two groups:**

**(1)   *VCCLEA-violent inmates.*   The date of your U.S. Code offense was on or after September 13, 1994, but before April 26, 1996, and you committed a "crime of violence" as defined by the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA); or**

**(2)   *PLRA inmates and D.C. Code offenders.*   The date of your U.S. Code offense was on or after April 26, 1996, and, therefore, under the Prison Litigation Reform Act (PLRA), or the date of your District of Columbia (DC) Code offense was on or after August 5, 2000.**

**(b)   If you are an inmate in one of the above groups and commit a prohibited act, you will lose good conduct sentence credit as a mandatory disciplinary sanction. The amount of good conduct sentence credit you will lose depends on the severity level of the prohibited act(s) committed, as follows:**

**(1)   *Greatest Severity Level Offenses.*   You will lose at least 41 days, or 75% of available credit if less than 54 days are available for the prorated period, for each act committed.**

**(2)   *High Severity Level Offenses.*   You will lose at least 27 days, or 50% of available credit if less than 54 days are available for the prorated period, for each act committed.**

**(3)   *Moderate Severity Level Offenses.*   You will lose at least 14 days, or 25% of available credit if less than 54 days are available for the prorated period, after committing two or more Moderate severity acts during the current year of your good conduct sentence credit availability.**

**(4)   *Low Severity Level Offenses.*   You will lose at least 7 days, or 12.5% of available credit if less than 54 days are available for the prorated period, after committing three or more Low severity acts during the current year of your good conduct sentence credit availability.**

**Available Sanctions** (upon finding the inmate committed the prohibited act(s)):

**(A)   Recommend Parole Date Rescission or Retardation.**   The DHO may recommend retardation or rescission of parole grants to the U.S. Parole Commission or respective parole authority.

**(B)   Forfeit Earned Statutory Good Time, Non-vested Good Conduct Time, or Terminate or Disallow Extra Good Time.**

*Forfeited good conduct time* (GCT) is not eligible for restoration.   However, *forfeited statutory good time* (SGT) may be restored.   Restoration of statutory good time is approved at initial eligibility only when the inmate has shown a period of improved good behavior.   When the Warden (or designee) denies restoration of forfeited statutory good time, the unit team notifies the inmate of the reasons for denial.   The unit team establishes a new eligibility date, not to exceed six months from the date of denial.

An application for restoration of statutory good time is forwarded from the inmate's unit team, through the DHO and Captain for comments, to the Warden for final decision.

Inmates who committed their crimes on or after November 1, 1987, and are sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act, are only eligible to receive 54 days GCT credit (18 U.S.C. § 3624(b)).   This credit is given at the end of each year served and, once given, is vested.   For these inmates, the DHO's authority is final and subject only to review by the Regional Director to ensure conformity with the discipline policy and by inmate appeal through Administrative Remedy procedures.

The statutory good time available for forfeiture is limited to an amount computed by multiplying the months served at the time of the offense for which forfeiture is taken, by the applicable monthly rate specified in 18 U.S.C. § 4161 (less previous forfeiture or withholding).   The amount of GCT available for forfeiture is limited to total days in "non-vested" status at the time of misconduct (less previous forfeiture).

Forfeiture of GCT may not be suspended.

Disallowance of extra good time is limited to extra good time for the calendar month in which the violation occurs.   It may not be withheld or restored.

The sanction of termination or disallowance of extra good time may not be suspended.

Forfeited GCT will not be restored.   Authority to restore forfeited statutory good time is delegated to the Warden, and may not be delegated lower than the Associate Warden level. Limitations on this sanction and eligibility for restoration are based on the severity scale.   (See Table 2.)

To ensure an inmate's case is not overlooked when statutory good time has been forfeited, the unit manager will ensure the eligibility requirements are reviewed for restoration per the time frames in the Program Statement on Classification and Program Review of Inmates.   A recommendation of the unit team for or against restoration is forwarded to the Warden through the DHO and Captain.   Except as noted, eligibility for restoration of forfeited statutory good time is computed from the date of the withholding or forfeiture action by the DHO.

An inmate who has escaped and receives a forfeiture at a subsequent in absentia hearing begins the eligibility for restoration period upon return to Bureau custody.   The Warden refers to the Regional Director any case where exceptional circumstances support restoration of statutory good time before completion of the eligibility requirements.

Sanction B does not apply to inmates committed under the Comprehensive Crime Control Act for crimes committed on or after November 1, 1987, and prior to passage of the Violent Crime Control and Law Enforcement Act of 1994 (September 23, 1994).   For those inmates, the applicable sanction is B.1.

**(B.1)   Disallowance of Good Conduct Time.**   An inmate sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act (committed a crime on or after November 1, 1987) may not receive statutory good time, but is eligible to receive 54 days GCT credit each year (18 U.S.C. § 3624(b)).   Once awarded, the credit is vested, and may not be disallowed.

Crimes committed on or after September 13, 1994, and before April 26, 1996, (VCCLEA) credit is not vested unless the inmate has earned or is making satisfactory progress toward a high school diploma or equivalent degree (or is exempt because of a learning disability).

For crimes committed on or after April 26, 1996, (PLRA and SRAA) GCT credit toward an inmate's service of sentence vests on the date the inmate is released.   Once disallowed, the credit may not be restored, except by immediate review or appeal as indicated below.   Prior to this award being made, the credit may be disallowed for an inmate found to have committed a prohibited act.

A sanction of GCT disallowance may not be suspended.   Only the DHO can take action to disallow GCT.   The DHO considers the severity of the prohibited act and the suggested disallowance guidelines in making a determination.

A decision to go above the guideline is warranted for a greatly aggravated offense or a repeated violation of another prohibited act within a relatively short time (e.g., within 24 months for a greatest severity level prohibited act, 18 months for a high severity level prohibited act, and 12 months for a moderate severity level prohibited act).   A decision to go below the guidelines is warranted for strong mitigating factors.   A decision above or below the guidelines is justified in the DHO report.

VCCLEA inmates rated "violent" and PLRA inmates are ordinarily disallowed GCT for each prohibited act they are found to have committed at a DHO hearing, consistent with the following:

- **Greatest Severity Level Offenses**.   A minimum of 41 days (or, if less than 54 days are available for the prorated period, a minimum of 75% of available GCT) for each act committed.

- **High Severity Level Offenses**.   A minimum of 27 days (or, if less than 54 days are available for the prorated period, a minimum of 50% of available GCT) for each act committed.

- **Moderate Severity Level Offenses**.   A minimum of 14 days (or, if less than 54 days are available for the prorated period, a minimum of 25% of available GCT) for each act committed if the inmate has committed two or more moderate severity level offenses during the current anniversary period.

- **Low Severity Level Offenses**.   A minimum of 7 days (or, if less than 54 days are available for the prorated period, a minimum of 12.5% of available GCT) for each act committed if the inmate has committed three or more low moderate offenses during the current anniversary period.

Except for VCCLEA inmates rated "violent" or PLRA inmates, Sanction B.1 may be imposed on the Low severity level only where the inmate has committed a Low severity level act more than once within a six-month period.

GCT credit may only be given to an inmate serving a sentence of more than one year, but less than life.   In the last year or part of a year of an inmate's sentence, only the GCT available for the time remaining may be disallowed.

**(C)   Disciplinary Segregation.**   The DHO may direct that an inmate be placed or retained in disciplinary segregation.   Consecutive disciplinary segregation sanctions can be imposed for inmates found to have committed offenses that are part of different acts only.   Limits on time in disciplinary segregation are based on the severity scale (see Tables 1 and 2).

Unless otherwise specified by the DHO, disciplinary segregation placements for different or separate prohibited acts are imposed consecutively.

**(D)   Make Monetary Restitution.**   The DHO may direct that an inmate reimburse the U.S. Treasury for damages to U.S. Government property that the individual caused or contributed to. The UDC is prohibited from imposing the sanction of make monetary restitution.

Commissary privileges should be suspended by the DHO until restitution is made.   See the Program Statement **Trust Fund/Deposit Fund Manual** for instructions regarding impoundment of inmate funds.

**(E)   Monetary Fine.**   The DHO may direct that an inmate pay a fine, as follows:

- Greatest severity level offense – Up to $500, or 75% of the inmate's trust fund balance.
- High severity level offense – Up to $300, or 50% of the inmate's trust fund balance.
- Moderate severity level offense – Up to $100, or 25% of the inmate's trust fund balance.
- Low severity level offense – Up to $50, or 12.5% of the inmate's trust fund balance.

Commissary privileges should be suspended until the fine is paid.   See the Trust Fund/Deposit Fund Manual for instructions regarding impoundment of inmate funds.

This sanction cannot be used as a form of monetary restitution.   The UDC is prohibited from imposing the sanction of monetary fine.

**(F)   Loss of Privileges (e.g., visiting, telephone, e-mail, commissary, movies, recreation).** The DHO or UDC may direct that an inmate forego specific privileges for a specified time.

The DHO or UDC may impose non-contact visiting or immediate family-only visitation in addition to loss of visiting.

Loss of recreation privileges (exercise periods) may not be imposed on inmates in a Special Housing Unit (SHU), but may be used for general population inmates.

The DHO or UDC may impose a loss of mattress sanction from lights on to lights off for inmates in the SHU.   Staff must ensure the inmate has a mattress from lights off to lights on.

**(G)   Change Housing (Quarters).**   The DHO or UDC may direct that an inmate be moved to other housing.

**(H)   Remove from Program or Group Activity.**   The DHO or UDC may direct that an inmate not participate in any program or group activity for a specified time.

**(I)   Loss of Job.**   The DHO or UDC may direct that an inmate be removed from his/her present job or assigned to another job.

**(J)   Impound Inmate's Personal Property.**   The DHO or UDC may direct that an inmate's personal property be stored in the institution for a specified time.

**(K)   Confiscate Contraband.**

**(L)   Restrict Quarters.**   The DHO or UDC may direct that an inmate be confined to quarters or its immediate area for a specified time.

**(M)   Extra Duty.**   The DHO or UDC may direct that an inmate perform tasks other than those performed during his/her regular job.

**CHAPTER 2.**

**§ 541.5   Discipline process.**

**(a)   *Incident report.*   The discipline process starts when staff witness or reasonably believe that you committed a prohibited act.   A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing.   You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.**

When staff witness or reasonably believe that a violation of Bureau regulations has been committed, staff must prepare an incident report and forward it to the appropriate Lieutenant. The Lieutenant will enter the incident report into SENTRY.

The reporting employee immediately completes Part 1 of the incident report.   The incident is a prohibited act listed in Appendix C.   The entire language of the prohibited act(s) does not have to be copied. For example, "Destroying Government Property, Code 218" or "Possessing Narcotics, Code 113" would be acceptable listings.

The description of the incident should contain all facts known by the employee that are not confidential.   Anything unusual about the inmate's behavior should be noted.   The reporting employee also lists persons (staff, inmates, others) at the scene, and physical evidence (weapons, property, etc.) the employee may have handled.   The report reflects any actions taken, including use of force.   The reporting employee signs the report, enters his/her title, date, and time, and forwards it to the Lieutenant.   The description of the incident provides the inmate with specific evidence for which he/she may prepare a defense.

References to attachments and other investigative materials should not be identified in Section 11 of the report.   For example, if staff observe two inmates in a physical altercation, the reporting officer should describe in Section 11 specific actions by each inmate; e.g., throwing punches to the head with a closed fist, striking one another with closed fists, biting, scratching, hair pulling.

Acts are different or separate if they have different elements (time, place, persons involved, actions).   For example, if an inmate is involved in a fight with another inmate and also strikes a staff member trying to break it up, the inmate can be charged with fighting (Code 201) and assaulting a staff member (Code 224 or 101, depending on seriousness of injuries).

Code 305, Possession of anything not authorized, may be appropriate for inmates possessing items in excess of authorized limits.

Codes 199, 299, and 399, most like 196, 296, and 396, respectively, may be appropriate for inmates using electronic messaging (e.g., TRULINCS) in violation of policy.   Sanctions Code F., Loss of privileges, in the form of loss of electronic messaging privileges, may be an appropriate sanction for these offenses.

**(b)   *Investigation.*   After you receive an incident report, a Bureau staff member will investigate it.**

The Investigating Officer is an employee at the supervisory level who conducts an investigation of alleged inmate misconduct.   The Investigating Officer must be IDC-certified, and may not be the employee reporting the incident or otherwise be involved in the incident.   The officer is ordinarily a Lieutenant, but the Warden may appoint another staff member.

Staff conduct the investigation as promptly as possible.   The Investigating Officer is ordinarily appointed within 24 hours of the incident report.   The investigation should be finished within 24 hours after the appointment.

When it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation.   Staff may not question the inmate until the FBI or other investigative agency releases the incident report for administrative processing.   The incident report should then be delivered to the inmate by the end of the next business day.   The time frame for processing the Incident report is suspended until it is released for processing.

The Investigating Officer may informally resolve the Incident report (except for prohibited acts in the Greatest or High severity level categories) or conduct an investigation consistent with this section.

**(1)   *Information:*   The investigator will specifically inform you:**

**(A)   of the charge(s) against you; and**

**(B)   that you may remain silent at all stages of the discipline process, but that your silence may be used to draw an adverse inference against you at any stage of the process.   Your silence alone, however, cannot be the basis for finding you committed the prohibited act(s).**

**(2)   *Statement:*   When the investigator asks for your statement, you may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be obtained and reviewed.   However, the staff investigation of the incident report may be suspended before requesting your statement if it is being investigated for possible criminal prosecution.**

The Investigating Officer provides a copy of the incident report to the inmate at the beginning of the investigation, unless there is good cause for later delivery, such as absence of the inmate from the institution or a medical condition that argues against delivery.   If the investigation is delayed, any employee may deliver the charge(s) to the inmate.   The reason for the delay must be documented in the discipline record.

The incident report should be delivered to the inmate within 24 hours of the time staff become aware of the inmate's alleged misconduct.   If an incident is referred for prosecution, the report is delivered by the end of the next business day after release for administrative processing.   (The five-day time frame for a UDC review starts when the incident report is released for administrative processing.)

The staff member must record the date and time the inmate received a copy of the report.   The investigator also reads the charge(s) to the inmate and asks for the inmate's statement about the incident.

The investigator then talks to persons with direct and relevant information, and summarizes their statements.   (For example, if an inmate was in a fight, the investigator talks with the other inmate(s) involved.)   Often, the investigator will want to talk to the reporting employee to obtain a report firsthand and to clarify any questions.   Although an inmate may not identify or request any witnesses at this stage of the discipline process, the investigator should interview any witnesses to the incident (and victims, if applicable) to record their statements. The investigator records the disposition of evidence.

If practicable, the inmate's statements offering a rationale for his/her conduct or for the charges against him/her should be investigated.   If the inmate requests exculpatory evidence, such as video or audio surveillance, the investigator must make every effort to review and preserve the evidence.   It would also be prudent for the investigator to review and preserve the video or audio surveillance even if the inmate does not make a specific request as such evidence is relevant to the incident.

An inmate who receives an Incident report based on a "positive" urine test may claim this result comes from either:

- Permissible medication he/she was given.
- A combination of medications he/she is taking.

In the first situation, the investigator must contact Health Services staff to determine if the inmate is receiving medication that contains the compound found in the urinalysis.   In the second situation, the investigator must confirm that the inmate is authorized to take the medications. When necessary, the testing laboratory is contacted to see if the combined medications could produce a "false positive."

While an inmate can challenge the **results** of a urine test, and this may be considered by the DHO, the validity of the testing **process** is not at issue.   Neither the investigator nor the DHO has the experience to assess the accuracy of the laboratory process.   See the Program Statement **Urine Surveillance**.

Under Comments and Conclusions, the investigator may include:

- Comments on the inmate's prior record and behavior.
- Analysis of any conflict between witnesses.
- Conclusions regarding what happened.

The investigator must record all steps and actions taken on the incident report and forward the relevant materials to staff holding the initial hearing.

**The inmate does not receive a copy of the investigation (Sections 23 through 27 of the incident report).**   However, if the case is ultimately forwarded to the DHO, the DHO must give a copy of the investigation and other relevant materials to the inmate's staff representative, if requested, for use on the inmate's behalf.

The UDC chairman or DHO taking **final** action ensures that the required information is entered into SENTRY.   The unit team files all discipline documents in the inmate's central file.

**(3)   *Informally resolving the incident report.*   The incident report may be informally resolved at any stage of the disciplinary process, except for prohibited acts in the Greatest and High severity levels, or as otherwise required by law or these regulations.   If the incident report is informally resolved, it will be removed from your records.**

The Bureau encourages informal resolution of incidents.   However, prohibited acts in the Greatest severity level (100 level) and High severity level (200 level) may not be informally resolved, and must be referred to the DHO.   Moderate severity level (300 level) and Low severity level (400 level) offenses can be informally resolved at any stage of the process.   A record of any informal resolution is maintained in SENTRY.   However, the incident report is not filed in the inmate's central file.

Staff may suspend discipline proceedings up to two calendar weeks while informal resolution is undertaken.   If informal resolution is unsuccessful, staff may reinstate disciplinary proceedings at the stage at which they were suspended.   The time requirements then restart at the point at which they were suspended.   Staff are required to write the incident report before starting informal resolution so the facts of the incident will be preserved if informal resolution is not successful. While informal resolution requires the consent of both staff and inmate to be successful, the determination to informally resolve an incident report is solely at the discretion of staff.

**CHAPTER 3.**

**§ 541.6   Mentally ill inmates.**

**If it appears you are mentally ill at any stage of the discipline process, you will be examined by mental health staff.**

**(a)   *Competency to Participate in Disciplinary Proceedings.*   If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or cannot help in your own defense, disciplinary proceedings may be postponed until you are competent to participate.   The Unit Disciplinary Committee or Discipline Hearing Officer will make this decision based on evidence, including evidence presented by mental health staff.**

**(b)   *Responsibility for Conduct.*   You will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act.   The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.**

If it appears at any stage of the discipline process that an inmate is mentally ill, staff refers him/her to a mental health professional to determine whether he/she is responsible for his/her conduct or is incompetent.   Staff may take no discipline action against an inmate who is determined by a mental health professional to be incompetent to participate in the disciplinary proceedings or not responsible for his/her behavior.

A person is **not responsible** for his/her conduct if, at the time of the conduct, as a result of a severe mental disease or defect, he/she was unable to appreciate the nature and quality or the wrongfulness of his/her acts.   When a person is determined not responsible for his/her conduct, the incident report shows as a finding that the person did not commit the prohibited act because he/she was found not mentally responsible.   The incident report is retained in the inmate's central file.   The DHO or UDC, as appropriate, enters this finding into SENTRY in the Chronological Disciplinary Record.

A person is **incompetent** if he/she lacks the ability to understand the disciplinary proceedings, or to assist in his/her defense.   When a person is determined incompetent, the disciplinary proceedings are postponed until the inmate is able to understand the proceedings and assist in his/her defense.   If competency is not restored within a reasonable time, the incident report shows as a finding that the inmate is incompetent.   The incident report is retained in the inmate's central file.   The DHO or UDC chairman records the finding into SENTRY in the Chronological Disciplinary Record.

Generally, the UDC initiates referral to a mental health professional.   However, staff at any stage of the discipline process may make such a referral.   The completed mental health evaluation is returned to the UDC, which then decides whether the incident may be handled by the UDC (other than Greatest or High severity level), or referred to the DHO.   In Greatest or High severity level cases, the UDC may refer an inmate for a mental health evaluation along with referral to the DHO.   The completed evaluation is returned to the UDC, which forwards it to the DHO.

**CHAPTER 4.**

**§ 541.7   Unit Discipline Committee (UDC) review of the incident report.**

**A Unit Discipline Committee (UDC) will review the incident report once the staff investigation is complete.   The UDC's review involves the following:**

**(a)   *Available dispositions.*   The UDC will make one of the following decisions after reviewing the incident report:**

**(1)   You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;**

**(2)   You did not commit the prohibited act(s) charged; or**

**(3)   The incident report will be referred to the Discipline Hearing Officer (DHO) for further review, based on the seriousness of the prohibited act(s) charged.**

**(4)   If you are charged with a Greatest or High severity prohibited act, or are an inmate covered by § 541.4, the UDC will automatically refer the incident report to the DHO for further review.**

**(b)   *UDC members.*   The UDC ordinarily consists of two or more staff.   UDC members will not be victims, witnesses, investigators, or otherwise significantly involved in the incident.**

The Warden designates ordinarily two or more unit staff members to hold an initial review and impose available sanctions upon completion of the investigation of alleged misconduct for moderate category and low category offenses.   One staff member UDCs are permitted when other members are not reasonably available.

Only one unit staff member is required to hold an initial review when the incident report is required by policy to be referred to the DHO.

A staff member witnessing an incident may serve on the UDC in cases where virtually every staff member in the institution witnessed the incident in whole or in part.

A staff member may not sit on the UDC without successfully completing the self-study program for UDC certification.

Each Warden must select at least one UDC Trainer to monitor the progress of staff participating in the self-study program.

**(c)   *Timing.*   The UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays.   UDC review of the incident report may also be suspended if it is being investigated for possible criminal prosecution.**

The Warden's approval is required for any extension beyond five work days.   The UDC will ensure the approval is documented and included in the discipline packet.   The time that an incident report is suspended for referral to another agency for possible prosecution is not included in this five work day time frame.   The time line commences when the incident report is released from the outside agency for administrative processing.   However, the inmate should be advised of the delay, and if appropriate, the reason for the delay.

**(d)   *Inmate appearance.*   You are permitted to appear before the UDC during its review of the incident report, except during UDC deliberations or when your presence would jeopardize institution security, at the UDC's discretion.   Also:**

**(1)   You may appear either in person or electronically (for example, by video or telephone conferencing) at the UDC's discretion.**

**(2)   You may waive your appearance before the UDC.   If you waive your appearance, the UDC will review the incident report in your absence.**

**(3)   If you escape or are otherwise absent from custody, the UDC will conduct a review in your absence at the institution where you were last confined.**

The UDC must document its reasons for excluding an inmate from the hearing.

A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign, by a memo indicating the inmate's refusal to appear (Waiver of Appearance (BP-A0307)).

**(e)   *Evidence.*   You are entitled to make a statement and present documentary evidence to the UDC on your own behalf.    The UDC will consider all evidence presented during its review.   The UDC's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.**

The phrase "some facts" refers to facts indicating the inmate committed the prohibited act.   The phrase "greater weight of the evidence" refers to the strength of the evidence.

**(f)   *Sanctions.*   If you committed a prohibited act(s), the UDC can impose any of the available sanctions listed in Tables 1 and 2, except loss of good conduct sentence credit, disciplinary segregation, or monetary fines.**

**(g)   *Referral to the DHO.*   If the UDC refers the incident report to the DHO for further review, the UDC will advise you of your rights at the upcoming DHO hearing, as detailed in § 541.8.**

The UDC is prohibited from imposing the sanctions of make monetary restitution or monetary fines.

The UDC forwards copies of relevant documents to the DHO with a statement of reasons for the referral, along with recommendations for sanctions if the DHO finds the inmate has committed the act or another prohibited act.   The UDC Chair records reasons for the referral and recommendations for disposition in the "Committee Action" section of the incident report. Recommendations are contingent upon a DHO finding that the inmate committed the act.

When charges are referred to the DHO, the UDC advises the inmate of the rights afforded at a hearing.   The UDC asks the inmate to choose a staff representative, if any, and the names of witnesses the inmate wishes to be called to testify and what testimony they are expected to provide.   The UDC advises the inmate that he/she may waive the right to be present at the hearing, but still have witnesses or a staff representative appear on his/her behalf.

If an inmate waives the right to appear at the UDC review, the UDC ensures the inmate is advised of the rights afforded at a hearing before the DHO (see forms for Inmate Rights at Discipline Hearing and Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO)).

**(h)   *Written report.*   You will receive a written copy of the UDC's decision following its review of the incident report.**

The UDC prepares a record of its proceedings, which need not be verbatim.   A record of the hearing and supporting documents is kept in the inmate's central file.

The UDC gives the inmate a written copy of the decision and disposition by the close of business the next work day.   Action taken as a minor disposition may be reviewed under the Administrative Remedy Program (see 28 CFR Part 542, Subpart B.).

All UDC member**(s)** must print their name and sign Part II of the incident report to certify they served on the UDC and that the completed Part II accurately reflects their review.

When the UDC finds the inmate committed the prohibited act charged or a similar prohibited act reflected in the incident report, the chair ensures the information is entered into SENTRY in the Chronological Disciplinary Record.

**(i)   *Appeals.*   You may appeal the UDC's action(s) through the Administrative Remedy Program, 28 CFR Part 542, Subpart B.**

The Program Statement **Administrative Remedy Program** covers the regulations in 28 CFR Part 542, Subpart B.   In addition to a review under the Administrative Remedy procedure, the Warden or designee audits and reviews discipline hearings and dispositions to ensure conformity with this policy.

When the UDC holds a full review and determines that the inmate did not commit a prohibited act of Moderate or Low severity, the UDC expunges the inmate's file of the incident report and related documents.

**CHAPTER 5.**

**§ 541.8   Discipline Hearing Officer (DHO) hearing.**

**The Discipline Hearing Officer (DHO) will only conduct a hearing on the incident report if referred by the UDC.   The DHO's hearing involves the following:**

**(a)   *Available dispositions.*   The DHO will make one of the following decisions after a hearing on the incident report:**

**(1)   You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;**

**(2)   You did not commit the prohibited act(s) charged; or**

**(3)   The incident report will be referred back for further investigation, review, and disposition.**

**(b)   *Discipline Hearing Officer.*   The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.**

The term Discipline Hearing Officer (DHO) refers to a one-person, independent officer who conducts hearings and imposes sanctions for incidents of misconduct referred by the UDC.   A DHO may not conduct hearings without receiving specialized training and passing a certification test.   If the institution's assigned DHO is unable to conduct hearings, the Warden arranges for another DHO, who must be certified.

The DHO may not hear any case not referred by the UDC.   Only the DHO has authority to impose or suspend sanctions A through E.

**(c)   *Timing.*   You will receive written notice of the charge(s) against you at least 24 hours before the DHO's hearing.   You may waive this requirement, in which case the DHO's hearing can be conducted sooner.**

The inmate does not appear before the DHO less than 24 hours before receiving written notice, unless he/she is to be released from custody within that time or waives the 24-hour notice requirement.

**(d)   *Staff Representative.*   You are entitled to have a staff representative during the DHO hearing process as follows:**

**(1)   *How to get a staff representative.*   You may request the staff representative of your choice, so long as that person was not a victim, witness, investigator, or otherwise significantly involved in the incident.   If your request(s) cannot be fulfilled, and you still want a staff representative, the Warden will appoint one. The Warden will also appoint a staff representative if it appears you are unable to adequately represent yourself before the DHO, for example, if you are illiterate or have difficulty understanding the charges against you.**

**(2)   *How the staff representative will help you.*   Prior to the DHO's hearing, the staff representative will be available to help you understand the incident report charges and potential consequences.   The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO's hearing.   During the DHO's hearing, you are entitled to have the staff representative appear and assist you in understanding the proceedings.   The staff representative can also assist you in presenting evidence during the DHO's hearing.**

**(3)   *How the staff representative may appear.*   Your staff representative may appear either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion.   If your staff representative is not available for the scheduled hearing, you may either select another staff representative, request the hearing be postponed for a reasonable amount of time until your staff representative can appear, or proceed without a staff representative.**

The Warden provides a full-time staff member to represent an inmate, if requested.   If the request cannot be fulfilled, and the inmate still wants a staff representative, the Warden will appoint one.   The executive staff, the DHO or alternate DHO, reporting officer, investigating officer, witnesses to the incident, and UDC members involved in the case may not be staff representatives.   The Warden may exclude other staff in a particular case or when there is a potential conflict.

The DHO arranges for the presence of the staff representative selected by the inmate.   If the staff member declines or is unavailable, the inmate can select another representative, wait a reasonable period for the staff member's return, or proceed without a representative.   The DHO affords a staff representative adequate time to speak with the inmate and interview witnesses.   While it is expected that a staff member will have ample time to prepare before the hearing, delays to allow additional preparation may be ordered by the DHO.

**(e)   *Inmate appearance.*   You are permitted to appear before the DHO during the hearing on the incident report as follows:**

**(1)   You may appear either in person or electronically (for example, by video or telephone conferencing), at the DHO's discretion.**

**(2)   Your appearance may be prohibited during DHO deliberations or when your presence would jeopardize institution security, at the DHO's discretion.**

**(3)   You may waive your appearance before the DHO.   If you waive your appearance, the DHO hearing will be conducted in your absence.**

**(4)   If you escape or are otherwise absent from custody, the DHO will conduct a hearing in your absence at the institution where you were last confined.**

Although an inmate may waive the right to be present, he/she may elect to have a staff representative and witness(es) appear.

The DHO must document reason(s) for excluding an inmate from the hearing.   An inmate may waive the right to be present, provided the waiver is documented and reviewed by the DHO.   A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign, by a memo signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear.

The DHO may conduct a hearing in the absence of an inmate when the inmate waives the right to appear.   If an inmate escapes or is otherwise absent, the DHO conducts a hearing in the inmate's absence at the institution in which the inmate was last confined.   When an inmate returns to custody following an absence during which sanctions were imposed by the DHO, the Warden has the charges reheard before the DHO, ordinarily within 60 days after the inmate's arrival at the institution to which he/she is designated after return to custody, following an appearance before the UDC at that institution.

The UDC ensures that the inmate is aware of all rights for an appearance before the DHO, including delivery of charge(s), advisement of the right to remain silent, and other rights exercised before the DHO.   Procedural requirements before the DHO apply to this in-person hearing, except that written statements of witnesses not readily available may be liberally used in place of in-person witnesses.

The DHO may affirm the earlier action taken, dismiss the charge(s), modify the finding of the original DHO as to the offense committed, or modify sanctions imposed in the inmate's absence.

When an inmate escapes, and is in local custody where a hearing may be held, an in-person rather than in-absentia hearing may be held at the DHO's discretion.

**(f)   *Evidence and witnesses.*   You are entitled to make a statement and present documentary evidence to the DHO on your own behalf.    The DHO will consider all evidence presented during the hearing.   The DHO's decision will be based on**

**at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.   Witnesses may appear at the DHO's hearing as follows:**

**(1)   Witnesses may appear before the DHO either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion.**

**(2)   The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available.   However, the DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials.**

**(3)   You or your staff representative may request witnesses appear at the hearing to testify on your behalf.   Your requested witnesses may not appear if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence.**

**(4)   If your requested witnesses are unavailable to appear, written statements can be requested by either the DHO or staff representative.   The written statements can then be considered during the DHO's hearing.**

**(5)   Only the DHO may directly question witnesses at the DHO's hearing.   Any questions by you or your staff representative must be submitted to the DHO, who will present the question to the witness in his/her discretion.**

**(6)   The DHO may consider evidence provided by a confidential informant (CI) that the DHO finds reliable.   You will not be informed of the CI's identity.   You will be informed of the CI's testimony to the extent it will not jeopardize institution security, at the DHO's discretion.**

The DHO may refer the case back to the UDC for further information or disposition when the case does not warrant DHO involvement.   When further investigation or more evidence is needed, the DHO may postpone or, before deciding whether a prohibited act was committed, continue the hearing until a later date.   A postponement or continuance must be for good cause (determined by the DHO) and documented in the record.

The phrase "some facts" refers to facts indicating the inmate committed the prohibited act.   The phrase "greater weight of the evidence" refers to the strength of the evidence, not to its quantity or to the number of witnesses testifying.

The DHO may consider negative information (e.g., known peddler of contraband) as part of the fact-finding process.   Negative information may be used to draw an adverse inference against the inmate.   However, negative information alone may not be used to support a finding that an inmate committed a prohibited act.

■ **Witnesses**.   An inmate may request witnesses from outside the institution.   In such instances, the inmate charged may be excluded during the appearance of an outside witness. An outside witness should appear in an area in which outside visitors are usually allowed. Written statements from outside witnesses may be used by the DHO in lieu of live testimony.

The DHO need not call repetitive witnesses.   The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the incident report and other investigative materials.   The DHO must document reasons for declining to call requested witnesses in the DHO report, or, if the reasons are confidential, in a separate report, not available to the inmate.

The inmate's staff representative, or, when the inmate waives staff representation, the DHO, questions witnesses requested by the inmate, who are called before the DHO.   An inmate who waives staff representation may submit questions for requested witnesses in writing to the DHO.   The inmate may not question witnesses.

 When an inmate is excluded during the appearance of a witness, including an outside witness, the DHO informs the inmate before the close of the hearing of the substance of the testimony, except where security would be jeopardized.

There is no minimum or maximum number of witnesses who may be called; the number should be based on the situation and the information to be presented.   While several eyewitnesses may be called, it is expected that the number of character witnesses would be limited, at the discretion of the DHO.

The DHO may not refuse to call a witness who is reasonably available (e.g., on a different shift) and has information relevant to the charge **solely** because the witness (staff or inmate) does not wish to appear.   An inmate witness can be required to attend, and failure to cooperate with the DHO can result in disciplinary action (e.g., for Refusing to Obey an Order of a Staff Member, Code 307).

The DHO may notify the inmate when a witness does not wish to testify.   This may be warranted when it appears that to force the witness's appearance could result in threats to a person's safety, or disruption to security or orderly running of the institution.

The statement of an inmate requesting a witness is not enough to mandate the witness's appearance. There must be an indication that the witness has information directly relevant to the charges.

The DHO may remind an inmate witness that statements at the hearing must be "true" to the best of the inmate's knowledge.

On occasion, an inmate may request a witness who is not reasonably available to testify in person (e.g., an inmate from another institution).   When this occurs, the DHO ordinarily

allows time for the written statement of the witness to be received, if he/she is expected to have relevant information.   The witness should sign the written statement.   If an extension is not granted, the DHO must clearly state in the record reasons for not granting it.

- ■ **Confidential informants**.   When a discipline decision is based on confidential informant information, the UDC or DHO must document, ordinarily in the hearing report, their finding as to the reliability of each confidential informant and the factual basis for that finding.   If the report would reveal the confidential informant's identity, this finding is part of a separate report prepared by the DHO, not available to the inmate.

Confidential informant information should not be used, or relied on in the report, when independent information is available to support a finding.   Just because an informant provided information that opened an investigation does not mean that informant must be referred to, as long as there are other facts or independent evidence.

An **informant** is a person (non-staff, ordinarily an inmate) who provides staff (usually at the person's initiation) with information about the commission of an offense or about misconduct.   A **confidential informant** is one whose identity must be protected for personal safety.   Ordinarily, the finding that an inmate committed a prohibited act must be supported by more than one reliable confidential source.   If there is only one, the confidential information must be corroborated by independently verified evidence linking the inmate to the prohibited act.

Uncorroborated confidential information from a single informant is **insufficient** as the sole basis for a finding, **unless** the circumstances of the incident and the knowledge possessed by the informant are convincing enough to show that the information must be reliable.   In an unwitnessed assault, for example, the statement of a seriously injured assault victim **could** be sufficient to support a finding without corroborating evidence.

The reliability of a confidential informant must be established before the information may be used to support a finding.   Reliability may be determined by a record of past reliability or by other factors that reasonably convince the DHO.   The staff member providing information to the DHO must include a written statement of the frequency with which the informant provided information, the period during which the informant provided information, and the information's accuracy.   If reliability is based on other factors, they must be clearly specified.

Staff have an obligation to determine whether there is any basis for concluding that the informant is providing false information.   Neither the DHO nor UDC may consider information obtained in exchange for the promise of a favor to support its finding.

Confidential information presented to the UDC or DHO must be in writing and must state facts and the manner in which the informant learned the facts.   If possible, the statement must be signed by the confidential informant.   If the informant does not write a statement,

the staff member receiving the information provides the information in language as close to the informant's as possible (actual words where possible).

The identity of a confidential informant must be known, at a minimum, by the DHO.   Where the UDC does not make a final disposition, but refers a case to the DHO, the UDC need not know the identity of an informant or the substance of the information.

An inmate's staff representative need not know the identity of informants.   While confidential information may, at the discretion of the DHO, be divulged to, and challenged by, a staff representative, the **reliability** of informants may not be questioned by the staff representative.   The DHO is responsible for establishing reliability.

Confidential informants' statements must, at a minimum, be incorporated in discipline hearing reports by reference.   The UDC or DHO must document, ordinarily in the UDC or DHO report, their finding as to the reliability of each informant and its factual basis.   The report must identify specific information relied on and the factual basis for that reliance.   When the DHO decides that information given by a single confidential informant is sufficient, the report should include a rationale for that decision.

When the DHO determines that including information in the report would not reveal the identity of the informant, such information is included.   When the DHO determines that including information in the report might reveal the identity of the informant, the DHO prepares a separate report documenting the findings of the reliability of each informant, their factual basis, the information relied on, and the factual basis for that reliance.   This separate report need not be placed in the inmate central file, but is retained in a secure location as long as it is available for later administrative or judicial review, and as long as the separate report is incorporated by reference into the DHO report.

Since information received anonymously does not meet the necessary reliability standard, it may not be used as evidence in making a finding.   Such information, however, may be used in the investigation.

When relying on confidential informant information in making a finding, the DHO must justify the reliability of this information and its factual basis.   If the testimony of conflicting witnesses (any witness, not just confidential informants) is presented, or there are other conflicts in the evidence, the DHO indicates in the record the reason for believing the testimony of one witness over another or otherwise resolving the conflict.   When including this information in the written report would jeopardize security, the DHO may provide it in a separate report, not available to the inmate.

**(g)   *Sanctions.*   If you committed a prohibited act(s), the DHO can impose any of the available sanctions listed in Tables 1 and 2.**

The Regional Director audits discipline hearings and dispositions to ensure conformity with this policy.

**(h)   *Written Report.*   You will receive a written copy of the DHO's decision following the hearing.   The DHO is not required to prepare a verbatim record of the hearing.   The DHO's written report will document the following:**

**(1)   Whether you were advised of your rights during the DHO process;**

**(2)   The evidence relied on by the DHO;**

**(3)   The DHO's decision;**

**(4)   The sanction imposed by the DHO; and**

**(5)   The reason(s) for the sanction(s) imposed.**

The DHO prepares a record of the proceedings.   The evidence, decision, and reasons for actions taken must be specific, unless this would jeopardize security.   The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision.

The DHO signs the discipline hearing report, certifying that it accurately reflects the proceedings.

A record of the hearing and supporting documents are kept in the inmate central file.

The DHO ensures that the required information is entered into SENTRY in the inmate's Chronological Disciplinary Record.

If the DHO expunges an incident report, unit staff must ensure the inmate's central file does not include the incident report and/or related documents.

References to significant prohibited acts that are not supported by disciplinary actions and hearings may not be used by the Bureau in ways that have an adverse impact on an inmate, specifically the forfeiture or disallowance of good time, good conduct time, or a parole recommendation.   Staff may maintain such references in an inmate's central file for use in making classification, administrative transfer, and other decisions if the following conditions are met:

- References in an inmate's central file must be maintained accurately.   For example, an inmate suspected of being involved in an escape attempt who was never found to have violated disciplinary regulations or was never charged due to lack of evidence would have to have the lack of evidence noted in any reference to alleged involvement in the escape attempt.

- Placement of a reference to 100 or 200 severity level offenses not supported by disciplinary action in an inmate's central file may only be done with the written approval of the Warden of the institution where the incident occurred.   This must be documented in the inmate's central file.   Approval signifies that in the Warden's judgment this information is necessary for proper management of the inmate.

**(i)** *Appeals.*   **You may appeal the DHO's action(s) through the Administrative Remedy Program, 28 CFR Part 542, Subpart B.**

The reviewing official (Warden, Regional Director, or General Counsel) may approve, modify, reverse, or send back with directions, including ordering a rehearing, any action of the UDC or DHO, but may not increase a valid sanction.   The initial reviewing official for the UDC is the Warden.   The decision of the DHO is final and subject to review only by the Regional Director to ensure conformity with the discipline policy and by appeal through the Administrative Remedy program.   The DHO ensures the inmate is notified that any appeal must be made within the time frames in the Administrative Remedy procedures.   The Warden may also review DHO hearings to the extent he or she considers necessary to ensure substantial compliance with the provisions of the discipline policy.   Also, the DHO may receive informal complaints about the procedure and correct mistakes locally.

On appeals, the reviewing authority considers:

- Whether the UDC or DHO substantially complied with regulations on inmate discipline.
- Whether the UDC or DHO based its decision on facts.
- If there was conflicting evidence, whether the decision was based on the greater weight of the evidence.
- Whether an appropriate sanction was imposed or the severity level of the prohibited act, and other relevant circumstances.

The reviewing official is limited to determining if the UDC or DHO could have rationally concluded that the evidence supports the decision, not necessarily whether the reviewing official would have made the same decision.

The investigator, UDC members, DHO, reporting officer, or staff representative may not investigate or help prepare the response to administrative appeals from UDC or DHO actions.

Where a remand is directed, the UDC or DHO is bound by the original sanction(s), except where:

- The sanction is in violation of policy.
- The remand is made specifically because of the sanction.
- The inmate's behavior or activity since the first hearing is determined by the UDC or DHO to justify an increase or decrease in sanction(s).   The intervening behavior or activity and the reasons for an increase or decrease in sanction(s) must be documented in the hearing record.

When an appeal results in the original sanction being replaced by a suspended sanction, the suspension (when possible) runs from the date the original sanction was imposed.

When an inmate files a Regional or Central Office appeal of a disciplinary action, those offices may request copies of disciplinary records.   Each Warden will designate an appropriate staff member with the proper clearance to ensure that copies sent for review or appeal include confidential information, witness and notice of rights forms, staff memos concerning the incident, investigative reports, and any dissenting reports.   Documentation is forwarded within three working days of the receipt of request.

**Appendix A.   LIST OF FORMS**

- Incident Report (BP-A0288 JUN 11).
- Inmate Rights at Discipline Hearing (BP-A0293 JUN 11).
- Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO) (BP-A0294 JUN 11).
- Duties of Staff Representative (BP-A0306 JUN 11).
- Waiver of Appearance (BP-A0307 JUN 11).
- Discipline Hearing Officer (DHO) Report (BP-A0304 JUN 11).

**Appendix B.   SUMMARY OF INMATE DISCIPLINE SYSTEM**

1.   Staff becomes aware of inmate's involvement in incident or once the report is released for administrative processing following a referral for criminal prosecution.



ordinarily maximum of 24 hours

2.   Staff gives inmate notice of charges
       by delivering Incident Report.

maximum ordinarily of 5 work days from the
time staff became aware of the inmate's
involvement in the incident.   (Excludes
the day staff become aware of the inmate's
involvement, weekends, and holidays.)

3.        Initial review (UDC)

minimum of 24 hours
(unless waived)

4.   Discipline Hearing Officer (DHO) Hearing

**NOTE**:   Time limits are subject to exceptions as provided in the rules.

Staff may suspend disciplinary proceedings for a period not to exceed two calendar weeks while undertaking informal resolution.   If informal resolution is unsuccessful, staff may reinitiate disciplinary proceedings.   The requirements then begin running at the same point at which they were suspended.

**Appendix C.   INMATE RIGHTS AND RESPONSIBILITIES**

| RIGHTS | RESPONSIBILITIES |
|---|---|
| 1.  You have the right to expect that you will be treated in a respectful, impartial, and fair manner by all staff. | 1. You are responsible for treating inmates and staff in the same manner. |
| 2.  You have the right to be informed of the rules, procedures, and schedules concerning the operation of the institution. | 2. You have the responsibility to know and abide by them. |
| 3.  You have the right to freedom of religious affiliation and voluntary worship. | 3. You have the responsibility to recognize and respect the rights of others in this regard. |
| 4.  You have the right to health care, which includes nutritious meals, proper bedding and clothing,- and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles, and medical and dental treatment. | 4. It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it. |
| 5.  You have the opportunity to visit and correspond with family members and friends, and correspond with members of the news media, in accordance with Bureau rules and institution guidelines. | 5. It is your responsibility to conduct yourself properly during visits.   You will not engage in inappropriate conduct during visits to include sexual acts and introduction of contraband, and not to violate the law or Bureau guidelines through your correspondence. |
| 6.  You have the right to unrestricted and confidential access to the courts by correspondence (on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment.) | 6. You have the responsibility to present honestly and fairly your petitions, questions, and problems to the court. |

7. You have the right to legal counsel from an attorney of your choice by interviews and correspondence.

**7.   It is your responsibility to use the services of an attorney honestly and fairly.**

8. You have the right to participate in the use of law library reference materials to assist you in resolving legal problems. You also have the right to receive help when it is available through a legal assistance program.

**8.   It is your responsibility to use these resources in keeping with the procedures and schedule prescribed and to respect the rights of other inmates to the use of the materials and assistance.**

9. You have the right to a wide range of reading materials for educational purposes and for your own enjoyment.   These materials may include magazines and newspapers sent from the community, with certain restrictions.

**9.   It is your responsibility to seek and use such materials for your personal benefit, without depriving others of their equal rights to the use of this material.**

10. You have the right to participate in educational, vocational training, counseling, and employment programs as resources permit, and in keeping with your interests, needs, and abilities.

**10.   You have the responsibility to take advantage of activities which will aid you to live a successful and law-abiding life within the institution and in the community.   You will be expected to abide by the regulations governing the participation in such activities.**

11. You have the right to use your funds for commissary and other purchases, consistent with institution security and good order, for opening bank and/or savings accounts, and for assisting your family, in accordance with Bureau rules.

**11.   You have the responsibility to meet your financial and legal obligations, including, but not limited to, DHO and court-imposed assessments, fines, and restitution. You also have the responsibility to make use of your funds in a manner consistent with your release plans, your family needs, and for other obligations that you may have.**

**Appendix D.   DATA ENTRY INSTRUCTIONS**

Each Discipline Hearing Officer (DHO) or Unit Discipline Committee (UDC) is responsible for the validity and accuracy of the data on all cases resolved at their level.   It is critical that the data is reported correctly and uniformly.

**Prohibited Acts.**   Data collection requirements apply only to the following prohibited acts:

- Code 100 – Killing.
- Code 101 – Assaulting any Person (Serious).
- Code 107 – Taking Hostages.
- Code 114 – Sexual Assault by Force.
- Code 203 – Threatening Another with Bodily Harm.
- Code 205 – Engaging in Sexual Acts.
- Code 206 – Making Sexual Proposals or Threats to Another.
- Code 224 – Assaulting any Person (Less Serious).
- Code 225 – Stalking.
- Code 229 – Sexual Assault without Force.

**SENTRY Screens.**   When an inmate is found to have committed one or more of the prohibited acts listed above, the DHO or UDC enters data on the following SENTRY screens:

- Add Hearings/Findings or Update Status After Procedural Hearing.
- Update Hearing/Findings or Execute/Unexecute Sanctions.

Because data collection is not required at the charging or accusatory levels, there are no additional requirements for the Update Charges screen.

**Data Keying Requirements.**   Four characters are available to enter data on a particular act; the fourth is always used for aiding and abetting or attempts (for example, code 101**A**).

For the prohibited acts specified above, SENTRY allows three additional characters (fields) for DHOs or UDCs to input data:

- The first field requires data on **type of victim**.
- The second requires data on **type of weapon** used.
- The third applies to the **nature of the injury**.

A fourth, separate field records whether the incident was referred for prosecution.

**Type of Victim.**   The DHO and UDC Chairman must select one of three codes that best identifies the victim's status and enter it in the Additional Tracking Identifier (ATI) field for the prohibited act (e.g., ATI.: <u>S</u>, ATI.: <u>O</u>):

I = Inmate
S = Staff
O = Other

There can be only one victim for each prohibited act.   When there are multiple victims (two or more inmates, or one staff member and one inmate), there must be multiple prohibited acts against the inmate.   If there are multiple acts for the same code, they must be keyed under separate incident report numbers even though the finding could be based on a single incident report.

"Other" is entered when the victim is a visitor, contracting staff, U.S. Marshal, etc.

**Type of Weapons Classification**.   DHOs must review the list of weapons codes starting from the top (code "A") to the bottom (code "N").   Using this rank-ordered review, select the **first** code that **best** describes the most serious weapon the inmate used or attempted to use.   The selection is placed in the second position after the type of victim (e.g. ATI.: S**B**, ATI.: O**F**):

A   gun
B   sharp object (used to inflict cutting injury)
C   pointed object (used to inflict stabbing injury)
D   solid\blunt object (thrown or used to hit)
E   toxic or flammable fluids or substances
F   fists\hands
G   feet\legs
H   bodily fluids\waste (spit, urine, feces, blood, etc.)
J   teeth
K   head
L   water
M   other or unknown
N   no weapon

"Weapons" refers to objects, instruments, or substances listed above that the inmate controlled at the time of the offense, and are considered an element of the offense.

When an inmate threatens to use a weapon that was not readily available or under his or her control at the time of the incident, select code "N", "no weapon."

**Nature of Injury Assessment**.   The level of injury is best assessed by considering the medical treatment required, if any.   Choose the injury code that best describes the most serious injury suffered.   The choice is placed in the third position after type of weapon (e.g., ATI.: SB**4**, ATI.: OF**1**):

1   **No injury** - The victim or medical staff reported no injuries.

2   **Minor injury** - The victim received minor injuries that may have been treated at the facility, or treated at the facility with a possible recommendation for a non-inmate victim to consult with his/her physician.

3   **Moderate injury** - The victim received more serious injuries that generally require treatment at an outside hospital, or, in the case of non-inmate victims, treatment by their own physicians.   Moderate injuries are not judged life-threatening.

4   **Major injury** - The victim received injuries that are life-threatening, requiring emergency medical treatment at an outside hospital.

5   **Fatal injury** - The victim received injuries resulting in loss of life.

**Example One**:   ATI.: **SB4** – "Staff-**S**" victim, with the weapon being a "sharp object-**B**", and "major injuries-**4**" sustained.

**Example Two**:   ATI.: **OF1** – "Other-**O**" victim with the weapon being "fists/hands-**F**", and "no injury-**1**" sustained.

**Referrals for Prosecution (RFP)**.   For this system to provide accurate data, it is imperative that Special Investigative Supervisors (SIS) and Special Investigative Agents (SIA) refer assaults for prosecution and record the data in section 25 of the incident report.   This is a separate field; the DHO keys either accepted or declined for prosecution by the Assistant U.S. Attorney in the screens for:

- Add Hearings/Findings.
- Update Status After Procedural Hearing.
- Update Hearing/Findings.
- Execute/Unexecute Sanctions.

The SIS or SIA documents this under "Other Facts" in section 25 of the incident report (e.g., RFP.: <u>A</u> for accepted or RFP.: <u>D</u> for declined).

**Table 1.  PROHIBITED ACTS AND AVAILABLE SANCTIONS**

**GREATEST SEVERITY LEVEL PROHIBITED ACTS**

**100    Killing.**

**101    Assaulting any person, or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished).**

**102    Escape from escort; escape from any secure or non-secure institution, including community confinement; escape from unescorted community program or activity; escape from outside a secure institution.**

**103    Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, *e.g.,* in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329).**

**104    Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon.**

**105    Rioting.**

**106    Encouraging others to riot.**

**107    Taking hostage(s).**

**108    Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.,* hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).**

**109    (Not to be used).**

**110    Refusing to provide a urine sample; refusing to breathe into a Breathalyzer; refusing to take part in other drug-abuse testing.**

**111    Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.**

**112   Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.**

**113   Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.**

**114   Sexual assault of any person, involving non-consensual touching by force or threat of force.**

**115   Destroying and/or disposing of any item during a search or attempt to search.**

**196   Use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act.**

**197   Use of the telephone for an illegal purpose or to commit or further a Greatest category prohibited act.**

**198   Interfering with a staff member in the performance of duties most like another Greatest severity prohibited act.   This charge is to be used only when another charge of Greatest severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.**

**199   Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act.   This charge is to be used only when another charge of Greatest severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.**

**AVAILABLE SANCTIONS FOR GREATEST SEVERITY LEVEL PROHIBITED ACTS**

**A.  Recommend parole date rescission or retardation.**

**B.  Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).**

**B.1.  Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).**

**C.  Disciplinary segregation (up to 12 months).**

**D. Make monetary restitution.**

**E. Monetary fine.**

**F. Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).**

**G. Change housing (quarters).**

**H. Remove from program and/or group activity.**

**I. Loss of job.**

**J. Impound inmate's personal property.**

**K. Confiscate contraband.**

**L. Restrict to quarters.**

**M. Extra duty.**

**HIGH SEVERITY LEVEL PROHIBITED ACTS**

**200   Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours.**

**201   Fighting with another person.**

**202   (Not to be used).**

**203   Threatening another with bodily harm or any other offense.**

**204   Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing.**

**205   Engaging in sexual acts.**

**206   Making sexual proposals or threats to another.**

**207   Wearing a disguise or a mask.**

**208   Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure.**

**209   Adulteration of any food or drink.**

**210   (Not to be used).**

**211   Possessing any officer's or staff clothing.**

**212   Engaging in or encouraging a group demonstration.**

**213   Encouraging others to refuse to work, or to participate in a work stoppage.**

**214   (Not to be used).**

**215   (Not to be used).**

**216   Giving or offering an official or staff member a bribe, or anything of value.**

**217   Giving money to, or receiving money from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose.**

**218   Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00, or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value.**

**219   Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored).**

**220   Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized by staff).**

**221   Being in an unauthorized area with a person of the opposite sex without staff permission.**

**222   (Not to be used).**

**223   (Not to be used).**

**224**   **Assaulting any person (a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate).**

**225**   **Stalking another person through repeated behavior which harasses, alarms, or annoys the person, after having been previously warned to stop such conduct.**

**226**   **Possession of stolen property.**

**227**   **Refusing to participate in a required physical test or examination unrelated to testing for drug abuse (e.g., DNA, HIV, tuberculosis).**

**228**   **Tattooing or self-mutilation.**

**229**   **Sexual assault of any person, involving non-consensual touching without force or threat of force.**

**296**   **Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).**

**297**   **Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act.**

**298**   **Interfering with a staff member in the performance of duties most like another High severity prohibited act.   This charge is to be used only when another charge of High severity is not accurate.   The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.**

**299**   **Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act.   This charge is to be used only when another charge of High severity is not accurate.   The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.**

## AVAILABLE SANCTIONS FOR HIGH SEVERITY LEVEL PROHIBITED ACTS

**A.  Recommend parole date rescission or retardation.**

**B.  Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).**

**B.1  Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).**

**C.  Disciplinary segregation (up to 6 months).**

**D.  Make monetary restitution.**

**E.  Monetary fine.**

**F.  Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).**

**G.  Change housing (quarters).**

**H.  Remove from program and/or group activity.**

**I.   Loss of job.**

**J.   Impound inmate's personal property.**

**K.  Confiscate contraband.**

**L.  Restrict to quarters.**

**M.  Extra duty.**

## MODERATE SEVERITY LEVEL PROHIBITED ACTS

**300   Indecent Exposure.**

**301   (Not to be used).**

**302   Misuse of authorized medication.**

**303   Possession of money or currency, unless specifically authorized, or in excess of the amount authorized.**

**304   Loaning of property or anything of value for profit or increased return.**

**305   Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels.**

**306   Refusing to work or to accept a program assignment.**

**307   Refusing to obey an order of any staff member (may be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed, *e.g.* failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered as part of a drug-abuse test would be charged as 110).**

**308   Violating a condition of a furlough.**

**309   Violating a condition of a community program.**

**310   Unexcused absence from work or any program assignment.**

**311   Failing to perform work as instructed by the supervisor.**

**312   Insolence towards a staff member.**

**313   Lying or providing a false statement to a staff member.**

**314   Counterfeiting, forging, or unauthorized reproduction of any document, article of identification, money, security, or official paper (may be categorized in terms of greater severity according to the nature of the item being reproduced, *e.g.,* counterfeiting release papers to effect escape, Code 102).**

**315   Participating in an unauthorized meeting or gathering.**

**316   Being in an unauthorized area without staff authorization.**

**317   Failure to follow safety or sanitation regulations (including safety regulations, chemical instructions, tools, MSDS sheets, OSHA standards).**

**318   Using any equipment or machinery without staff authorization.**

**319    Using any equipment or machinery contrary to instructions or posted safety standards.**

**320    Failing to stand count.**

**321    Interfering with the taking of count.**

**322    (Not to be used).**

**323    (Not to be used).**

**324    Gambling.**

**325    Preparing or conducting a gambling pool.**

**326    Possession of gambling paraphernalia.**

**327    Unauthorized contacts with the public.**

**328    Giving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization.**

**329    Destroying, altering, or damaging government property, or the property of another person, having a value of $100.00 or less.**

**330    Being unsanitary or untidy; failing to keep one's person or quarters in accordance with posted standards.**

**331    Possession, manufacture, introduction, or loss of a non-hazardous tool, equipment, supplies, or other non-hazardous contraband (tools not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety) (other non-hazardous contraband includes such items as food, cosmetics, cleaning supplies, smoking apparatus and tobacco in any form where prohibited, and unauthorized nutritional/dietary supplements).**

**332    Smoking where prohibited.**

**333    Fraudulent or deceptive completion of a skills test (*e.g.,* cheating on a GED, or other educational or vocational skills test).**

**334    Conducting a business; conducting or directing an investment transaction without staff authorization.**

**335   Communicating gang affiliation; participating in gang related activities; possession of paraphernalia indicating gang affiliation.**

**336   Circulating a petition.**

**396   Use of the mail for abuses other than criminal activity which do not circumvent mail monitoring; or use of the mail to commit or further a Moderate category prohibited act.**

**397   Use of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act.**

**398   Interfering with a staff member in the performance of duties most like another Moderate severity prohibited act.   This charge is to be used only when another charge of Moderate severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.**

**399   Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Moderate severity prohibited act.   This charge is to be used only when another charge of Moderate severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.**

**AVAILABLE SANCTIONS FOR MODERATE SEVERITY LEVEL PROHIBITED ACTS**

**A.  Recommend parole date rescission or retardation.**

**B.  Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).**

**B.1   Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).**

**C.  Disciplinary segregation (up to 3 months).**

**D.  Make monetary restitution.**

**E.  Monetary fine.**

**F.  Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).**

**G.  Change housing (quarters).**

**H.  Remove from program and/or group activity.**

**I.   Loss of job.**

**J.   Impound inmate's personal property.**

**K.  Confiscate contraband.**

**L.  Restrict to quarters.**

**M.  Extra duty.**

**LOW SEVERITY LEVEL PROHIBITED ACTS**

**400     (Not to be used).**

**401     (Not to be used).**

**402     Malingering, feigning illness.**

**403     (Not to be used).**

**404     Using abusive or obscene language.**

**405     (Not to be used).**

**406     (Not to be used).**

**407     Conduct with a visitor in violation of Bureau regulations.**

**408     (Not to be used).**

**409     Unauthorized physical contact (e.g., kissing, embracing).**

**498     Interfering with a staff member in the performance of duties most like another Low severity prohibited act.   This charge is to be used only when another charge of Low severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Low severity prohibited acts.**

**499    Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Low severity prohibited act.   This charge is to be used only when another charge of Low severity is not accurate.   The offending conduct must be charged as "most like" one of the listed Low severity prohibited acts.**

**AVAILABLE SANCTIONS FOR LOW SEVERITY LEVEL PROHIBITED ACTS**

**B.1    Disallow ordinarily up to 12.5% (1-7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).**

**D.  Make monetary restitution.**

**E.  Monetary fine.**

**F.  Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).**

**G.  Change housing (quarters).**

**H.  Remove from program and/or group activity.**

**I.  Loss of job.**

**J.  Impound inmate's personal property.**

**K.  Confiscate contraband**

**L.  Restrict to quarters.**

**M.  Extra duty.**

**Table 2.  ADDITIONAL AVAILABLE SANCTIONS FOR REPEATED PROHIBITED ACTS WITHIN THE SAME SEVERITY LEVEL**

| Prohibited Act Severity Level | Time Period for Prior Offense (same code) | Frequency of Repeated Offense | Additional Available Sanctions |
|---|---|---|---|
| Low Severity (400 level) | 6 months | 2nd offense | 1. Disciplinary segregation (up to 1 month). 2. Forfeit earned SGT or non-vested GCT up to 10% or up to 15 days, whichever is less, and/or terminate or disallow extra good time (EGT) (an EGT sanction may not be suspended). |
| | | 3rd or more offense | Any available Moderate severity level sanction (300 series). |
| Moderate Severity (300 level) | 12 months | 2nd offense | 1. Disciplinary segregation (up to 6 months). 2. Forfeit earned SGT or non-vested GCT up to 37 1/2% or up to 45 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3rd or more offense | Any available High severity level sanction (200 series). |
| High Severity (200 level) | 18 months | 2nd offense | 1. Disciplinary segregation (up to 12 months). 2. Forfeit earned SGT or non-vested GCT up to 75% or up to 90 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3rd or more offense | Any available Greatest severity level sanction (100 series). |
| Greatest Severity (100 level) | 24 months | 2nd or more offense | Disciplinary Segregation (up to 18 months). |

# Attachment G

CRW/InmateToWarden - e91e4384-ea36-431d-a954-12d79faaacd3

| | |
|---|---|
| **From:** | CRW/InmateToWarden |
| **To:** | ~^!FLEMING, ~^!RHONDA ANN |
| **Date:** | 5/31/2016 8:13 AM |
| **Subject:** | e91e4384-ea36-431d-a954-12d79faaacd3 |
| **BC:** | Cole-Rowls, Lisa;  Comstock, Patricia |

I will forward your message to the Administrative Remedy Coordinator.  In the future, you can email her directly by selecting Administrative Remedies from the drop down menu in TRULINCS.  As for your request for transfer, you must garner the support of your unit team in order to be considered by the DSCC.  Just because you want a transfer, it does not mean you are eligible or appropriate.

Jody R. Upton
Warden

>>> ~^!"FLEMING, ~^!RHONDA ANN" <20446009@inmatemessage.com> 5/28/2016 6:37 AM >>>
To: GRIEVANCE RESPONSES
Inmate Work Assignment: U/A

Warden Upton,

several of us have filed grievances in the week of May 7-13, 2016, with Mr. Pendergraft.  We have not received these grievances back so that we may proceed to the next step.

Inmates have told me Mr. Pendergraft will not be back for several weeks.

I would like to know who will be processing our grievances?  I also turned grievances in to Unit Manager Cole-Rowls on May 13, 2016.  I have received no response on this grievance and it involves my safety.

Under the grievance process if no response is given we are allowed to proceed to the next step.  However, we have no one to give us the forms.

When we ask for forms from other staffmembers, we are jeopardizing ourselves due to a level of intimidation of which I am sure you would be proud of.

I have repeatedly requested a transfer and I have complied with what the unit team instructed me to do:  I am in 2 classes with the Chaplain's Department.   I already told Ms. Cole-Rowls that this is just a delay tactic until they can drum up some incident report to prevent my transfer.  They have plenty of time to harass and intimidate Fleming, while bypassing these drug sellers and addicts.

I am emailing because a U.S. Attorney told a federal judge that I have not exhausted my adminstrative remedies on issues of a transfer and its relation to my safety, in light of an officer beating several inmates with a shoe, yet is still assigned to this unit, doing the same

271

thing daily.

I am making a record for the court to see what is going on with the grievance process and how I am unable to obtain assistance on an issue of my safety.

R. Fleming

| | | |
|---|---|---|
| Message Id: | 574D8DE5.65D : 138 : 23819 | |
| Subject: | e91e4384-ea36-431d-a954-12d79faaacd3 | |
| Created By: | CRW/InmateToWarden@bop.gov | |
| Scheduled Date: | | |
| Creation Date: | 5/31/2016 8:13 AM | |
| From: | CRW/InmateToWarden | |

## Recipients:

| Recipient | Action | Date & Time | Comment |
|---|---|---|---|
| ✉ CRW_ADM1.CRW_DOM1 | Delivered | 5/31/2016 8:13 AM | |
| BC: REDACTED | Read | 5/31/2016 3:19 PM | |
| BC: REDACTED | Read | 6/3/2016 8:54 AM | |
| ✉ inmatemessage.com | Transferred | 5/31/2016 8:13 AM | |
| To: ~^!RHONDA ANN ~^!FLEMING (20446009@inmatemessage.com) | Delivered | 5/31/2016 8:13 AM | |

## Post Offices

| Post Office | Delivered | Route |
|---|---|---|
| CRW_ADM1.CRW_DOM1 | 5/31/2016 8:13 AM | bop.gov |
| inmatemessage.com | | inmatemessage.com |

## Files

| File | Size | Date & Time |
|---|---|---|
| MESSAGE | 2986 | 5/31/2016 8:13 AM |
| TEXT.htm | 2612 | 5/31/2016 8:13 AM |

## Options

| | |
|---|---|
| Auto Delete: | No |
| Concealed Subject: | No |
| Expiration Date: | None |
| Notify Recipients: | Yes |
| Priority: | Standard |
| Reply requested by | None |
| Security: | Standard |
| To Be Delivered: | Immediate |

## Record Id

| | |
|---|---|
| Record Id: | 574D4795.CRW_DOM1.CRW_ADM1.100.1756D67.1.5E64.1 |
| Common Record Id: | 574D4795.CRW_DOM1.CRW_ADM1.200.200008A.1.54E09.1 |

**CRW/InmateToWarden - Fwd: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, CRW-I-S**

| | |
|---|---|
| **From:** | CRW/InmateToWarden |
| **To:** | Cole-Rowls, Lisa;  Woods, William L. |
| **Date:** | 6/13/2016 7:01 AM |
| **Subject:** | Fwd: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, CRW-I-S |

>>> ~^!"FLEMING, ~^!RHONDA ANN" <20446009@inmatemessage.com> 6/11/2016 9:12 AM >>>
To: Denial of Access to Administrative Remedy
Inmate Work Assignment: u/a

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
bfc0d818-23ac-4254-8a04-a1d5c20ddb2e
Your response must come from the departmental mail box.  Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***


Warden Upton:

Sir, I went to see Unit Manager Cole-Rowls about the issues we discussed earlier this week--informal grievances that have been pending 3 to 4 weeks since they were submitted and the denial of access to BP-9 forms.  The outcome of speaking to Ms. Cole-Rowls is as follows:

1.  Because I emailed you, nothing is going to be done about any of the grievances.

2.  None of the grievances will be returned to me.

3.  Complete refusal to provide BP-9, BP-10, or any other forms.

4.  No processing of my transfer to FPC Bryan, although it was agreed that when I completed 2 classes my transfer would be submitted.  I have done 4 or 5.  The denial of transfer is because I emailed you.  This was stated several times by Ms. Cole-Rowls.

5.  The FRP status will remain as my punishment for emailing you regardless of if it violates a court ordered payment schedule.

6.  I was ordered not to ever report or write in a grievance that Ms. Cole-Rowls or her staff is retaliating against me--a direct order.

274

7.  Although I have never seen a medical doctor since my transfer to FMC Carswell, and at my last team, I was not REDACTED suddenly because I have no prison wages to pay FRP, someone REDACTED Ms. Cole-Rowls made a big deal about me being REDACTED at this time.  How this is possible without ever being REDACTED REDACTED is interesting.  It opens another issue...how staff members work together so well at doing wrong.  Supposedly, I have been REDACTED since December 2015--now this is fraud.

In summary, she was rude, threatening, and clearly retaliating against me, while denying access to administrative remedy, in front of 5 to 7 other inmates waiting to speak to her.

From the week of May 9-13, 2016, all inmates on 2-south have been denied grievance forms. Everyone has been told by Unit Counselor Gardner not to come on 2-North side asking for grievance forms.  And Ms. Cole-Rowls outright refused to provide the forms or respond to pending 8 1/2 informal grievances.

A review of Unit 2-South's log of grievances will show that no grievances have been logged in over a month.  REDACTED and at least 7 other inmates have been in conflict with Ms. Cole-Rowls on the denial of access to grievances or responses to informal grievances.

Ms. Cole-Rowls is retaliating against me, in part, because she routinely attempts to intimidate inmates that want to utilize the grievance process and also because I reported Officer REDACTED her friend, for hitting inmates with a shoe and then threatening me and others that reported it.

I believe I have done my duty, in good faith, to exhaust the administrative remedy process.  I have been effectively denied access, so I have no choice but to request relief from the federal courts.  I did as you instructed me this week and it had a bad result.

Nonetheless, thank you for your assistance.

R.Fleming

275

| Message Id: | 575EA09C.492 : 138 : 23819 |
|---|---|
| Subject: | Fwd: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, CRW-I-S |
| Created By: | CRW/InmateToWarden@bop.gov |
| Scheduled Date: | |
| Creation Date: | 6/13/2016 7:01 AM |
| From: | CRW/InmateToWarden |

## Recipients:

| Recipient | Action | Date & Time | Comment |
|---|---|---|---|
| CRW_ADM1.CRW_DOM1 | Delivered | 6/13/2016 7:01 AM | |
| To: REDACTED | Read | 6/13/2016 7:26 AM | |
| REDACTED | Third-Party Downloaded Read | 6/13/2016 7:01 AM<br>6/13/2016 7:58 AM | |

## Post Offices

| Post Office | Delivered | Route |
|---|---|---|
| CRW_ADM1.CRW_DOM1 | 6/13/2016 7:01 AM | bop.gov |

## Files

| File | Size | Date & Time |
|---|---|---|
| MESSAGE | 4691 | 6/13/2016 7:01 AM |
| TEXT.htm | 3956 | 6/13/2016 7:01 AM |

## Options

| | |
|---|---|
| Auto Delete: | No |
| Concealed Subject: | No |
| Expiration Date: | None |
| Notify Recipients: | Yes |
| Priority: | Standard |
| Reply requested by | None |
| Security: | Standard |
| To Be Delivered: | Immediate |

REDACTED

## CRW/InmateToWarden - Re: Fwd: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, CRW-I-S

**From:**     Lisa Cole-Rowls
**To:**       CRW/InmateToWarden.CRW_ADM1.CRW_DOM1@bop.gov
**Date:**     6/13/2016 7:27 AM
**Subject:**  Re: Fwd: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, CRW-I-S

Wow, this is not true.  Unbelievable!

>>> CRW/InmateToWarden 6/13/2016 7:01 AM >>>

>>> ~^!"FLEMING, ~^!RHONDA ANN" <20446009@inmatemessage.com> 6/11/2016 9:12 AM >>>
To: Denial of Access to Administrative Remedy
Inmate Work Assignment: u/a

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
bfc0d818-23ac-4254-8a04-a1d5c20ddb2e
Your response must come from the departmental mail box.  Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***



Warden Upton:

Sir, I went to see Unit Manager Cole-Rowls about the issues we discussed earlier this week--informal grievances that have been pending 3 to 4 weeks since they were submitted and the denial of access to BP-9 forms.  The outcome of speaking to Ms. Cole-Rowls is as follows:

1.  Because I emailed you, nothing is going to be done about any of the grievances.

2.  None of the grievances will be returned to me.

3.  Complete refusal to provide BP-9, BP-10, or any other forms.

4.  No processing of my transfer to FPC Bryan, although it was agreed that when I completed 2 classes my transfer would be submitted.  I have done 4 or 5.  The denial of transfer is because I emailed you.  This was stated several times by Ms. Cole-Rowls.

5.  The FRP status will remain as my punishment for emailing you regardless of if it violates a court ordered payment schedule.

6. I was ordered not to ever report or write in a grievance that Ms. Cole-Rowls or her staff is retaliating against me--a direct order.

7. Although I have never seen a REDACTED since my transfer to FMC Carswell, and at my last team, I was not REDACTED suddenly because I have no prison wages to pay FRP, someone REDACTED me. Ms. Cole-Rowls made a big deal about me being REDACTED at this time. How this is possible without ever being REDACTED is interesting. It opens another issue...how staff members work together so well at doing wrong. Supposedly, I have been REDACTED since December 2015--now this is fraud.

In summary, she was rude, threatening, and clearly retaliating against me, while denying access to administrative remedy, in front of 5 to 7 other inmates waiting to speak to her.

From the week of May 9-13, 2016, all inmates on 2-south have been denied grievance forms. Everyone has been told by Unit Counselor Gardner not to come on 2-North side asking for grievance forms. And Ms. Cole-Rowls outright refused to provide the forms or respond to pending 8 1/2 informal grievances.

A review of Unit 2-South's log of grievances will show that no grievances have been logged in over a month. REDACTED and at least 7 other inmates have been in conflict with Ms. Cole-Rowls on the denial of access to grievances or responses to informal grievances.

Ms. Cole-Rowls is retaliating against me, in part, because she routinely attempts to intimidate inmates that want to utilize the grievance process and also because I reported Officer REDACTE her friend, for hitting inmates with a shoe and then threatening me and others that reported it.

I believe I have done my duty, in good faith, to exhaust the administrative remedy process. I have been effectively denied access, so I have no choice but to request relief from the federal courts. I did as you instructed me this week and it had a bad result.

Nonetheless, thank you for your assistance.

R.Fleming

CRW/InmateToWarden - bfc0d818-23ac-4254-8a04-a1d5c20ddb2e

---

**From:**   CRW/InmateToWarden
**To:**   ~^!FLEMING, ~^!RHONDA ANN
**Date:**   6/13/2016 3:13 PM
**Subject:**   bfc0d818-23ac-4254-8a04-a1d5c20ddb2e

---

I forwarded your concerns to AW Woods for review.  He supervises the Unit Managers.  Feel free to speak with him at mainline.

Jody R. Upton
Warden

>>> ~^!"FLEMING, ~^!RHONDA ANN" <20446009@inmatemessage.com> 6/11/2016 9:12 AM >>>
To: Denial of Access to Administrative Remedy
Inmate Work Assignment: u/a

Warden Upton:

Sir, I went to see Unit Manager Cole-Rowls about the issues we discussed earlier this week-- informal grievances that have been pending 3 to 4 weeks since they were submitted and the denial of access to BP-9 forms.  The outcome of speaking to Ms. Cole-Rowls is as follows:

1.  Because I emailed you, nothing is going to be done about any of the grievances.

2.  None of the grievances will be returned to me.

3.  Complete refusal to provide BP-9, BP-10, or any other forms.

4.  No processing of my transfer to FPC Bryan, although it was agreed that when I completed 2 classes my transfer would be submitted.  I have done 4 or 5.  The denial of transfer is because I emailed you.  This was stated several times by Ms. Cole-Rowls.

5.  The FRP status will remain as my punishment for emailing you regardless of if it violates a court ordered payment schedule.

6.  I was ordered not to ever report or write in a grievance that Ms. Cole-Rowls or her staff is retaliating against me--a direct order.

7.  Although I have never seen a REDACTED since my transfer to FMC Carswell, and at my last team, I was not REDACTED suddenly because I have no prison wages to pay FRP, someone REDACTED me.  Ms. Cole-Rowls made a big deal about me being REDACTED at this time.  How this is possible without ever being examined by REDACTED REDACTED is interesting.  It opens another issue...how staff members work together so well at doing wrong.  Supposedly, I have been REDACTED since December 2015--now this is fraud.

279

In summary, she was rude, threatening, and clearly retaliating against me, while denying access to administrative remedy, in front of 5 to 7 other inmates waiting to speak to her.

From the week of May 9-13, 2016, all inmates on 2-south have been denied grievance forms. Everyone has been told by Unit Counselor Gardner not to come on 2-North side asking for grievance forms.  And Ms. Cole-Rowls outright refused to provide the forms or respond to pending 8 1/2 informal grievances.

A review of Unit 2-South's log of grievances will show that no grievances have been logged in over a month.  REDACTED                  and at least 7 other inmates have been in conflict with Ms. Cole-Rowls on the denial of access to grievances or responses to informal grievances.

Ms. Cole-Rowls is retaliating against me, in part, because she routinely attempts to intimidate inmates that want to utilize the grievance process and also because I reported Officer REDACTED her friend, for hitting inmates with a shoe and then threatening me and others that reported it.

I believe I have done my duty, in good faith, to exhaust the administrative remedy process.  I have been effectively denied access, so I have no choice but to request relief from the federal courts.  I did as you instructed me this week and it had a bad result.

Nonetheless, thank you for your assistance.

R.Fleming

| Message Id: | 575F13D6.1B6 : 138 : 23819 |
| Subject: | bfc0d818-23ac-4254-8a04-a1d5c20ddb2e |
| Created By: | CRW/InmateToWarden@bop.qov |
| Scheduled Date: | |
| Creation Date: | 6/13/2016 3:13 PM |
| From: | CRW/InmateToWarden |

## Recipients:

| Recipient | | Action | Date & Time | Comment |
|---|---|---|---|---|
| inmatemessage.com | | Transferred | 6/13/2016 3:13 PM | |
| To: ~^!RHONDA ANN ~^!FLEMING (20446009@inmatemessage.com) | | Delivered | 6/13/2016 3:13 PM | |

## Post Offices

| Post Office | Delivered | Route |
|---|---|---|
| inmatemessage.com | | inmatemessage.com |

## Files

| File | Size | Date & Time |
|---|---|---|
| MESSAGE | 4352 | 6/13/2016 3:13 PM |
| TEXT.htm | 3800 | 6/13/2016 3:13 PM |

## Options

| Auto Delete: | No |
|---|---|
| Concealed Subject: | No |
| Expiration Date: | None |
| Notify Recipients: | Yes |
| Priority: | Standard |
| Reply requested by | None |
| Security: | Standard |
| To Be Delivered: | Immediate |

## Record Id

| Record Id: | REDACTED |
|---|---|
| Common Record Id: | |

281

**CRW/InmateToWarden - Fwd: \*\*\*Request to Staff\*\*\* FLEMING, RHONDA, Reg# 20446009, CRW-I-S**

---

| | |
|---|---|
| **From:** | CRW/InmateToWarden |
| **To:** | Woods, William L. |
| **Date:** | 6/13/2016 6:59 AM |
| **Subject:** | Fwd: \*\*\*Request to Staff\*\*\* FLEMING, RHONDA, Reg# 20446009, CRW-I-S |

---

>>> ~^!"FLEMING, ~^!RHONDA ANN" <20446009@inmatemessage.com> 6/13/2016 6:14 AM >>>
To: Retaliation in work assignment/requesting griev.
Inmate Work Assignment: Food Service

\*\*\*ATTENTION\*\*\*

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
00542887-4eb5-44e2-91d5-099852621f94
Your response must come from the departmental mail box.  Responses from personal mailboxes WILL NOT be delivered to the inmate.

\*\*\*Inmate Message Below\*\*\*



Warden Upton,

Sir, since 2005 I have had a food service restriction due to a REDACTED  The RED
REDACTED at FPC Bryan and here at Carswell, REDACTED both placed this restriction on me.
On one occasion I was placed in FS, around 2010 or 11 and I was taken out the same day.

Now, as I stated on a previous email to you, Ms. Cole-Rowls refused to give me a grievance. She also refused to give REDACTED a response to her grievance or BP-9 forms.

REDA and I both were placed in food service.

REDA is in training for law library and is only waiting for Mr. Pendergraft to put her in the computer in that job...she works everyday for Ms. Wilson.

As for me, I have a signed cop-out for compound, from Ms. Hay.

I don't expect any intervention.  I am just making a record of how the unit manager is taking action to retaliate against inmates that rightfully request grievance forms.

R. Fleming

| | |
|---|---|
| Message Id: | 575EA012.FB3 : 138 : 23819 |
| Subject: | Fwd: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, CRW-I-S |
| Created By: | CRW/InmateToWarden@bop.qov |
| Scheduled Date: | |
| Creation Date: | 6/13/2016 6:59 AM |
| From: | CRW/InmateToWarden |

## Recipients:

| Recipient | Action | Date & Time | Comment |
|---|---|---|---|
| CRW_ADM1.CRW_DOM1 | Delivered | 6/13/2016 6:59 AM | |
| To: William L. Woods REDACTED | Third-Party Downloaded Read | 6/13/2016 6:59 AM 6/13/2016 7:57 AM | |

## Post Offices

| Post Office | Delivered | Route |
|---|---|---|
| CRW_ADM1.CRW_DOM1 | 6/13/2016 6:59 AM | bop.gov |

## Files

| File | Size | Date & Time |
|---|---|---|
| MESSAGE | 2328 | 6/13/2016 6:59 AM |
| TEXT.htm | 1837 | 6/13/2016 6:59 AM |

## Options

| | |
|---|---|
| Auto Delete: | No |
| Concealed Subject: | No |
| Expiration Date: | None |
| Notify Recipients: | Yes |
| Priority: | Standard |
| Reply requested by | None |
| Security: | Standard |
| To Be Delivered: | Immediate |

REDACTED

**CRW/InmateToWarden - 00542887-4eb5-44e2-91d5-099852621f94**

**From:** CRW/InmateToWarden
**To:** ~^!FLEMING, ~^!RHONDA ANN
**Date:** 6/13/2016 4:17 PM
**Subject:** 00542887-4eb5-44e2-91d5-099852621f94

Thank you for the information. As I indicated in a previous response, I forwarded your issue to AW Woods to review.

Jody R. Upton
Warden

>>> ~^!"FLEMING, ~^!RHONDA ANN" <20446009@inmatemessage.com> 6/13/2016 6:14 AM >>>
To: Retaliation in work assignment/requesting griev.
Inmate Work Assignment: Food Service

Warden Upton,

Sir, since 2005 I have had a food service restriction due to a REDACTED The REDACTED at FPC Bryan and here at Carswell, REDACTED both placed this restriction on me. On one occasion I was placed in FS, around 2010 or 11 and I was taken out the same day.

Now, as I stated on a previous email to you, Ms. Cole-Rowls refused to give me a grievance. She also refused to give REDACTED a response to her grievance or BP-9 forms.

REDA and I both were placed in food service.

REDA is in training for law library and is only waiting for Mr. Pendergraft to put her in the computer in that job...she works everyday for Ms. Wilson.

As for me, I have a signed cop-out for compound, from Ms. Hay.

I don't expect any intervention. I am just making a record of how the unit manager is taking action to retaliate against inmates that rightfully request grievance forms.

R. Fleming

| | |
|---|---|
| Message Id: | 575F22E1.BDD : 138 : 23819 |
| Subject: | 00542887-4eb5-44e2-91d5-099852621f94 |
| Created By: | CRW/InmateToWarden@bop.gov |
| Scheduled Date: | |
| Creation Date: | 6/13/2016 4:17 PM |
| From: | CRW/InmateToWarden |

## Recipients:

| Recipient | Action | Date & Time | Comment |
|---|---|---|---|
| inmatemessage.com | Transferred | 6/13/2016 4:17 PM | |
| To: ~^!RHONDA ANN ~^!FLEMING (20446009@inmatemessage.com) | Delivered | 6/13/2016 4:18 PM | |

## Post Offices

| Post Office | Delivered | Route |
|---|---|---|
| inmatemessage.com | | inmatemessage.com |

## Files

| File | Size | Date & Time |
|---|---|---|
| MESSAGE | 1980 | 6/13/2016 4:17 PM |
| TEXT.htm | 1667 | 6/13/2016 4:17 PM |

## Options

| | |
|---|---|
| Auto Delete: | No |
| Concealed Subject: | No |
| Expiration Date: | None |
| Notify Recipients: | Yes |
| Priority: | Standard |
| Reply requested by | None |
| Security: | Standard |
| To Be Delivered: | Immediate |

## Record Id

| | |
|---|---|
| Record Id: | REDACTED |
| Common Record Id: | |

285

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

|  |  |
|---|---|
| RHONDA FLEMING, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil No. 7:17-cv-0009-O |
| UNITED STATES OF AMERICA, *et al.*, | |
| *Defendants*. | |

## DECLARATION OF JOSEPH LEAP, SPECIAL INVESTIGATIVE AGENT, FEDERAL

## MEDICAL CENTER, CARSWELL

I, Joseph Leap, do hereby make the following declaration:

1. I, Joseph Leap, am employed by the Federal Bureau of Prisons (BOP) as the Special
   Investigative Agent (SIA) at the Federal Medical Center Carswell (FMC Carswell) in
   Fort Worth, Texas. I have been employed by the Federal Bureau of Prisons (BOP) since
   August 1996. From 1996 to 1998, I was a Correctional Officer at Federal Correctional
   Institution, Seagoville (FCI Seagoville), in Seagoville, Texas. From 1998 to 2003, I was a
   Correctional Officer at Federal Medical Center, Ft. Worth (FMC Ft. Worth), in Ft.
   Worth, Texas. From 2003 to 2007, I was a Lieutenant at FMC Carswell. From 2007 to
   2016, I was a Lieutenant at FCI Seagoville, and served as the Special Investigative
   Supervisor from 2007 to 2010, and again from 2013 to 2016. I have been the SIA of
   FMC Carswell since June 2016.

1

287

2. As SIA, I am responsible for conducting investigations of violations of the laws of the United States or the BOP's Inmate Discipline Program policy that occur within the confines of the facility as delineated by agency policy or directed by the BOP's Office of Internal Affairs. I also conduct investigations into staff misconduct as delineated by agency policy or directed by the BOP's Office of Internal Affairs.

3. Additionally, I oversee the Special Investigative Services (SIS) department. I supervise three SIS Technicians and one SIS Lieutenant who also investigate and prepare cases for criminal prosecution and/or BOP administrative disciplinary hearings. I am also the designated law enforcement liaison officer for FMC Carswell.

4. In this position, I have access to official records compiled and maintained by the BOP, including inmate files and BOP computerized records, some of which are located in SENTRY and an investigative database.

5. SENTRY is a real-time information system consisting of various applications for processing inmate information.  Data collected and stored in the SENTRY system includes information related to the classification, discipline, and programs of federal inmates.

6. As SIA, I can review the investigative database for incidents that occurred before I began in my current position in June 2016.

7. The SIS Department conducts several different types of investigations, including threat assessments. Threat assessments are completed when a determination must be made as to a possible threat to an inmate within the general population of a facility. Threat Assessments are also completed any time inmates are involved in a physical altercation, regardless of whether the altercation is witnessed by staff.

2

288

8. Not all inmate allegations cause an official investigation as described above, however all allegations of threats or harassment of inmates reported to SIS, either by staff or by inmates, are reviewed by FMC Carswell staff to determine if a threat assessment or other appropriate action is needed. Additionally, I review and investigate allegations of inmate or staff misconduct contained in request for administrative remedies filed by inmates.

9. I have reviewed the allegations made by Plaintiff, Rhonda Fleming, Federal Register Number 20446-009; Plaintiff, Jeanette Driever, Federal Register Number 10965-023; Plaintiff, Brenda Rhames, Federal Register Number 08064-003; and Plaintiff, Charlsa Little, Federal Register Number 47394-177, in the Third Amended Complaint and the allegations contained in Plaintiffs' Motion for Preliminary Injunction and supporting appendix.

REDACTED

3

289



4



5



6



7



8



9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and accurate to the best of my knowledge and belief.

Executed on this ___11___ day of August, 2017.

Joseph Leap
Special Investigative Agent
FMC Carswell

# REDACTED

**REDACTED**

**REDACTED**

# REDACTED

**REDACTED**

# REDACTED

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

# REDACTED

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

# REDACTED

# REDACTED

**REDACTED**

# REDACTED

# REDACTED

**REDACTED**

**REDACTED**

**REDACTED**

# REDACTED

# REDACTED

**REDACTED**

**REDACTED**

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

RHONDA FLEMING, *et al.*,

        *Plaintiffs*,

      v.

UNITED STATES OF AMERICA, *et al.*,

        *Defendants*.

Civil No. 7:17-cv-0009-O

## DECLARATION OF PATRICIA COMSTOCK, EXECUTIVE ASSISTANT, FEDERAL MEDICAL CENTER, CARSWELL

I, Patricia Comstock, do hereby make the following declaration:

1. I, Patricia Comstock, am the Executive Assistant at the Federal Medical Center Carswell in Fort Worth, Texas (FMC Carswell). I have been employed by the Federal Bureau of Prisons (BOP) since September 2001. I was a Special Education Teacher at Federal Prison Camp, Bryan, in Bryan, Texas from September 2001 to August 2010. From August 2010 to November 2014, I was the Supervisor of Education at Federal Correctional Institution, Texarkana in Texarkana, Texas. I have held my current position since November 2014.

2. Among other things, my job responsibilities include overseeing the administrative remedy program at FMC Carswell.

3. In this position, I have access to official records compiled and maintained by the BOP, many of which are located in the BOP computerized records (SENTRY) and administrative remedy files.

4. I certify that the attached documents are true and accurate copies of official records received, compiled, and maintained in the ordinary course of business by the BOP and it was the regular practice of the BOP to receive, compile, and maintain such records.

5. It is my understanding that Plaintiffs Rhonda Fleming, Federal Register Number 20446-009; Jeanette Driever, Federal Register Number 10965-023; Charlsa Little, Federal Register Number 47394-177; and Brenda Rhames, Federal Register Number 08064-003 have filed a lawsuit related to placement of transgender inmates in BOP institutions designated for female inmates. I understand that the Plaintiffs have also filed a motion requesting a preliminary injunction, in which they allege, among other things, that they have been subjected to retaliation for this lawsuit.

## ADMINSTRATIVE REMEDY PROCESS

6. The BOP has an administrative remedy program which is detailed in Program Statement 1330.18, Administrative Remedy Program. Attached to this declaration as Attachment A is a true and correct copy of Program Statement 1330.18, Administrative Remedy Program.

7. The purpose of the Administrative Remedy Program is to allow inmates to seek formal review of an issue relating to any aspect of his/her own confinement. See Attachment A, page 1. With limited exceptions such as an appeal of a disciplinary hearing officer action, a sensitive complaint, or sexual abuse, inmates and staff should attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. See Attachment A, page 4. Inmates are encouraged to initially attempt informal resolution of their complaints by presenting the complaint to her Correctional Counselor. The Correctional Counselor will issue the inmate an Informal Resolution Form. A

2

333

separate Informal Resolution form is required for each issue presented by the inmate. The
Informal Resolution Form is then completed by the inmate and returned to the
Correctional Counselor. The Correctional Counselor will investigate the complaint
through discussions with the inmate and appropriate staff, and reviewing applicable
Bureau policy.

8. If the informal resolution process is completed without satisfactory results, the inmate
may file a written Request for Administrative Remedy, known as a BP-9, at her local
institution to seek formal review of an issue. See Attachment A, pages 4-6. An inmate
may receive a blank copy of BP-9 from her correctional counselor. The inmate should fill
out the BP-9 in accordance with Program Statement 1330.18, Administrative Remedy
Program, and return it to the Correctional Counselor for submission. See Attachment A,
pages 4-6. A review or investigation of the issue presented in the BP-9 will be completed
by institution staff and the Warden will issue a written response.   Responses to the
inmate's BP-9 will be sent through the institution mail system to the inmate.

9. If the inmate chooses to appeal the response to the Request for Administrative Remedy,
she can file a Regional Administrative Remedy Appeal, known as a BP-10, to the
regional office. See Attachment A, pages 6-9. An inmate may receive a blank BP-10s
from her correctional counselor. The inmate should fill out the BP-10 in accordance with
Program Statement 1330.18, Administrative Remedy Program and mails it to the regional
office. A review or investigation of the issue presented in the BP-10 will be completed by
regional staff and the Regional Director or his designee will issue a written response.
Responses to the inmate's BP-10 will be sent through the institution mail system to the
inmate.

334

10. If the inmate chooses to appeal the response to the Regional Administrative Remedy Appeal, the inmate can file a Central Office Administrative Remedy Appeal, known as a BP-11, to the BOP's Central Office. *Id.* An inmate may receive a blank BP-11s from her correctional counselor. The inmate should fill out the BP-11 in accordance with Program Statement 1330.18, Administrative Remedy Program and mails it to the Central Office. A review or investigation of the issue presented in the BP-11 will be completed by central office staff and the National Inmate Appeals Administrator will issue a written response. Responses to the inmate's BP-11 will be sent through the institution mail system to the inmate. Appeal to the Central Office is the final administrative appeal. See Attachment A, page 7.

## PLAINTIFFS' ADMINSTRATIVE REMEDY FILING HISTORY

11. I have reviewed the administrative remedy filing history for each of the Plaintiffs by searching each Plaintiff's register number in Sentry's Administrative Remedy Generalized Retrieval. This search reflects all Requests for Administrative Remedy, Regional Administrative Remedy Appeals, and Central Office Administrative Remedy Appeals filed by each Plaintiff.

## PLAINTIFF RHONDA FLEMING

12. Attached hereto as <u>Attachment B</u> is a true and accurate copy of the SENTRY computer generated Administrative Remedy Generalized Retrieval pertaining to Plaintiff Rhonda Fleming, dated August 1, 2017, containing a record of every administrative remedy she has filed during her BOP confinement.

4

335

13. Since May 3, 2010, Plaintiff Fleming has filed approximately 185 BP9s, BP10s, or BP11s on a variety of subjects including staff complaints, medical care, and appeals disciplinary infractions. See Attachment B.

14. As described in more detail below, four of those administrative remedy filings were related to the allegations in the complaint or in the motion for preliminary injunction, which are attached hereto:

    a. Attached hereto as Attachment C is a true and accurate copy of Request for Administrative Remedy number 891194-F1 filed by Rhonda Fleming and the response from FMC Carswell.

    b. Attached hereto as Attachment D is a true and accurate copy of Request for Administrative Remedy number 900073-F1 filed by Rhonda Fleming and the response from FMC Carswell.

    c. Attached hereto as Attachment E is a true and accurate copy of Request for Administrative Remedy number 900084-F1 filed by Rhonda Fleming and the response from FMC Carswell.

    d. Attached hereto as Attachment F is a true and accurate copy of the Regional Administrative Remedy Appeal number 904826-R1 filed by Rhonda Fleming and the rejection notice from the South Central Regional Office.

15. All four administrative remedy filings listed in Paragraph 11 were filed after the lawsuit was filed but before the preliminary injunction was filed and none of them were filed at all levels required to complete the administrative remedy process. See Attachment B, pages 90-94.

5

336

16. On February 7, 2017, Plaintiff Fleming filed BP-9 number 891194-F1 at FMC Carswell, alleging that she had been "blackmailed" by FMC Carswell staff for her involvement in the lawsuit.  See Attachment C, page 2. Specifically, she stated that a staff member told her she would be accused of sexual harassment if she did not stop pursuing the lawsuit. *Id*. Further, she alleged that the Special Investigative Services (SIS) department at FMC Carswell failed to investigate threats made against her by transgender inmates. *Id*.  On February 21, 2017, FMC Carswell responded to her administrative remedy request stating that her allegations had been referred to the appropriate agency official for any necessary action and that if she was dissatisfied with the response, she could file an appeal with the Regional Director for the South Central Regional Office.  See Attachment C, page 3. On March 6, 2017, Plaintiff Fleming filed BP-10 number 891194 with the South Central Regional Office.  See Attachment B, page 90 and 92.  The appeal was rejected because Plaintiff Fleming raised unrelated issues in the appeal that were not addressed in the original administrative remedy and she was required to file a request regarding the unrelated issue at the institution level. See Attachment B, page 92.  She was given 15 days from the date of the rejection to resubmit her appeal of the original complaint in the proper format at the regional level.  Plaintiff Fleming did not resubmit her appeal to the regional office, nor did she file any further appeals regarding this administrative remedy. See Attachment B.

17. On April 25, 2017, Plaintiff Fleming filed BP-9 number 900073-F1 at FMC Carswell, requesting a transfer to a residential reentry center or home confinement because she alleged that staff had not protected her from men housed at FMC Carswell and she had been retaliated against by FMC Carswell.  See Attachment D, pages 1-2. She stated that a

6

staff member had harassed her about money put into her inmate trust fund account by another inmate's mother and that the staff member had also given preferential treatment to another inmate. *Id.* On May 19, 2017, FMC Carswell responded to her administrative remedy request, noting that she was not yet eligible for review for placement in a residential reentry center and that her allegations of staff misconduct were being reviewed for any necessary action. See Attachment D, page 3. Plaintiff Fleming was informed that if she was dissatisfied with the institution's response she could appeal to the Regional Director. Plaintiff Fleming did not file any appeals of this administrative remedy response. See Attachment B.

18. Also, on April 25, 2017, Plaintiff Fleming filed BP-9 number 900084-F1, requesting a transfer to home confinement or to a residential reentry center, alleging that she had been verbally and physically attacked by other inmates and staff as a result of this lawsuit. See Attachment E, pages 1-2. On May 19, 2017, FMC Carswell denied her administrative remedy request, noting that she was not yet eligible for review for placement in a residential reentry center or transfer to home confinement and that her allegations of staff misconduct were being reviewed for any necessary action. See Attachment E, page 3. The denial of Plaintiff Fleming's request was consistent with Program Statement 7320.01, <u>Home Confinement</u>, which provides that inmates are not eligible for home confinement until they have 10% or less of their sentence remaining or 6 months remaining, whichever is less. Nonetheless, Plaintiff Fleming was notified that she could file an appeal with the Regional Director if she was not satisfied with the institution's response. *Id.* Plaintiff Fleming did not file any appeals of this administrative remedy response. See Attachment B, page 90 and 92.

19. On June 8, 2017, Plaintiff Fleming filed BP-9 number 904826-F1, alleging that a staff member was provided a copy of court order pertaining to Plaintiff Fleming regarding filing fees, and yet still improperly withheld or withdrew funds from Fleming's account for the fees. See Attachment F, page 7 and Attachment B.  Plaintiff Fleming alleged that she was lied to and discriminated against because the Trust Fund Manager was Muslim and because Plaintiff Fleming believes that Muslims may lie to "infidels." See Attachment F, page 7. As relief, Plaintiff Fleming sought a credit to her account and an immediate referral to the Office of Internal Affairs for investigation into prison staff violating her court order to retaliate against a Jewish inmate. Plaintiff Fleming does not specifically refer to transgender inmates in this Request for Administrative Remedy. *Id.* This request was rejected on June 12, 2017, because Plaintiff Fleming failed to attempt informal resolution and the issue raised in the remedy was not sensitive. See Attachment F, page 6.

20. On June 19, 2017, Plaintiff Fleming filed a BP-10 number 904826-R1 to the South Central Region, alleging discrimination by a Muslim staff member because she is Jewish and because she filed a lawsuit challenging the placement of transgender inmates in female institutions. See Attachment F, page 2. She alleges that the Muslim Trust Fund Supervisor was in violation of a federal court order and was improperly holding or withdrawing funds from her inmate account. *Id.* On July 17, 2017, the South Central Region rejected this Regional Administrative Remedy Appeal on the following grounds: 1) the issue raised was not sensitive; 2) the request was submitted to the wrong level and should have been filed elsewhere; 3) a BP-9 must filed be filed and the inmate must receive the Warden's response before filing an appeal; 4) failure to attempt informal

resolution prior to submission of the administrative remedy; and 5) failure to submit the request on the proper form. See Attachment F, page 1. Plaintiff Fleming has not appealed this rejection or re-filed this administrative remedy. See Attachment B.

21. A review of Plaintiff Flemings' remedy history indicates that at least ten of her BP-9s have been appealed through the full administrative process and were resolved with a final administrative decision. See Attachment B.

22. A review of Plaintiff Flemings' administrative remedy history indicates that Plaintiff Fleming filed one Request for Administrative Remedy in June of 2016. See Attachment B, page 89.

## PLAINTIFF CHARLSA LITTLE

23. Plaintiff Little has not filed any administrative remedy requests during her time in BOP custody.

24. Attached hereto as <u>Attachment G</u> is a true and correct copy of the SENTRY computer generated Administrative Remedy Generalized Retrieval pertaining to Charlsa Little, dated August 1, 2017, containing record of every administrative remedy she has filed during her time in BOP custody until August 1, 2017.

## PLAINTIFF JEANETTE DRIEVER

25. Attached hereto as <u>Attachment H</u> is a true and correct copy of the SENTRY computer generated Administrative Remedy Generalized Retrieval pertaining to Jeanette Driever, dated August 1, 2017, containing record of every administrative remedy she has filed during her BOP confinement.

26. Plaintiff Driever has filed five administrative remedies during her time in BOP custody, some of which pertain to disciplinary infractions and dental care.  Only one BP-9 filed by

340

Plaintiff Driever has been related to any issues raised in the complaint or motion for preliminary injunction in the above-captioned matter, specifically BP-9 number 906745-F1, a true and correct copy of which is attach hereto as <u>Attachment I</u>.

27.  On June 6, 2017, Plaintiff Driever filed request for administrative remedy number 906745-F1 with FMC Carswell alleging that she had been subjected to retaliation as the result of filing this lawsuit.  See Attachment I, page 1. She claimed that an officer conducting a cell search confiscated a pair of silver/gray earrings from her and she received an incident report for possessing an unauthorized item.  *Id*. Plaintiff Driever alleged that other inmates had property confiscated from them on the same day, but did not receive incident reports. *Id*. She claimed she received the incident report in an effort to intimidate her. On July 10, 2107, Plaintiff Driever voluntarily withdrew administrative remedy number 906745-F1. *Id*.  Plaintiff Driever has not filed any additional administrative remedy requests related to the subject matter of the lawsuit. *Id*.

**PLAINTIFF BRENDA RHAMES**

28. Attached hereto as <u>Attachment J</u> is a true and correct copy of the SENTRY computer generated Administrative Remedy Generalized Retrieval pertaining to Brenda Rhames, dated August 1, 2017, containing record of every administrative remedy she has filed during her BOP confinement.

29. Plaintiff Rhames has filed one BP-9 during her time in BOP custody.  That administrative remedy was regarding alleged staff misconduct and was unrelated to the allegations raised in the lawsuit or the motion for preliminary injunction. See Attachment J, pages 2-3.

10

341

## ADDITIONAL ADMINSTRATIVE REMEDY INFORMATION

30. During the period from January 1, 2017, through July 31, 2017, approximately 159 BP-9s were filed at FMC Carswell; approximately 2,589 BP-10s were filed at the South Central Regional Office; and approximately 6,078 BP-11s were filed at the BOP's Central Office.

31. Of the approximately 159 BP-9s filed during the period from January 1, 2017, through July 31, 2017, at FMC Carswell, 1 was partially granted, 3 were granted, 23 were denied, 23 were withdrawn, 29 were closed with a written explanation, 61 were rejected, 8 were voided, and 5 were closed for other reasons, i.e. clerical error or referred for further review or investigation.

32. Attached hereto as <u>Attachment K</u> is a true and correct copy of the SENTRY computer generated Administrative Remedy Generalized Retrieval for FMC Carswell from January 1, 2017, through July 31, 2017, containing the total number of BP-9s at FMC Carswell during this time period.

33. Attached hereto as <u>Attachment L</u> is a true and correct copy of the SENTRY computer generated Administrative Remedy Generalized Retrieval for the South Central Regional Office from January 1, 2017, through July 31, 2017, containing the total number of BP-10s filed at the South Central Regional Office during this time period.

34. Attached hereto as <u>Attachment M</u> is a true and correct copy of the SENTRY computer generated Administrative Remedy Generalized Retrieval for the BOP's Central Office from January 1, 2017, through July 31, 2017, containing the total number of BP-11s filed at the Central Office during this time period.

35. Attached hereto as <u>Attachment N</u> is a true and correct copy of the SENTRY computer generated Administrative Remedy Generalized Retrieval for FMC Carswell from January

11

1, 2017, through July 31, 2017, containing the breakdown of closed BP-9s filed at FMC

Carswell during this time period.

I declare that the foregoing is true and correct to the best of my knowledge, pursuant to

the penalties of perjury at 28 U.S.C. § 1746.

Executed on this ⅞ day of August, 2017.

Patricia Comstock
Executive Assistant
FMC Carswell

12

343

# Attachment A



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:            OGC/LIT
NUMBER:    1330.18
DATE:          January 6, 2014

# Administrative Remedy Program

*/s/*
*Approved*:  Charles E. Samuels, Jr.
Director, Federal Bureau of Prisons

1. **PURPOSE AND SCOPE  §542.10**

**a.  Purpose.  The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. An inmate may not submit a Request or Appeal on behalf of another inmate.**

Inmates seeking a formal review of issues relating to sexual abuse should use the regulations promulgated by the Department of Justice under the Prison Rape Elimination Act, 42 U.S.C. § 15606, et seq.  These procedures are provided in Section 16 of this Program Statement.

**b.  Scope.  This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.**

The president of a recognized inmate organization may submit a request on behalf of that organization regarding an issue that specifically affects that organization.

**c.  Statutorily-mandated Procedures.  There are statutorily-mandated procedures in place for Tort claims (28 CFR 543, subpart C), Inmate Accident Compensation claims (28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D).  If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.**

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

345

2. **PROGRAM OBJECTIVES.** The expected results of this program are:

■ A procedure will be available by which inmates will be able to have any issue related to their incarceration formally reviewed by high-level Bureau officials.
■ Each request, including appeals, will be responded to within the time frames allowed.
■ A record of Inmate Administrative Remedy Requests and Appeals will be maintained.
■ Bureau policies will be more correctly interpreted and applied by staff.

3. **DIRECTIVES AFFECTED**

a. **Directive Rescinded**

P1330.17      Administrative Remedy Program (8/20/2012)

b. **Directives Referenced**

P1320.06      Federal Tort Claims Act (8/1/03)
P4500.08      Trust Fund/Deposit Fund Manual (5/4/12)
P5212.07      Control Unit Programs (2/20/01)
P5214.04      HIV Positive Inmates Who Pose Danger to Other, Procedures for Handling of (2/4/98)
P5264.08      Inmate Telephone Regulations (1/24/08)
P5270.09      Inmate Discipline Program (7/8/11)
P5324.11      Sexually Abusive Behavior Prevention and Intervention Program (12/31/13)
P5890.13      SENTRY - National On-Line Automated Information System (12/14/99)

28 CFR 301 Inmate Accident Compensation
28 CFR 16.10 Fees (for records requested pursuant to the Freedom of Information Act (FOIA))

c. Rules cited in this Program Statement are contained in 28 CFR 542.10 through 542.19; and 28 CFR Part 115 – Prison Rape Elimination Act National Standards

4. **STANDARDS REFERENCED**

■ American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4236 and 3-4271
■ American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-3C-22, and 3-ALDF-3E-11 5.

5. **RESPONSIBILITY §542.11**

a. **The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and shall:**

**(1)  Establish procedures for receiving, recording, reviewing, investigating and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals) submitted by an inmate;**

P1330.18   01/06/2014   Federal Regulations from 28 CFR: this type.   Implementing instructions: this type.   2

346

See Section 13 for further information on remedy processing, including use of SENTRY.

**(2)  Acknowledge receipt of a Request or Appeal by returning a receipt to the inmate;**

The receipt is generated via SENTRY.

**(3)  Conduct an investigation into each Request or Appeal;**

**(4)  Respond to and sign all Requests or Appeals filed at their levels. At the regional level, signatory authority may be delegated to the Deputy Regional Director. At the Central Office level, signatory authority may be delegated to the National Inmate Appeals Administrator. Signatory authority extends to staff designated as acting in the capacities specified in this §542.11, but may not be further delegated without the written approval of the General Counsel.**

§ 542.11 refers to Section 5 of this Program Statement.

For purposes of this Program Statement, the term "institution" includes Community Corrections Centers (CCCs); the term "Warden" includes Camp Superintendents and Community Corrections Managers (CCMs) for Requests filed by CCC inmates; and the term "inmate" includes a former inmate who is entitled to use this program.

(5)  The Warden shall appoint one staff member, ordinarily above the department head level, as the Administrative Remedy Coordinator (Coordinator) and one person to serve as Administrative Remedy Clerk (Clerk).  The Regional Director and the National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

To coordinate the regional office program, each Regional Director shall also appoint an Administrative Remedy Coordinator of at least the Regional Administrator level, ordinarily the Regional Counsel, and an Administrative Remedy Clerk.  The National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

(6)  The Administrative Remedy Coordinator shall monitor the program's operation at the Coordinator's location and shall ensure that appropriate staff (e,g., Clerk, unit staff) have the knowledge needed to operate the procedure.  The Coordinator is responsible for signing any rejection notices and ensuring the accuracy of SENTRY entries; e.g., abstracts, subject codes, status codes, and dates.  The Coordinator also shall serve as the primary point of contact for the Warden or Regional Director in discussions of Administrative Remedies appealed to higher levels.

(7)  The Administrative Remedy Clerk shall be responsible for all clerical processing of Administrative Remedies, for accurately maintaining the SENTRY index, and for generating SENTRY inmate notices.

(8)  The Unit Manager is responsible for ensuring that inmate notices (receipts, extension notices, and receipt disregard notices from institutions, regions and the Central Office) are printed and delivered daily for inmates in their units and for deleting those notices from

SENTRY promptly after delivery to the inmate.  CCMs are responsible for this function for inmates under their supervision.

**b.  Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.**

6.  **RESERVED**

7.  **INFORMAL RESOLUTION §542.13**

**a.  Informal Resolution.  Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy.  Each warden shall establish procedures to allow for the informal resolution of inmate complaints.**

The Warden is responsible for ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff.  These procedures may not operate to limit inmate access to formal filing of a Request.

**b.  Exceptions.  Inmates in CCCs are not required to attempt informal resolution. An informal resolution attempt is not required prior to submission to the regional or Central Office as provided for in §542.14(d) of this part.  An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution.**

For example, the Warden may waive informal resolution for Unit Discipline Committee (UDC) appeals, or when informal resolution is deemed inappropriate due to the issue's sensitivity.

Although not mandatory, inmates may attempt informal resolution of DHO decisions. See the Program Statement **Inmate Discipline Program**.

8.  **INITIAL FILING §542.14**

**a.  Submission.  The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.**

In accord with the settlement in *Washington* v. *Reno*, and for such period of time as this settlement remains in effect, the deadline for completing informal resolution and submitting a formal written Administrative Remedy Request, on the appropriate form (BP-9) (BP-229), for a disputed telephone charge, credit, or telephone service problem for which the inmate requests reimbursement to his/her telephone account, is 120 days from the date of the disputed telephone charge, credit, or telephone service problem.

Administrative Remedy Requests concerning telephone issues that do not involve billing disputes or requests for refunds for telephone service problems (such as Administrative Remedy

Requests concerning telephone privileges, telephone lists, or telephone access) are governed by the 20-day filing deadline.

**b.  Extension.  Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.**

Ordinarily, the inmate should submit written verification from staff for any claimed reason for delay.

If an inmate requests an Administrative Remedy form but has not attempted informal resolution, staff should counsel the inmate that informal resolution is ordinarily required.  If the inmate nevertheless refuses to present a request informally, staff should provide the form for a formal Request.  Upon receipt of the inmate's submission, the Coordinator shall accept the Request if, in the Coordinator's discretion, informal resolution was bypassed for valid reasons, or may reject it if there are no valid reasons for bypassing informal resolution.

**c.  Form**

**(1)  The inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor).**

The following forms are appropriate:

- Request for Administrative Remedy, Form BP-9 (BP-229), is appropriate for filing at the institution.
- Regional Administrative Remedy Appeal, Form BP-10 (BP-230), is appropriate for submitting an appeal to the regional office.
- Central Office Administrative Remedy Appeal, Form BP-11 (BP-231), is appropriate for submitting an appeal to the Central Office.

**(2)  The inmate shall place a single complaint or a reasonable number of closely related issues on the form.  If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue.  For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.**

Placing a single issue or closely related issues on a single form facilitates indexing, and promotes efficient, timely and comprehensive attention to the issues raised.

**(3)  The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" by 11") continuation page.**

**The inmate must provide an additional copy of any continuation page.  The inmate must submit one copy of supporting exhibits.  Exhibits will not be returned with the response.  Because copies of exhibits must be filed for any appeal (see § 542.15 (b) (3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.**

**(4)  The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor).  CCC inmates may mail their Requests to the CCM.**

**d.  Exceptions to Initial Filing at Institution**

**(1)  Sensitive Issues.  If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director.  The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution.  If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted.  Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden.  The Warden shall allow a reasonable extension of time for such a resubmission.**

**(2)  DHO Appeals.  DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.**

See the Program Statement **Inmate Discipline Program**.

**(3)  Control Unit Appeals.  Appeals related to Executive Panel Reviews of Control Unit placement shall be submitted directly to the General Counsel.**

See the Program Statement **Control Unit Programs**.

**(4)  Controlled Housing Status Appeals.  Appeals related to the Regional Director's review of controlled housing status placement may be filed directly with the General Counsel.**

See the Program Statement **Procedures for Handling HIV Positive Inmates Who Pose Danger to Other.**

9.  **APPEALS  § 542.15**

**a.  Submission.  An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional**

**Director within 20 calendar days of the date the Warden signed the response.  An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.  When the inmate demonstrates a valid reason for delay, these time limits may be extended.  Valid reasons for delay include those situations described in §542.14(b) of this part.  Appeal to the General Counsel is the final administrative appeal.**

These deadlines specify the date of the Appeal's receipt in the regional office or the Central Office.  The deadlines have been made deliberately long to allow sufficient mail time. Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt.  Ordinarily, the inmate must submit written verification from institution staff for any reason for delay that cannot be verified through SENTRY.

In many cases, courts require a proper Appeal to the General Counsel before an inmate may pursue the complaint in court.

**b.  Form**

**(1)  Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response.  Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses.  Appeals shall state specifically the reason for appeal.**

**(2)  An inmate may not raise in an Appeal issues not raised in the lower level filings.  An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.**

**(3)  An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" x 11") continuation page.  The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal).  The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses of the Central Office and Regional Offices).**

c.  **Processing**.  The appropriate regional office to process the Appeal is the regional office for the institution where the inmate is confined at the time of mailing the Appeal, regardless of the institution that responded to the institution filing.

10. **ASSISTANCE §542.16**

**a.  An inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal.  An inmate may also obtain assistance from outside sources, such as family members or attorneys.  However, no person may submit a Request or Appeal on the inmate's behalf, and obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff.**

**b.  Wardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English.  Such assistance includes provision of reasonable accommodation in order for an inmate with a disability to prepare and process a Request or an Appeal.**

For example, Wardens must ensure that staff (ordinarily unit staff) provide assistance in the preparation or submission of an Administrative Remedy or an Appeal upon being contacted by such inmates that they are experiencing a problem.

11. **RESUBMISSION §542.17**

**a.  Rejections.  The Coordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or an Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any other requirement of this part.**

**b.  Notice.  When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.**

(1)  **Sensitive Submissions**.  Submissions for inmate claims which are too sensitive to be made known at the institution are not to be returned to the inmate.  Only a rejection notice will be provided to the inmate.  However, other rejected submissions ordinarily will be returned to the inmate with the rejection notice.

(2)  **Defects**.  Defects such as failure to sign a submission, failure to submit the required copies of a Request, Appeal, or attachments, or failure to enclose the required single copy of lower level submissions are examples of correctable defects.

Ordinarily, five calendar days from the date of the notice to the inmate is reasonable for resubmission at the institution level; at least 10 calendar days at the CCM or regional offices; and 15 calendar days at the Central Office.

(3)  **Criteria for Rejection**.  When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise.  Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or

problematic issue, such as medical treatment, sentence computation, or staff misconduct, even though that submission may be somewhat untimely.

**c.  Appeal of Rejections.  When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection, including a rejection on the basis of an exception as described in §542.14 (d), to the next appeal level.  The Coordinator at that level may affirm the rejection, may direct that the submission be accepted at the lower level (either upon the inmate's resubmission or direct return to that lower level), or may accept the submission for filing.  The inmate shall be informed of the decision by delivery of either a receipt or rejection notice.**

12.  **RESPONSE TIME §542.18**

**If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days.  If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing.  If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level.  Staff shall inform the inmate of this extension in writing.  Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.**

The date a Request or an Appeal is received in the Administrative Remedy index is entered into SENTRY as the "Date Rcv", and should be the date it is first received and date-stamped in the Administrative Remedy Clerk's office.  Notice of extension ordinarily is made via SENTRY notice.

13.  **REMEDY PROCESSING**

a.  **Receipt**.  Upon receiving a Request or Appeal, the Administrative Remedy Clerk shall stamp the form with the date received, log it into the SENTRY index as received on that date, and write the "Remedy ID" as assigned by SENTRY on the form.  Once a submission is entered into the system, any subsequent submissions or appeals of that case shall be entered into SENTRY using the same Case Number.  The "Case Number" is the purely numerical part of the "Remedy ID" which precedes the hyphen and "Submission ID."

All submissions received by the Clerk, whether accepted or rejected, shall be entered into SENTRY in accordance with the SENTRY Administrative Remedy Technical Reference Manual.

Sensitive issues, when the inmate claims that his or her safety or well-being would be placed in danger if it became known at the institution that the inmate was pursuing the issue, should be

withheld from logging in until answered and/or should be logged into SENTRY with sufficient vagueness as to subject code and abstract to accommodate the inmate's concerns.

A Request should be submitted and logged in at the institution where the inmate is housed at the time the inmate gives the Request to the counselor or other appropriate staff member. If the event(s) occurred at a previous institution, staff at that previous institution shall provide, promptly upon request, any investigation or other assistance needed by the institution answering the Request. If an inmate is transferred after giving the Request to a staff member, but before that Request is logged in or answered, the institution where the Request was first given to a staff member remains responsible for logging and responding to that Request.

b. **Investigation and Response Preparation**. The Clerk or Coordinator shall assign each filed Request or Appeal for investigation and response preparation. Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision. Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals. Where appropriate; e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

Requests or Appeals shall be investigated thoroughly, and all relevant information developed in the investigation shall ordinarily be supported by written documents or notes of the investigator's findings. Notes should be sufficiently detailed to show the name, title, and location of the information provided, the date the information was provided, and a full description of the information provided. Such documents and notes shall be retained with the case file copy. When deemed necessary in the investigator's discretion, the investigator may request a written statement from another staff member regarding matters raised in the Request or Appeal. Requested staff shall provide such statements promptly. For a disciplinary Appeal, a complete copy of the appealed disciplinary actions record shall be maintained with the Appeal file copy.

c. **Responses**. Responses ordinarily shall be on the form designed for that purpose, and shall state the decision reached and the reasons for the decision. The first sentence or two of a response shall be a brief abstract of the inmate's Request or Appeal, from which the SENTRY abstract should be drawn. This abstract should be complete, but as brief as possible. The remainder of the response should answer completely the Request or Appeal, be accurate and factual, and contain no extraneous information. The response should be written to be released to any inmate and the general public under the Freedom of Information Act (FOIA) and the Privacy Act. Inmate names shall not be used in responses, and staff and other names may not be used unless absolutely essential.

Program Statements, Operations Memoranda, regulations, and statutes shall be referred to in responses whenever applicable, including section numbers on which the response relies.

d. **Response Time Limits**. Responses shall be made as required in Section 12 of this Program Statement.

e. **Index Completion**. When a response is completed, the Clerk shall update SENTRY in accordance with the SENTRY Administrative Remedy Manual and the instructions in

Attachment A.  Particular attention should be paid to updating the status date, code, and reason, and to making any changes to the subject code and abstract indicated by the Coordinator or by the response drafter.  The abstract shall be taken from the response's first paragraph.  Abbreviations may be liberally used, as long as they are easily understood, to allow as complete a description of the issue in the 50 characters allotted.  For consistency, the Administrative Remedy Coordinator shall approve the closing entry, including the subject codes, status code and reason, and abstract, before the closing entry is made by the Clerk.

f.  **Response Distribution**.  For an institution response, one copy of the complete Request and response shall be maintained in the Warden's Administrative Remedy File together with all supporting material.  Three copies shall be returned to the inmate.  An inmate who subsequently appeals to the regional or Central Office shall submit one copy with each appeal.

One copy of a Regional Appeal and response shall be retained at the regional office.  One copy shall be sent to the Warden at the original filing location.  The remaining two copies shall be returned to the inmate; one to submit in case of subsequent appeal to the Central Office, and one to retain.

One copy of a Central Office Appeal and response will be returned to the inmate.  One copy will be retained in the Central Office Administrative Remedy File, one copy will be forwarded to the regional office where the Regional Appeal was answered, and one to the Warden's Administrative Remedy File at the original filing location.

g.  **File Maintenance**.  The Warden's Administrative Remedy File and Administrative Remedy Files at the Regional Offices and Central Office shall be maintained in a manner that assures case files are readily accessible to respond to inquiries from Federal Bureau of Prisons staff, inmates, and the public.  Institutions shall file Regional and Central Office response copies with the inmate's institution submission copy.  Regional offices shall file copies of Central Office responses with the inmate's Regional Appeal file.  Each location shall maintain copies of supporting material and investigation notes with the case file.

When a Regional or Central Office Appeal was not preceded by a lower level filing, the institution and regional copies shall be filed at the institution and region having responsibility for the inmate at the time of response.

To provide information and feedback, Wardens and Regional Directors are encouraged to route response file copies from subsequent appeal levels to the Coordinator and the appropriate department head or person who investigated and drafted the response at their respective levels.

14.  **ACCESS TO INDEXES AND RESPONSES §542.19**

**Inmates and members of the public may request access to Administrative Remedy indexes and responses, for which inmate names and Register Numbers have been removed, as indicated below.  Each institution shall make available its index, and the indexes of its regional office and the Central Office.  Each regional office shall make available its index, the indexes of all institutions in its region, and the index of the Central Office.  The Central Office shall make available its index and the indexes of all institutions and regional offices.  Responses may be requested from the location where they are maintained and must be identified by**

P1330.18   01/06/2014   Federal Regulations from 28 CFR: this type.  Implementing instructions: this type.   11

355

**Remedy ID number as indicated on an index. Copies of indexes or responses may be inspected during regular office hours at the locations indicated above, or may be purchased in accordance with the regular fees established for copies furnished under the Freedom of Information Act (FOIA).**

At present, fees are detailed in 28 CFR § 16.10, which specifies a charge of $.10 per page duplicated and no charge for the first 100 pages. Staff shall forward funds received for purchase of index and response copies to the FOIA/Privacy Act Section, Office of General Counsel, Central Office.

Any location may produce its index or that of another location by making the appropriate entries on a SENTRY retrieval transaction, and specifying the "SAN" (sanitized) output format.

## 15. RECORDS MAINTENANCE AND DISPOSAL

a. **Disposal Authority**. The authority for Administrative Remedy records disposal is the "job number" NC1-129-83-07 provided by the National Archives.

b. **Administrative Remedy Indexes**. SENTRY Administrative Remedy indexes shall be maintained in computer-accessible form for 20 years, then destroyed. Pre-SENTRY indexes shall be maintained at the site of creation for 20 years, then destroyed.

c. **Administrative Remedy Case Files**. Administrative Remedy Case Files shall be destroyed three full years after the year in which the cases were completed (i.e., response completed). For cases submitted since implementation of the SENTRY module (July 1990), at the end of each calendar year (beginning at end of 1993), run SENTRY index retrieval transactions to identify the lowest case number for cases answered (status = cl* and status date in the appropriate range) during the calendar year ended three years previously. Cases below that number must be destroyed. Thus, cases answered in 1990 would be destroyed at the end of 1993; cases answered in 1991 would be destroyed at the end of 1994, etc.

To identify the lowest case number for cases answered during a given year, it may be necessary to check indexes with "Date Received" in the year in question as well as those with "Date Received" in the previous year.

Cases maintained under the pre-SENTRY numbering and filing system should be destroyed according to the following schedule:

**YEAR OF CASE #            DESTROY AT END OF**

## 16. ADMINISTRATIVE REMEDY PROCEDURES UNDER THE PRISON RAPE ELIMINATION ACT (PREA)

Title 42 U.S.C. §15607 (a) required the Attorney General to publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape. Title 42 USC § 15607(b) states that the national standards shall apply immediately to the Federal Bureau of Prisons upon adoption of the final rule. The final rule is published in Title 28 C.F.R. Part 115. This section only addresses administrative remedy procedures in relation to issues of sexual

P1330.18    01/06/2014    Federal Regulations from 28 CFR: this type.    Implementing instructions: this type.        12

356

abuse, and shall not constitute the sole response of the agency to allegations of sexual abuse. Appropriate steps to address the safety and security of inmates shall be made in accordance with the other provisions of the PREA regulations, and the Program Statement **Sexually Abusive Behavior Prevention and Intervention Program**.

### §115.52  Exhaustion of administrative remedies.

**(a)  An agency shall be exempt from this standard if it does not have administrative procedures to address inmate grievances regarding sexual abuse.**

The Federal Bureau of Prisons has an administrative remedy system, and therefore section 115.52 (a) does not apply.  The following sections, 115.52 (b) through 115.52 (g), apply to inmates seeking a formal review of issues relating to sexual abuse.  For any issue not specified in sections 115.52 (b) through 115.52 (g) below, the administrative remedy system outlined in Sections 1 through 15 of this Program Statement applies.

**(b)(1)  The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse.**

"Sexual abuse" is defined for the purposes of this section in 28 C.F.R. § 115.6, as referenced in the Bureau's policy on Sexually Abusive Behavior Prevention and Intervention Program.

Administrative remedies regarding allegations of sexual abuse may be filed at any time.  For all other issues, the 20 calendar day period specified in Section 8 of this Program Statement shall be followed.  Accordingly, administrative remedies regarding an allegation of sexual abuse shall not be rejected as untimely under Section 11 of this Program Statement, above.

Once filed, the inmate should follow the time requirements for appeal, as stated in Section 9 of this Program Statement, above.

**(2)  The agency may apply otherwise-applicable time limits on any portion of a grievance that does not allege an incident of sexual abuse.**

If the inmate includes on a single form multiple unrelated issues, the portion of the administrative remedy regarding allegations of sexual abuse should be accepted and processed. The inmate shall be advised to use a separate form for each unrelated issue.

**(3)  The agency shall not require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse.**

Inmates are not required to attempt informal resolution under Section 7 of this Program Statement, above, regarding allegations of sexual abuse.

**(4)  Nothing in this section shall restrict the agency's ability to defend against an inmate lawsuit on the ground that the applicable statute of limitations has expired.**

**(c)  The agency shall ensure that**

**(1)  an inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint, and**

**(2)  such grievance is not referred to a staff member who is the subject of the complaint.**

Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision.  Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals.  Where appropriate, e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

**(d)(1)  The agency shall issue a final agency decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance.**

**(2)  Computation of the 90-day time period shall not include time consumed by inmates during the course of an administrative appeal.**

**(3)  The agency may claim an extension of time to respond, of up to 70 days, if the normal time period for response is insufficient to make an appropriate decision. The agency shall notify the inmate in writing of any such extension and provide a date by which a decision will be made.**

**(4)  At any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, including any properly-noticed extension, the inmate may consider the absence of a response to be a denial at that level.**

Time frames in this section are consistent with Section 12 of this Program Statement, above.

**(e)(1)  Third parties, including fellow inmates, staff members, family members, attorneys, and outside advocates, shall be permitted to assist inmates in filing requests for administrative remedies relating to allegations of sexual abuse, and shall also be permitted to file such requests on behalf of inmates.**

**(2)  If a third party files such a request on behalf of an inmate, the facility may require as a condition of processing the request that the alleged victim agree to have the request filed on his or her behalf, and may also require the alleged victim to personally pursue any subsequent steps in the administrative remedy process.**

**(3)  If the inmate declines to have the request processed on his or her behalf, the agency shall document the inmate's decision.**

This section is applicable only to allegations of sexual abuse; inmates must personally file administrative remedies relating to other issues.

The inmate's approval of the remedy filed on his or her behalf shall be documented, and include the inmate's signature. An inmate's decision to decline to have the remedy processed on his or her behalf should also be documented, and include the inmate's signature. The documentation should be retained in the agency Administrative Remedy File at the appropriate level and on Sentry in accordance with Section 13 of this Program Statement.

Responses to third party remedies should be provided to the inmate who is the subject of the remedy.

An inmate is required to personally file any subsequent appeal. However, the inmate may receive assistance in preparing the appeal in accordance with Section 10 of this Program Statement, above.

**(f)(1) The agency shall establish procedures for the filing of an emergency grievance where an inmate is subject to a substantial risk of imminent sexual abuse.**

This section applies when an administrative remedy alleges a substantial risk of imminent sexual abuse. If a remedy meets both of these criteria, the remedy will receive expedited processing, as described below.

Section 12 of this Program Statement provides for an "emergency" administrative remedy as required by section 115.52(f). An expedited BP-9 (BP-229) response shall be provided if a remedy is determined to be of an emergency nature which threatens the inmate's immediate health or welfare. *See* 28 C.F.R. § 542.18.

The inmate shall clearly mark "Emergency" on the BP-9 (BP-229), and explain, in writing, the reason for filing as an emergency administrative remedy under this section.

If an inmate files an emergency administrative remedy with the Warden, the local Administrative Remedy Coordinator shall make a determination as to whether the remedy alleges a substantial risk of imminent sexual abuse. If the local Administrative Remedy Coordinator agrees that the administrative remedy meets the criteria for an emergency administrative remedy, the request shall be accepted, and receive expedited processing as stated below.

If the remedy is rejected for failing to meet the criteria of an emergency grievance under this section, a rejection notice will be provided to the inmate, and the remedy will be processed in accordance with the usual time frames indicated above.

**(2) After receiving an emergency grievance alleging an inmate is subject to a substantial risk of imminent sexual abuse, the agency shall immediately forward the grievance (or any portion thereof that alleges the substantial risk of imminent sexual abuse) to a level of review at which immediate corrective action may be taken, shall provide an initial response within 48 hours, and shall issue a final agency decision within five calendar days. The initial response and final agency decision shall document the agency's determination whether the inmate is in**

**substantial risk of imminent sexual abuse and the action taken in response to the emergency grievance.**

If an inmate files the emergency grievance with the institution under Section 12 of this Program Statement, above, alleging a substantial risk of imminent sexual abuse, an expedited BP-9 (BP-229) response shall be provided within 48 hours.  Best efforts to provide BP-10 (BP-230) and BP-11 (BP-231) responses within five calendar days should also be made in accordance with the provisions on exhaustion referenced above.  If the inmate does not receive a response within the time allotted for reply, the inmate may consider the absence of a response to be a denial at that level.

Inmates may also file "sensitive" administrative remedies under Section 8 of this Program Statement, above, regarding allegations of sexual abuse.  If an inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the remedy became known at the institution, the inmate may submit the remedy directly to the appropriate Regional Director.  *See* 28 C.F.R. § 542.14 (d) (1).  "Sensitive" grievances should be processed in accordance with Section 8 and Section 11 of this Program Statement, and the expedited response times specified in this section do not apply.

**(g)  The agency may discipline an inmate for filing a grievance related to alleged sexual abuse only where the agency demonstrates that the inmate filed the grievance in bad faith.**

The maintenance of an effective sexual abuse prevention policy, and general secure and orderly running of an institution, requires that inmates be held responsible for manipulative behavior and false allegations.  Allegations of false reports will be considered by staff in accordance with the procedures and standards of the Inmate Discipline Program policy.

## 17.  INSTITUTION SUPPLEMENT

Each Warden shall forward a copy of any Institution Supplement developed to implement this Program Statement to the Regional Administrative Remedy Coordinator and to the National Inmate Appeals Administrator in the Central Office.

*Records Retention Requirements*

Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

# Attachment B

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 364 of 518   PageID 1294

```
         FUNCTION: L-P SCOPE: REG   EQ 20446-009      OUTPUT FORMAT: FULL
      ------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
EXTENDED: _ REMEDY LEVEL: _ _           RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ _____      _____      _____      _____      _____      _____
TRACK:  DEPT: _____ _____ _____ _____ _____ _____
       PERSON: _____      _____      _____      _____      _____      _____
         TYPE: _____      _____      _____      _____      _____      _____
EVNT FACL: EQ _____      _____      _____      _____      _____      _____
RCV FACL.: EQ _____      _____      _____      _____      _____      _____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ _____      _____      _____      _____      _____      _____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 589271-F1      SUB1: 15AM SUB2:      DATE RCV:   05-03-2010
UNT  RCV..:UNIT 1 N      QTR RCV.: H01-107U     FACL RCV: CRW
UNT  ORG..:UNIT 1 N      QTR ORG.: H01-107U     FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW 1               RESP DUE:  SUN  05-23-2010
ABSTRACT.: CHANGE FRP PAYMENT AS PER COURT ORDER
STATUS DT: 05-21-2010   STATUS CODE: CLO STATUS REASON: WDN
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 05-10-2010
REMARKS..:


              CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE          DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
MON 05-17-2010    UNT MGT      BY    05-10-2010    INV          05-21-2010




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 611670-F1      SUB1: 20DM SUB2:      DATE RCV:   10-20-2010
UNT  RCV..:UNIT 1 N      QTR RCV.: H02-012U     FACL RCV: CRW
UNT  ORG..:UNIT 1 N      QTR ORG.: H02-012U     FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                     RESP DUE:
ABSTRACT.: APPEALLING DHO SUBMITTED ON BP-9
STATUS DT: 10-20-2010   STATUS CODE: REJ STATUS REASON: FRM DHO OTH
INCRPTNO.:              RCT:  EXT:  DATE ENTD: 10-20-2010
REMARKS..: SUBMIT DIRECTLY TO REGION




G0002      MORE PAGES TO FOLLOW . . .

363

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 366 of 518 PageID 1296

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 615763-R2      SUB1: 20BM SUB2: 20CM DATE RCV:   11-02-2010
UNT  RCV..:UNIT 1 N     QTR RCV.: H01-157U      FACL RCV: CRW
UNT  ORG..:UNIT 1 N     QTR ORG.: H01-157U      FACL ORG: CRW
EVT FACL.: CRW     ACC LEV: SCR  2                   RESP DUE:  SAT  01-01-2011
ABSTRACT.: DHO HRNG 09-24-10, CODE 224,
STATUS DT: 01-07-2011  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.: 2043354   RCT: P EXT: P DATE ENTD: 11-18-2010
REMARKS..:




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 615763-R1      SUB1: 20BM SUB2: 20CM DATE RCV:   11-03-2010
UNT  RCV..:UNIT 1 N     QTR RCV.: H01-157U      FACL RCV: CRW
UNT  ORG..:UNIT 1 N     QTR ORG.: H01-157U      FACL ORG: CRW
EVT FACL.: CRW     ACC LEV: SCR  2                   RESP DUE:
ABSTRACT.: DHO HRNG 09-24-10, CODE 224, 2043354
STATUS DT: 11-03-2010  STATUS CODE: VOD STATUS REASON:
INCRPTNO.:          RCT:   EXT:  DATE ENTD: 11-18-2010
REMARKS..: KEYED WITH INCORR RECEIPT DATE
```

G0002      MORE PAGES TO FOLLOW . . .

364

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 727993-R1      SUB1: 33HS SUB2:      DATE RCV:   03-14-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-021UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: ALG NOT RECEIVING GRIEVANCE FORMS IN SHU
STATUS DT: 03-14-2013  STATUS CODE: REJ STATUS REASON: INF INS FRM OTH
INCRPTNO.:             RCT:    EXT:   DATE ENTD: 03-28-2013
REMARKS..: INSTITUTION HAS BEEN NOTIFIED ABOUT YOUR ALLEGATIONS
           OF GRIEVANCE FORMS IN SHU.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 727993-R2      SUB1: 33HS SUB2:      DATE RCV:   03-18-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-031UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: ALG NOT RECEIVING GRIEVANCE FORMS IN SHU
STATUS DT: 03-18-2013  STATUS CODE: REJ STATUS REASON: INF INS FRM OTH
INCRPTNO.:             RCT:    EXT:   DATE ENTD: 03-29-2013
REMARKS..: INSTITUTION HAS BEEN NOTIFIED ABOUT YOUR ALLEGATIONS
           OF GRIEVANCE FORMS IN SHU.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 368 of 518  PageID 1298

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 729781-R1      SUB1: 34AM SUB2:        DATE RCV:   03-27-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-031UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: ALLEGES STAFF MISCONDUCT - DISCRIMINATION
STATUS DT: 03-27-2013  STATUS CODE: REJ STATUS REASON: FRM INS RSA
INCRPTNO.:            RCT:   EXT:   DATE ENTD: 04-10-2013
REMARKS..: YOU MUST FIRST FILE AT THE INSTITUTION LEVEL.



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 727993-R3      SUB1: 33HS SUB2:        DATE RCV:   03-27-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: ALG NOT RECEIVING GRIEVANCE FORMS IN SHU
STATUS DT: 03-27-2013  STATUS CODE: REJ STATUS REASON: INF INS FRM
INCRPTNO.:            RCT:   EXT:   DATE ENTD: 04-10-2013
REMARKS..:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

366

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 729785-R1      SUB1: 34AS SUB2:        DATE RCV:   03-27-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-031UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-031UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: ALLEGES MISCONDUCT BY STAFF
STATUS DT: 03-27-2013  STATUS CODE: REJ STATUS REASON: FRM ONE INF INS RSA
INCRPTNO.:             RCT:  EXT:  DATE ENTD: 04-10-2013
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 731439-R1      SUB1: 34AM SUB2:        DATE RCV:   04-12-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-041UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-041UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: ALG STAF RETAL FOR FILING GRIEVANCES AGAINST MEX STF
STATUS DT: 04-12-2013  STATUS CODE: REJ STATUS REASON: INF INS FRM
INCRPTNO.:             RCT:  EXT:  DATE ENTD: 04-23-2013
REMARKS..:


G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 370 of 518 PageID 1300

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 731441-R1      SUB1: 25CM SUB2:      DATE RCV:    04-12-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-041UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-041UDS    FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                        RESP DUE:
ABSTRACT.: TOILET IN CELL DOES NOT WORK
STATUS DT: 04-12-2013  STATUS CODE: REJ STATUS REASON: INF INS FRM
INCRPTNO.:             RCT:  EXT:  DATE ENTD: 04-23-2013
REMARKS..:




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 732031-R1      SUB1: 16GM SUB2:      DATE RCV:    04-16-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-051UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-051UDS    FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                        RESP DUE:
ABSTRACT.: ON RESTRICTION TO E-MAIL, COMM, PHONE - NO SANCTIONS
STATUS DT: 04-16-2013  STATUS CODE: REJ STATUS REASON: FRM INF INS
INCRPTNO.:             RCT:  EXT:  DATE ENTD: 04-26-2013
REMARKS..:
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

368

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 732032-R1       SUB1: 34AM SUB2:     DATE RCV:   04-16-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-051UDS     FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-051UDS     FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: ALLEGES STAFF MISCONDUCT TO ANOTHER INMATE
STATUS DT: 04-16-2013  STATUS CODE: REJ STATUS REASON: FRM INF INS
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 04-26-2013
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 733242-R1       SUB1: 33HS SUB2: 34AS DATE RCV:   04-24-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-051UDS     FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-051UDS     FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: ALG NOT RECVG ADMIN REM FORMS IN SHU; REQ XFR
STATUS DT: 04-24-2013  STATUS CODE: REJ STATUS REASON: FRM INF INS OTH
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 05-06-2013
REMARKS..: RECORDS INDICATE YOU HAVE FILED NUMEROUS REMEDIES
           SINCE YOUR TRANSFER TO CRW. NONETHELESS, THE
           INSTITUTION HAS BEEN CONTACTED RE YOUR CONCERNS.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

369

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 372 of 518 PageID 1302

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 733694-R1      SUB1: 16BM SUB2:      DATE RCV:   04-25-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-051UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-051UDS   FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                          RESP DUE:
ABSTRACT.: ALG DAUGHTER IS NOT AN I/M, MAIL REJECTED
STATUS DT: 04-25-2013  STATUS CODE: REJ STATUS REASON: INF INS
INCRPTNO.:            RCT:   EXT:  DATE ENTD: 05-09-2013
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 733695-R1      SUB1: 33HM SUB2:      DATE RCV:   04-25-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-051UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-051UDS   FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                          RESP DUE:
ABSTRACT.: ALG BP-9 SENT BACK IN ERROR-CAUSED HARM
STATUS DT: 04-25-2013  STATUS CODE: REJ STATUS REASON: INF INS OTH
INCRPTNO.:            RCT:   EXT:  DATE ENTD: 05-09-2013
REMARKS..: ALL REJECTED REMEDIES NOT MARKED SPECIFICALLY AS
           "SENSITIVE" WILL BE RETURNED TO INMATE.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

370

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 733696-R1     SUB1: 33HM SUB2:      DATE RCV:   04-25-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-051UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-051UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                     RESP DUE:
ABSTRACT.: ALG COPOUTS/BP-9S NOT BEING RESPONDED TO
STATUS DT: 04-25-2013  STATUS CODE: REJ STATUS REASON: INF INS
INCRPTNO.:          RCT:  EXT:  DATE ENTD: 05-09-2013
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732568-F1     SUB1: 33GM SUB2: 22AM DATE RCV:   04-29-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-021UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:  CRW  1             RESP DUE:  SAT  06-08-2013
ABSTRACT.: WANTS TO BE CELLED ALONE/HAS LOTS OF LEGAL WORK
STATUS DT: 06-06-2013  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 04-30-2013
REMARKS..:


                 CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE            DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
TUE 05-07-2013     CORR SVC     AG    04-30-2013    INV         06-06-2013
```

G0002      MORE PAGES TO FOLLOW . . .

371

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 374 of 518 PageID 1304

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732569-F1      SUB1: 22ZM SUB2:        DATE RCV:   04-29-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-021UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1            RESP DUE:  SAT 06-08-2013
ABSTRACT.: WANTS TO BE ABLE TO BUT TOENAIL CLIPPERS ON AD STAT
STATUS DT: 05-24-2013  STATUS CODE: CLO STATUS REASON: WDN
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 04-30-2013
REMARKS..:


               CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO    DATE ASSN    TRK TYPE   DATE RETURNED
TUE 05-07-2013     CORR PGM     SS    04-30-2013    INV        05-24-2013




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732571-F1      SUB1: 22CM SUB2:        DATE RCV:   04-29-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-021UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1 SCR 1       RESP DUE:  SAT 06-08-2013
ABSTRACT.: SHOWER CURTAINS NEED REPAIRED IN SHU
STATUS DT: 06-06-2013  STATUS CODE: CLG STATUS REASON: GRT
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 04-30-2013
REMARKS..:


               CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO    DATE ASSN    TRK TYPE   DATE RETURNED
TUE 05-07-2013     CORR SVC     AG    04-30-2013    INV        06-06-2013
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 375 of 518 PageID 1305

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732574-F1      SUB1: 22CM SUB2:      DATE RCV:   04-29-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-021UDS     FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS     FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1 SCR  1            RESP DUE:  SAT  06-08-2013
ABSTRACT.: WANTS PHONE CALLS ONCE A WEEK
STATUS DT: 06-06-2013  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:                  RCT: P EXT: P DATE ENTD: 04-30-2013
REMARKS..:


               CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO    DATE ASSN   TRK TYPE   DATE RETURNED
TUE 05-07-2013     CORR SVC     AG    04-30-2013    INV        06-06-2013




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732582-F1      SUB1: 33HM SUB2:      DATE RCV:   04-29-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-021UDS     FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS     FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                          RESP DUE:
ABSTRACT.: SHOULD NOT HAVE TO WAIT FOR FORMS
STATUS DT: 04-30-2013  STATUS CODE: REJ STATUS REASON: CON INF
INCRPTNO.:             RCT:   EXT:  DATE ENTD: 04-30-2013
REMARKS..: RECEIVED IN INSTITUTION MAIL




G0002       MORE PAGES TO FOLLOW . . .
```

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732583-F1      SUB1: 33GM SUB2:      DATE RCV:   04-29-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-021UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: LAW LIBRARY COLD/NEE ACCESS TO COMPUTER FOR LEGAL
STATUS DT: 04-30-2013  STATUS CODE: REJ STATUS REASON: CON INF RSF
INCRPTNO.:          RCT:    EXT:  DATE ENTD: 04-30-2013
REMARKS..: RECEIVED IN INSTITUTION MAIL


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732591-F1      SUB1: 25EM SUB2:      DATE RCV:   04-29-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-021UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: DENIED COMMISSARY ITEMS IN SHU/CHANGE IN SCHEDULE
STATUS DT: 04-30-2013  STATUS CODE: REJ STATUS REASON: CON INF RSF
INCRPTNO.:          RCT:    EXT:  DATE ENTD: 04-30-2013
REMARKS..:

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 377 of 518   PageID 1307

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732593-F1      SUB1: 25DM SUB2:      DATE RCV:   04-30-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-021UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                          RESP DUE:
ABSTRACT.: DIDNT GET A CONFISCATION FOR PROPERTY
STATUS DT: 04-30-2013  STATUS CODE: REJ STATUS REASON: CON INF RSF
INCRPTNO.:            RCT:    EXT:  DATE ENTD: 04-30-2013
REMARKS..: RECEIVED IN INSTITUTION MAIL


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732595-F1      SUB1: 22AM SUB2:      DATE RCV:   04-29-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-021UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                          RESP DUE:
ABSTRACT.: WHY STILL IN SHU
STATUS DT: 04-30-2013  STATUS CODE: REJ STATUS REASON: CON INF RSF
INCRPTNO.:            RCT:    EXT:  DATE ENTD: 04-30-2013
REMARKS..: RECEIVED IN INSTITUTION MAIL


G0002      MORE PAGES TO FOLLOW . . .


375

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 378 of 518 PageID 1308

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2          QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732596-F1      SUB1: 33FM SUB2:       DATE RCV:   04-29-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-021UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: DENIED TO SEAL LEGAL MAIL
STATUS DT: 04-30-2013  STATUS CODE: REJ STATUS REASON: CON INF RSF
INCRPTNO.:          RCT:    EXT:   DATE ENTD: 04-30-2013
REMARKS..: RECEIVED IN INSTITUTION MAIL



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2          QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732599-F1      SUB1: 34CM SUB2:       DATE RCV:   04-29-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-021UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: CLAIMS RACIAL DISCRIMINATION
STATUS DT: 04-30-2013  STATUS CODE: REJ STATUS REASON: CON INF RSF
INCRPTNO.:          RCT:    EXT:   DATE ENTD: 04-30-2013
REMARKS..: RECEIVED IN INSTITUTION MAIL




G0002      MORE PAGES TO FOLLOW . . .
```

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 379 of 518 PageID 1309

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 734189-R1       SUB1: 34AM SUB2: 34BM DATE RCV:    05-02-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-021UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: ALLEGING MULTIPLE ISSUES OF STAFF MISCONDUCT
STATUS DT: 05-02-2013  STATUS CODE: REJ STATUS REASON: MLT INF INS
INCRPTNO.:           RCT:  EXT:  DATE ENTD: 05-13-2013
REMARKS..:
```

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 733880-F1       SUB1: 22ZM SUB2: 34AM DATE RCV:    05-07-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-021UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: TOILET BROKEN IN SHU/STAFF RETALIATING
STATUS DT: 05-10-2013  STATUS CODE: REJ STATUS REASON: INF CON UTF
INCRPTNO.:           RCT:  EXT:  DATE ENTD: 05-10-2013
REMARKS..: INCIDENT HAPPENED ON 4-8-13;  BP-9 DATED 5-1-13
```

G0002      MORE PAGES TO FOLLOW . . .

377

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 380 of 518 PageID 1310


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 735792-R1       SUB1: 33HM SUB2: 34AM DATE RCV:    05-09-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-021UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                        RESP DUE:
ABSTRACT.: ALG STAF REF PROCESS REMEDIES
STATUS DT: 05-09-2013  STATUS CODE: REJ STATUS REASON: INF INS ONE OTH
INCRPTNO.:           RCT:    EXT:   DATE ENTD: 05-24-2013
REMARKS..: AS STATED BY INSTITUTION, YOU MUST FOLLOW THE ADMIN
             REMEDY PROCEDURES BY BEGINNING WITH THE INFORMAL.



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 731439-R2       SUB1: 34AM SUB2:       DATE RCV:    05-17-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-031UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-041UDS   FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                        RESP DUE:
ABSTRACT.: ALG STAF RETAL FOR FILING GRIEVANCES AGAINST MEX STF
STATUS DT: 05-17-2013  STATUS CODE: REJ STATUS REASON: INF INS FRM OTH
INCRPTNO.:           RCT:    EXT:   DATE ENTD: 06-17-2013
REMARKS..: FOLLOW INSTRUCTIONS GIVEN TO YOU PREVIOUSLY.


G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 381 of 518 PageID 1311

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 733880-R1      SUB1: 22ZM SUB2: 34AM DATE RCV:   05-17-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW      ACC LEV:                       RESP DUE:
ABSTRACT.: TOILET BROKEN IN SHU/STAFF RETALIATING
STATUS DT: 05-17-2013  STATUS CODE: REJ STATUS REASON: INF CON UTF OTH
INCRPTNO.:              RCT:    EXT:  DATE ENTD: 06-17-2013
REMARKS..: AS STATED BY INSTITUTION, YOUR BP-9 IS UNTIMELY.
           INCIDENT HAPPENED ON 4-8-13;  BP-9 DATED 5-1-13


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 732032-R2      SUB1: 34AM SUB2:       DATE RCV:   05-17-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-051UDS    FACL ORG: CRW
EVT FACL.: CRW      ACC LEV:                       RESP DUE:
ABSTRACT.: ALLEGES STAFF MISCONDUCT TO ANOTHER INMATE
STATUS DT: 05-17-2013  STATUS CODE: REJ STATUS REASON: FRM INF INS OTH
INCRPTNO.:              RCT:    EXT:  DATE ENTD: 06-17-2013
REMARKS..: YOU MAY NOT FILE ADMIN REMEDIES ON BEHALF OF ANOTHER
           INMATE.


G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 382 of 518   PageID 1312

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2               QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 738458-R1       SUB1: 34AM SUB2:       DATE RCV:   05-17-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-031UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: ALG ADMIN REMEDIES NOT BEING TIMELY FILED BY STAFF
STATUS DT: 05-17-2013  STATUS CODE: REJ STATUS REASON: INF INS
INCRPTNO.:              RCT:   EXT:   DATE ENTD: 06-17-2013
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2               QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732596-F2       SUB1: 33FM SUB2:       DATE RCV:   05-20-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: DENIED TO SEAL LEGAL MAIL
STATUS DT: 05-21-2013  STATUS CODE: REJ STATUS REASON: CON INF
INCRPTNO.:              RCT:   EXT:   DATE ENTD: 05-21-2013
REMARKS..: STILL NO INFORMAL


G0002       MORE PAGES TO FOLLOW . . .

380

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732591-F2       SUB1: 25EM SUB2:       DATE RCV:   05-20-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                          RESP DUE:
ABSTRACT.: DENIED COMMISSARY ITEMS IN SHU/CHANGE IN SCHEDULE
STATUS DT: 05-21-2013  STATUS CODE: REJ STATUS REASON: CON INF
INCRPTNO.:           RCT:    EXT:  DATE ENTD: 05-21-2013
REMARKS..: STILL NO INFORMAL AND PAST 5 DAYS


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 732595-F2       SUB1: 22AM SUB2:       DATE RCV:   05-20-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                          RESP DUE:
ABSTRACT.: WHY STILL IN SHU
STATUS DT: 05-21-2013  STATUS CODE: REJ STATUS REASON: CON INF
INCRPTNO.:           RCT:    EXT:  DATE ENTD: 05-21-2013
REMARKS..: STILL NO INFORMAL AND PAST 5 DAYS


G0002      MORE PAGES TO FOLLOW . . .

381

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 384 of 518   PageID 1314

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 735217-F1      SUB1: 34AM SUB2: 10ZM DATE RCV:    05-21-2013
UNT  RCV..:UNIT 2         QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2         QTR ORG.: Z01-031UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                            RESP DUE:
ABSTRACT.: WANTS TANSFER IN TEXAS/SIS THREATENING SHU TIME
STATUS DT: 05-21-2013  STATUS CODE: REJ STATUS REASON: OTH
INCRPTNO.:            RCT:    EXT:   DATE ENTD: 05-21-2013
REMARKS..: THE 8.5 REQUEST A TRANSFER TO A TEXAS FACILITY
           THE BP-9 STATES SIS IS USING SHU TIME AS PUNISHMENT
           THEY HAVE TO BE THE SAME REQUEST


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 735219-F1      SUB1: 33HM SUB2:        DATE RCV:    05-21-2013
UNT  RCV..:UNIT 2         QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2         QTR ORG.: Z01-031UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                            RESP DUE:
ABSTRACT.: CLAIMS NOT GETTING RESPONSES
STATUS DT: 05-21-2013  STATUS CODE: REJ STATUS REASON: UTF
INCRPTNO.:            RCT:    EXT:   DATE ENTD: 05-21-2013
REMARKS..: BP-9 STATES MARCH 2010-MARCH 2013 WAS DENIED ACCESS
           TO THE GREVANCE PROCESS.  BP-9 DATES MAY 17, 2013.
```

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 385 of 518 PageID 1315

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 735227-F1       SUB1: 22AM SUB2: 34AM DATE RCV:   05-21-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-031UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-031UDS   FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                          RESP DUE:
ABSTRACT.: CLAIMS RETALIATION FROM SIS(INVESTIGATE)/RELEASE SHU
STATUS DT: 05-21-2013  STATUS CODE: REJ STATUS REASON: MLT OTH
INCRPTNO.:           RCT:    EXT:  DATE ENTD: 05-21-2013
REMARKS..: 8.5 WANTS RELEASE FROM SHU, TRANSFER TO TEXAS FACILI
           FACILITY, SIS INVESTIGATED.  BP-9 STATES IN SHU FOR
           NO REASON.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 735231-F1       SUB1: 33AM SUB2: 34AM DATE RCV:   05-21-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-031UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-031UDS   FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                          RESP DUE:
ABSTRACT.: ADDRESS TO CO/COUNSELOR DENIED FULL GRIEVANCE PROCES
STATUS DT: 05-21-2013  STATUS CODE: REJ STATUS REASON: MLT OTH
INCRPTNO.:           RCT:    EXT:  DATE ENTD: 05-21-2013
REMARKS..: 8.5 WANTS ADDRESS TO CENTRAL OFFICE COUNSELOR WON'T
           GIVE IT TO HER BP-9 STATES WANTS LAW LIBRARY ACCESS
           THEY ARE NOT THE SAME ISSUE.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 386 of 518   PageID 1316

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 735233-F1      SUB1: 22ZM SUB2:       DATE RCV:   05-21-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-031UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1                RESP DUE: SUN  06-30-2013
ABSTRACT.: SUPPOSE TO BE PROTECTIVE CUSTODY/ASSAULTIVE ROOMMATE
STATUS DT: 07-09-2013  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 05-21-2013
REMARKS..:


                 CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
SAT 05-25-2013     CORR SVC     AG    05-21-2013     INV        07-08-2013




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 735235-F1      SUB1: 22CM SUB2:       DATE RCV:   05-21-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:           QTR ORG.:               FACL ORG:
EVT FACL.: CRW    ACC LEV:                       RESP DUE:
ABSTRACT.: NOT GETTING ENOUGH HYGIENE SUPPLIES IN SHU
STATUS DT: 05-21-2013  STATUS CODE: VOD STATUS REASON:
INCRPTNO.:              RCT:    EXT:   DATE ENTD: 05-21-2013
REMARKS..: WRONG INMATE




G0002       MORE PAGES TO FOLLOW . . .


                                                                      384

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 387 of 518 PageID 1317

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 735240-F1       SUB1: 33HM SUB2:        DATE RCV:   05-21-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-031UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1                 RESP DUE:  MON  06-10-2013
ABSTRACT.: WANTS BP-9 POLICY FOLLOWED TIMELY
STATUS DT: 05-29-2013   STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 05-21-2013
REMARKS..:


                  CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO   DATE ASSN    TRK TYPE   DATE RETURNED
TUE 05-28-2013     ADMIN REM    MD   05-21-2013    INV        05-29-2013




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 735242-F1       SUB1: 33HM SUB2:        DATE RCV:   05-21-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-031UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1                 RESP DUE:  MON  06-10-2013
ABSTRACT.: 8.5 NOT NECESSARY/ ACCEPT BP-9 WITHOUT IT
STATUS DT: 05-29-2013   STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 05-21-2013
REMARKS..:


                  CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO   DATE ASSN    TRK TYPE   DATE RETURNED
TUE 05-28-2013     ADMIN REM    MD   05-21-2013    INV        05-29-2013
```

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 388 of 518  PageID 1318

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L  RCV OFC: CRW
REMEDY ID: 735244-F1      SUB1: 22AM SUB2:      DATE RCV:   05-21-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-031UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-031UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1              RESP DUE:  MON  06-10-2013
ABSTRACT.: RELEASE FROM SHU OR TRANSFER TO INSTITUTION IN TX
STATUS DT: 05-24-2013  STATUS CODE: CLO STATUS REASON: WDN
INCRPTNO.:               RCT: P EXT:   DATE ENTD: 05-21-2013
REMARKS..:


              CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO    DATE ASSN   TRK TYPE    DATE RETURNED
TUE 05-28-2013     CORR SVC     AG    05-21-2013    INV       05-24-2013




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L  RCV OFC: CRW
REMEDY ID: 732599-F2      SUB1: 34CM SUB2:      DATE RCV:   05-21-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-031UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-021UDS   FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                     RESP DUE:
ABSTRACT.: CLAIMS RACIAL DISCRIMINATION
STATUS DT: 05-21-2013  STATUS CODE: REJ STATUS REASON: CON INF
INCRPTNO.:               RCT:   EXT:   DATE ENTD: 05-21-2013
REMARKS..: STILL NO INFORMAL AND PAST 5 DAYS




G0002       MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 389 of 518   PageID 1319

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 740054-R1      SUB1: 34AM SUB2:        DATE RCV:   05-21-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-031UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-031UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: STAF RETAL, NOT ALLOW COMM FOR STAMPS/LEGAL ENV
STATUS DT: 05-21-2013  STATUS CODE: REJ STATUS REASON: SEN FRM
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 06-27-2013
REMARKS..:



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 733695-A1      SUB1: 33HM SUB2:        DATE RCV:   05-28-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-041UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-051UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: ALG BP-9 SENT BACK IN ERROR-CAUSED HARM
STATUS DT: 06-05-2013  STATUS CODE: REJ STATUS REASON: WRL INF
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 06-05-2013
REMARKS..: CONCUR WITH THE REGIONS RATIONALE FOR REJECTION.
           BEGIN YOUR APPEAL OF THIS GRIEVANCE AT THE
           INSTITUTIONAL LEVEL.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

387

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 733694-A1       SUB1: 16BM SUB2:       DATE RCV:   05-28-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-041UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-051UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: ALG DAUGHTER IS NOT AN I/M, MAIL REJECTED
STATUS DT: 06-05-2013  STATUS CODE: REJ STATUS REASON: INF INS
INCRPTNO.:            RCT:   EXT:   DATE ENTD: 06-05-2013
REMARKS..: CONCUR WITH REGIONS RATIONALE FOR REJECTION. BEGIN
           YOUR APPEAL OF THIS GRIEVANCE AT THE INSTITUTIONAL
           LEVEL.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 733242-A1       SUB1: 33HS SUB2: 34AS DATE RCV:   05-28-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-041UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-051UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: ALG NOT RECVG ADMIN REM FORMS IN SHU; REQ XFR
STATUS DT: 06-05-2013  STATUS CODE: REJ STATUS REASON: SEN INS
INCRPTNO.:            RCT:   EXT:   DATE ENTD: 06-05-2013
REMARKS..:
```

G0002       MORE PAGES TO FOLLOW . . .

388

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 391 of 518  PageID 1321

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 738507-R1       SUB1: 33FS SUB2: 16FS DATE RCV:   05-29-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-041UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-041UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: ALG DENIED PURCH OF STAMPS/LEGAL ENV IN RETAL
STATUS DT: 05-29-2013  STATUS CODE: REJ STATUS REASON: SEN FRM
INCRPTNO.:            RCT:   EXT:  DATE ENTD: 06-17-2013
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 738508-R1       SUB1: 10CS SUB2: 34AS DATE RCV:   05-29-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-041UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-041UDS    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: ALG XFRD 500+ MIS FROM HOME IN RETAL FOR FILNG AR'S
STATUS DT: 05-29-2013  STATUS CODE: REJ STATUS REASON: SEN FRM
INCRPTNO.:            RCT:   EXT:  DATE ENTD: 06-17-2013
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

389

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 392 of 518 PageID 1322

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 735227-R1      SUB1: 22AM SUB2: 34AM DATE RCV:    05-29-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-041UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-031UDS    FACL ORG: CRW
EVT FACL.: CRW      ACC LEV:                      RESP DUE:
ABSTRACT.: CLAIMS RETALIATION FROM SIS(INVESTIGATE)/RELEASE SHU
STATUS DT: 05-29-2013  STATUS CODE: REJ STATUS REASON: INS WRL
INCRPTNO.:           RCT:   EXT:  DATE ENTD: 06-21-2013
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 732599-R1      SUB1: 34CM SUB2:      DATE RCV:    05-29-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-041UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW      ACC LEV:                      RESP DUE:
ABSTRACT.: CLAIMS RACIAL DISCRIMINATION
STATUS DT: 05-29-2013  STATUS CODE: REJ STATUS REASON: INS WRL
INCRPTNO.:           RCT:   EXT:  DATE ENTD: 06-21-2013
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 393 of 518 PageID 1323

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 735217-R1      SUB1: 34AM SUB2: 10ZM DATE RCV:   05-29-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-041UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-031UDS   FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                       RESP DUE:
ABSTRACT.: WANTS TANSFER IN TEXAS/SIS THREATENING SHU TIME
STATUS DT: 05-29-2013  STATUS CODE: REJ STATUS REASON: INS WRL
INCRPTNO.:              RCT:  EXT:  DATE ENTD: 06-21-2013
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 735231-R1      SUB1: 33AM SUB2: 34AM DATE RCV:   05-29-2013
UNT  RCV..:UNIT 2       QTR RCV.: Z01-041UDS   FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: Z01-031UDS   FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                       RESP DUE:
ABSTRACT.: ADDRESS TO CO/COUNSELOR DENIED FULL GRIEVANCE PROCES
STATUS DT: 05-29-2013  STATUS CODE: REJ STATUS REASON: INS WRL
INCRPTNO.:              RCT:  EXT:  DATE ENTD: 06-21-2013
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 394 of 518 PageID 1324

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 732568-R1      SUB1: 33GM SUB2: 22AM DATE RCV:   06-12-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-051UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW     ACC LEV: CRW  1              RESP DUE:
ABSTRACT.: WANTS TO BE CELLED ALONE/HAS LOTS OF LEGAL WORK
STATUS DT: 06-12-2013  STATUS CODE: VOD STATUS REASON:
INCRPTNO.:           RCT:    EXT:   DATE ENTD: 07-11-2013
REMARKS..: ACCEPTED IN ERROR - REJ (WRONG REGION)




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 732574-R1      SUB1: 22CM SUB2:      DATE RCV:   06-12-2013
UNT  RCV..:UNIT 2        QTR RCV.: Z01-051UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW     ACC LEV: CRW  1 SCR  1        RESP DUE:  SUN  08-11-2013
ABSTRACT.: REQ PHONE CALLS ONCE A WEEK, COMM, EMAIL IN SHU
STATUS DT: 07-23-2013  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 07-11-2013
REMARKS..:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 395 of 518   PageID 1325

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 732571-R1        SUB1: 22CM SUB2:      DATE RCV:   06-12-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-051UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW     ACC LEV: CRW  1 SCR  1         RESP DUE:  SUN  08-11-2013
ABSTRACT.: SHOWER CURTAINS NEED REPAIRED IN SHU
STATUS DT: 08-06-2013  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 07-11-2013
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 732568-R2        SUB1: 33GM SUB2: 22AM DATE RCV:   06-12-2013
UNT  RCV..:UNIT 2      QTR RCV.: Z01-051UDS    FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: Z01-021UDS    FACL ORG: CRW
EVT FACL.: CRW     ACC LEV: CRW  1                RESP DUE:
ABSTRACT.: WANTS TO BE CELLED ALONE/HAS LOTS OF LEGAL WORK
STATUS DT: 06-12-2013  STATUS CODE: REJ STATUS REASON: WRL OTH
INCRPTNO.:           RCT:    EXT:    DATE ENTD: 07-16-2013
REMARKS..: YOU MUST FILE REMEDIES IN THE REGION YOU ARE
            CURRENTLY HOUSED (SOUTHEAST REGION).


G0002       MORE PAGES TO FOLLOW . . .


393

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 396 of 518 PageID 1326

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 742943-R1      SUB1: 25CS SUB2: 33AS DATE RCV:   06-19-2013
UNT  RCV..:HOLDOVER F   QTR RCV.: E05-516U      FACL RCV: OKL
UNT  ORG..:HOLDOVER F   QTR ORG.: E05-516U      FACL ORG: OKL
EVT FACL.: CRW     ACC LEV:                     RESP DUE:
ABSTRACT.: ALG SHOWER CURTAINS TOO SMALL
STATUS DT: 06-19-2013  STATUS CODE: REJ STATUS REASON: FRM INF INS WRL OTH
INCRPTNO.:          RCT:    EXT:  DATE ENTD: 07-19-2013
REMARKS..: YOU MUST FILE YOUR ADMIN REMEDIES AT THE REGION
           YOU ARE CURRENTLY HOUSED (SOUTHEAST REGION).


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 742945-R1      SUB1: 33HS SUB2: 33AS DATE RCV:   06-19-2013
UNT  RCV..:HOLDOVER F   QTR RCV.: E05-516U      FACL RCV: OKL
UNT  ORG..:HOLDOVER F   QTR ORG.: E05-516U      FACL ORG: OKL
EVT FACL.: CRW     ACC LEV:                     RESP DUE:
ABSTRACT.: ALG STAF REF PROCESS COPOUTS
STATUS DT: 06-19-2013  STATUS CODE: REJ STATUS REASON: FRM INF INS WRL OTH
INCRPTNO.:          RCT:    EXT:  DATE ENTD: 07-19-2013
REMARKS..: YOU MUST FILE YOUR ADMIN REMEDIES AT THE REGION
           YOU ARE CURRENTLY HOUSED (SOUTHEAST REGION).


G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 397 of 518 PageID 1327

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2           QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 743837-R1      SUB1: 16BM SUB2:       DATE RCV:   06-20-2013
UNT  RCV..:HOLDOVER F   QTR RCV.: E05-516U     FACL RCV: OKL
UNT  ORG..:HOLDOVER F   QTR ORG.: E05-516U     FACL ORG: OKL
EVT FACL.: CRW     ACC LEV:                    RESP DUE:
ABSTRACT.: MAIL NOT BEING SENT TO FAMILY OR SEALED
STATUS DT: 06-20-2013  STATUS CODE: REJ STATUS REASON: SEN FRM
INCRPTNO.:             RCT:  EXT:  DATE ENTD: 07-26-2013
REMARKS..:




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2           QTR.: I02-252L   RCV OFC: TAL
REMEDY ID: 745357-F1      SUB1: 10ZM SUB2:       DATE RCV:   08-08-2013
UNT  RCV..:B UNIT       QTR RCV.: B03-122L     FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: B03-122L     FACL ORG: TAL
EVT FACL.: TAL     ACC LEV: TAL 1 SER 1         RESP DUE:  WED  08-28-2013
ABSTRACT.: TRANSFER-OTHER
STATUS DT: 08-23-2013  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:             RCT: P EXT:  DATE ENTD: 08-08-2013
REMARKS..: REQUESTING REASON AS TO WHY SHE WAS TRANSFERRED.
```

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 398 of 518 PageID 1328

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: TAL
REMEDY ID: 745358-F1     SUB1: 33GM SUB2:     DATE RCV:  08-08-2013
UNT  RCV..:B UNIT        QTR RCV.: B03-122L   FACL RCV: TAL
UNT  ORG..:B UNIT        QTR ORG.: B03-122L   FACL ORG: TAL
EVT FACL.: TAL    ACC LEV: TAL 1              RESP DUE: TUE  09-17-2013
ABSTRACT.: PERSONAL LEGAL MATERIAL
STATUS DT: 10-01-2013  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 08-08-2013
REMARKS..: REQUESTING ACCESS TO LEGAL DOCUMENTS.




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: TAL
REMEDY ID: 745360-F1     SUB1: 16ZM SUB2:     DATE RCV:  08-08-2013
UNT  RCV..:B UNIT        QTR RCV.: B03-122L   FACL RCV: TAL
UNT  ORG..:B UNIT        QTR ORG.: B03-122L   FACL ORG: TAL
EVT FACL.: TAL    ACC LEV: TAL 1 SER 1        RESP DUE: TUE  09-17-2013
ABSTRACT.: OTHER MAIL COMPLAINTS
STATUS DT: 09-09-2013  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 08-08-2013
REMARKS..: COMPLAINING LEGAL MAIL IS BEING OPENED BEFORE BEING
           DELIVERED TO HER.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

396

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L  RCV OFC: TAL
REMEDY ID: 747170-F1      SUB1: 18AM SUB2:      DATE RCV:   08-22-2013
UNT  RCV..:B UNIT       QTR RCV.: Z01-020UAD    FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: Z01-020UAD    FACL ORG: TAL
EVT FACL.: TAL     ACC LEV: TAL  1 SER  1       RESP DUE: WED  09-11-2013
ABSTRACT.: VISITING LIST
STATUS DT: 09-06-2013  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 08-22-2013
REMARKS..: REQUESTING TO KNOW THE STATUS OF VISITING FORMS THAT
           WERE MAILED IN.



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L  RCV OFC: SER
REMEDY ID: 745357-R1      SUB1: 10ZM SUB2:      DATE RCV:   09-12-2013
UNT  RCV..:B UNIT       QTR RCV.: C03-011L      FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: B03-122L      FACL ORG: TAL
EVT FACL.: TAL     ACC LEV: TAL  1 SER  1       RESP DUE: SAT  10-12-2013
ABSTRACT.: REQUEST TRANSFER
STATUS DT: 09-26-2013  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 09-12-2013
REMARKS..:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: TAL
REMEDY ID: 750090-F1      SUB1: 34ZM SUB2:      DATE RCV:   09-17-2013
UNT  RCV..:B UNIT       QTR RCV.: C03-011L      FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: C03-011L      FACL ORG: TAL
EVT FACL.: TAL    ACC LEV: TAL 1               RESP DUE:  MON 10-07-2013
ABSTRACT.: OTHER COMPLAINT AGAINST STAFF.
STATUS DT: 10-02-2013  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: N EXT:  DATE ENTD: 09-17-2013
REMARKS..: REPORTING THAT HER UNIT TEAM IS RETALIATING AGAINST
           HER.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: TAL
REMEDY ID: 750292-F1      SUB1: 15AM SUB2:      DATE RCV:   09-17-2013
UNT  RCV..:B UNIT       QTR RCV.: C03-011L      FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: C03-011L      FACL ORG: TAL
EVT FACL.: TAL    ACC LEV:                      RESP DUE:
ABSTRACT.: INMATE FINANCIAL RESPONSIBILITY
STATUS DT: 09-17-2013  STATUS CODE: REJ STATUS REASON: ONE
INCRPTNO.:          RCT:  EXT:  DATE ENTD: 09-18-2013
REMARKS..: YOU CAN ONLY SUBMIT ONE ATTACHMENT/CONTINUATION
           PAGE.


G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 401 of 518 PageID 1331

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: TAL
REMEDY ID: 750280-F1      SUB1: 34ZM SUB2:      DATE RCV:   09-18-2013
UNT  RCV..:B UNIT       QTR RCV.: C03-011L      FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: C03-011L      FACL ORG: TAL
EVT FACL.: TAL    ACC LEV: TAL 1                RESP DUE: TUE  10-08-2013
ABSTRACT.: OTHER COMPLAINT AGAINST STAFF
STATUS DT: 10-04-2013  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:            RCT: N EXT:  DATE ENTD: 09-18-2013
REMARKS..: COMPLAINS THAT UNIT TEAM REFUSES TO PROVIDE HER A
             TIMELY RESPONSES TO GRIEVANCES FILED.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SER
REMEDY ID: 745360-R1      SUB1: 16ZM SUB2:      DATE RCV:   09-20-2013
UNT  RCV..:B UNIT       QTR RCV.: B02-241L      FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: B03-122L      FACL ORG: TAL
EVT FACL.: TAL    ACC LEV: TAL 1 SER 1          RESP DUE: TUE  11-19-2013
ABSTRACT.: ALLEGES LEGAL MAIL WAS OPENED IMPROPERLY
STATUS DT: 03-17-2014  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT: D DATE ENTD: 09-20-2013
REMARKS..:


G0002       MORE PAGES TO FOLLOW . . .

399

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 402 of 518 PageID 1332

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: SER
REMEDY ID: 747170-R1      SUB1: 18AM SUB2:      DATE RCV:   09-20-2013
UNT  RCV..:B UNIT       QTR RCV.: B02-241L      FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: Z01-020UAD    FACL ORG: TAL
EVT FACL.: TAL     ACC LEV: TAL  1 SER  1        RESP DUE: TUE  11-19-2013
ABSTRACT.: REQUEST INFO CONCERNING VISITING FORMS
STATUS DT: 10-16-2013  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: D DATE ENTD: 09-20-2013
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: SER
REMEDY ID: 750525-R1      SUB1: 21AM SUB2:      DATE RCV:   09-20-2013
UNT  RCV..:B UNIT       QTR RCV.: B02-241L      FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: B02-241L      FACL ORG: TAL
EVT FACL.: TAL     ACC LEV:                      RESP DUE:
ABSTRACT.: UDC APPEAL
STATUS DT: 09-20-2013  STATUS CODE: REJ STATUS REASON: SEN
INCRPTNO.:              RCT:   EXT: DATE ENTD: 09-20-2013
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

400

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 403 of 518 PageID 1333

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L  RCV OFC: SER
REMEDY ID: 750526-R1      SUB1: 21AM SUB2: 22AS DATE RCV:   09-20-2013
UNT  RCV..:B UNIT       QTR RCV.: B02-241L      FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: B02-241L      FACL ORG: TAL
EVT FACL.: TAL     ACC LEV:                     RESP DUE:
ABSTRACT.: UDC APPEAL/RELEASE FROM SHU
STATUS DT: 09-20-2013  STATUS CODE: REJ STATUS REASON: SEN MLT OTH
INCRPTNO.:           RCT:   EXT:  DATE ENTD: 09-20-2013
REMARKS..: MISCONDUCT CLAIMS REVIEWED PER POLICY AND TAKEN
           SERIOUSLY. YOU WILL NOT BE GIVEN FURTHER INFORMATION
           RE:DISPOSITION.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L  RCV OFC: SER
REMEDY ID: 751474-R1      SUB1: 34EM SUB2:      DATE RCV:   09-24-2013
UNT  RCV..:B UNIT       QTR RCV.: B02-241L      FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: B02-241L      FACL ORG: TAL
EVT FACL.: TAL     ACC LEV:                     RESP DUE:
ABSTRACT.: ALLEGES INMATES ARE OUT OF BOUND IN CUBICLES
STATUS DT: 09-26-2013  STATUS CODE: REJ STATUS REASON: SEN
INCRPTNO.:           RCT:   EXT:  DATE ENTD: 09-26-2013
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

401

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 404 of 518   PageID 1334

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: SER
REMEDY ID: 751476-R1       SUB1: 21AM SUB2:      DATE RCV:   09-24-2013
UNT  RCV..:B UNIT       QTR RCV.: B02-241L      FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: B02-241L      FACL ORG: TAL
EVT FACL.: TAL     ACC LEV:                         RESP DUE:
ABSTRACT.: UDC APPEAL
STATUS DT: 09-26-2013  STATUS CODE: REJ STATUS REASON: SEN
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 09-26-2013
REMARKS..:



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: SER
REMEDY ID: 793390-R1       SUB1: 22ZM SUB2:      DATE RCV:   09-10-2014
UNT  RCV..:B UNIT       QTR RCV.: Z01-005UAD    FACL RCV: TAL
UNT  ORG..:B UNIT       QTR ORG.: Z01-005UAD    FACL ORG: TAL
EVT FACL.: TAL     ACC LEV:                         RESP DUE:
ABSTRACT.: REQ. TO RECEIVE REVIEW IN SHU
STATUS DT: 09-10-2014  STATUS CODE: REJ STATUS REASON: SEN
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 09-10-2014
REMARKS..:



G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 405 of 518 PageID 1335

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SER
REMEDY ID: 794961-R1      SUB1: 33FM SUB2:       DATE RCV:   09-22-2014
UNT  RCV..:B UNIT        QTR RCV.: Z01-005UAD   FACL RCV: TAL
UNT  ORG..:B UNIT        QTR ORG.: Z01-005UAD   FACL ORG: TAL
EVT FACL.: TAL     ACC LEV:                       RESP DUE:
ABSTRACT.: ALLEGES LEGAL MAIL IS NOT PROCESSED PROPERLY
STATUS DT: 09-22-2014  STATUS CODE: REJ STATUS REASON: SEN
INCRPTNO.:              RCT:  EXT:  DATE ENTD: 09-22-2014
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 814553-F1      SUB1: 25EM SUB2:       DATE RCV:   03-19-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U     FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  2   RESP DUE: WED  04-08-2015
ABSTRACT.: COMMISSARY SVCS PRODUCTS & OPERATIONS
STATUS DT: 03-26-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 03-19-2015
REMARKS..: CLAIMS DECISIONS TO REMOVE HAIR RELAXER FROM SALES
           AT COMMISSARY IS RACIALLY INSENSITIVE AND CAUSING
           HAIR LOSS FOR BLACK INMATES


G0002      MORE PAGES TO FOLLOW . . .

403

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 814593-F1       SUB1: 34BM SUB2:      DATE RCV:   03-19-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS      ACC LEV: WAS  1 NCR  3 BOP  3  RESP DUE:  WED  04-08-2015
ABSTRACT.: HARASSMENT BY STAFF
STATUS DT: 04-06-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 03-20-2015
REMARKS..: CLAIMS HARASSMENT BY THE CAPTAIN


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 814597-F1       SUB1: 10DM SUB2: 10CM DATE RCV:   03-19-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS      ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE:  WED  04-08-2015
ABSTRACT.: TFR FOR PGM PART/TFR FOR RELASE DESTINATION
STATUS DT: 04-06-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 03-20-2015
REMARKS..: REQUESTS TRANSFER TO BRYAN TO ATTEND BLENN COLLEGE
           BE CLOSER TO FAMILY


G0002      MORE PAGES TO FOLLOW . . .

404

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 816296-F1        SUB1: 34CM SUB2:         DATE RCV:  04-03-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:              QTR ORG.:               FACL ORG:
EVT FACL.: WAS    ACC LEV:                       RESP DUE:
ABSTRACT.: DISCRIMINATION
STATUS DT: 04-03-2015  STATUS CODE: VOD STATUS REASON:
INCRPTNO.:           RCT:    EXT:  DATE ENTD: 04-03-2015
REMARKS..: YOU MUST BEGIN YOUR COMPLAINT ON THE BLUE BP-9 FORM



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 816300-F1        SUB1: 34CM SUB2:         DATE RCV:  04-03-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  2 NCR  1 BOP  1   RESP DUE:
ABSTRACT.: DISCRIMINATION
STATUS DT: 04-03-2015  STATUS CODE: REJ STATUS REASON: RSF
INCRPTNO.:           RCT:    EXT:  DATE ENTD: 04-03-2015
REMARKS..: YOU MUST BEGIN YOUR COMPLAINT ON THE BLUE BP-9 FORM
```

G0002      MORE PAGES TO FOLLOW . . .

405

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 816300-F2      SUB1: 34CM SUB2:      DATE RCV:   04-10-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS 2 NCR  1 BOP  1  RESP DUE: WED  05-20-2015
ABSTRACT.: DISCRIMINATION
STATUS DT: 05-04-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 04-10-2015
REMARKS..: CLAIMS THE LT WAS RACIST AND CULTURALLY INSENSITIVE



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 814553-R1      SUB1: 25EM SUB2:      DATE RCV:   04-13-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS 1 NCR  1 BOP  2  RESP DUE: WED  05-13-2015
ABSTRACT.: COMMISSARY SVCS PRODUCTS & OPERATIONS
STATUS DT: 05-01-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:  DATE ENTD: 04-13-2015
REMARKS..:


G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 409 of 518 PageID 1339

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 814597-R1      SUB1: 10DM SUB2: 10CM DATE RCV:   04-16-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: SAT 05-16-2015
ABSTRACT.: TSFR FOR PGM PART/TSFR FOR RELEASE DESTINATION
STATUS DT: 04-28-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:               RCT: P EXT:  DATE ENTD: 04-16-2015
REMARKS..: REQUESTS TRANSFER TO BRYAN TO ATTEND BLENN COLLEGE
            BE CLOSER TO FAMILY



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 814593-R1      SUB1: 34BM SUB2:      DATE RCV:   04-16-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  3  RESP DUE: SAT 05-16-2015
ABSTRACT.: HARASSMENT BY STAFF
STATUS DT: 04-28-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:               RCT: P EXT:  DATE ENTD: 04-16-2015
REMARKS..: CLAIMS HARASSMENT BY THE CAPTAIN
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

407

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 819772-F1      SUB1: 11GM SUB2:      DATE RCV:   05-05-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U     FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS      ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: MON 05-25-2015
ABSTRACT.: RECREATION LEISURE ACTIVITIES
STATUS DT: 05-18-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 05-05-2015
REMARKS..: REQUESTS REC TO BE OPEN FROM 6:30-10:30 A.M.



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 820320-F1      SUB1: 15ZM SUB2:      DATE RCV:   05-07-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U     FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS      ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: WED 05-27-2015
ABSTRACT.: OTHER INSTITUTION PGMS
STATUS DT: 05-21-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 05-07-2015
REMARKS..: INMATE CLAIMS ANOTHER INMATE IS ATTEMPTING TO TELL
           HER HOW TO CLEAN AND PUT A NOTE ON HER LOCKER
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 411 of 518   PageID 1341

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 816300-R1      SUB1: 34CM SUB2:      DATE RCV:    05-11-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  2 NCR  1 BOP  1  RESP DUE: FRI  07-10-2015
ABSTRACT.: DISCRIMINATION
STATUS DT: 06-16-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 05-11-2015
REMARKS..: CLAIMS THE LT WAS RACIST AND CULTURALLY INSENSITIVE


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 814597-A1      SUB1: 10DM SUB2: 10CM DATE RCV:    05-16-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: WED  07-15-2015
ABSTRACT.: TSFR FOR PGM PART/TSFR FOR RELEASE DESTINATION
STATUS DT: 04-18-2016  STATUS CODE: CLO STATUS REASON: MOT
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 05-26-2015
REMARKS..:


G0002      MORE PAGES TO FOLLOW . . .

409

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 820320-R1      SUB1: 15ZM SUB2:      DATE RCV:   05-29-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: SUN  06-28-2015
ABSTRACT.: OTHER INSTITUTION PGMS
STATUS DT: 06-11-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 06-01-2015
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 819772-R1      SUB1: 11GM SUB2:      DATE RCV:   05-29-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: TUE  07-28-2015
ABSTRACT.: RECREATION LEISURE ACTIVITIES
STATUS DT: 06-16-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 06-01-2015
REMARKS..: REQUESTS REC TO BE OPEN FROM 6:30-10:30 A.M.


G0002       MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 413 of 518 PageID 1343

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 814553-A1       SUB1: 25EM SUB2:       DATE RCV:   06-01-2015
UNT  RCV..:A/B/E GP     QTR RCV.: A05-011U     FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  2   RESP DUE:
ABSTRACT.: COMMISSARY SVCS PRODUCTS & OPERATIONS
STATUS DT: 06-17-2015  STATUS CODE: REJ STATUS REASON: LEG RSA
INCRPTNO.:             RCT:  EXT:  DATE ENTD: 06-17-2015
REMARKS..:
```

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 814593-A1       SUB1: 34BM SUB2:       DATE RCV:   06-01-2015
UNT  RCV..:A/B/E GP     QTR RCV.: A05-011U     FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  3   RESP DUE:
ABSTRACT.: HARASSMENT BY STAFF
STATUS DT: 06-17-2015  STATUS CODE: REJ STATUS REASON: LEG RSA
INCRPTNO.:             RCT:  EXT:  DATE ENTD: 06-17-2015
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

411

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 414 of 518 PageID 1344

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 823233-F1        SUB1: 34CM SUB2:        DATE RCV:    06-02-2015
UNT  RCV..:A/B/E GP       QTR RCV.: A05-011U     FACL RCV: WAS
UNT  ORG..:A/B/E GP       QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS 1 NCR 1 BOP 1   RESP DUE: MON 06-22-2015
ABSTRACT.: DISCRIMINATION
STATUS DT: 06-12-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 06-02-2015
REMARKS..: CLAIMS COSMOTOLOGY PROGRAM DISCRIMINATES AGAINST
           BLACK WOMEN BECAUSE OF NO BLACK HAIR CARE


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 824842-F1      SUB1: 34ZM SUB2: 10ZM DATE RCV:    06-16-2015
UNT  RCV..:A/B/E GP       QTR RCV.: A05-011U     FACL RCV: WAS
UNT  ORG..:A/B/E GP       QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS 1 NCR 1 BOP 1   RESP DUE: MON 07-06-2015
ABSTRACT.: OTHER COMPLAINT; TRANSFER OTHER
STATUS DT: 06-24-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 06-16-2015
REMARKS..: CLAIMS SHE WAS TRANSFERRED FAR FROM HOME DUE TO
           FILING ADMINISTRATIVE REMEDIES
```

G0002      MORE PAGES TO FOLLOW . . .

412

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 824848-F1      SUB1: 34AM SUB2: 23YM DATE RCV:    06-16-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U       FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U       FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: MON 07-06-2015
ABSTRACT.: UNPROFESSIONAL CONDUCT/OTHER SEARCHES
STATUS DT: 06-26-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 06-16-2015
REMARKS..: CLAIMS FEMALE OFFICER FORCED HER TO PROVIDE UA
            WHILE NAKED AND ON A DIRTY TOILET


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 825768-F1      SUB1: 34CM SUB2: 10ZM DATE RCV:    06-23-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U       FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U       FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: MON 07-13-2015
ABSTRACT.: DISCRIMINATION/TRANSFER - OTHER
STATUS DT: 07-07-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 06-23-2015
REMARKS..: CLAIMS BLACK INMATES ARE UNFAIRLY TREATED AND
            DISCRIMINATED AGAINST BECAUSE THERE ARE SO FEW BLACK
            STAFF & WANTS A TFR TO CRW OR BRY
```

G0002      MORE PAGES TO FOLLOW . . .

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 826438-F1      SUB1: 25ZM SUB2:      DATE RCV:   06-29-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: SUN  07-19-2015
ABSTRACT.: OTHER OPERATIONS
STATUS DT: 07-08-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 06-29-2015
REMARKS..: COMPLAINS SEVEN 8 1/2'S WERE NOT PROCESSED AT
            LAST INSTITUTION


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 823233-R1      SUB1: 34CM SUB2:      DATE RCV:   06-29-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: WED  07-29-2015
ABSTRACT.: DISCRIMINATION
STATUS DT: 07-16-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 06-29-2015
REMARKS..:


G0002      MORE PAGES TO FOLLOW . . .

414

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 417 of 518   PageID 1347

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 820320-A1      SUB1: 15ZM SUB2:        DATE RCV:   06-30-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: SAT  08-29-2015
ABSTRACT.: OTHER INSTITUTION PGMS
STATUS DT: 11-04-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 07-22-2015
REMARKS..:



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 819772-A1      SUB1: 11GM SUB2:        DATE RCV:   06-30-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: SAT  08-29-2015
ABSTRACT.: RECREATION LEISURE ACTIVITIES
STATUS DT: 11-04-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 07-22-2015
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

415

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 418 of 518 PageID 1348

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 824848-R1      SUB1: 34AM SUB2: 23YM DATE RCV:   07-13-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: WED  08-12-2015
ABSTRACT.: UNPROFESSIONAL CONDUCT/OTHER SEARCHES
STATUS DT: 07-31-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 07-14-2015
REMARKS..:
```

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 824842-R1      SUB1: 34ZM SUB2: 10ZM DATE RCV:   07-13-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: FRI  09-11-2015
ABSTRACT.: OTHER COMPLAINT; TRANSFER OTHER
STATUS DT: 08-04-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 07-14-2015
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

416

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 419 of 518  PageID 1349

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 814593-A2       SUB1: 34BM SUB2:      DATE RCV:   07-15-2015
UNT  RCV..:A/B/E GP     QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS      ACC LEV: WAS  1 NCR  1 BOP  3  RESP DUE:
ABSTRACT.: HARASSMENT BY STAFF
STATUS DT: 07-30-2015  STATUS CODE: REJ STATUS REASON: LEG RSA
INCRPTNO.:              RCT:  EXT:  DATE ENTD: 07-30-2015
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 814553-A2       SUB1: 25EM SUB2:      DATE RCV:   07-15-2015
UNT  RCV..:A/B/E GP     QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS      ACC LEV: WAS  1 NCR  1 BOP  2  RESP DUE: SUN  09-13-2015
ABSTRACT.: COMMISSARY SVCS PRODUCTS & OPERATIONS
STATUS DT: 07-27-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 08-03-2015
REMARKS..:


G0002      MORE PAGES TO FOLLOW . . .


417

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 816300-A1      SUB1: 34CM SUB2:        DATE RCV:  07-15-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  2 NCR  1 BOP  1  RESP DUE: SUN 09-13-2015
ABSTRACT.: DISCRIMINATION
STATUS DT: 05-16-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:                RCT: P EXT: P DATE ENTD: 08-03-2015
REMARKS..:




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 814593-A3      SUB1: 34BM SUB2:        DATE RCV:  07-15-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  3  RESP DUE: SUN 09-13-2015
ABSTRACT.: HARASSMENT BY STAFF
STATUS DT: 09-08-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:                RCT: P EXT: P DATE ENTD: 09-03-2015
REMARKS..:




G0002      MORE PAGES TO FOLLOW . . .

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 829188-F1       SUB1: 34ZM SUB2:       DATE RCV:   07-22-2015
UNT  RCV..:A/B/E GP     QTR RCV.: A05-011U     FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1            RESP DUE: TUE  08-11-2015
ABSTRACT.: OTHER COMPLAINT AGAINST STAFF
STATUS DT: 07-29-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 07-22-2015
REMARKS..: CLIAMS OFFICERS NOT HOLDING INMATES ACCOUNTABLE
            FOR BEING IN OTHER INMATES CELLS IN HOUSING UNIT


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 825768-R1       SUB1: 34CM SUB2: 10ZM DATE RCV:   07-23-2015
UNT  RCV..:A/B/E GP     QTR RCV.: A05-011U     FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: SAT  08-22-2015
ABSTRACT.: DISCRIMINATION/TRANSFER - OTHER
STATUS DT: 07-28-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 07-23-2015
REMARKS..:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

419

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 422 of 518   PageID 1352


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 826438-R1      SUB1: 33HM SUB2: 34ZM DATE RCV:   07-23-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-011U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: TAL     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: SAT  08-22-2015
ABSTRACT.: CLAIMS STAFF HINDERING COP OUT/ADMIN REMEDY PROCESS
STATUS DT: 07-28-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:  DATE ENTD: 07-23-2015
REMARKS..:




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 831360-R1      SUB1: 15ZM SUB2:       DATE RCV:   08-10-2015
UNT  RCV..:A/B/E GP      QTR RCV.: Z02-137LAD    FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: Z02-137LAD    FACL ORG: WAS
EVT FACL.: WAS     ACC LEV:                       RESP DUE:
ABSTRACT.: LATE NIGHT TV.
STATUS DT: 08-10-2015  STATUS CODE: REJ STATUS REASON: SEN
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 08-10-2015
REMARKS..:




G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 423 of 518 PageID 1353

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2          QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 823233-A1      SUB1: 34CM SUB2: 25ZM DATE RCV:   08-17-2015
UNT  RCV..:A/B/E GP      QTR RCV.: Z02-141LDS   FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS 1 NCR 1 BOP  1  RESP DUE: FRI  10-16-2015
ABSTRACT.: DISCRIMINATION / COSMOTOLOGY PROGRAM
STATUS DT: 09-23-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 09-09-2015
REMARKS..:
```

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2          QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 832739-F1      SUB1: 34CM SUB2:      DATE RCV:   08-20-2015
UNT  RCV..:A/B/E GP      QTR RCV.: Z01-122LAD   FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-122LAD   FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS 1 NCR 1        RESP DUE: WED  09-09-2015
ABSTRACT.: DISCRIMINATION
STATUS DT: 09-03-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:  DATE ENTD: 08-20-2015
REMARKS..: STATES LT. RETALIATED AND RACIALLY DISCRIMINATED
            BY UNNECESSARY USE OF FORCE WHEN SHE REFUSED MEDICAL
            EVALUATION
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

421

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 424 of 518   PageID 1354

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 832740-F1       SUB1: 34AM SUB2: 23YM DATE RCV:   08-20-2015
UNT  RCV..:A/B/E GP      QTR RCV.: Z01-122LAD   FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-122LAD   FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: WED  09-09-2015
ABSTRACT.: UNPROFESSIONAL/OTHER SEARCHES
STATUS DT: 09-03-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 08-20-2015
REMARKS..: CLAIMS LT. DAVIS RETALIATED FOR FILING GRIEVANCES
           BY TRYING TO TAKE RANDOM UA WHILE SHE WAS ON
           HUNGER STRIKE


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 832741-F1       SUB1: 21AM SUB2:      DATE RCV:   08-20-2015
UNT  RCV..:A/B/E GP      QTR RCV.: Z01-122LAD   FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-122LAD   FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1         RESP DUE: TUE  09-29-2015
ABSTRACT.: UDC ACTION
STATUS DT: 09-25-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.: 2747344  RCT: P EXT: P DATE ENTD: 08-20-2015
REMARKS..: WANTS I.R. 2747344 SUSPENDED OR REDUCED AS SHE
           CLAIMS SHE DID NOT REFUSE RESTRAINTS-JUST MEDICAL
           TREATMENT
```

G0002      MORE PAGES TO FOLLOW . . .

422

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 425 of 518  PageID 1355

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 832742-F1      SUB1: 21AM SUB2:      DATE RCV:  08-20-2015
UNT  RCV..:A/B/E GP      QTR RCV.: Z01-122LAD   FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-122LAD   FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1        RESP DUE: TUE  09-29-2015
ABSTRACT.: UDC ACTION
STATUS DT: 10-06-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.: 2746975   RCT: P EXT: P DATE ENTD: 08-20-2015
REMARKS..: CLAIMS SHE DID NOT REFUSE TO BE RESTRAINED ONLY
           MEDICAL TREATMENT WHICH IS HER RIGHT.  WANTS
           I.R. 2746975 SANCTIONS SUSPENDED OR REDUCED


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 833232-R1      SUB1: 34ZM SUB2:      DATE RCV:  08-24-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U     FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U     FACL ORG: WAS
EVT FACL.: WAS    ACC LEV:                      RESP DUE:
ABSTRACT.: STAFF ALLEGATION
STATUS DT: 08-24-2015  STATUS CODE: REJ STATUS REASON: SEN
INCRPTNO.:           RCT:  EXT:  DATE ENTD: 08-25-2015
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 426 of 518 PageID 1356

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 825768-A1      SUB1: 34CM SUB2: 10ZM DATE RCV:   08-24-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: FRI  10-23-2015
ABSTRACT.: DISCRIMINATION/TRANSFER - OTHER
STATUS DT: 09-08-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 09-03-2015
REMARKS..:



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 826438-A1      SUB1: 33HM SUB2: 34ZM DATE RCV:   08-24-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: TAL     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: FRI  10-23-2015
ABSTRACT.: CLAIMS STAFF HINDERING COP OUT/ADMIN REMEDY PROCESS
STATUS DT: 09-23-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 09-09-2015
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

424

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 833964-R1      SUB1: 26AM SUB2:      DATE RCV:   08-28-2015
UNT  RCV..:A/B/E GP     QTR RCV.: A05-020U     FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-020U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV:                     RESP DUE:
ABSTRACT.: MEDICAL COMPLAINT
STATUS DT: 08-31-2015  STATUS CODE: REJ STATUS REASON: SEN
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 09-01-2015
REMARKS..:




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 824848-A1      SUB1: 34AM SUB2: 23YM DATE RCV:   08-31-2015
UNT  RCV..:A/B/E GP     QTR RCV.: A05-020U     FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-011U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS 1 NCR  1 BOP  1  RESP DUE: FRI 10-30-2015
ABSTRACT.: UNPROFESSIONAL CONDUCT/OTHER SEARCHES
STATUS DT: 07-08-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 09-18-2015
REMARKS..:




G0002      MORE PAGES TO FOLLOW . . .
```

425

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 428 of 518 PageID 1358

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 824842-A1      SUB1: 34ZM SUB2: 10ZM DATE RCV:    08-31-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-011U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: FRI  10-30-2015
ABSTRACT.: OTHER COMPLAINT; TRANSFER OTHER
STATUS DT: 07-08-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 09-18-2015
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 834788-F1      SUB1: 29AM SUB2:       DATE RCV:    09-08-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: SUN  10-18-2015
ABSTRACT.: HUNGER STRIKES/FORCED FEEDING
STATUS DT: 10-07-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 09-08-2015
REMARKS..: CLAIMS SHE WAS THREATENED WITH FORCE FEEDING WHILE
           ON HUNGER STRIKE AND CLAIMS SHE HAS A RIGHT TO
           CHOOSE TO DIE


G0002      MORE PAGES TO FOLLOW . . .

426

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 429 of 518 PageID 1359

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 834789-F1      SUB1: 25DM SUB2:        DATE RCV:   09-08-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U     FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U     FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1        RESP DUE: SUN 10-18-2015
ABSTRACT.: PERSONAL PROPERTY INCLUD CONFISCATION OR DESTRUCTION
STATUS DT: 10-07-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 09-08-2015
REMARKS..: CLAIMS CSO INVENTORIED PROPERTY WHILE SHE WAS IN
           SHU AND THREW AWAY $200 PERSONAL PROPERTY WITHOUT
           HER PERMISSION


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 834790-F1      SUB1: 22CM SUB2:        DATE RCV:   09-08-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U     FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U     FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: SUN 10-18-2015
ABSTRACT.: A/D CONDITIONS
STATUS DT: 09-29-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 09-08-2015
REMARKS..: CLAIMS SHE WAS PLACED IN DRY CELL IN SHU DURING
           FOOD STRIKE W/NO TOILET, SHOWER OR TOOTH BRUSH
           AS RETALIATION
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

427

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 430 of 518 PageID 1360

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 834791-F1        SUB1: 22AM SUB2:       DATE RCV:  09-08-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U     FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U     FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: MON  09-28-2015
ABSTRACT.: AD-DAMIN REVIEWS
STATUS DT: 09-17-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:  DATE ENTD: 09-08-2015
REMARKS..: ALLEGES SHE NEVER RECEIVED 7 DAY SHU REVIEW WHILE
           IN A/D SO SHE COULD DISCUSS ALLEGATIONS AGAINST
           HER


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 834806-F1        SUB1: 26ZM SUB2:       DATE RCV:  09-08-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U     FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U     FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1                RESP DUE: SUN  10-18-2015
ABSTRACT.: OTHER MEDICAL MATTERS
STATUS DT: 10-27-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 09-08-2015
REMARKS..: WANTS TO KNOW UNDER WHAT CIRCUMSTANCES SHE CAN NOT
           REFUSE MEDICAL TREATMENT
```

G0002      MORE PAGES TO FOLLOW . . .

428

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2           QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 832740-R1      SUB1: 34AM SUB2: 23YM DATE RCV:    09-11-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-122LAD    FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: SUN 10-11-2015
ABSTRACT.: UNPROFESSIONAL/OTHER SEARCHES
STATUS DT: 09-29-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 09-14-2015
REMARKS..:




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2           QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 832739-R1      SUB1: 34CM SUB2:      DATE RCV:    09-11-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U      FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-122LAD    FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1        RESP DUE: SUN 10-11-2015
ABSTRACT.: DISCRIMINATION
STATUS DT: 09-29-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 09-14-2015
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

429

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 835543-F1      SUB1: 29ZM SUB2:      DATE RCV:   09-15-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U     FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: MON 10-05-2015
ABSTRACT.: OTHER FORCED MEDICAL TREAMENT
STATUS DT: 09-25-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 09-15-2015
REMARKS..: CLAIMS ONLY THE PHYSICIAN CAN AUTHORIZED FORCED
           MEDICAL TREATMENT IF HER LIFE IS IN DANGER WHEN SHE
           WAS ON A HUNGER STRIKE.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 835815-F1      SUB1: 34CM SUB2:      DATE RCV:   09-16-2015
UNT  RCV..:A/B/E GP      QTR RCV.: A05-020U     FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: TUE 10-06-2015
ABSTRACT.: DISCRIMINATION
STATUS DT: 10-05-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 09-16-2015
REMARKS..: STATES LT. RETALIATED AND RACIALLY DISCRIMINATED BY
           UNNECESSARY USE OF FORCE WHEN SHE REFUED MEDICAL
           EVALUATION


G0002      MORE PAGES TO FOLLOW . . .


430

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 433 of 518 PageID 1363

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2          QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 834791-R1     SUB1: 22AM SUB2:        DATE RCV:   10-05-2015
UNT  RCV..:A/B/E GP     QTR RCV.: Z01-110LAD    FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-020U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE:  WED  11-04-2015
ABSTRACT.: CLAIMS DENIED 7-DAY HEARING BEFORE SRO WHILE IN SHU
STATUS DT: 10-15-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:             RCT: P EXT:   DATE ENTD: 10-05-2015
REMARKS..: ALLEGES SHE NEVER RECEIVED 7 DAY SHU REVIEW WHILE
           IN A/D SO SHE COULD DISCUSS ALLEGATIONS AGAINST
           HER


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2          QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 832741-R1     SUB1: 21AM SUB2:        DATE RCV:   10-05-2015
UNT  RCV..:A/B/E GP     QTR RCV.: Z01-110LAD    FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: Z01-122LAD    FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1            RESP DUE:  FRI  12-04-2015
ABSTRACT.: UDC ACTION
STATUS DT: 12-02-2015  STATUS CODE: CLG STATUS REASON: GRT
INCRPTNO.: 2747344  RCT: P EXT: P DATE ENTD: 10-05-2015
REMARKS..: WANTS I.R. 2747344 SUSPENDED OR REDUCED AS SHE
           CLAIMS SHE DID NOT REFUSE RESTRAINTS-JUST MEDICAL
           TREATMENT
```

G0002      MORE PAGES TO FOLLOW . . .

431

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 434 of 518 PageID 1364

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2           QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 838304-F1      SUB1: 34CM SUB2: 13GM DATE RCV:   10-07-2015
UNT  RCV..:A/B/E GP     QTR RCV.: Z01-110LAD    FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: Z01-110LAD    FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS 1              RESP DUE: TUE  10-27-2015
ABSTRACT.: DISCRIMINATION/HOUSING UNIT
STATUS DT: 10-21-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 10-07-2015
REMARKS..: CLAIMS COUNSELOR DISCRIMINATED AGAINST HER IN
           MAKING HOUSING UNIT ASSIGNMENT



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2           QTR.: I02-252L   RCV OFC: WAS
REMEDY ID: 838709-F1      SUB1: 22AM SUB2:      DATE RCV:   10-13-2015
UNT  RCV..:A/B/E GP     QTR RCV.: Z01-110LAD    FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: Z01-110LAD    FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS 1              RESP DUE: MON  11-02-2015
ABSTRACT.: ADMIN DETN - PLACEMENT, REVIEW, RELEASE
STATUS DT: 10-19-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 10-13-2015
REMARKS..: CONTESTS SHE WAS NOT RELEASED ON FRI, AUG 21, 2015,
           & WAS HELD IN SHU LONGER THAN OTHERS WHICH WERE
           RELEASED ON FRI, SEPT 4, 2015.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 835815-R1       SUB1: 34CM SUB2:        DATE RCV:   10-19-2015
UNT  RCV..:A/B/E GP      QTR RCV.: Z01-118LAD    FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS 1 NCR  1 BOP  1  RESP DUE: WED  11-18-2015
ABSTRACT.: DISCRIMINATION
STATUS DT: 11-06-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 10-19-2015
REMARKS..: STATES LT. RETALIATED AND RACIALLY DISCRIMINATED BY
           UNNECESSARY USE OF FORCE WHEN SHE REFUSED MEDICAL
           EVALUATION


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 834789-R1       SUB1: 25DM SUB2:        DATE RCV:   10-19-2015
UNT  RCV..:A/B/E GP      QTR RCV.: Z01-118LAD    FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS 1 NCR  1        RESP DUE: WED  11-18-2015
ABSTRACT.: PERSONAL PROPERTY INCLUD CONFISCATION OR DESTRUCTION
STATUS DT: 10-28-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 10-19-2015
REMARKS..: CLAIMS CSO INVENTORIED PROPERTY WHILE SHE WAS IN
           SHU AND THREW AWAY $200 PERSONAL PROPERTY WITHOUT
           HER PERMISSION
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

433

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 832742-R1       SUB1: 21AM SUB2:       DATE RCV:   10-19-2015
UNT  RCV..:A/B/E GP      QTR RCV.: Z01-118LAD    FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-122LAD    FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1       RESP DUE: FRI  12-18-2015
ABSTRACT.: UDC ACTION
STATUS DT: 12-11-2015  STATUS CODE: CLG STATUS REASON: GRT
INCRPTNO.: 2746975   RCT: P EXT: P DATE ENTD: 10-19-2015
REMARKS..: CLAIMS SHE DID NOT REFUSE TO BE RESTRAINED ONLY
           MEDICAL TREATMENT WHICH IS HER RIGHT.  WANTS
           I.R. 2746975 SANCTIONS SUSPENDED OR REDUCED


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 834788-R1       SUB1: 29AM SUB2:       DATE RCV:   10-19-2015
UNT  RCV..:A/B/E GP      QTR RCV.: Z01-118LAD    FACL RCV: WAS
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1  RESP DUE: WED  11-18-2015
ABSTRACT.: HUNGER STRIKES/FORCED FEEDING
STATUS DT: 10-21-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT:  DATE ENTD: 10-19-2015
REMARKS..: CLAIMS SHE WAS THREATENED WITH FORCE FEEDING WHILE
           ON HUNGER STRIKE AND CLAIMS SHE HAS A RIGHT TO
           CHOOSE TO DIE
```

G0002     MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 437 of 518 PageID 1367

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 834790-R1      SUB1: 22CM SUB2:      DATE RCV:   10-19-2015
UNT  RCV..:A/B/E GP     QTR RCV.: Z01-118LAD   FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-020U     FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: WED  11-18-2015
ABSTRACT.: A/D CONDITIONS
STATUS DT: 11-02-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 10-19-2015
REMARKS..: CLAIMS SHE WAS PLACED IN DRY CELL IN SHU DURING
           FOOD STRIKE W/NO TOILET, SHOWER OR TOOTH BRUSH
           AS RETALIATION


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 835543-R1      SUB1: 29ZM SUB2:      DATE RCV:   10-19-2015
UNT  RCV..:A/B/E GP     QTR RCV.: Z01-118LAD   FACL RCV: WAS
UNT  ORG..:A/B/E GP     QTR ORG.: A05-020U     FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: WED  11-18-2015
ABSTRACT.: OTHER FORCED MEDICAL TREAMENT
STATUS DT: 10-21-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 10-19-2015
REMARKS..: CLAIMS ONLY THE PHYSICIAN CAN AUTHORIZED FORCED
           MEDICAL TREATMENT IF HER LIFE IS IN DANGER WHEN SHE
           WAS ON A HUNGER STRIKE.
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 832739-A1      SUB1: 34CM SUB2:      DATE RCV:   10-29-2015
UNT  RCV..:HOLDOVER F   QTR RCV.: E05-524L     FACL RCV: OKL
UNT  ORG..:A/B/E GP     QTR ORG.: Z01-122LAD    FACL ORG: WAS
EVT FACL.: WAS      ACC LEV: WAS  1 NCR  1          RESP DUE:
ABSTRACT.: DISCRIMINATION
STATUS DT: 11-16-2015  STATUS CODE: REJ STATUS REASON: IRQ RAP
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 11-16-2015
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 832740-A1      SUB1: 34CM SUB2: 23YM DATE RCV:   11-12-2015
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U     FACL RCV: CRW
UNT  ORG..:A/B/E GP     QTR ORG.: Z01-122LAD    FACL ORG: WAS
EVT FACL.: WAS      ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: MON  01-11-2016
ABSTRACT.: RACIAL DISCRIMINATION/OTHER SEARCHES (UA TESTING)
STATUS DT: 11-23-2015  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 11-19-2015
REMARKS..:


G0002      MORE PAGES TO FOLLOW . . .

436

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 439 of 518 PageID 1369

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 835815-A1      SUB1: 34CM SUB2: 22EM DATE RCV:   11-26-2015
UNT  RCV..:UNIT 2        QTR RCV.: I04-211U      FACL RCV: CRW
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: MON  01-25-2016
ABSTRACT.: DISCRIMINATION/EXCESSIVE USE OF FORCE
STATUS DT: 12-24-2015  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 12-10-2015
REMARKS..:



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 834788-A1      SUB1: 29AM SUB2:      DATE RCV:   11-26-2015
UNT  RCV..:UNIT 2        QTR RCV.: I04-211U      FACL RCV: CRW
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U      FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: MON  01-25-2016
ABSTRACT.: HUNGER STRIKES/FORCED FEEDING
STATUS DT: 01-14-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 12-10-2015
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

437

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 440 of 518 PageID 1370

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 835543-A1      SUB1: 29ZM SUB2:        DATE RCV:   11-26-2015
UNT  RCV..:UNIT 2       QTR RCV.: I04-211U        FACL RCV: CRW
UNT  ORG..:A/B/E GP     QTR ORG.: A05-020U        FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: MON  01-25-2016
ABSTRACT.: OTHER FORCED MEDICAL TREAMENT
STATUS DT: 01-12-2016  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:             RCT: P EXT: P DATE ENTD: 12-10-2015
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 834791-A1      SUB1: 22AM SUB2:        DATE RCV:   11-26-2015
UNT  RCV..:UNIT 2       QTR RCV.: I04-211U        FACL RCV: CRW
UNT  ORG..:A/B/E GP     QTR ORG.: A05-020U        FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: MON  01-25-2016
ABSTRACT.: CLAIMS DENIED 7-DAY HEARING BEFORE SRO WHILE IN SHU
STATUS DT: 11-09-2016  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:             RCT: P EXT: P DATE ENTD: 12-10-2015
REMARKS..:
```

G0002       MORE PAGES TO FOLLOW . . .

438

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 441 of 518  PageID 1371

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2               QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 834806-R1        SUB1: 26ZM SUB2:      DATE RCV:   12-11-2015
UNT  RCV..:UNIT 2        QTR RCV.: I04-231U       FACL RCV: CRW
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U       FACL ORG: WAS
EVT FACL.: WAS      ACC LEV: WAS  1                    RESP DUE:
ABSTRACT.: OTHER MEDICAL MATTERS
STATUS DT: 12-11-2015  STATUS CODE: REJ STATUS REASON: OTH
INCRPTNO.:           RCT:    EXT:  DATE ENTD: 12-11-2015
REMARKS..: FILE APPEAL TO THE REGION WHERE YOU ARE CURRENTLY
           HOUSED - SOUTH CENTRAL.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2               QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 838709-R1        SUB1: 22AM SUB2:      DATE RCV:   12-11-2015
UNT  RCV..:UNIT 2        QTR RCV.: I04-231U       FACL RCV: CRW
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-110LAD     FACL ORG: WAS
EVT FACL.: WAS      ACC LEV: WAS  1                    RESP DUE:
ABSTRACT.: ADMIN DETN - PLACEMENT, REVIEW, RELEASE
STATUS DT: 12-11-2015  STATUS CODE: REJ STATUS REASON: OTH
INCRPTNO.:           RCT:    EXT:  DATE ENTD: 12-11-2015
REMARKS..: FILE APPEAL TO THE REGION WHERE YOU ARE CURRENTLY
           HOUSED - SOUTH CENTRAL.


G0002      MORE PAGES TO FOLLOW . . .


439

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 838304-R1       SUB1: 34CM SUB2: 13GM DATE RCV:    12-11-2015
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U       FACL RCV: CRW
UNT  ORG..:A/B/E GP     QTR ORG.: Z01-110LAD     FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1                   RESP DUE:
ABSTRACT.: DISCRIMINATION/HOUSING UNIT
STATUS DT: 12-11-2015  STATUS CODE: REJ STATUS REASON: OTH
INCRPTNO.:           RCT:   EXT:  DATE ENTD: 12-11-2015
REMARKS..: FILE APPEAL TO REGION WHERE YOU ARE CURRENTLY
           HOUSED - SOUTH CENTRAL.



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 834806-R2       SUB1: 26ZM SUB2:      DATE RCV:    12-11-2015
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U       FACL RCV: CRW
UNT  ORG..:A/B/E GP     QTR ORG.: A05-020U       FACL ORG: WAS
EVT FACL.: WAS     ACC LEV: WAS  1                   RESP DUE:
ABSTRACT.: OTHER MEDICAL MATTERS
STATUS DT: 12-11-2015  STATUS CODE: REJ STATUS REASON: UTR MEM RSA OTH
INCRPTNO.:           RCT:   EXT:  DATE ENTD: 01-08-2016
REMARKS..: YOU ARRIVED ON 11-3-15, YOU DID NOT SUBMIT APPEAL
           UNTIL 12-11-15, PLEASE HAVE STAFF PROVIDE MEMO AS TO
           WHY YOUR APPEAL IS UNTIMELY.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 443 of 518  PageID 1373

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: BOP
REMEDY ID: 834790-A1      SUB1: 22CM SUB2: 29AM DATE RCV:   12-14-2015
UNT  RCV..:UNIT 2        QTR RCV.: I04-231U       FACL RCV: CRW
UNT  ORG..:A/B/E GP      QTR ORG.: A05-020U       FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1 BOP  1   RESP DUE: FRI  02-12-2016
ABSTRACT.: A/D CONDITIONS WHILE ON HUNGER STRIKE
STATUS DT: 10-19-2016  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:             RCT: P EXT: P DATE ENTD: 01-07-2016
REMARKS..:
```

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 838304-R2      SUB1: 34CM SUB2: 13GM DATE RCV:   12-24-2015
UNT  RCV..:UNIT 2        QTR RCV.: I04-231U       FACL RCV: CRW
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-110LAD     FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1                 RESP DUE:
ABSTRACT.: DISCRIMINATION/HOUSING UNIT
STATUS DT: 12-24-2015  STATUS CODE: REJ STATUS REASON: UTR MEM RSA OTH
INCRPTNO.:             RCT:    EXT:  DATE ENTD: 01-08-2016
REMARKS..: YOUR APPEAL WAS FILED UNTIMELY. YOUR APPEAL WAS
           SIGNED BY THE WARDEN 10-21-15, YOU DID NOT APPEAL
           UNTIL 12-11-2015. PLEASE PROVIDE REASON FOR DELAY.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

441

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 444 of 518 PageID 1374

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 838709-R2      SUB1: 22AM SUB2:      DATE RCV:   12-24-2015
UNT  RCV..:UNIT 2      QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-110LAD    FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1              RESP DUE:
ABSTRACT.: ADMIN DETN - PLACEMENT, REVIEW, RELEASE
STATUS DT: 12-24-2015  STATUS CODE: REJ STATUS REASON: UTR MEM RSA
INCRPTNO.:           RCT:  EXT:  DATE ENTD: 01-08-2016
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I02-252L   RCV OFC: NCR
REMEDY ID: 832741-R2      SUB1: 21AM SUB2:      DATE RCV:   12-28-2015
UNT  RCV..:UNIT 2      QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:A/B/E GP      QTR ORG.: Z01-122LAD    FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS  1 NCR  1        RESP DUE:
ABSTRACT.: UDC ACTION
STATUS DT: 12-28-2015  STATUS CODE: REJ STATUS REASON: OTH
INCRPTNO.: 2747344 RCT:   EXT:  DATE ENTD: 12-29-2015
REMARKS..: FILE APPEAL TO THE REGION WHERE YOU ARE CURRENTLY
           HOUSED - SOUTH CENTRAL




G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 445 of 518 PageID 1375

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 850282-R1      SUB1: 37AM SUB2:      DATE RCV:   01-11-2016
UNT  RCV..:UNIT 2         QTR RCV.: I04-231U    FACL RCV: CRW
UNT  ORG..:UNIT 2         QTR ORG.: I04-231U    FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                         RESP DUE:
ABSTRACT.: CLAIMS MALE STAFF ARE PRESENT WHEN BEING STRIP SEARC
STATUS DT: 01-11-2016  STATUS CODE: REJ STATUS REASON: WRL INF INS FRM OTH
INCRPTNO.:          RCT:    EXT:  DATE ENTD: 02-01-2016
REMARKS..: PLEASE START THE PROCESS AT THE INSTITUTIONAL LEVEL
              ADDRESSING EACH ISSUE SEPARATELY.



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 848590-F1      SUB1: 22EM SUB2: 34AM DATE RCV:   01-14-2016
UNT  RCV..:UNIT 2         QTR RCV.: I04-231U    FACL RCV: CRW
UNT  ORG..:UNIT 2         QTR ORG.: I04-231U    FACL ORG: CRW
EVT FACL.: WAS     ACC LEV:  CRW  1 SCR  1         RESP DUE:  WED  02-03-2016
ABSTRACT.: USE OF FORCE TO OBTAIN BLOOD SAMPLE.
STATUS DT: 01-20-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 01-14-2016
REMARKS..:


              CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
THU 01-21-2016     SIS          SJ    01-14-2016    INV        01-20-2016
```

G0002        MORE PAGES TO FOLLOW . . .

443

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 446 of 518 PageID 1376

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L  RCV OFC: SCR
REMEDY ID: 850887-R2      SUB1: 34BM SUB2:      DATE RCV:   01-25-2016
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U     FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-231U     FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                       RESP DUE:
ABSTRACT.: CLAIMS STAFF THREATENED TRANSFER FOR FILING REMEDIES
STATUS DT: 01-25-2016  STATUS CODE: REJ STATUS REASON: SEN
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 04-13-2016
REMARKS..:


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L  RCV OFC: SCR
REMEDY ID: 850282-R2      SUB1: 37AM SUB2:      DATE RCV:   01-27-2016
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U     FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-231U     FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                       RESP DUE:
ABSTRACT.: CLAIMS MALE STAFF ARE PRESENT WHEN BEING STRIP SEARC
STATUS DT: 01-27-2016  STATUS CODE: REJ STATUS REASON: WRL INF INS FRM OTH
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 02-03-2016
REMARKS..: PLEASE START THE PROCESS AT THE INSTITUTIONAL LEVEL
           ADDRESSING EACH ISSUE SEPARATELY.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

444

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 850887-R1       SUB1: 34BM SUB2:       DATE RCV:   01-29-2016
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-231U      FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                       RESP DUE:
ABSTRACT.: CLAIMS STAFF THREATENED TRANSFER FOR FILING REMEDIES
STATUS DT: 01-29-2016  STATUS CODE: REJ STATUS REASON: WRL INF INS FRM
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 02-05-2016
REMARKS..:
```

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 848590-R1       SUB1: 22EM SUB2: 34AM DATE RCV:   02-04-2016
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-231U      FACL ORG: CRW
EVT FACL.: WAS     ACC LEV:  CRW  1 SCR  1         RESP DUE: SAT 03-05-2016
ABSTRACT.: USE OF FORCE TO OBTAIN BLOOD SAMPLE.
STATUS DT: 02-23-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:  DATE ENTD: 02-16-2016
REMARKS..:
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

445

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 448 of 518 PageID 1378

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 838304-R3      SUB1: 34CM SUB2: 13GM DATE RCV:   02-16-2016
UNT  RCV..:UNIT 2      QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:A/B/E GP    QTR ORG.: Z01-110LAD    FACL ORG: WAS
EVT FACL.: WAS    ACC LEV: WAS 1                     RESP DUE:
ABSTRACT.: DISCRIMINATION/HOUSING UNIT
STATUS DT: 02-16-2016  STATUS CODE: REJ STATUS REASON: UTR MEM RSA OTH MLT
INCRPTNO.:          RCT:   EXT:  DATE ENTD: 02-19-2016
REMARKS..: YOU ARRIVED ON 11-3-15, YOU SUBMITTED ON 12-11-15.
           YOUR APPEAL IS UNTIMELY AND WILL NOT BE ACCEPTED.
           YOU HAVE ALSO RETURNED UNTIMELY.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 859784-F1      SUB1: 34AM SUB2:      DATE RCV:   04-21-2016
UNT  RCV..:UNIT 2      QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: I04-231U      FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW 1               RESP DUE:  WED  05-11-2016
ABSTRACT.: CLAIMS STAFF STRUCK ANOTHER INMATE WITH SHOE
STATUS DT: 04-29-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:          RCT: P EXT:  DATE ENTD: 04-22-2016
REMARKS..:


              CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE          DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
FRI 04-29-2016    SIS          GS    04-22-2016    INV         04-29-2016
```

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 449 of 518 PageID 1379

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 859785-F1       SUB1: 34ZM SUB2: 36AM DATE RCV:    04-21-2016
UNT  RCV..:UNIT 2         QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:UNIT 2         QTR ORG.: I04-231U      FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1              RESP DUE:  TUE  05-31-2016
ABSTRACT.: CLAIMS DENTAL I/M'S HAVE ACCESS TO HER MED RECORDS
STATUS DT: 06-20-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:               RCT: P EXT: P DATE ENTD: 04-22-2016
REMARKS..:


                 CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE            DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
FRI 04-29-2016      SIS          GS    04-22-2016    INV         06-20-2016




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 859788-F1       SUB1: 33HM SUB2:      DATE RCV:    04-21-2016
UNT  RCV..:UNIT 2         QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:UNIT 2         QTR ORG.: I04-231U      FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1              RESP DUE:  TUE  05-31-2016
ABSTRACT.: DELAY IN GRIEVANCE RESPONSES & REIMBURSEMENT FOR R1
STATUS DT: 06-10-2016  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:               RCT: P EXT: P DATE ENTD: 04-22-2016
REMARKS..:


                 CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE            DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
FRI 04-29-2016      ADMIN REM    PC    04-22-2016    INV         06-10-2016




G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 450 of 518 PageID 1380

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 859898-F1        SUB1: 10AM SUB2:        DATE RCV:   04-25-2016
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U       FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-231U       FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1              RESP DUE: SAT  06-04-2016
ABSTRACT.: TRANSFER TO CAMP AWAY FROM VIOLENT STAFF & INMATES
STATUS DT: 06-20-2016  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:               RCT: P EXT: P DATE ENTD: 04-25-2016
REMARKS..:


                 CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE            DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
MON 05-02-2016      UNT MGT      LCR   04-25-2016     INV        06-20-2016




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 860102-R1        SUB1: 34AM SUB2:        DATE RCV:   04-25-2016
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U       FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-231U       FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                     RESP DUE:
ABSTRACT.: CLAIMS STAFF ASSAULTED OTHER INMATES W/ A SHOE.
STATUS DT: 04-25-2016  STATUS CODE: REJ STATUS REASON: WRL INF INS FRM OTH
INCRPTNO.:             RCT:   EXT:  DATE ENTD: 04-26-2016
REMARKS..: PLEASE START THE APPEAL PROCESS AT THE INSTITUTIONAL
           LEVEL. YOU ARE NOT TO APPEAL FOR OTHER INMATES.
```

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 451 of 518  PageID 1381

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 861573-F1       SUB1: 16ZM SUB2: 34AM DATE RCV:   05-09-2016
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-231U      FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:  CRW  1              RESP DUE:  SAT 06-18-2016
ABSTRACT.: CLAIMS STAFF ALLOWED I/M ACCESS MAIL/OTHER MAIL ISSU
STATUS DT: 06-14-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:             RCT: P EXT: P DATE ENTD: 05-09-2016
REMARKS..:


                  CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO   DATE ASSN    TRK TYPE    DATE RETURNED
MON 05-16-2016     SIS          GS   05-09-2016    INV         06-14-2016




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 861663-F1       SUB1: 34ZM SUB2: 36AM DATE RCV:   05-10-2016
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-231U      FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:  CRW  1              RESP DUE:  SUN 06-19-2016
ABSTRACT.: CLAIMS STAFF RETALIATION 4 PREA RPT WAS/PRIVACY BRCH
STATUS DT: 06-15-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:             RCT: P EXT: P DATE ENTD: 05-10-2016
REMARKS..:


                  CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO   DATE ASSN    TRK TYPE    DATE RETURNED
TUE 05-17-2016     SIS          GS   05-10-2016    INV         06-15-2016








G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 452 of 518   PageID 1382

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 866092-F1      SUB1: 34CM SUB2:        DATE RCV:   06-14-2016
UNT  RCV..:UNIT 2        QTR RCV.: I04-231U       FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: I04-231U       FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: RACIAL DISCRIMINATION
STATUS DT: 06-17-2016  STATUS CODE: REJ STATUS REASON: INF
INCRPTNO.:            RCT:    EXT:   DATE ENTD: 06-17-2016
REMARKS..: NO INFORMAL RESOLUTION ATTEMPT



REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 882838-F1      SUB1: 34ZM SUB2:        DATE RCV:   11-14-2016
UNT  RCV..:UNIT 2        QTR RCV.: I04-231U       FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: I04-231U       FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1                 RESP DUE: SAT 12-24-2016
ABSTRACT.: I/M CLAIMING OFFICER PHYSICALLY THREATENED HER.
STATUS DT: 12-19-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 11-16-2016
REMARKS..: I/M CLAIMING STAFF MISCONDUCT.


          CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE             DEPARTMENT    TO    DATE ASSN    TRK TYPE    DATE RETURNED
SAT 11-26-2016       CORR PGM      JL    11-26-2016     INV        12-16-2016
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

450

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 453 of 518 PageID 1383

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 885656-F1       SUB1: 34ZM SUB2:      DATE RCV:   12-09-2016
UNT  RCV..:UNIT 2       QTR RCV.: I04-231U      FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-231U      FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1               RESP DUE:  THU  12-29-2016
ABSTRACT.: I/M COMPLAINT AGAINST STAFF.
STATUS DT: 12-29-2016  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT:   DATE ENTD: 12-12-2016
REMARKS..:


                  CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT  TO   DATE ASSN   TRK TYPE   DATE RETURNED
THU 12-22-2016     SIS         JL   12-12-2016   INV        12-27-2016




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 891194-F1       SUB1: 34AM SUB2:      DATE RCV:   02-07-2017
UNT  RCV..:UNIT 2       QTR RCV.: I04-233U      FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-233U      FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1               RESP DUE:  MON  02-27-2017
ABSTRACT.: I/M COMPLAINT AGAINST STAFF.
STATUS DT: 02-23-2017  STATUS CODE: CLO STATUS REASON: OTH
INCRPTNO.:           RCT: P EXT:   DATE ENTD: 02-07-2017
REMARKS..:


                  CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT  TO   DATE ASSN   TRK TYPE   DATE RETURNED
FRI 02-17-2017     SIS         JL   02-07-2017   INV        02-23-2017
```

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 454 of 518  PageID 1384


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 891194-R1      SUB1: 34AM SUB2:      DATE RCV:   03-06-2017
UNT  RCV..:UNIT 2       QTR RCV.: I04-233U      FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-233U      FACL ORG: CRW
EVT FACL.: CRW     ACC LEV: CRW  1              RESP DUE:
ABSTRACT.: I/M COMPLAINT AGAINST STAFF.
STATUS DT: 03-06-2017  STATUS CODE: REJ STATUS REASON: MLT RSA OTH
INCRPTNO.:            RCT:    EXT:  DATE ENTD: 03-24-2017
REMARKS..: RESUBMIT BP-10 WITH ONLY ORIGINAL COMPLAINT REGAR-
           DING STAFF. ATTEMPT HALFWAY HOUSE REQUEST AT THE
           INSTITUTIONAL LEVEL.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 894967-F1      SUB1: 10ZM SUB2: 21AM DATE RCV:   03-14-2017
UNT  RCV..:UNIT 2       QTR RCV.: I04-233U      FACL RCV: CRW
UNT  ORG..:UNIT 2       QTR ORG.: I04-233U      FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                     RESP DUE:
ABSTRACT.: I/M REQUESTING TO HAVE INCIDENT REPORT EXPUNGED.
STATUS DT: 03-14-2017  STATUS CODE: REJ STATUS REASON: UTF
INCRPTNO.:            RCT:    EXT:  DATE ENTD: 03-14-2017
REMARKS..: I/M REQUESTING TO BE TRANSFERRED TO FPC BRYAN.


G0002       MORE PAGES TO FOLLOW . . .


452

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 455 of 518 PageID 1385

REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L  RCV OFC: SCR
REMEDY ID: 894967-R1      SUB1: 10ZM SUB2: 21AM DATE RCV:   03-23-2017
UNT  RCV..:UNIT 2      QTR RCV.: I04-233U      FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: I04-233U      FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                      RESP DUE:
ABSTRACT.: I/M REQUESTING TO HAVE INCIDENT REPORT EXPUNGED.
STATUS DT: 03-23-2017  STATUS CODE: REJ STATUS REASON: UTR OTH
INCRPTNO.:           RCT:    EXT:   DATE ENTD: 04-12-2017
REMARKS..: YOUR CHALLENGE TO A TRANSFER DECISION MADE 7 MONTHS
           AGO IS UNTIMELY.


REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L  RCV OFC: CRW
REMEDY ID: 900073-F1      SUB1: 34ZM SUB2:      DATE RCV:   04-25-2017
UNT  RCV..:UNIT 2      QTR RCV.: I02-252L      FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: I02-252L      FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1               RESP DUE:  SUN  06-04-2017
ABSTRACT.: I/M COMPLAINT AGAINST STAFF.
STATUS DT: 05-19-2017  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 04-28-2017
REMARKS..:


                CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE          DEPARTMENT   TO    DATE ASSN   TRK TYPE   DATE RETURNED
WED 05-10-2017    SIS          JL    04-28-2017    INV       05-18-2017

G0002      MORE PAGES TO FOLLOW . . .

453

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 456 of 518  PageID 1386

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 900084-F1      SUB1: 10AM SUB2: 34ZM DATE RCV:   04-25-2017
UNT  RCV..:UNIT 2        QTR RCV.: I02-252L       FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: I02-252L       FACL ORG: CRW
EVT FACL.: CRW     ACC LEV: CRW  1              RESP DUE:  SUN  06-04-2017
ABSTRACT.: I/M REQUESTING TRANSFER.
STATUS DT: 05-19-2017  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 04-28-2017
REMARKS..: I/M COMPLAINT AGAINST STAFF.



                CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
WED 05-10-2017     CORR PGM     LCR   04-28-2017     INV        05-18-2017




REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2                QTR.: I02-252L   RCV OFC: CRW
REMEDY ID: 904826-F1      SUB1: 34ZM SUB2:        DATE RCV:   06-08-2017
UNT  RCV..:UNIT 2        QTR RCV.: I02-252L       FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: I02-252L       FACL ORG: CRW
EVT FACL.: CRW     ACC LEV:                     RESP DUE:
ABSTRACT.: I/M COMPLAINT AGAINST STAFF.
STATUS DT: 06-08-2017  STATUS CODE: REJ STATUS REASON: INF SEN
INCRPTNO.:            RCT:   EXT:  DATE ENTD: 06-08-2017
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

454

```
REGNO: 20446-009 NAME: FLEMING, RHONDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I02-252L   RCV OFC: SCR
REMEDY ID: 904826-R1        SUB1: 34ZM SUB2:   DATE RCV:   06-19-2017
UNT  RCV..:UNIT 2      QTR RCV.: I02-252L    FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: I02-252L    FACL ORG: CRW
EVT FACL.: CRW    ACC LEV:                        RESP DUE:
ABSTRACT.: I/M COMPLAINT AGAINST STAFF.
STATUS DT: 06-19-2017  STATUS CODE: REJ STATUS REASON: SEN WRL INS INF FRM
INCRPTNO.:            RCT:   EXT:   DATE ENTD: 07-10-2017
REMARKS..: YOU MUST FIRST ATTEMPT AN INFORMAL RESOLUTION AT THE
           INSTITUTIONAL LEVEL.
```

```
          185 REMEDY SUBMISSION(S) SELECTED
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

# Attachment C

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

~~SENSITIVE~~

**REQUEST FOR ADMINISTRATIVE REMEDY**

_Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse._

From: Fleming Rhonda A        20448-009    2S    FMC Carswell

LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A– INMATE REQUEST**

Please See Attached
4 copies of Sensitive
Grievances on blackmailing
by SIS Lt. Sosa

02-08-17                              _[signature]_
DATE                              SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____        _____
DATE                              WARDEN OR REGIONAL DIRECTOR

_If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response._

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE        CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        _____        457
DATE                              RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN        ♲ PRINTED ON RECYCLED PAPER        BP–229(13)
APRIL 1982

On February 6, 2017, at 7:25am, I approached Lt. Soza about male transgender inmates obstructing my access to the law library because I had filed a Motion to Intervene in Texas v. United States, No. 7:16-cv-00054 (N.D. Tex. 2016), a case involving transgender access to women's intimate facilities.

I was blackmailed by Lt. Soza, when she stated that my legal activities could be considered sexual harassment of the male transgender inmates.  The tenor of the conversation was that if I did not stop my legal filings on the matter, I would be accused of sexual harassment.

I asked for the definition of "sexual harassment" and was told that by exposing myself or pushing myself on an inmate, it is perceived as harassment.  My response was simple. I wanted to know why Mr. Linda Thompson, who stripped completely naked in front of 300 women, was not prosecuted for indecent exposure under 18 USC § 13 and Texas Penal Code § 21.08(a)?  I also asked why Mr. Thompson was not held in the SHU for sexual harassment after exposing himself?  After-all, this is not mere inmate allegations, but Mr. Thompson was viewed by inmates and staff members...he walked around the unit in full view of over 300 women who felt violated.

Lt. Soza sought to compel me to act in a particular way, by threatening to use her authority to open a sexual harass-ment investigation if I did not stop filing documents regard-ing the daily intimidation by male transgender inmates in a women's prison.

I have been incarcerated for over a decade on charges of Medicare fraud.  There is not a whisper of any sexual deviant conduct by Rhonda Ann Fleming.  In fact, I repeatedly ask that I not be placed in a cell with inmates that "cheek" medications and gay women.  I am not anti-gay, but I do not want ever to be approached by anyone that is gay.

Lt. Soza also failed to investigate the obstruction of my access to the courts by Mr. Linda Thompson on January 31, 2017, where he came to the law library with a stick and threatened me about the filings in the court.  Peter Langan obtained these court documents and instigated to lead Thompson to attack me.  Langan is another man in prison that has duped the BOP into believing he wants to be a woman.  Langan is a white supremacist and dangerous, but again, Lt. Soza did not protect me, but stated she would shut me down, place me in the SHU, on allegations by Langan and Thompson that I sexually harassed them.

If any such allegation is ever placed in my prison record, I will sue anyone that is a party to this blackmailing of a woman who has told the truth about what is happening at the prison and will happen in the community if men have access to women's intimate facilities.

Rhonda Fleming #20446-009
02/06/2017

458

| FLEMING, Rhonda | 20446-009 | 2 South |
| --- | --- | --- |
| **INMATE NAME** | **REGISTER NUMBER** | **UNIT** |

This is in response to your Request for Administrative Remedy #891194-F1, received in the Warden's office on February 7, 2017, wherein you reported you were blackmailed by a Correctional Supervisor. Specifically, you allege the Correctional Supervisor threatened to open an investigation on you if you did not stop filing documents regarding the daily intimidation committed by male transgender inmates housed in a female facility.

The Federal Bureau of Prisons, as well as the Federal Medical Center Carswell is tasked with providing a safe and secure environment while maintaining a high level of professionalism by all staff. Your concern has been forwarded to the appropriate official for consideration and any necessary action. Inmates are not advised of the outcome of staff member investigations or any disciplinary action taken.

If you are not satisfied with this decision, you may appeal to the Regional Director at: Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051.  Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.

_____          _____2-21-17_____
Jody R. Upton, Warden                                      Date

459

# Attachment D

# REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:** FLEMING, RHONDA ANN     20446-009     2-South     FMC-CRS

     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

## Part A– INMATE REQUEST

There is a lot of talking and no action in protecting me against men in the prison and their supporters.  The prison is documenting, falsely, that I have been offered protection, but their protection is to get me somewhere that they can put something in my food or force medical treatment in a manner that will kill me the way they murdered Pamela Davis and Christina D. Armstrong, but I will provide that information to the real investigative authorities at a later date...but it happened.

I am being retaliated against by Lt. Soza, who is using her employees, to question me about gift sent to me by Kalin Dao's mother, without my knowledge or me soliciting anything from them.  People are being abused, denied food, and likely murdered by the medical staff and they have time to ask me about a trivial amount of money on my trust fund account.

All I expect is equal treatment, which does not occur for the black inmate and I will prove that by referring to Charlsa Little, who admitted to soliciting 5 inmates into putting money on her account, for stolen commissary items, and still was allowed to transfer to FPC Bryan, with no incident report.

Little made a deal with Lt. Soza, that she would not continue to litigate against men being housed with women and in return no incident report would be written.

4-16-17          SEE NEXT PAGE

   **DATE**                                      **SIGNATURE OF REQUESTER**

## Part B– RESPONSE

 

   DATE                                       WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE**      CASE NUMBER: 900073-F1

                                           CASE NUMBER: _____

## Part C– RECEIPT

Return to: _____

     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

   DATE                           RECIPIENT'S SIGNATURE (STAFF MEMBER)     461

USP LVN          PRINTED ON RECYCLED PAPER                                  BP-229(13)

                                                             APRIL 1982

Little did write the court and asked to be removed from the case, but soon withdrew that request, but still transferred to FPC Bryan. Inmates that put money on Little's account like Nowlin, Chopra, and others, were interviewed by SIS and admitted paying Little by putting money on her account. They even came to our cell asking her why she gave them up.

On March 8, 2017, after Little transferred, I asked the warden why he allowed me to be denied transfer to FPC Bryan for a similar incident, but not Little. Warden Upton stated putting money on people's accounts is not against the rules, only if it is for nefarious reasons. My response was "for selling stolen commissary items, no incident report?"

Harassing me about a gift sent without me soliciting it, is retaliation, for my litigation against the institution. The prison does not want Dao and others like her to tell the courts that they are being abused by inmate nurse assistants, who rob, extort, and beat up the disabled and elderly. Lt. Soza and others turn their heads and keep letting it happen.

January 2016, I witnessed Nurse Fuentes allowing INAs conduct a use of force on an elderly, mentally ill inmate. This conduct continues, but they got time to ask me about some pennies. Sad. Why? Because there is a conflict of interest in trying to stop the authorities over the prison from knowing about the death panels they have going on in here, where nurses decide who lives and who dies.

The relief I request is for an external investigation of Lt. Soza and her unlawful use of the SIS department based on her personal vendetta against me. Are we suppose to believe that SIS randomly found out that Kalin Dao's mother sent money or that there is a unconstitutional focus of investigations against inmates that are exposing FMC Carswell for what it is?

I also request transfer to a community confinement center or home confinement because Lt. Soza is a threat to my safety over the transgender issue. She is a rabid advocate of these men, even making speeches to the new inmates coming from Oklahoma. This is wrong and not part of her responsibilities to indoctrinate inmates into immorality.

I was questioned by Officer Conover about money because of Lt. Soza and we all know it. Nice officer, but she can't fool me or Dao. What made anyone in SIS look at Kalin Dao's account or mine? This is retaliation that is so obvious, not even Internal Affairs in D.C. will go along with this.

Since they have all that time to harass me, I am going to make sure that they have something more important to look into, like answering questions about the deaths of Davis and Armstrong.

Rhonda Fleming
April 16, 2017

| FLEMING, Rhonda | 20446-009 | Unit 2S |
|---|---|---|
| **INMATE NAME** | **REGISTER NUMBER** | **UNIT** |

This is in response to your Request for Administrative Remedy #900073-F1, received in the Warden's office on April 25, 2017, wherein you reported various allegations. You state you have not been protected from men housed in FMC Carswell. You further reported you have been offered protection which you perceive as a ploy for staff to put something in your food or force medical treatment upon you in a manner that will kill you. You allege the SIS Lieutenant is retaliating against you by using her employees to question you regarding a gift sent to you by another inmate's family member. You allege inmates are being abused, denied food, and likely murdered by medical staff. You allege the SIS Lieutenant showed preferential treatment toward another inmate in a disciplinary case similar to yours. For relief, you request an external investigation of the SIS Lieutenant as well as a transfer to a community confinement center.

The Federal Bureau of Prisons, as well as the Federal Medical Center Carswell is tasked with providing a safe and secure environment while maintaining a high level of professionalism by all staff. Allegations concerning staff misconduct are taken seriously. Your allegations have been forwarded to the appropriate authority for review and, as necessary, action.

In regards to a transfer to a Community Confinement Center or Home Confinement, an investigation into this matter reveals you will be reviewed for pre-release Residential Reentry Center placement or Home Confinement 17-19 months before your projected release date. The maximum available pre-release RRC placement time frame is 12 months and home confinement time frame is six months or ten percent of the term of imprisonment.

Based on this information, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the Regional Director at: Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051. Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.

_____          _____5-19-17_____
Jody R. Upton, Warden                                      Date

# Attachment E

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Fleming, Rhonda Ann | 20446-009 | 2N | FMC-CRS |
|---|---|---|---|---|
| | **LAST NAME, FIRST, MIDDLE INITIAL** | **REG. NO.** | **UNIT** | **INSTITUTION** |

**Part A- INMATE REQUEST**

I am requesting a non-punitive institutional transfer to a community confinement center or home confinement because FMC Carswell is unable to protect me whether in genderalpopulation or if placed in the Special Housing Unit.

I am a plaintiff in a federal case requesting the removal of biological men from women's prison because it has created circumstances in violaton of my right to be free from cruel and uncusual punishment.

I am verbally and physically attacked hour-by-hour due to the obsession with this divisive issue. The institution has been made aware of the numerous death threats made by the men and women inmates, aw well as staff, that support this immoral practice of housing men as women. It is a Catch-22 situation, where the prison administrators have signaled the inmates and staff their disapproval of my litigation by failing to take any action towards inmates who are physicall and verbally aggressive with me

On April 10, 2017, I was placed in acell with a rabid transgender/Clinton supporter, who is in bunk 251L, who continues to invite inmates in the cell to harass and threaten me. Inmates in 237L and 247L repeatedly enter my assigned cell, although I have reported this matter to SIS and the unit officers that are on duty. The only action taken is to take the televisions from the entire unit, instead of disciplinary action against those

SEE NEXT PAGE

| 4-16-17 | | C.R. |
|---|---|---|
| **DATE** | | **SIGNATURE OF REQUESTER** |

**Part B- RESPONSE**

<br>

| _____ DATE | _____ WARDEN OR REGIONAL DIRECTOR |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE**          CASE NUMBER: 900084-F1

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____

| | **LAST NAME, FIRST, MIDDLE INITIAL** | **REG. NO.** | **UNIT** | **INSTITUTION** |
|---|---|---|---|---|

SUBJECT: _____

| _____ DATE | ♻ PRINTED ON RECYCLED PAPER | _____ RECIPIENT'S SIGNATURE (STAFF MEMBER) | 465 |
|---|---|---|---|

UISP LVN

inmates that are bullying me with the approval of the prison administrators.
The inmate in the cell with me, 251L, continues physically aggressive behavior in the cell, in an obvious attempt to get me into a fight. I believe she has been told to do this by prison staff, who have routinely offered to place a non-violent, middle-aged inmate that stays alone, in the SHU, probably to beat me up once I am back there and it has happened in the SHU.

On 4-14-2017, between 8:55pm and 9:05pm, this inmate entered the room with a stick and cleaning chemicals, pretending to clean the cell when we are restricted in preparation for count. She kept swinging that stick while I sat in my bunk and I was afraid she was going to hit me with the stick. She can be seen entering the cell with this stick on the cameras, however, I do want to note that when I was moved, a staff member noted they had moved me where cameras can't see what is going on in my cell. I have previously used cameras to prove staff misconduct against me in the cell--example Officer Passon harassing me in 2016, on camera. So, Unit Manager Cole-Rowls intentionally moved me away from cameras and in a cell with this young aggressive inmate.

On 4-15-17, between 10:25 to 10:35am, the inmate in 237L, entered the cell and blocked my entry into my locker, after numerous times of me asking her not to enter the cell. The rule is that an inmate is not even suppose to stand in front of a cell and most definitely not enter the cell. Again, on 4-15-17, between 9:15-25pm, 247L, entered the cell and refused to leave, although I politely asked her to do so.

These events are on camera, but the staff continues to allow these inmates to bully me and others that report such conduct. To my knowledge, no inmate that has threaten me or came into my cell, out of bounds, has ever had any disciplinary action taken against them.

The institution has signaled inmates and staff members, by their inaction to harm me, because I am the lead plaintiff in a case they disapprove of because they want men in women's prison.

The only remedy offered to me has been the punitive action of long-term placement in the SHU, in retaliation for raising my claims in the court.

The BOP has the statutory authority and duty to make a non-punitive transfer, in extraordinary circumstances, where there is a credible threat to an inmate which threatens the security of the institution.

Until litigation in the transgender case is completed, I request transfer to a community confinement center or home confinement in Dallas or Houston. In addition, my location should not be published on bop.gov.

Rhonda Fleming
April 16, 2017
2 South-252L

466

| FLEMING, Rhonda Ann | 20446-009 | 2 South |
|---|---|---|
| **INMATE NAME** | **REGISTER NUMBER** | **UNIT** |

This is in response to your Request for Administrative Remedy # 900084-F1, received in the Warden's office on April 25, 2017, wherein you requested to be granted a non-punitive institutional transfer to a community confinement center or home confinement because you fear for your safety. You request a transfer where you will be safe from violent Bureau of Prisons staff and inmates.

An investigation into this matter revealed inmates are reviewed for pre-release community confinement center placement 17-19 months before their projected release date (PRD). Your current projected release date is March 23, 2034. Therefore, your PRD is outside the guidelines for community confinement center review.

In regards to your allegation of staff misconduct, the Bureau of Prisons, as well as the Federal Medical Center (FMC), Carswell is tasked with providing a safe and secure environment while maintaining a high level of professionalism by all staff. Your concern has been forwarded to the appropriate official for consideration and any necessary action.

Based on the above information, your Request for Administrative Remedy is denied.

If you are not satisfied with this decision, you may appeal to the Regional Director at: Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051. Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.

_____
Jody R. Upton, Warden

5-19-17
_____
Date

467

# Attachment F

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JULY 17, 2017

*Ben Bird*

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : RHONDA ANN FLEMING, 20446-009
      CARSWELL FMC      UNT: UNIT 2      QTR: I02-252L
      P.O. BOX 27066
      FORT WORTH,  TX 76127


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 904826-R1        REGIONAL APPEAL
DATE RECEIVED   : JUNE 19, 2017
SUBJECT 1       : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL.  YOU SHOULD HAVE FILED AT THE
                 INSTITUTION,   REGIONAL OFFICE, OR  CENTRAL
                 OFFICE LEVEL.

REJECT REASON 3: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REJECT REASON 4: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

REJECT REASON 5: YOU DID NOT SUBMIT YOUR REQUEST OR APPEAL ON THE PROPER
                 FORM (BP-9, BP-10, BP-11) (CIRCLE ONE)

REMARKS         : YOU MUST FIRST ATTEMPT AN INFORMAL RESOLUTION AT THE
                 INSTITUTIONAL LEVEL.

469

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __Fleming, Rhonda A.__    __20446-009__    __2-North__    __FMC Carswell__
       LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL**

I filed the attached grievance on a matter that is clearly "sensitive" where a BOP employee is retaliating and discriminating against a prisoner based on their litigation against the prison placing male transgender men in a women's prison and because the prisoner is Jewish, and the staff member is a Muslim. I asked my unit counselor if this matter could be resolved "informally" and he said it could not be, that it was a "sensitive" matter. A review of the BP-9 shows that there is no opportunity to informally resolve an unconsitutional action that has already occurred and I have no interest in false apologies. It may be noted that my request for relief included the return of my money and the release of holds on my trust fund account. As of this date, the Muslim BOP supervisor of the Trust Fund, is in violation of a federal court order issued some 2 weeks ago and forwarded to her email account. The relief requested in the BP-9 is the same request I am making at this time.

__6-14-17__
DATE

_(signature)_
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

JUN 19 2017

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

_____
REGIONAL DIRECTOR

CASE NUMBER: __904826-R1__

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____        _____
DATE                 SIGNATURE, RECIPIENT OF REGIONAL APPEAL

470

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Fleming, Rhonda A.            20446-009        2-North      FMC Carswell
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.        UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**

I filed the attached grievance of a matter that is clearly "sensitive" where a BOP employee is retaliating and discriminating against a prisoner based on their litigation against the prison placing male transgender men in a womens prison and because the prisoner is Jewish, and the staff member is a Muslim. I asked my unit counselor if this matter could be resolved "informally" and he said it could not be, that it was a "sensitive" matter. A review of the BP-9 shows that there is no opportunity to informally resolve an unconstitutional action that has already occurred and I have no interest in false apologies. It may be noted that my request for relief included the return of my money and the release of holds on my trust fund account. As of this date, the Muslim BOP supervisor of the Trust Fund, is in violation of a federal court order issued some 2 weeks ago and forwarded to her email account. The relief requested in the BP-9 is the same request I am making at this time.

6-14-17
_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

_____            _____
DATE                        REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response. JUN 19 2017

FIRST COPY: REGIONAL FILE COPY                              CASE NUMBER: 904826-R1

BUREAU OF PRISONS
LEGAL DEPARTMENT SCRO

**Part C - RECEIPT**                                        CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.        UNIT          INSTITUTION

SUBJECT: _____

_____            _____                              471
DATE                        SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN                                                                   BP-230(13)
                                                                         JUNE 2002

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

~~SENSITIVE~~

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | Fleming, Rhonda A. | 20446-009 | 2-North | FMC Carswell |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

I filed the attached grievance of a matter that is clearly "sensitive" where a BOP employee is retaliating and discriminating against a prisoner based on their litigation against the prison placing male transgender men in a womens prison and because the prisoner is Jewish, and the staff member is a Muslim. I asked my unit counselor if this matter could be resolved "informally" and he said it could not be, that it was a "sensitive" matter. A review of the shows that there is no opportunity to informally resolve an unconsitutional action that has already occurred and I have no interest in false apologies. It may be noted that my request for relief included the return of my money and the release of holds on my trust fund account. As of this date, the Muslim BOP supervisor of the Trust Fund, is in violation of a federal court order issued some 2 weeks ago and forwarded to her email account. The relief requested in the BP-9 is the same request I am making at this time.

| 6-14-17 | _[signature]_ |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**



| _____ | _____ |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE          CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

| _____ | _____ | 472 |
|---|---|---|
| DATE | SIGNATURE, RECIPIENT OF REGIONAL APPEAL | |

UPN LVN

BP-230(13)
JUNE 2002

SENSITIVE

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _Fleming, Rhonda A._____  _20A46-009_  _2-North_  _FMC Carswell_
          LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**

I filed the attached grievance of a matter that is clearly "sensitive" where a BOP employee is retaliating and discriminating against a prisoner based on their litigation against the prison placing male transgender men in a women's prison and because the prisoner is Jewish, and the staff member is a Muslim. I asked my unit counselor if this matter could be resolved "informally" and he said it could not be, that it was a "sensitive" matter. A review of the (?) shows that there is no opportunity to informally resolve an unconstitutional action that has already occurred and I have no interest in false apologies. It may be noted that my request for relief includes the return of my money and the release of holds on my trust fund account. As of this date, the Muslim BOP supervisor of the Trust Fund, is in violation of a federal court order issued some 2 weeks ago and forwarded to her email account. The relief requested in the BP-9 is the same request I am making at this time.

_6-14-17_
DATE

_[signature]_
SIGNATURE OF REQUESTER

**Part B - RESPONSE**




_____          _____
DATE                                              REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE          CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
                      LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____          473
DATE                                              SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
JUNE 2002

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JUNE 8, 2017

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CARSWELL FMC

TO  : RHONDA ANN FLEMING, 20446-009
      CARSWELL FMC    UNT: UNIT 2    QTR: I02-252L
      P.O. BOX 27066
      FORT WORTH, TX 76127


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 904826-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED   : JUNE 8, 2017
SUBJECT 1       : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2       :
INCIDENT RPT NO:


REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

REJECT REASON 2: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REC'd

REC'd 6-12-2017

Delivered on 6/12/17

474

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Fleming, Rhonda A. | 20446-009 | 2-North | Carswell |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

On May 26, 2017, the institution was provided with a court receipt that my filing fees in Case Number 7:17-cv-0009-O, were paid in full on May 24, 2017. Although Ms. Abdullah was given a copy of the receipt and provided with the Court Clerk's contact information, she lied to me, stating, "Those fees are not paid, you still owe filing fees." This caused over $77 to be taken from my account on June 1, 2017, although I tried to resolve the matter on May 30, 2017, with the Trust Fund supervisor, Abdullah. I am Jewish and the Trust Fund supervisor is Muslim and I believe I was lied to and discriminated against based on Abdullah's religous tenets that Muslims may lie to infidels (non-believers). Many inmates come to prison owing court fees, and if their attorney or a family member pays the clerk directly the prison officials verify the fees are paid in full and they stop taking money from the inmate's account. The court order allowed the prison to take money "untill the fees are paid in full." The institution is in violation of the court order and I would like my account immediately credited. I would like this matter referred to Internal Affairs for investigation of prison staff violating a court order to retaliate against a Jewish inmate.

_6-1-2017_
DATE

_[signature]_
SIGNATURE OF REQUESTER

**Part B– RESPONSE**


DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _904826-F1_

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

DATE          RECIPIENT'S SIGNATURE (STAFF MEMBER)          475

BP-229(13)
APRIL 1982

U.S. DEPARTMENT OF JUSTICE     **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons

*Sensitive*

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Fleming, Rhonda A. | 20446-009 | 2-North | Carswell |
|-------|--------------------|-----------|---------|----------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

On May 26, 2017, the institution was provided with a court receipt that my filing fees in Case Number 7:17-cv-0009-O, were paid in full on May 24, 2017. Although Ms. Abdullah was given a copy of the receipt and provided with the Court Clerk's contact information, she lied to me, stating, "Those fees are not paid, you still owe filing fees." This caused over $77 to be taken from my account on June 1, 2017, although I tried to resolve the matter on May 30, 2017, with the Trust Fund supervisor, Abdullah. I am Jewish and the Trust Fund supervisor is Muslim and I believe I was lied to and discriminated against based on Abdullah's religous tenets that Muslims may lie to infidels (non-believers). Many inmates come to prison owing court fees, and if their attorney or a family member pays the clerk directly the prison officials verify the fees are paid in full and they stop taking money from the inmate's account. The court order allowed the prison to take money "untill the fees are paid in full." The institution is in violation of the court order and I would like my account immediately credited. I would like this matter referred to Internal Affairs for investigation of prison staff violating a court order to retaliate against a Jewish inmate.

| 6-1-2017 | | |
|----------|--|--|
| DATE | | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

| | |
|--|--|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE     CASE NUMBER: 904826-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|--|--|--|--|--|

SUBJECT: _____

| | |
|--|--|
| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

476

BP-229(13)
APRIL 1982

USP LVN

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Sensitive*

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Fleming, Rhonda A. | 20446-009 | 2-North | Carswell |
|-------|--------------------|-----------|---------|----------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

On May 26, 2017, the institution was provided with a court receipt that my filing fees in Case Number 7:17-cv-0009-O, were paid in full on May 24, 2017. Although Ms. Abdullah was given a copy of the receipt and provided with the Court Clerk's contact information, she lied to me, stating, "Those fees are not paid, you still owe filing fees." This caused over $77 to be taken from my account on June 1, 2017, although I tried to resolve the matter on May 30, 2017, with the Trust Fund supervisor, Abdullah. I am Jewish and the Trust Fund supervisor is Muslim and I believe I was lied to and discriminated against based on Abdullah's religous tenets that Muslims may lie to infidels (non-believers). Many inmates come to prison owing court fees, and if their attorney or a family member pays the clerk directly the prison officials verify the fees are paid in full and they stop taking money from the inmate's account. The court order allowed the prison to take money "untill the fees are paid in full." The institution is in violation of the court order and I would like my account immediately credited. I would like this matter referred to Internal Affairs for investigation of prison staff violating a court order to retaliate against a Jewish inmate.

6-1-2017

_____
DATE

_____
SIGNATURE OF REQUESTER

---

**Part B– RESPONSE**

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

SECOND COPY: RETURN TO INMATE | CASE NUMBER: 904826-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: _____

_____
DATE

_____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

477

BP-229(13)
APRIL 1982

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Sensitive*

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:** Fleming, Rhonda A.        20446-009        2-North        Carswell

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

### Part A– INMATE REQUEST

On May 26, 2017, the institution was provided with a court receipt that my filing fees in Case Number 7:17-cv-0009-O, were paid in full on May 24, 2017. Although Ms. Abdullah was given a copy of the receipt and provided with the Court Clerk's contact information, she lied to me, stating, "Those fees are not paid, you still owe filing fees." This caused over $77 to be taken from my account on June 1, 2017, although I tried to resolve the matter on May 30, 2017, with the Trust Fund supervisor, Abdullah. I am Jewish and the Trust Fund supervisor is Muslim and I believe I was lied to and discriminated against based on Abdullah's religous tenets that Muslims may lie to infidels (non-believers). Many inmates come to prison owing court fees, and if their attorney or a family member pays the clerk directly the prison officials verify the fees are paid in full and they stop taking money from the inmate's account. The court order allowed the prison to take money "untill the fees are paid in full." The institution is in violation of the court order and I would like my account immediately credited. I would like this matter referred to Internal Affairs for investigation of prison staff violating a court order to retaliate against a Jewish inmate.

6-1-2017
**DATE**

**SIGNATURE OF REQUESTER**

### Part B– RESPONSE

**DATE**

**WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**

CASE NUMBER: _____

CASE NUMBER: _____

### Part C– RECEIPT

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        ⊗        _____        478
DATE                                    RECIPIENT'S SIGNATURE (STAFF MEMBER)        BP-229(13)
APRIL 1982

# Attachment G

```
  CRWKM            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      08-01-2017
PAGE 001 OF 001                                                       13:50:41
        FUNCTION: L-P SCOPE: REG   EQ 47394-177   OUTPUT FORMAT: FULL
     -------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: ____ ____ ____ ____ ____ ____ ____ ____ ____ ____
EXTENDED: _ REMEDY LEVEL: _ _            RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ _____    _____    _____    _____    _____    _____
TRACK:  DEPT: _____  _____  _____  _____  _____  _____
      PERSON: ____     ____     ____     ____     ____     ____
        TYPE: ____     ____     ____     ____     ____     ____
EVNT FACL: EQ _____    _____    _____    _____    _____    _____
RCV FACL.: EQ _____    _____    _____    _____    _____    _____
RCV UN/LC: EQ _____  _____  _____  _____  _____  _____
RCV QTR..: EQ _____  _____  _____  _____  _____  _____
ORIG FACL: EQ _____    _____    _____    _____    _____    _____
ORG UN/LC: EQ _____  _____  _____  _____  _____  _____
ORIG QTR.: EQ _____  _____  _____  _____  _____  _____


  G5152       NO REMEDY DATA EXISTS FOR THIS INMATE
```

# Attachment H

```
            FUNCTION: L-P SCOPE: REG    EQ 10965-023    OUTPUT FORMAT: FULL
      ------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
EXTENDED: _ REMEDY LEVEL: _ _          RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ _____      _____      _____      _____      _____      _____
TRACK:  DEPT: _____ _____ _____ _____ _____ _____
        PERSON: ____      _____      _____      _____      _____      _____
          TYPE: ____      _____      _____      _____      _____      _____
EVNT FACL: EQ _____      _____      _____      _____      _____      _____
RCV FACL.: EQ _____      _____      _____      _____      _____      _____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ _____      _____      _____      _____      _____      _____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____
```

G0002      MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 485 of 518 PageID 1415

REGNO: 10965-023 NAME: DRIEVER, JEANETTE
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I04-232U  RCV OFC: PHX
REMEDY ID: 660992-F1      SUB1: 27BM SUB2: 27CM DATE RCV:   10-19-2011
UNT  RCV..:PAPAGO        QTR RCV.: C09-002U      FACL RCV: PHX
UNT  ORG..:PAPAGO        QTR ORG.: C09-002U      FACL ORG: PHX
EVT FACL.: PHX    ACC LEV: PHX  1 WXR  2        RESP DUE:  TUE  11-08-2011
ABSTRACT.: NEEDS DENTAL CARE AND DENTURES
STATUS DT: 11-04-2011  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT:   DATE ENTD: 10-19-2011
REMARKS..: STATES SHE IS NOT RECIEVING DENTAL CARE AND NEEDS
           DENTURES DUE TO PULLED TEETH


REGNO: 10965-023 NAME: DRIEVER, JEANETTE
RSP OF...: CRW UNT/LOC/DST: UNIT 2              QTR.: I04-232U  RCV OFC: WXR
REMEDY ID: 660992-R1      SUB1: 27BM SUB2: 27CM DATE RCV:   11-17-2011
UNT  RCV..:PAPAGO        QTR RCV.: C08-020U      FACL RCV: PHX
UNT  ORG..:PAPAGO        QTR ORG.: C09-002U      FACL ORG: PHX
EVT FACL.: PHX    ACC LEV: PHX  1 WXR  2        RESP DUE:
ABSTRACT.: NEEDS DENTAL CARE AND DENTURES
STATUS DT: 11-17-2011  STATUS CODE: REJ STATUS REASON: ONE RSA
INCRPTNO.:           RCT:  EXT:   DATE ENTD: 11-18-2011
REMARKS..:


G0002       MORE PAGES TO FOLLOW . . .

Case 7:17-cv-00009-O Document 100 Filed 08/12/17 Page 486 of 518 PageID 1416

```
REGNO: 10965-023 NAME: DRIEVER, JEANETTE
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I04-232U   RCV OFC: WXR
REMEDY ID: 660992-R2      SUB1: 27BM SUB2: 27CM DATE RCV:   12-28-2011
UNT  RCV..:PAPAGO      QTR RCV.: C08-020U     FACL RCV: PHX
UNT  ORG..:PAPAGO      QTR ORG.: C09-002U     FACL ORG: PHX
EVT FACL.: PHX    ACC LEV: PHX 1 WXR 2           RESP DUE:  SUN 02-26-2012
ABSTRACT.: NEEDS DENTAL CARE AND DENTURES
STATUS DT: 01-20-2012  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 01-05-2012
REMARKS..:



REGNO: 10965-023 NAME: DRIEVER, JEANETTE
RSP OF...: CRW UNT/LOC/DST: UNIT 2            QTR.: I04-232U   RCV OFC: CRW
REMEDY ID: 906739-F1      SUB1: 21AM SUB2:    DATE RCV:   06-26-2017
UNT  RCV..:UNIT 2      QTR RCV.: I04-232U     FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: I04-232U     FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW 1                 RESP DUE:  SUN 07-16-2017
ABSTRACT.: I/M REQUESTING TO HAVE INCIDENT REPORT.
STATUS DT: 06-27-2017  STATUS CODE: CLO STATUS REASON: WDN
INCRPTNO.: 2991748  RCT: P EXT:  DATE ENTD: 06-26-2017
REMARKS..:


                CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE            DEPARTMENT  TO    DATE ASSN    TRK TYPE    DATE RETURNED
THU 07-06-2017     CORR PGM    LCR   06-26-2017     INV        06-27-2017
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

Case 7:17-cv-00009-O  Document 100  Filed 08/12/17  Page 487 of 518  PageID 1417

```
REGNO: 10965-023 NAME: DRIEVER, JEANETTE
RSP OF...: CRW UNT/LOC/DST: UNIT 2          QTR.: I04-232U   RCV OFC: CRW
REMEDY ID: 906745-F1      SUB1: 34ZM SUB2:      DATE RCV:  06-26-2017
UNT  RCV..:UNIT 2      QTR RCV.: I04-232U     FACL RCV: CRW
UNT  ORG..:UNIT 2      QTR ORG.: I04-232U     FACL ORG: CRW
EVT FACL.: CRW    ACC LEV: CRW  1              RESP DUE:  SUN  07-16-2017
ABSTRACT.: I/M COMPLAINT AGAINST STAFF.
STATUS DT: 07-10-2017  STATUS CODE: CLO STATUS REASON: WDN
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 06-26-2017
REMARKS..:
```

```
              CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE          DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
THU 07-06-2017    SIS          JL    06-26-2017    INV         07-10-2017
```

```
          5 REMEDY SUBMISSION(S) SELECTED
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

485

# Attachment I

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Driever, Jeanette | 10965-023 | 2-South | Carswell |
|-------|-----------------|-----------|---------|----------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

I was written an incident report, retaliating against me for filing a lawsuit against the institution regarding men being housed in a women prison. On May 25, 2017, Officer Harris wrote an incident report, alleging I was in possession of anything not authorized, Code 305, a pair of silver/gray earrings. This grievance is NOT appealing the incident report, It is to obtain an investigation into retaliation against myself and other inmates that utilize their access to courts rights. Numerous inmates had property confiscated on May 25, 2017, but I am the only inmate that was written a disciplinary report. Many items are confiscated for not having a receipt, but in less than 5% of confiscations, incident reports are written. I am an inmate that was locked in a SHU cell, 24 hours a day with men, in 2016. For filing a complaint, I was written this false incident report by Officer Harris, in an effort to intimidate me and other women from obtaining help from the abuse of the men in this prison, that is supported by the prison officials. I would like this matter investigated and documented as retaliation against an inmate in Officer Harris personnel file. The incident report should be expunged from my record.

| 6-10-17 | *J. Driever* |
|---------|---------------|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

I am Withdrawaling administrative remedes
# 906145.F1.

| 7-10-17 | *J. Driever* 10965023 |
|---------|------------------------|
| Date | Signature / Reg. No. |

| DATE | WARDEN OR REGIONAL DIRECTOR |
|------|------------------------------|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE          CASE NUMBER: 906745-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

|  | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|--|----------------------------------|----------|------|-------------|

SUBJECT: _____

| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |
|------|--------------------------------------|

USP LVN          PRINTED ON RECYCLED PAPER          487          BP-229(13) APRIL 1982

BP-A0288
JAN 17

**INCIDENT REPORT**

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

**Part I – Incident Report**

| 1. Institution: FMC Carswell | | Incident Report Number: | |
|---|---|---|---|
| 2. Inmate's Name: Driever, Jeanette | 3. Register Number: 10965-023 | 4. Date of Incident: 05/25/2017 | 5. Time: 7:45PM |
| 6. Place of Incident: Atrium | 7. Assignment: Nursing Assistant | | 8. Unit: 2 South |
| 9. Incident: Possession of anything not authorized | 10. Prohibited Act Code (s): 305 | | |

11. Description of Incident (Date: 05/25/2017 ____ Time: 7:45 pm ____ Staff became aware of incident):

On 05/25/2017 at approximately 07:45 pm. While passing through the atrium area. I noticed inmate Driever,Jeanette 10965-023  wearing a pair of gray colored earrings. After being given a direct order to hand me the earrings. Inmate Driever had a pair of gray colored earrings that was not issued, purchased or received through approved commissary and is not authorized by institutional regulations.

| 12. Typed Name/Signature of Reporting Employee: D. Harris | 13. Date And Time: 05/25/2017 8:00PM | |
|---|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature): | 15. Date Incident Report Delivered: 5-26-17 | 16. Time Incident Report Delivered: 711 A |

**Part II – Committee Action**

17. Comments of Inmate to Committee Regarding Above Incident:

18. A. It is the finding of the committee that you:

☐ Committed the Prohibited Act as charged:
☐ Did not Commit a Prohibited Act.
☐ Committed Prohibited Act Code (s). _____

B. ☐ The Committee is referring the Charge(s) to the DHO for further Hearing
C. ☐ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):

21. Date and Time of Action: _____ (The UDC Chairman=s signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings).

Chairman (Typed Name/Signature): _____    Member (Typed Name): _____    Member (Typed Name): _____

INSTRUCTIONS: All items outside of heavy rule are for staff use only.  Begin entries with the number 1 and work up.  Entries not completed will be voided by staff.

Distribute:  Original-Central File Record; COPY-1-DHO; COPY-2-Inmate after UDC Action; COPY 3-Inmate within 24 hours of Part I Preparation

488

# Attachment J

```
           FUNCTION: L-P SCOPE: REG   EQ 08064-003    OUTPUT FORMAT: FULL
      ------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
EXTENDED: _ REMEDY LEVEL: _ _            RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ _____      ____      ____      ____      ____      ____
TRACK: DEPT: _____ _____ _____ _____ _____ _____
       PERSON: ____      ____      ____      ____      ____      ____
         TYPE: ____      ____      ____      ____      ____      ____
EVNT FACL: EQ _____      ____      ____      ____      ____      ____
RCV FACL.: EQ _____      ____      ____      ____      ____      ____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ _____      ____      ____      ____      ____      ____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____
```

G0002     MORE PAGES TO FOLLOW . . .

490

```
REGNO: 08064-003 NAME: RHAMES, BRENDA
RSP OF...: CRW UNT/LOC/DST: UNIT 2           QTR.: I04-232L   RCV OFC: CRW
REMEDY ID: 904108-F1        SUB1: 34AM SUB2:        DATE RCV:   06-02-2017
UNT  RCV..:UNIT 2        QTR RCV.: I04-232L        FACL RCV: CRW
UNT  ORG..:UNIT 2        QTR ORG.: I04-232L        FACL ORG: CRW
EVT FACL.: CRW     ACC LEV: CRW  1                RESP DUE:  THU  06-22-2017
ABSTRACT.: INMATE STATES SHE WAS VERBALLY BERATED BY STAFF
STATUS DT: 06-12-2017  STATUS CODE: CLO STATUS REASON: OTH
INCRPTNO.:              RCT: P EXT:   DATE ENTD: 06-02-2017
REMARKS..:


          CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT    TO    DATE ASSN    TRK TYPE    DATE RETURNED
FRI 06-16-2017     SIS           JL    06-02-2017     INV       06-09-2017
```

```
          1 REMEDY SUBMISSION(S) SELECTED
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

# Attachment K

```
CRWKM           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        08-01-2017
PAGE 001 OF 001                                                       10:22:07
        FUNCTION: NBR SCOPE: INDEX EQ CRW        OUTPUT FORMAT: [          ]
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM [          ] THRU [       ]
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS:  [    ] [    ]   [    ]   [    ]   [    ]   [    ]   [    ]   [    ]
SUBJECTS:  [  ] [  ] [  ] [  ] [  ] [  ] [  ] [  ] [  ] [  ] [  ] [  ] [  ] [  ]
EXTENDED: [ ] REMEDY LEVEL: [ ][ ]        RECEIPT: [ ][ ][ ] "OR" EXTENSION: [ ][ ][ ]
RCV  OFC : EQ [    ]    [    ]    [    ]    [    ]    [    ]    [    ]
TRACK:  DEPT: [      ]  [      ]  [      ]  [      ]  [      ]  [      ]
       PERSON: [  ]     [  ]      [  ]      [  ]      [  ]      [  ]
         TYPE: [  ]     [  ]      [  ]      [  ]      [  ]      [  ]
EVNT FACL: EQ [    ]    [    ]    [    ]    [    ]    [    ]    [    ]
RCV FACL.: EQ [    ]    [    ]    [    ]    [    ]    [    ]    [    ]
RCV UN/LC: EQ [      ]  [      ]  [      ]  [      ]  [      ]  [      ]
RCV QTR..: EQ [      ]  [      ]  [      ]  [      ]  [      ]  [      ]
ORIG FACL: EQ [    ]    [    ]    [    ]    [    ]    [    ]    [    ]
ORG UN/LC: EQ [      ]  [      ]  [      ]  [      ]  [      ]  [      ]
ORIG QTR.: EQ [      ]  [      ]  [      ]  [      ]  [      ]  [      ]


           159 REMEDY SUBMISSION(S) SELECTED
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

# Attachment L

```
   CRWKM          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        08-01-2017
 PAGE 001 OF 001                                                        10:21:10
       FUNCTION: NBR SCOPE: INDEX EQ SCR        OUTPUT FORMAT: _____
 -------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
 DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM _____ THRU _____
 DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
 DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
 STS/REAS: _____ _____    _____   _____   _____   _____   _____
 SUBJECTS: ____ ____   ____ ____ ____   ____ ____ ____   ____ ____ ____
 EXTENDED: _ REMEDY LEVEL: _ _          RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
 RCV  OFC : EQ _____    _____    _____    _____    _____    _____
 TRACK:  DEPT: _____  _____  _____  _____  _____  _____
         PERSON: ____    ____    ____    ____    ____    ____
           TYPE: ____    ____    ____    ____    ____    ____
 EVNT FACL: EQ _____    _____    _____    _____    _____    _____
 RCV FACL.: EQ _____    _____    _____    _____    _____    _____
 RCV UN/LC: EQ _____  _____  _____  _____  _____  _____
 RCV QTR..: EQ _____  _____  _____  _____  _____  _____
 ORIG FACL: EQ _____    _____    _____    _____    _____    _____
 ORG UN/LC: EQ _____  _____  _____  _____  _____  _____
 ORIG QTR.: EQ _____  _____  _____  _____  _____  _____


          2,589 REMEDY SUBMISSION(S) SELECTED
   G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

# Attachment M

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 499 of 518   PageID 1429

```
   CRWKM              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        08-01-2017
 PAGE 001 OF 001                                                            10:22:57
       FUNCTION: NBR SCOPE: INDEX EQ BOP          OUTPUT FORMAT: _____
 -------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
 DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM _____ THRU _____
 DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
 DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
 STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____
 SUBJECTS: ____ ____ ____ ____ ____ ____ ____ ____ ____ ____
 EXTENDED: _ REMEDY LEVEL: _ _          RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
 RCV  OFC : EQ _____
 TRACK:  DEPT: _____
        PERSON: ____
          TYPE: ____
 EVNT FACL: EQ _____
 RCV FACL.: EQ _____
 RCV UN/LC: EQ _____
 RCV QTR..: EQ _____
 ORIG FACL: EQ _____
 ORG UN/LC: EQ _____
 ORIG QTR.: EQ _____


          6,078 REMEDY SUBMISSION(S) SELECTED
 G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

# **Attachment N**

Case 7:17-cv-00009-O   Document 100   Filed 08/12/17   Page 501 of 518   PageID 1431

```
CRWKM              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        08-01-2017
PAGE 001 OF 001                                                         13:26:27
        FUNCTION: NBR SCOPE: INDEX EQ CRW        OUTPUT FORMAT: [_____]
   -------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM [_____] THRU [_____]
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: CLGPAR [_____] [_____] [_____] [_____] [_____] [_____] [_____]
SUBJECTS: [____] [____] [____] [____] [____] [____] [____] [____] [____]
EXTENDED: [_] REMEDY LEVEL: [_][_]          RECEIPT: [_][_][_] "OR" EXTENSION: [_][_][_]
RCV  OFC : EQ [____]    [____]    [____]    [____]    [____]    [____]
TRACK:  DEPT: [_____] [_____] [_____] [_____] [_____] [_____]
        PERSON: [___]    [___]    [___]    [___]    [___]    [___]
          TYPE: [___]    [___]    [___]    [___]    [___]    [___]
EVNT FACL: EQ [____]    [____]    [____]    [____]    [____]    [____]
RCV FACL.: EQ [____]    [____]    [____]    [____]    [____]    [____]
RCV UN/LC: EQ [_____] [_____] [_____] [_____] [_____] [_____]
RCV QTR..: EQ [_____] [_____] [_____] [_____] [_____] [_____]
ORIG FACL: EQ [____]    [_____] [_____] [_____] [_____] [_____]
ORG UN/LC: EQ [_____] [_____] [_____] [_____] [_____] [_____]
ORIG QTR.: EQ [_____] [_____] [_____] [_____] [_____] [_____]


            1 REMEDY SUBMISSION(S) SELECTED
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

```
   CRWKM            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        08-01-2017
PAGE 001 OF 001                                                          13:27:06
       FUNCTION: NBR SCOPE: INDEX EQ CRW        OUTPUT FORMAT: _____
   -------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW---------
DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: CLGGRT _____ _____ _____ _____ _____ _____ _____
SUBJECTS: _____ _____ _____ _____ _____ _____ _____ _____
EXTENDED: □ REMEDY LEVEL: □□           RECEIPT: □□□ "OR" EXTENSION: □□□
RCV  OFC : EQ ____   ____   ____   ____   ____   ____
TRACK:  DEPT: _____ _____ _____ _____ _____ _____
      PERSON: ____   ____   ____   ____   ____   ____
        TYPE: ____   ____   ____   ____   ____   ____
EVNT FACL: EQ ____   ____   ____   ____   ____   ____
RCV FACL.: EQ ____   ____   ____   ____   ____   ____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ ____   ____   ____   ____   ____   ____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____


          3 REMEDY SUBMISSION(S) SELECTED
   G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

```
   CRWKM            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      08-01-2017
   PAGE 001 OF 001                                                      13:27:51
         FUNCTION: NBR SCOPE: INDEX EQ CRW        OUTPUT FORMAT: _____
   -------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
   DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM _____  THRU _____
   DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
   DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
   STS/REAS: CLDDNY _____ _____ _____ _____ _____ _____ _____
   SUBJECTS: ____ ____ ____ ____ ____ ____ ____ ____ ____
   EXTENDED: _ REMEDY LEVEL: _ _        RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
   RCV  OFC : EQ ____   ____   ____   ____   ____   ____
   TRACK: DEPT: _____   _____   _____   _____   _____   _____
        PERSON: ____   ____   ____   ____   ____   ____
          TYPE: ____   ____   ____   ____   ____   ____
   EVNT FACL: EQ ____   ____   ____   ____   ____   ____
   RCV FACL.: EQ ____   ____   ____   ____   ____   ____
   RCV UN/LC: EQ _____   _____   _____   _____   _____   _____
   RCV QTR..: EQ _____   _____   _____   _____   _____   _____
   ORIG FACL: EQ ____   ____   ____   ____   ____   ____
   ORG UN/LC: EQ _____   _____   _____   _____   _____   _____
   ORIG QTR.: EQ _____   _____   _____   _____   _____   _____


                23 REMEDY SUBMISSION(S) SELECTED
   G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

```
   CRWKM            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        08-01-2017
PAGE 001 OF 001                                                         13:28:36
        FUNCTION:  NBR SCOPE:  INDEX EQ CRW          OUTPUT FORMAT: [_____]
   -------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
   DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM [_____]    THRU [_____]
   DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
   DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
   STS/REAS: CLOXPL [_____] [_____] [_____] [_____] [_____] [_____] [_____]
   SUBJECTS: [___] [___] [___] [___] [___] [___] [___] [___] [___] [___]
   EXTENDED: [ ] REMEDY LEVEL: [ ][ ]        RECEIPT: [ ][ ][ ] "OR" EXTENSION: [ ][ ][ ]
   RCV  OFC : EQ [___]    [___]    [___]    [___]    [___]    [___]
   TRACK:  DEPT: [_____]  [_____]  [_____]  [_____]  [_____]  [_____]
        PERSON: [___]    [___]    [___]    [___]    [___]    [___]
          TYPE: [___]    [___]    [___]    [___]    [___]    [___]
   EVNT FACL: EQ [___]    [___]    [___]    [___]    [___]    [___]
   RCV FACL.: EQ [___]    [___]    [___]    [___]    [___]    [___]
   RCV UN/LC: EQ [_____]  [_____]  [_____]  [_____]  [_____]  [_____]
   RCV QTR..: EQ [_____]  [_____]  [_____]  [_____]  [_____]  [_____]
   ORIG FACL: EQ [___]    [___]    [___]    [___]    [___]    [___]
   ORG UN/LC: EQ [_____]  [_____]  [_____]  [_____]  [_____]  [_____]
   ORIG QTR.: EQ [_____]  [_____]  [_____]  [_____]  [_____]  [_____]


            29 REMEDY SUBMISSION(S) SELECTED
   G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

```
   CRWKM          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        08-01-2017
PAGE 001 OF 001                                                         13:28:12
       FUNCTION: NBR SCOPE: INDEX EQ CRW         OUTPUT FORMAT: _____
   -------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: CLOWDN _____ _____ _____ _____ _____ _____ _____
SUBJECTS: ____ ____ ____ ____ ____ ____ ____ ____ ____ ____
EXTENDED: _ REMEDY LEVEL: _ _          RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ ____    ____    ____    ____    ____    ____
TRACK: DEPT: _____ _____ _____ _____ _____ _____
     PERSON: ____    ____    ____    ____    ____    ____
       TYPE: ____    ____    ____    ____    ____    ____
EVNT FACL: EQ ____    ____    ____    ____    ____    ____
RCV FACL.: EQ ____    ____    ____    ____    ____    ____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ ____    ____    ____    ____    ____    ____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____


          23 REMEDY SUBMISSION(S) SELECTED
 G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

```
  CRWKM            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        08-01-2017
PAGE 001 OF 001                                                          13:28:58
        FUNCTION: NBR SCOPE: INDEX EQ CRW        OUTPUT FORMAT: [_____]
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM [_____]   THRU [_____]
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: CLOOTH [_____] [_____] [_____] [_____] [_____] [_____] [_____]
SUBJECTS: [____] [____] [____] [____] [____] [____] [____] [____] [____] [____]
EXTENDED: [_ REMEDY LEVEL: [_][_]         RECEIPT: [_][_][_] "OR" EXTENSION: [_][_][_]
RCV  OFC : EQ [____]    [____]    [____]    [____]    [____]    [____]
TRACK:  DEPT: [_____]  [_____]  [_____]  [_____]  [_____]  [_____]
       PERSON: [____]   [____]    [____]    [____]    [____]    [____]
         TYPE: [____]   [____]    [____]    [____]    [____]    [____]
EVNT FACL: EQ [____]    [____]    [____]    [____]    [____]    [____]
RCV FACL.: EQ [____]    [____]    [____]    [____]    [____]    [____]
RCV UN/LC: EQ [_____]  [_____]  [_____]  [_____]  [_____]  [_____]
RCV QTR..: EQ [_____]  [_____]  [_____]  [_____]  [_____]  [_____]
ORIG FACL: EQ [____]    [____]    [____]    [____]    [____]    [____]
ORG UN/LC: EQ [_____]  [_____]  [_____]  [_____]  [_____]  [_____]
ORIG QTR.: EQ [_____]  [_____]  [_____]  [_____]  [_____]  [_____]


             5 REMEDY SUBMISSION(S) SELECTED
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

```
   CRWKM            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        08-01-2017
  PAGE 001 OF 001                                                        15:20:37
        FUNCTION: NBR SCOPE: INDEX EQ CRW           OUTPUT FORMAT: [            ]
  -------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
  DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM [        ]    THRU [       ]
  DT STS: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT RDU
  DT TDU: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT TRT
  STS/REAS: REJ  [    ] [    ] [    ] [    ] [    ] [    ] [    ] [    ]
  SUBJECTS: [   ] [   ] [   ] [   ] [   ] [   ] [   ] [   ] [   ]
  EXTENDED: [ REMEDY LEVEL: [ ][ ]          RECEIPT: [ ][ ][ ] "OR" EXTENSION: [ ][ ][ ]
  RCV  OFC : EQ [    ]  [    ]  [    ]  [    ]   [    ]   [    ]
  TRACK:  DEPT: [     ]  [     ]  [     ]  [     ]  [     ]  [     ]
          PERSON: [   ]   [   ]   [   ]   [   ]   [   ]   [   ]
            TYPE: [   ]   [   ]   [   ]   [   ]   [   ]   [   ]
  EVNT FACL: EQ [    ]  [    ]  [    ]  [    ]   [    ]   [    ]
  RCV FACL.: EQ [    ]  [    ]  [    ]  [    ]   [    ]   [    ]
  RCV UN/LC: EQ [     ]  [     ]  [     ]  [     ]  [     ]  [     ]
  RCV QTR..: EQ [     ]  [     ]  [     ]  [     ]  [     ]  [     ]
  ORIG FACL: EQ [    ]  [    ]  [    ]  [    ]   [    ]   [    ]
  ORG UN/LC: EQ [     ]  [     ]  [     ]  [     ]  [     ]  [     ]
  ORIG QTR.: EQ [     ]  [     ]  [     ]  [     ]  [     ]  [     ]


            61 REMEDY SUBMISSION(S) SELECTED
  G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

```
CRWKM           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        08-01-2017
PAGE 001 OF 001                                                       15:46:44
        FUNCTION: NBR SCOPE: INDEX EQ CRW          OUTPUT FORMAT: _____
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM 01-01-2017 THRU 07-31-2017 DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: VOD
SUBJECTS:
EXTENDED: ☐ REMEDY LEVEL: ☐☐           RECEIPT: ☐☐☐ "OR" EXTENSION: ☐☐☐
RCV  OFC : EQ
TRACK:  DEPT:
        PERSON:
          TYPE:
EVNT FACL: EQ
RCV FACL.: EQ
RCV UN/LC: EQ
RCV QTR..: EQ
ORIG FACL: EQ
ORG UN/LC: EQ
ORIG QTR.: EQ


            8 REMEDY SUBMISSION(S) SELECTED
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

**REDACTED**

**REDACTED**

# REDACTED

**REDACTED**

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

RHONDA FLEMING, *et al.*,

      *Plaintiffs*,

      v.

UNITED STATES OF AMERICA, *et al.*,

      *Defendants*.

Civil No. 7:17-cv-0009-O

## DECLARATION OF LISA COLE-ROWLS, UNIT MANAGER, FEDERAL MEDICAL CENTER, CARSWELL

I, Lisa Cole-Rowls, do hereby make the following declaration:

1. I, Lisa Cole-Rowls, am employed by the Federal Bureau of Prisons (BOP) as a Unit Manager at the Federal Medical Center Carswell (FMC Carswell) in Fort Worth, Texas. I have been employed by the BOP at FMC Carswell since July 1998. From July 1998 until April 2000, I was a case manager intern. From April 2000 to 2001, I was a Unit Secretary. From 2001 to 2014, I was a Case Manager. I began my current position as Unit Manager in the summer of 2014.

2. A unit is a self-contained inmate living area that includes both housing sections and office space for unit staff, known as unit team. Each unit team is directly responsible for those inmates living in the unit. Unit team members are available to assist in many areas, including probation matters, release planning, personal and family problems, counseling, programming, and assisting in setting and attaining goals while in prison.

1

512

3.  As Unit Manager, I am responsible for managing Unit 2 North and Unit 2 South at FMC Carswell. Currently, there are approximately 460 inmates on those two units.

4.  I am responsible for the administration of Unit 2 North and Unit 2 South, as well as the planning, development and implementation of individual programs tailored to meet the particular needs of inmates in the unit. I am also a first-line supervisor and I am directly responsible for supervising the unit team which consists of one or more case managers, correctional counselors, and unit secretaries.

5.  Case Managers are responsible for a variety of duties related to the inmates on their assigned case load. These duties include and are not limited to: conducting individual and group counseling sessions with inmates; gathering information to assist in developing release plans, preparing reports related to an inmate's probation, transfer, release, restoration of good time; conducting progress reviews and reports; and serving on the Unit Disciplinary Committee (UDC).

6.  Correctional Counselors are responsible for a variety of duties related to inmates on their assigned case load. These duties include and are not limited to: coordinating and approving visiting and telephone lists; coordinating legal calls and visits; monitoring inmate work details and housing arrangements within the unit; gathering information and preparing required reports for inmates' regularly scheduled progress reviews; serving as a member of the UDC; and serving as the unit point person on matters pertaining to: (a) inmate personal property, including incoming and outgoing package approvals; and (b) trust fund activities, including inmate withdrawals and special purchase orders.

7.  Unit Secretaries are responsible for a variety of duties. These duties include and are not limited to:  providing technical assistance and answering questions regarding the general

2

513

nature of correctional programs for staff and inmates on their assigned unit; scheduling appointments; responding to routine requests for information; maintaining some inmate files; and completing other administrative tasks.  Unit secretaries also provide notary services to inmates.

8. I have reviewed the allegations that reference me made by Plaintiff, Rhonda Fleming, Federal Register Number 20446-009; Plaintiff, Jeanette Driever, Federal Register Number 10965-023; Plaintiff, Brenda Rhames, Federal Register Number 08064-003; and Plaintiff, Charlsa Little, Federal Register Number 47394-177, in the Third Amended Complaint and the allegations that referenced me in Plaintiffs' Motion for Preliminary Injunction and supporting appendix.

9. I have never refused to give Plaintiff Fleming, Little, Rhames, or Driever a grievance or administrative remedy form. I have never refused to give any inmate a grievance or administrative remedy form. I typically do not issue grievances or administrative remedy forms as the correctional counselor typically provides those forms to the inmates.

10. I never told Plaintiff Fleming that she didn't have a right to a grievance.

11. I never said to Plaintiff Fleming that transgender inmates are approved by the President to be at FMC Carswell and do not recall ever speaking with Plaintiff Fleming about transgender inmates or the Agency's policies on transgender inmates.

12. I did not assign Plaintiff Fleming to a food service work assignment and I do not know who did. I have never retaliated against Plaintiff Fleming or any other inmate for filing a grievance or for any other reason.

13. I occasionally see Plaintiff Fleming, as she is assigned to the unit I manage. However, to the best of my recollection, my interactions with her have been limited.

3

14. Unit Team staff conduct periodic reviews of the programming needs of inmates on their assigned caseload. Unit Team staff review the inmate's progress in assigned programs and new programs may be recommended based upon skills the inmate has gained during incarceration. Program reviews occur at least once every 180 days, unless that inmate is near release, and then those reviews will happen more frequently.

15. I can recall one occasion when I sat in on a program review meeting for Plaintiff Fleming. I do not specifically recall when that occurred, or any discussion during that meeting about transgender inmates.

16. I occasionally sit in on program review meetings for inmates when my schedule permits. It is possible I sat in on a program review meeting for Plaintiffs Little, Driever, or Rhames as they have been assigned to my unit at various times; however I don't recall a specific occasion when this occurred.

17. As Plaintiff Fleming's Unit Manager, in or around July 2016, I prepared paperwork for Plaintiff Fleming to be transferred to a minimum security institution, such as a federal prison camp. While that paperwork was being reviewed by the Designation and Sentence Computation Center (DSCC), Plaintiff Fleming received an incident report for a violation of prohibited act code 328, Giving or Accepting Money Without Authorization, in which another inmate's family placed funds in her inmate account for legal work. I chaired a UDC hearing on September 16, 2016, in which Plaintiff Fleming was found guilty of the prohibited act and sanctioned to fifteen days loss of commissary.  This incident report and resulting sanction caused Plaintiff Fleming to no longer be eligible for a camp placement. I informed Plaintiff Fleming that she would again be eligible for a review for camp placement in or around September 2017.

4

515

18. I do not recall any specific interactions with Plaintiffs Little, Driever, or Rhames, or an inmate named Robin Parezanin, Federal Register Number 20263-298.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this ___10th___ day of August, 2017.

Lisa Cole-Rowls
Unit Manager
FMC Carswell
Federal Bureau of Prisons

5

516