```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                          FORT WORTH DIVISION

RHONDA FLEMING, et. al.      )   7:17-CV-009
     Plaintiffs,             )
v.                           )
                             )   Motions Hearing
UNITED STATES OF AMERICA,    )
et. al.                      )
     Defendants.             )   November 6, 2017
```

**BEFORE THE HONORABLE REED C. O'CONNOR**
*United States District Judge*
*In Fort Worth, Texas*

| | |
|---|---|
| **FOR THE PLAINTIFFS:** | **MR. JAMES A. PIKL**<br>Scheef & Stone LLP<br>2600 Network Boulevard<br>Suite 400<br>Frisco, TX 75034<br>214/472-2100<br>Fax: 214/472-2150<br>jim.pikl@solidcounsel.com |
| | **MR. GARY STUART MCCALEB**<br>Alliance Defending Freedom<br>15100 N 90th St<br>Scottsdale, AZ 85260<br>480-444-0020<br>Fax: 480-444-0028<br>gmccaleb@adflegal.org |
| **FOR THE DEFENDANTS:** | **MS. EMILY BROOKE NESTLER**<br>United States Department of Justice<br>20 Massachusetts Avenue NW<br>Washington, DC 20530<br>202-616-8489<br>emily.b.nestler@usdoj.gov |
| (Thomas R. Kane) | **MR. DAVID GREGORY CUTLER**<br>US Department of Justice<br>PO Box 7146, Ben Franklin Sta.<br>Washington, DC 20005<br>202-616-0674<br>david.g.cutler@usdoj.gov |

| | |
|---|---|
| COURT REPORTER: | MR. DENVER B. RODEN, RMR |
| | *United States Court Reporter* |
| | 5124 Breezewind Lane |
| | Fort Worth, Texas   76123 |
| | *drodenrmr@sbcglobal.net* |
| | Phone:   (214) 753-2298 |

     The above styled and numbered cause was reported by computerized stenography and produced by computer.

1      (November 6, 2017.)

2          **THE COURT**:  All right.  This is case number
3  7:17-CV-009, Fleming and other others against the United
4  States.  So who is here -- Ms. Fleming is here.

5          **MS. FLEMING**:  Yes, Your Honor.

6          **MR. PIKL**:  Your Honor, Jim Pikl and Gary McCaleb for
7  the Plaintiffs in this case.

8          **THE COURT**:  Okay.  Very good.  Thank you both for
9  being here.  And who is here for the Government?

10         **MS. NESTLER**:  I'm Emily Nestler on behalf of the
11 United States.

12         **THE COURT**:  Thank you.

13         **MR. CUTLER**:  Good morning, David Cutler from the
14 Department of Justice on behalf of the individual -- Bureau of
15 Prisons; that is, Dr. Thomas Kane.

16         **THE COURT**:  I need you to state your name again.

17         **MR. CUTLER**:  David Cutler.

18         **THE COURT**:  Cutler.  Cutler.  Okay.  Thank you.  All
19 right.  Very good.  You all can be seated.

20         **THE COURT**:  And, Ms. Fleming, you are here.

21         **MS. FLEMING**:  Yes, sir.

22         **THE COURT**:  I wanted to talk to you because you have
23 reflected that these attorneys no longer represent you in this
24 case.  So before I move forward on that, I want to talk to you
25 about that.

1    It seems to me that you believe that you want to have
2 them withdraw because they are reaching some sort of
3 settlement with the Department of Justice that you don't
4 approve of.
5        **MS. FLEMING:**  Correct, Your Honor.
6        **THE COURT:**  Now, it seems to me that no attorney can
7 accept a settlement agreement on behalf of a client, only a
8 client can accept a settlement agreement.  So these attorneys
9 would not be able to bind you to any settlement agreement that
10 you did not want to be bound to.
11        Do you understand that?
12       **MS. FLEMING:**  Yes, sir.
13       **THE COURT:**  And you are fortunate in a way that, in
14 my experience, very few inmates have been in the sense that
15 you have representing you as attorneys some of the best
16 attorneys around and most qualified and professional attorneys
17 around, attorneys you probably would be unable to afford
18 otherwise.
19       **MS. FLEMING:**  Yes, sir.
20       **THE COURT:**  And so I would recommend to you that you
21 reconsider your request to have these attorneys withdraw
22 because litigating in federal court is a very complicated --
23 and litigating these issues in particular -- is a very
24 complicated litigation.
25       Do you understand that?

1    **MS. FLEMING:** Yes, I do, Your Honor. I've lost many
2  times, so I know.
3    **THE COURT:** Speak up --
4    **MS. FLEMING:** Sir, yes. I do understand. I am
5  concerned because we want this issue that included brief
6  placed before you as soon as possible. That is our concern.
7  It's not just my concern, it's the concern of the other
8  Plaintiffs. We are happy with the way the briefing went,
9  although we don't know everything that was said, but we
10 would -- we did not agree with the 120 day stay because people
11 are being molested in prison as we wait and we wanted this
12 before a judge.
13   **THE COURT:** Well, it is before me.
14   **MS. FLEMING:** Yes, sir.
15   **THE COURT:** And the decision to wait or not wait is
16 my decision and my decision alone.
17   **MS. FLEMING:** Yes, sir.
18   **THE COURT:** And I have chosen to wait to see what the
19 Federal Government intends to do and I don't have the dates in
20 front of me for when the next filing will take place, but
21 that's irrelevant really to this issue. And so my
22 recommendation to you though is, given that I have decided to
23 wait and that's my decision, my recommendation to you though
24 is that you not seek to terminate these attorneys'
25 representation.

1  **MS. FLEMING:** And I will go along with you on that,
2  Judge, with one, you know, let's just put this off and revisit
3  this like how I feel and misrepresentation of what is going
4  on.
5  **THE COURT:** Well, the -- Let me say this: Because
6  your correspondence and the motion that was filed seems to
7  indicate that you believe that these attorneys and the
8  Department of Justice attorneys may be getting together to
9  reach an agreement in a way that you don't approve of.
10  **MS. FLEMING:** Correct.
11  **THE COURT:** And I can assure you that these attorneys
12  will not -- simply will not do that. They are duty bound to
13  represent you. I know you've made some allegation about
14  waiting until the next election and maybe some embarrassing
15  facts coming out that impacts electoral politics in some
16  fashion, but I can assure you, at least given these attorneys'
17  track record apart from your case and their litigation stance
18  against the Department of Justice in times of leaders of both
19  political parties, they don't appear to me to be amenable to
20  backing down from a litigation position depending upon who is
21  in charge of the Department of Justice or not.
22  Now, you may have information that I don't or you
23  just may disagree with what my observation is, but I only
24  bring that up to you to say to you that I don't think it is in
25  your best interests to terminate these attorneys because you,

1    as you know, since you mentioned, you've litigated before and
2    have not been successful before and these attorneys are savvy
3    enough and intellectual enough to know how to represent you as
4    best as you can be represented in this case and so that's just
5    my recommendation to you.
6         Of course, you don't have to follow it and if you --
7         **MS. FLEMING**:  You know I'm not going to go against
8    you on this.
9         **THE COURT**:  Well, no, no.  I just want to say, you
10   can't -- No one can insist that they represent you if you
11   don't want to be represented and that's -- That is the bottom
12   line and that's why I brought you here today.  Otherwise, I
13   would just sign off on it and the chips would call where they
14   may and that's -- and that's fine.  But I'd just wanted to --
15   After reading your correspondence, I wanted to bring you up
16   here in person and so that they could be here --
17        **MS. FLEMING**:  And I wanted this to be out in the open
18   that way at a later time I believe that my lawyers have the
19   same concerns we do, but I also believe they don't want to
20   embarrass the DOJ with the things that are going on within the
21   prison that are outside of the issue of transgender.  Your
22   Honor, as you know, we have a huge problem at Carswell with
23   officers having sex with inmates and it's connected to this
24   transgender issue and since I have been taken away from there.
25   I was taken to Oklahoma this week and inmates with Carswell

1  there and seeing all kinds of things that these men are
2  continuing to do to these women, like locking a twenty-two
3  year old in a room with a sixty-two year old man and says he's
4  a woman and my number one priority is to remove -- is to
5  question these people be removed somewhere else.  I don't have
6  the solution to where they go.  But the second thing is my
7  personal safety because these people are violent and they are
8  everywhere and we have a -- I mean, in this district, you all
9  have had to deal with people not doing the right thing with
10 inmates and we have a serious thing going on and I know that
11 these people are more than competent, but I do not firmly
12 believe in my mind that they understand the representation may
13 become uncomfortable if it means revealing some ugly things
14 that are going on like they do have severe mental ill people
15 that do of course -- you know, at sometimes the court have
16 sentenced to Carswell.  These people are not in their right
17 mind and they are locked in rooms sometimes not clothed
18 because they will simply hurt themselves and they have men
19 watching these women twenty-four hours a day and actually put
20 me in that position.  So that's something that is connected to
21 this transgender issue because right now sexual harassment and
22 other issues are a big topic in America for women and I
23 believe that women in federal prison are under a very severe
24 burden because they can't walk away and this could be
25 difficult with these nice gentlemen to say about the DOJ in

1  their briefing because their primary interest is to deal with
2  the transgender issue.
3       **THE COURT:**  So let me just respond in this fashion.
4       **MS. FLEMING:**  Yes, sir.
5       **THE COURT:**  Number one, they have taken on your issue
6  and by taking on this issue -- by taking on this issue it's
7  not always just the issues involved in your case and your
8  colleague or peers' case are not always comfortable to talk
9  about and so I don't believe that these attorneys, given that
10 they have volunteered and paid a fee for you to take your
11 case, I don't know that I would be concerned that they have an
12 issue with raising uncomfortable facts.  I -- but you will --
13      **MS. FLEMING:**  And I will not -- I will abide what you
14 say, Your Honor, but just for transparency, I thought it was
15 important.
16      **THE COURT:**  No, I understand that.  But you, of
17 course, know more of the details than anyone since you are on
18 the inside.  But just in terms of the comfortability, I'm not
19 sure that either one of these attorneys would refrain from
20 pursuing issues that are beneficial to their clients just
21 because they are raising uncomfortable facts, number one.
22      Number two though, I will tell you that these
23 attorneys are bound by the Rules of Evidence and the Rules of
24 Procedure and there are in connection with that there may be
25 things that come up that they are not able to use legally and

procedurally, substantively in your case. There may be other bad things that happen, other uncomfortable things that happen. These policies may be terrible in many, many ways but in those -- but those ways, those facts, those other things may not be something that procedurally or legally in a substantive manner these attorneys would be able to pursue in some fashion in your case or in the other Plaintiff's cases. So I understand and I can only image the difficulty with housing these transgender folk at Carswell where you used to be.

**MS. FLEMING:** Very.

**THE COURT:** And they're litigating the policy ramifications of that as it relates to you and your peers and they will continue to do so after I lift the stay if the case isn't otherwise resolved somehow to your satisfaction or your colleagues' satisfaction. But I don't think they will fail to do any of those things for any of the reasons that I've seen that you have raised. I feel very confident that that won't happen, that it makes them uncomfortable, makes some politician uncomfortable or any of those things. They will pursue what the law and the facts permit them to do.

**MS. FLEMING:** Yes, sir.

**THE COURT:** So do you want to -- Do you want them to be terminated from your case or not? That's what we're -- Ultimately, that's what we are here to decide?

1    **MS. FLEMING:** Sir, I'm sure you want that done and
2  then therefore I will trust your opinion because I am the one
3  contacting you about the situation.
4    **THE COURT:** Okay.
5    **MS. FLEMING:** I will withdraw that motion.
6    **THE COURT:** Okay. Okay. Do you all want to address
7  something while we are here?
8    **MR. PIKL:** Very briefly only. Obviously, I agree
9  with everything you said. I think it was very important to
10 you come here today, so that Ms. Fleming could get you to tell
11 her the Court's position on this. I am concerned as a lawyer
12 representing four Plaintiffs that one Plaintiff does not go
13 rogue and start filing pro se motions and things with the
14 Court that don't come through us because that can have the
15 tendency to impact the rights of my other three clients and,
16 obviously, you practiced a long time, you know -- you've
17 represented multiple parties; there's always that tension.
18 But I would like the Court's admonishment to Ms. Fleming that
19 if she wants us to continue to represent her that she let's us
20 continue to represent her and that she not be off the
21 reservation, so to speak, filing stuff that then we have to
22 respond to in an adversarial way to her if it's not true or we
23 don't agree with it or as Your Honor pointed out it's
24 something we just can't raise legally in the case. I don't
25 want to have to waste a lot of my time or the Court's

1  resources in addressing those things.  So we are happy to
2  continue to represent Ms. Fleming as long as she is happy to
3  let us represent her.  And with that admonishment from the
4  Court and the Court feels comfortable that she will do that,
5  then we would withdraw our motion to withdraw as her lawyers.
6         **THE COURT:**  So, Ms. Fleming, in federal court -- you
7  may or may not be familiar with this -- but in federal court
8  there is a prohibition, that is no person who is a litigant
9  can have hybrid representation.  What they mean by that is
10 representing yourself in some manner, having the lawyer
11 represent you in other manners.  It's one or the other.  So,
12 if you have counsel, then -- I've allowed your material to
13 come on the docket to this point given the motion that was
14 filed because you may terminate them in which case it would be
15 right for those to be on the docket, but if you don't -- if
16 you continue to be represented you can only speak to the Court
17 through your counsel.
18         Are you familiar with that concept?
19         **MS. FLEMING:**  Yes, sir.  You know the docket from
20 when the attorney signed on.  Until we or I believed there was
21 a problem, I never filed anything, so I am familiar with that
22 rule.  But if I think that something improper is going on,
23 then I'm going to say, Hey, I'm going to let somebody know
24 what's going on and ask a question.  So I'm not to file
25 anything if they are representing me.

1        **THE COURT:**  When you see a complaint just run it
2   through them.  Okay.
3        **MS. FLEMING:**  I would like to mention we don't know
4   what's going on because we don't see what is filed by the
5   Government and by our lawyers, so we're blind to not knowing
6   what's going on because there are so many protective orders on
7   everything and these things are being done without our
8   knowledge.
9        **THE COURT:**  Okay.  I'm not sure about protective
10  orders but --
11       **MR. PIKL:**  I believe what she is addressing, Your
12  Honor, is when the Government filed its response to the P.I.
13  motion they wanted some of the information that they filed in
14  support to be placed under seal --
15       **THE COURT:**  I see.
16       **MR. PIKL:**  -- so that it didn't get out into the
17  public record.  We didn't take any position on that.  The
18  Court had granted the motion to put some things under
19  protective order.
20       The other thing I believe Ms. Fleming is speaking to
21  and because we've had this discussion before and you are well
22  aware of this, but when you represent people that are
23  incarcerated there's just a lot of friction and there's a lot
24  of hurdles and roadblocks and it takes me like three days to
25  even get out to see these people in person to talk to them.  I

1   mean, my regular clients I just go into their office and talk.
2           I don't want to completely rebuild the Bureau of
3   Prisons' system here, that's not what I'm asking you to do,
4   but I would like to be able to communicate with my clients in
5   a more -- in an easier manner than going through all the hoops
6   every time with the Bureau of Prisons.
7           Also, supposed to be when we send them a letter and
8   we put "legal correspondence" on it, it's not supposed to be
9   opened.  According to Ms. Fleming, some of that stuff has been
10  opened before she's gotten it and so -- And, obviously, we
11  can't cure every harm in the world and I am not sure what Your
12  Honor is able to do as far as making our communication
13  abilities more streamline and secretive or privileged --
14          **THE COURT**:  And what is the bureaucratic hurdles that
15  you are encountering?
16          **MR. PIKL**:  Well, in order for me to be able to see
17  Ms. Fleming in person, I have as to send a letter to her
18  counselor, the counselor has to get approved by the BOP staff
19  and I have to send them my Bar card, my driver's license,
20  which is no big deal, and then they decide whether I get to
21  see her and when I get to see her and then I have to drive
22  over to Fort Worth or to Carswell now, I have drive to where
23  she is now, and then they check me through the security
24  system, which again is not a problem, but that sometimes takes
25  up to three days and with this Court's deadlines being what

1  they are, sometimes if I want to talk to them in person, but
2  between you and me, I just don't trust e-mail or mail.  I
3  mean, I take Ms. Fleming at her word.  If she says that
4  stuff was opened, she is not a liar.  Okay?  She would not say
5  that if it hadn't been.  So, I'm concerned about that.  I'm
6  concerned about privileged communication with my clients and
7  she is, too, and she sees it not only as a violation of the
8  privacy issue, but the timing thing, too.  We are not able to
9  get with her on a timely basis.  And again, I'm not sure -- I
10 may just be up here just complaining and you can't do anything
11 to help us, but that is one concern she has and, believe me,
12 we have it on her lawyers' side, too.
13         And I will say this, too, the Bureau of Prisons has
14 been very good since they have been involved in the case of
15 helping us knock a few of those hurdles out of the way and
16 getting things more streamlined, so I just want to -- I want
17 to give them a shout out for that.  But whatever we can do to
18 make that more productive, I would really appreciate it.
19         **THE COURT:**  Okay.  So will you all check this process
20 and so that it can be as -- The bureaucratic hurdles need to
21 be as minimal as possible, at least as it relates to
22 attorneys, her attorney.
23         **MS. NESTLER:**  Your Honor, I'm not in a position to
24 speak about what is required at this time.
25         **THE COURT:**  No, I understand.  But just hear me out

```
 1    then.  And then I will ask for you to ensure that in this
 2    process that at the facility she is currently at that they
 3    understand the legal mail concept and that those protocols
 4    that respect the legal mail process are being adhered to.
 5    Now, if they have reasons -- Obviously, there may be
 6    exceptions to it, I don't know, but I would just ask you to do
 7    those two things.
 8              MS. NESTLER:  Yes, Your Honor.  I will do that.
 9              THE COURT:  And then if you would confer with your
10    opposing counsel once you've made those inquiries and gotten
11    that information back just to try to meet and confer and try
12    to resolve as much as possible any of these problems.
13              MS. NESTLER:  I understand, Your Honor.
14              THE COURT:  And do you want to address something,
15    since you are here; you or your colleague?  Do you -- Anything
16    you feel needs to be addressed?
17              MS. NESTLER:  Your Honor, this is about how -- Ms.
18    Fleming's counsel, with that -- as a we are amenable to
19    discussion whether they are represented or they represent
20    themselves.  But it apparently is no longer an issue.
21              THE COURT:  Anything else you want to address?
22              MS. NESTLER:  No.  We deny any of the -- sort of --
23    the allegations in the -- in the pleadings.  We have
24    negotiated --
25              THE COURT:  Yeah.  I -- Anything else from anyone?
```

1  Okay.  Well, thank you all for being here and we'll keep
2  moving forward with the case.

1   I, **DENVER B. RODEN**, United States Court Reporter for the
2  United States District Court in and for the Northern District
3  of Texas, Fort Worth Division, hereby certify that the above
4  and foregoing contains a true and correct transcription of the
5  proceedings in the above entitled and numbered cause.
6   **WITNESS MY HAND** on this 5th day of December, 2017.

7
8
9                                  /s/ Denver B. Roden
10                                 **DENVER B. RODEN, RMR**
                                   *United States Court Reporter*
11                                 5124 Breezewind Lane
                                   Fort Worth, Texas  76123
12                                 *drodenrmr@sbcglobal.net*
                                   **Phone**:  (214) 753-2298
13
14
15
16
17
18
19
20
21
22
23
24
25