## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| BRENDA RHAMES, et al., | § | |
| | § | Case No. 7:17-CV-00009-O |
| Plaintiffs, | § | |
| | § | |
| vs. | § | The Honorable Reed C. O'Connor |
| | § | |
| UNITED STATES OF AMERICA, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF RHAMES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 1

I.    The Motion to Dismiss should be denied. ..................................................... 1

      A.    Defendants' voluntary cessation of illegal acts toward Ms. Rhames does not justify dismissing the case. ............................................................. 2

      B.    Ms. Rhames has injury sufficient for standing under Article III. ........... 4

      C.    Ms. Rhames' APA claim is not statutorily barred ...................................... 7

      D.    Ms. Rhames waives relief via nominal damages. ...................................... 10

II.    Summary judgment is not warranted based on any failure to exhaust administrative remedies. ........................................................................... 11

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

*Cases:*

*Bauer v. Texas,*
   341 F.3d 352 (5th Cir. 2003) ............................................................. 4

*Booth v. Churner,*
   532 U.S. 731 (2001) ........................................................................ 12

*Cornwell v. Dahlberg,*
   963 F.2d 912 (6th Cir. 1992) ............................................................ 6

*Davila v. Gladden,*
   777 F.3d 1198 (11th Cir. 2015) ...................................................... 10

*Duncan v. Walker,*
   533 U.S. 167 (2001) ................................................................... 11, 12

*Dunn v. Dunn,*
   219 F. Supp. 3d 1100 (M.D. Ala. 2016) ........................................ 12

*Fenceroy v. Internal Revenue Service,*
   153 F. Supp. 2d 893 (N.D. Tex. 2001) ........................................... 11

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
   528 U.S. 167 (2000) ..................................................................... 2, 3

*Fristoe v. Thompson,*
   144 F.3d 627 (10th Cir.1998) ......................................................... 8

*Gonzalez v. Seal,*
   702 F.3d 785 (5th Cir. 2012) ........................................................ 12

*Iacaboni v. United States,*
   251 F. Supp. 2d 1015 (D. Mass. 2003) ........................................ 7, 8

*Jones v. Bock,*
   549 U.S. 199 (2007) ...................................................................... 12

*Loeffler v. Frank,*
   486 U.S. 549 (1988) ...................................................................... 10

*Machete Productions, L.L.C. v. Page,*
   809 F.3d 281 (5th Cir. 2015) ....................................................... 4, 5

*Martin v. Gerlinski,*
   133 F.3d 1076 (8th Cir. 1998) ..................................................... 8, 9

*Moore v. Carwell,*
    168 F.3d 234 (5th Cir. 1999) ................................................................ 6

*Oklevueha Native American Church of Hawaii, Inc. v. Holder,*
    676 F.3d 829 (9th Cir. 2012) .............................................................. 10

*Robert Juan Dartez, LLC v. United States,*
    824 F. Supp. 2d 743 (N.D. Tex. 2011) ............................................. 1, 2

*Rodriguez v. Herrera,*
    72 F.Supp.2d 1229 (D. Colo. 1999) ..................................................... 9

*Ross v. Blake,*
    136 S. Ct. 1850 (2016) ....................................................................... 12

*Triplett v. Federal Bureau of Prisons,*
    No. 3:08-CV-1252-K, 2009 WL 792799 (N.D. Tex. Mar. 24, 2009)................... 9

*Underwood v. Wilson,*
    151 F.3d 292 (5th Cir. 1998) ............................................................. 12

*United States v. Campbell,*
    704 F. Supp. 715 (N.D. Tex. 1988),
    897 F.2d 1317 (5th Cir. 1990) ........................................................ 6, 7

*United States v. Menasche,*
    348 U.S. 528 (1955) .......................................................................... 12

*United States v. Voda,*
    994 F.2d 149 (5th Cir. 1993) ............................................................... 3

*Webman v. Federal Bureau of Prisons,*
    441 F.3d 1022 (D.C. Cir. 2006) ......................................................... 10

*Wiggins v. Wise,*
    951 F. Supp. 614 (S.D. W. Va. 1996) ................................................... 9

*Woodford v. Ngo,*
    548 U.S. 81 (2006) ............................................................................ 12

*Wyatt v. Leonard,*
    193 F.3d 876 (6th Cir. 1999) ....................................................... 13, 14

*Statutes:*

5 U.S.C. § 551 ................................................................................................ 8

5 U.S.C. § 551(4) ............................................................................................ 9

5 U.S.C. § 551(5) ............................................................................................ 9

5 U.S.C. § 553 ................................................................................................ 8

5 U.S.C. § 702 .............................................................................................. 10

5 U.S.C. § 703 .............................................................................................. 10

18 U.S.C. § 3621(b) ........................................................................................ 7

18 U.S.C. § 3625 ........................................................................................ 7, 8

28 U.S.C. § 1331 .......................................................................................... 10

28 U.S.C. § 1343(a)(4) .................................................................................. 10

28 U.S.C. § 1346 .......................................................................................... 10

28 U.S.C. § 2201 ...................................................................................... 4, 10

28 U.S.C. § 2202 ...................................................................................... 4, 10

42 U.S.C. § 1983 .......................................................................................... 14

42 U.S.C. § 1997e ................................................................................... 11, 12

42 U.S.C. § 2000bb-1 ................................................................................... 10

*Rules and Regulations:*

28 C.F.R. § 115.6 ............................................................................................ 7

Fed. R. Civ. P. 12(b)(1) ............................................................................... 1, 4

Fed. R. Civ. P. 57 ........................................................................................ 10

Fed. R. Civ. P. 65 ........................................................................................ 10

## INTRODUCTION

Defendants argue that (I) this case must be dismissed because Plaintiff Brenda Rhames' legal injury is insufficient injury for Article III standing and (II) her Administrative Procedures Act claim is statutorily barred; (III) sovereign immunity precludes awarding Ms. Rhames nominal damages; or in the alternative, (IV) Defendants argue that summary judgment is appropriate under the Prison Litigation Reform Act (PLRA) because Ms. Rhames did not exhaust her administrative remedies. Ms. Rhames explains below why her injury is sufficient for Article III standing; why her APA claim is not statutorily barred; and why summary judgment is not warranted under the PLRA. She concurs that sovereign immunity bars an award of nominal damages against Defendants in their official capacities, and hereby waives that form of legal relief. However, her claims are well-founded claims and the Defendants' policy and practice of housing male inmates in the general population of women's prisons under the authority of the Prison Rape Elimination Act must be halted by this Court.

## ARGUMENT

### I.   THE MOTION TO DISMISS SHOULD BE DENIED.

The standard for reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(1) is:

> In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute, and should grant[ ] [the motion] only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. In reality, the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances. The plaintiff bears the burden of proof in the Rule 12(b)(1) context. The Court accepts as true all allegations and facts in the complaint.

*Robert Juan Dartez, LLC v. United States*, 824 F. Supp. 2d 743, 746 (N.D. Tex. 2011) (internal quotations and citations omitted). This Court has jurisdiction to hear Ms. Rhames' case under the facts alleged and stated in her Amended Verified Complaint, ECF No. 191.

### A. Defendants' voluntary cessation of illegal acts toward Ms. Rhames does not justify dismissing the case.

Defendants rely heavily on the fact that Ms. Rhames is currently at a women's prison which reportedly does not house any trans-identifying male inmates (i.e., males who claim feminine genders, or "M/FG Inmates"). From that assertion they argue that Ms. Rhames "is suffering no injury caused by Defendants that can be redressed by the Court." Mem. In Supp. of Defs.' Mot. To Dismiss, Or, In the Alt. for Summ. J. 7, ECF No. 207 ("Defs.' MTD Mem."). But it was the Defendants who ordered Ms. Rhames to be moved from Carswell FMC (where she was housed with, and exposed to, M/FG Inmates) to her current location at Alderson FPC. While that act may be seen as a humane courtesy, legally it is best seen as an effort to moot the case via Defendants' voluntary cessation of conduct. But:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. [I]f it did, the courts would be compelled to leave [t]he defendant ... free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189

(2000) (internal quotation marks and citations omitted).

As Defendants admit, designating the place of incarceration is the "exclusive province of BOP," Defs.' MTD Mem. 11, and Defendants hold the "actual authority to designate the place of incarceration." *Id.* at 12 (quoting *United States v. Voda,* 994 F.2d 149, 151-52 (5th Cir. 1993)). Defendants hold the discretionary authority to incarcerate Ms. Rhames wherever they want, with whomever they want, while being answerable (they argue) to no one. That certainly does not satisfy the "heavy burden" of persuading this Court that the "challenged conduct cannot reasonably be expected to start up again."

Indeed, the Defendants never left their "old ways." Despite the change in presidential administrations and issuing revised guidance, the resulting 2018 Transgender Offender Manual perpetuated the authority for Defendants to house M/FG Inmates within a women's prison or a particular woman's cell within such prisons. Rhames' Am. Verif. Compl. 23-24 ¶¶ 69-73, ECF No. 191. And Defendants indeed placed a male inmate into a women's prison since the 2018 Transgender Offender Manual was implemented. *Id.* at 24 ¶ 74. Defendants hold absolute discretion to relocate Ms. Rhames to any other facility as they see it, and hold similar authority to place M/FG Inmates in the same facility or even the same cell as Ms. Rhames. *Id.* at 23-24 ¶¶ 69-73. Seen properly as voluntary cessation of unlawful behavior (and then only in part), the Defendants' discretionary designation of Alderson as Ms. Rhames' place of incarceration is not a basis to dismiss her case.

### B. Ms. Rhames has injury sufficient for standing under Article III.

Defendants also argue under Fed. R. Civ. P. 12(b)(1) that Ms. Rhames lacks injury sufficient to establish the standing necessary under Article III of the United States Constitution, Defs.' MTD Mem. 7, saying that "[w]here a plaintiff seeks injunctive or declaratory relief, it[1] cannot establish its standing on the basis of past injury alone but must instead show a 'substantial likelihood that [it] will suffer injury in the future.'" Defs.' MTD Mem. 6, (quoting *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003)). But Defendants omit that *Bauer* also noted that a "significant possibility of future harm" may be established "even though the injury-in-fact has not yet been completed." *Bauer*, 341 F.3d at 357-58 (citation omitted).

*Bauer* considered a constitutional challenge against aspects of state probate statutes for appointing guardians for incapacitated persons. *Id.* at 354-55. The plaintiff's claims relied in part on the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, upon which Ms. Rhames also relies. Rhames' Am. Verif. Compl. 10 ¶ 10. The *Bauer* court held that standing was lacking because there were "currently no state guardianships proceedings" involving the plaintiff, and the particular judge she had sued had transferred the case to another judge, who was not a named defendant in the suit. *Bauer*, 341 F.3d at 358. The court thus saw any harm coming from the now-transferred defendant judge as "speculative" and that there was not a substantial likelihood of injury from him. *Id.*

Defendants also cite *Machete Productions, L.L.C. v. Page*, 809 F.3d 281 (5th

---

[1] We respectfully submit that Ms. Rhames is a "she," rather than an "it."

Cir. 2015), for the proposition that Ms. Rhames must show a "real and immediate threat" of similar future injury. Defs.' MTD Mem. 6 (quoting *Machete Prods.*, 809 F.3d at 288). That case brought a free speech claim against a state incentive program for movie-makers, and the court found no standing where "Machete failed to show any imminent plans to produce another film" eligible for the program and failed to show it had any outstanding grant applications for the incentive. *Machete Prods.*, 809 F.3d at 288.

Neither *Bauer* nor *Machete* are apropos to Ms. Rhames' situation: The Defendants control where and with whom Ms. Rhames is incarcerated and claim absolute, unreviewable discretion to do so. As a female, she is properly placed in a women's prison, which is also exactly the type of facility that Defendants intentionally select as a means of "affirming" M/FG Inmates' claimed feminine identity. Rhames' Am. Verif. Compl. 29 ¶ 91; 34 ¶ 114; 37 ¶ 128. The record demonstrates that placing M/FG Inmates into women's prisons directly and adversely impacted Ms. Rhames' legally protected interests in the past. *See id.* at 18-19 ¶ 51 (Ms. Rhames exposed to urinating male); *id.* at 19 ¶ 53 (male exposing genitalia to Ms. Rhames while she was at work in the kitchen); and *id.* at 19 ¶ 54 (Ms. Rhames exposed to male genitalia while viewing an inmate play).

As to the future (and unlike the situations in *Bauer* and *Machete*), every operative factor remains in place to injure Ms. Rhames again: Defendants retain the authority to place an M/FG Inmate in Alderson or any other women's prison—including within Ms. Rhames' cell, Rhames' Am. Verif. Compl. 23-24 ¶¶ 69-73—and

contemporaneously with adopting the 2018 Transgender Offender Manual they did in fact transfer an M/FG Inmate from one women's prison to another, *id.* at 24 ¶ 74, which demonstrates that the new Manual does not protect women against being housed with male inmates.

Similarly, the bias against women's privacy rights remains in the 2018 Transgender Offender Manual. Every inmate retains a critical degree of privacy from the opposite sex: "[A] convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex . . . ." *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992), *accord Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999) (recognizing non-emergency opposite-sex strip searches raise a valid Fourth Amendment privacy claim). But rather than provide baseline protections for every inmates' bodily privacy when designating their place of incarceration, the Manual weighs inmates' privacy only individually and optionally by "considering inmates" who have "privacy concerns." And even then there is no assurance that the inmate will have her privacy protected from opposite sex inmates. Rhames' Am. Verif. Compl. Ex. 1, at 7, ECF No. 191-1 (2018 Transgender Offender Manual)

All this is consistent with the injunctive relief Ms. Rhames seeks: The "[t]wo important factors in determining the appropriateness of injunctive relief are a defendant's position regarding the legality of the challenged activity and a defendant's occupation of a position from which the challenged activity can be resumed." *United States v. Campbell*, 704 F. Supp. 715, 730 (N.D. Tex. 1988), *aff'd*

*as modified*, 897 F.2d 1317 (5th Cir. 1990). Here, Defendants continue to vigorously defend the legality of placing M/FG Inmates in women's prisons and stubbornly perpetuated their presumed legal authority in their 2018 Transgender Offender Manual. The Defendants' steadfast defense of their position—despite it already resulting in Ms. Rhames' unconsented viewing of male genitalia (which is defined as sexual harassment under the PREA per 28 C.F.R. § 115.6)—and their insistence that they have absolute discretion to place inmates with whomever they will and wherever they wish shows that the prospective injury to Ms. Rhames is more than mere speculation. Indeed, Ms. Rhames' current housing situation may well reflect her special standing as a plaintiff in this lawsuit, and such protection that may offer to her would vanish were this lawsuit to be dismissed.

### C. Ms. Rhames' APA claim is not statutorily barred

Defendants argue that absent a waiver of sovereign immunity, there is no jurisdiction to review Ms. Rhames' APA Section 706 claim because the BOP has statutorily-protected "unreviewable designation authority":

> Here, 18 U.S.C. § 3625 expressly states that section 706 of the APA (which Plaintiff sues under, *see* Am. Compl. ¶118a-d, App. 097-098) "do[es] not apply to the making of any determination, decision, or order under this subchapter." . . . [T]he Court lacks jurisdiction to adjudicate Plaintiff's APA claim because "under this subchapter" refers to 18 U.S.C. § 3621(b), which gives BOP unreviewable designation authority with respect to APA claims.

Defs.' MTD Mem. 16. In short, Defendants argue that 18 U.S.C. § 3625 absolutely bars judicial review of their discretionary designations of which inmates are to be incarcerated where. *Id.* And that is accurate as far as it goes, but as a defense against Ms. Rhames' APA claim, the argument "is incorrect and ignores well

established case law." *Iacaboni v. United States*, 251 F. Supp. 2d 1015, 1036 (D. Mass. 2003).

*Iacaboni* was an inmate challenge to the BOP changing a policy by which it often confined short-term prisoners in community confinement facilities, and instituting a new policy requiring confinement in conventional prison institutions. *Id.* at 1017. This it did via an internal memorandum rather than following notice-and-comment rulemaking procedures under the APA. *Id.* at 1018. When inmate Iacaboni sued, the BOP made exactly the same argument as it does here, pointing out that "Title 18 U.S.C. § 3625 states that Sections 554–55, and 701–06 of the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, 'do not apply to the making of any determination, decision, or order under this subchapter.'" *Id.* at 1036.

However, the "specific provisions of the APA excluded . . . apply to *individual* adjudications and their judicial review. The obvious inference to be drawn from § 3625 is that provisions of the APA *not* excluded *do* apply to the BOP, particularly when the application would not adhere to any 'determination, decision or order.'" *Id.* Further,

> the exclusions of APA applicability to the BOP set forth in § 3625 do not embrace 5 U.S.C. § 553, which governs rule-making. Indeed, in enacting § 3625, the House Report explicitly stated that the law provides that rule-making activities are reviewable under the APA, while adjudication[s] of specific cases are not.

*Id.* (internal quotation marks omitted). Indeed, judicial review of BOP rulemaking is very well established law. *See e.g.*, *Fristoe v. Thompson*, 144 F.3d 627, 630–31 (10th Cir.1998) (court may apply APA to discern whether BOP exceeded statutory authority); *Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998) (section 3625

notwithstanding, under the APA courts may review BOP rulemaking decisions); *Triplett v. Fed. Bureau of Prisons*, No. 3:08-CV-1252-K, 2009 WL 792799, at *4-8 (N.D. Tex. Mar. 24, 2009) (granting § 3625 defense regarding APA challenge to a BOP inmate transfer but granting BOP summary judgment under APA on a final agency action related to discipline); *Rodriguez v. Herrera*, 72 F.Supp.2d 1229, 1231 n.2 (D. Colo. 1999) (court may review formal and informal BOP guidance to determine if BOP exceeded its lawful authority). The APA claim here is against the Manual as an exercise in rulemaking:

> The APA defines a "rule" as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy...." 5 U.S.C. § 551(4). Rulemaking is defined as the "agency process for formulating, amending, or repealing a rule...." 5 U.S.C. § 551(5). Thus defined, section nine is a clear example of agency rulemaking. Its scope affects not just one prisoner, but all prisoners. It does not involve the application of a regulation to a particular set of facts, but, rather, seeks to establish guidelines applicable to a wide range of situations. Accordingly, the court finds judicial review is not precluded in this case.

*Wiggins v. Wise*, 951 F. Supp. 614, 619 (S.D. W. Va. 1996) (striking a BOP program statement that defined "crime of violence" for an early release process). Similarly, the Transgender Offender Manuals are program statements which affect "all prisoners" and establish guidelines for "a wide range of situations." Ms. Rhames' APA challenge is not to her transfer, but rather asserts that the BOP lacked authority under the Prison Rape Elimination Act to issue a new rule authorizing itself to place male inmates in the general populations of federal women's prisons. Rhames' Am. Verif. Compl. 35-38 ¶¶ 119-135. The APA claim is valid, and the BOP's program statement should be reviewed.

*Memorandum in Support of Plaintiff Rhames' Response in Opposition to Defendants' Motion to Dismiss, Or, In the Alternative, For Summary Judgment* **9**

### D. Ms. Rhames waives relief via nominal damages.

"Absent a waiver of sovereign immunity, the Federal Government is immune from suit." *Loeffler v. Frank*, 486 U.S. 549, 554 (1988) (internal citation omitted). Defendants argue that an award of nominal damages would be barred by sovereign immunity, for which Ms. Rhames did not identify any applicable waiver. So far as that goes—which is to a form of relief—it is correct, and plaintiff waives her request for nominal damages. Defendants do not challenge Ms. Rhames' claims for equitable relief, and rightly so as the United States has waived sovereign liability in respect to equitable relief claims for each of the stated causes of action. This Court has jurisdiction to hear Ms. Rhames' constitutional and federal statutory claims under 28 U.S.C. §§ 1331 and 1346 and has the authority to grant declaratory relief in accord with 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57; and to grant injunctive relief under 5 U.S.C. §§ 702-703, 28 U.S.C. § 1343(a)(4), and Fed. R. Civ. P. 65. Rhames' Am. Verif. Compl. 10 ¶¶ 9-11. Moreover, the Religious Freedom Restoration Act expressly authorizes equitable relief against the United States under 42 U.S.C. § 2000bb-1[2] and the APA authorizes the same under 5 U.S.C. § 702. Thus, while nominal damages may not be obtained, Ms. Rhames' pursuit of

---

[2] Although the Fifth Circuit has not directly considered whether RFRA waived sovereign immunity for monetary damages in official capacity suits, the best reading and weight of authority counsels that it did not. "Congress need not use magic words to waive sovereign immunity, but the language it chooses must be unequivocal and unambiguous. RFRA's text falls short on this standard." *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (internal citation omitted); *see also Davila v. Gladden*, 777 F.3d 1198, 1209–10 (11th Cir. 2015) (holding that RFRA does not authorize suits for money damages against officers in their official capacities); and *Oklevueha Native Am. Church of Haw., Inc. v. Holder,* 676 F.3d 829, 841 (9th Cir. 2012) (same).

equitable relief is solidly grounded in long-established waivers of sovereign immunity for her constitutional and statutory claims.

## II.   SUMMARY JUDGMENT IS NOT WARRANTED BASED ON ANY FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Defendants close by raising an affirmative defense that summary judgment is warranted on all claims because Ms. Rhames did not exhaust administrative remedies before filing a district court complaint. Defs.' MTD Mem. 13. The standard for reviewing a summary judgment motion is:

> Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.

> Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.

*Fenceroy v. I.R.S.,* 153 F. Supp. 2d 893, 897 (N.D. Tex. 2001) (internal quotations and citations omitted). Defendants argue summary judgment is merited under 42 U.S.C.A. § 1997e, which states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies **as are available** are exhausted." (emphasis added).

But as with every statute, the Court's duty is "'to give effect, if possible, to every clause and word of a statute.'" *Duncan v. Walker*, 533 U.S. 167, 174 (2001)

(quoting *United States v. Menasche*, 348 U.S. 528, 538–539 (1955)). And in 42 U.S.C.A. § 1997e, the phrase "as are available" is a "significant qualifier." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). This Congressionally enacted statutory phrase is quite unlike the jurisprudential, discretionary "interests of justice" exception to exhaustion that had been authorized under *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998) which was later rejected by *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (recognizing "that *Underwood* has been tacitly overruled and is no longer good law" in light of *Woodford v. Ngo,* 548 U.S. 81 (2006) and *Jones v. Bock*, 549 U.S. 199 (2007)).

*Ross* further instructs that "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 136 S. Ct. at 1859. Such is the case here, where the irreducible principle underlying Ms. Rhames' complaint is that the Defendants are housing male inmates with female inmates. Defendants adamantly insist that the male inmates claiming feminine genders must be treated as if they are female, and dogmatically ground that position in presidential and Department of Justice authority.

A "grievance process is not available when 'the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint.'" *Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1114 (M.D. Ala. 2016) (quoting *Booth v. Churner*, 532 U.S. 731, 736 (2001)). Here, any complaint

lodged to protect women from men who believe themselves to be female cannot be resolved by the BOP's administrative complaint procedure, which reaches no higher than the Bureau of Prison's central office. Defs.' MTD Mem. 16 (Office of General Counsel is highest level of review). The BOP is subordinate to both the Department of Justice and the President, both of which Defendants have forcefully asserted as their authority for the Transgender Offender Manuals: On November 29, 2016, Carswell Inmate Lacie Devine complained to Defendant Upton that the presence of three men in her unit could exacerbate her PTSD. Warden Upton responded, "Your concerns are noted and I encourage you to speak with Psychology staff about some coping mechanisms you can utilize to help you adjust to the changes. However, at this time, the agency is following the intent of President Obama and the Department of Justice in dealing with issues related to Transgender people." Plaintiffs' App. In Supp. of Mot. For Prelim. Inj. 113, ECF No. 81 ("Pls.' App."). Similarly, on December 21, 2016, Charlsa Little (then incarcerated at Carswell) complained to Defendant Upton that "I have heard [] it is possible [that] I could be moved to 1 North, where a man is housed" because she was "afraid of these people" and it would "be an infringement on my right to privacy." Pls.' App. 114. Defendant Upton responded that "if you are directed to move to a particular area, you will be expected to do so or suffer appropriate consequences. Every inmate in this institution is considered a female and our policy on housing transgender inmates is consistent with the U.S. Department of Justice directives." *Id.*

Defendants will likely raise *Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999)

against *Ross*, and argue that prisoners must exhaust available grievance procedures even where the remedy sought is "not an available remedy in the administrative process." *Wyatt*, 193 F.3d at 878. But *Wyatt* spoke to an inmate's lawsuit for damages under 42 U.S.C. § 1983, in contrast to the relevant administrative procedure which did not permit monetary damages. *Id.* at 877-78. The *Wyatt* court pointed out that the non-monetary relief could have resolved the inmate's complaint, and there was thus "available relief" under the administrative claim system. But *Wyatt* also pointed out that it "makes sense to excuse exhaustion of the prisoner's complaint where the prison system has a flat rule declining jurisdiction over such cases." *Id.* at 878. And that is the case here: Defendants' flat rule is that males are females if they proclaim that they are, under the authority of then-President Obama and the Department of Justice. And the Defendants perpetuated that rule through a change in presidents with the 2018 Transgender Offender Manual.

Defendants try to buttress their exhaustion argument by claiming that pre-filing administrative review must run its course to allow the BOP to use its "special expertise" to "adequately assess the myriad factual intricacies upon which those allegations turn." Defs.' MTD Mem. 15. But when given that chance by Ms. Little raising a "Sensitive Issue Needing Your Intervention" with Defendant Upton, respectfully asking that she not be housed with a man, his response was anything but nuanced: "Your Unit Team decides housing assignments for all inmates and if you are directed to move to a particular area, you will be expected to do so or suffer

appropriate consequences. Every inmate in this institution is considered a female and our policy on housing transgender inmates is consistent with the U.S. Department of Justice directives." Pls.' App. 114. Defendants, having expressly invoked the authority of the DOJ and the President for their transgender policy, cannot credibly assert that subordinate BOP officials would or could supersede the authority of those superior entities.

Under *Ross* and the facts of this case, Defendants' motion for summary judgment fails because there was no available administrative remedy to cure the BOP's adoption and application of the 2017 and 2018 Transgender Offender Manuals. Ms. Rhames has pointed to material facts supporting her position, and the Defendants' motion should properly be denied.

## CONCLUSION

Defendants have steadfastly rebuffed inmate complaints about placing trans-identified males in women's prisons; claimed that such policies emanate from the DOJ and the President; and continue to place males in women's prisons. The current 2018 Transgender Offender Manual is biased against women's privacy, and under its authority the Defendants may place an M/FG Inmate in Ms. Rhames' living quarters tomorrow. Ms. Rhames' equitable relief claims are well founded and this Court should deny Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment. The case should proceed to discovery and such motions or trial as is necessary to resolve the merits of the claims.

Respectfully submitted this 15th day of October, 2018.

By: s/ Gary S. McCaleb

JAMES A. PIKL
Jim.pikl@solidcounsel.com
TX Bar No. 16008850
**SCHEEF & STONE, LLP**
2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100
(214) 472-2150 Fax

GARY S. MCCALEB
gmccaleb@adflegal.org
AZ Bar No. 018848*
JEANA HALLOCK
jhallock@adflegal.org
AZ Bar no. 032678*
**ALLIANCE DEFENDING FREEDOM**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax

CHRISTIANA HOLCOMB
cholcomb@adflegal.org
CA Bar No. 277427*
**ALLIANCE DEFENDING FREEDOM**
440 First St. NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax

*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

In accordance with Local Rule 5.1(d), the foregoing pleading was served on October 15, 2018 in accordance with the CM/ECF filing system and FRCP 4.


By: s/ Gary S. McCaleb
GARY S. MCCALEB
*Attorney for Plaintiffs*